IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA I. HOFSTETTER, individually, as a representative of the class, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>CHASE HOME FINANCE, LLC, JPMORGAN CHASE BANK, N.A., and DOES 1-50, inclusive,<br><br>Defendant. | No. C 10-01313 WHA<br><br>**ORDER ON CERTAIN DISCOVERY ISSUES AND REFERRING REMAINING AND FUTURE DISCOVERY DISPUTES FOR ASSIGNMENT TO A MAGISTRATE JUDGE** |

As stated at the hearing held on September 2, 2010, all discovery-related matters — including future and pending disputes not resolved by this order — will be referred to the Clerk for random assignment to a magistrate judge. The Clerk is **ORDERED** to assign this matter to a magistrate judge for such disputes in this action.

The undersigned judge, however, will address a few of the issues raised by the parties in their letter briefs and at the hearing. *First*, as both sides are aware, plaintiff was ordered to file two formal motions, noticed on a regular 35-day calendar, pertaining to (1) defendants' alleged failure to identify persons with knowledge relating to the case in their initial disclosures and discovery responses, and (2) defendants' general privilege assertions and alleged failure to produce a privilege log. The undersigned judge will handle these two motions. Plaintiff shall file these motions no later than **SEPTEMBER 16**.

*Second*, as stated at the hearing, plaintiff is entitled to information — including commission agreements or any information pertaining to "kickbacks" — on the relationship between defendants Chase Home Finance, LLC and JPMorgan Chase Bank, N.A. as well as between defendants and any third-party flood insurance providers. The reasonableness of plaintiff's interrogatories and document requests on this topic, however, shall be decided by the magistrate judge. This is because the pending motion for leave to file an amended complaint may (or may not) broaden the legal claims currently being asserted against defendants, and the success or failure of the pending motion may impact the reasonableness of plaintiff's discovery requests.[1]

*Third*, the most critical question presented by the parties at the hearing was whether plaintiff's "proposed class" should be limited to "zero/zero" borrowers like plaintiff Sheila Hofstetter — who carried a zero-dollar outstanding principal balance and zero dollars of available credit at the time her flood insurance was purchased — or whether the "proposed class" should include all borrowers who were purchased flood insurance in excess of their outstanding principal balance and available line of credit. On this issue, it is true that there are some overlapping legal questions between a "zero/zero" borrower like Ms. Hofstetter and a borrower with, for example, a ten-thousand dollar outstanding principal balance and credit limit for whom flood insurance was "force-purchased" in excess of the National Flood Insurance Act's minimum requirements: both types of borrowers may have a legitimate claim against defendants for "unfairly" force-purchasing excessive flood insurance.

That said, that there are notable differences between "zero/zero" borrowers like plaintiff Hofstetter and borrowers that have positive outstanding principal balances and/or available credit limits. To illustrate these differences, consider the following: plaintiff's claim is based in large part upon three letters sent from defendants that told her that the required amount of flood insurance coverage under federal law was the "lesser" of:

- The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000; or

---

[1] For the same reason, the dispute over plaintiff's request for customer complaints (addressed briefly at the hearing) will also be referred to the magistrate judge.

2

- 100% of the full replacement cost value of the dwelling and insurable improvements; or

- The principal balance of the loan or credit line amounts for lines of credit.

The letters also stated that if the Hofstetters did not obtain "adequate" flood insurance coverage for their home, defendants would be forced to purchase a $175,000 flood insurance policy on their behalf (and bill the premiums to them).

Since Ms. Hofstetter carried a zero-dollar outstanding principal balance and zero dollars of available credit at the time she received these letters, the letters arguably stated that *no flood insurance needed to be purchased* — both the "principal balance of the loan" and "credit line amounts" for Ms. Hofstetter were zero dollars. Additionally, as the prior order concluded, such "zero/zero" borrowers were not required to carry flood insurance under the NFIA. Nevertheless, defendants purchased $175,000 worth of flood insurance for plaintiff's residence and billed her for the insurance premiums.

By contrast, a borrower with a positive outstanding principal balance and/or available credit limit would be *required* to carry flood insurance under the NFIA for an amount at least equal to the outstanding principal balance or credit limit, whichever is higher. Given this requirement, defendants could argue that borrowers were given "fair warning" by their letters that failure to purchase the required amount of flood insurance would result in defendants purchasing flood insurance on their behalf. Importantly, as explained in the prior order, nothing in the NFIA or its implementing regulations expressly bars lenders from purchasing more than the minimum amount of flood insurance required under the Act.[2]

In sum, while "zero/zero" borrowers like plaintiff Hofstetter arguably were never given fair warning that defendants would purchase flood insurance on their behalf, those borrowers who carried an outstanding principal balance or had a non-zero available credit limit may have been given fair notice that flood insurance in excess of the required amount would be purchased for

---

[2] As the prior order explained, however, the agencies expressly warned lenders that while "there are no penalties for over-insurance under the Act and Regulation[s] . . . *there may be penalties for over-insurance under applicable State law.*" 74 Fed. Reg. 35914, 35918 (July 21, 2009) (emphasis added).

3

them if they did not purchase adequate flood insurance on their own. The question of whether such a practice is "unfair" under Section 17200 will therefore hinge upon different considerations. For example, it may be relevant whether the flood insurance purchased by defendants for a borrower exceeded the minimum amount required for a particular borrower under the NFIA by only $10,000 versus $175,000.

Given these differences, plaintiff's interrogatory requests 1 through 3 must be limited in scope to "zero/zero" borrowers like plaintiff Hofstetter, unless and until a new plaintiff is allowed to intervene with claims that are more typical of borrowers with positive outstanding principal balances and/or available credit limits who are nevertheless "force-purchased" an excessive amount of flood insurance by defendants.

Finally, as stated at the hearing, if — due to unreasonable cooperation (*i.e.*, stonewalling) by defendants in complying with their discovery obligations — the magistrate judge recommends an extension of the Rule 23 certification deadline, the undersigned judge will be willing to entertain such an extension. This would only be considered, however, if plaintiff's discovery requests have been reasonable. Until and unless that occurs, both sides are expected to meet the current schedule set forth in the case management order and fulfill their discovery obligations in good faith.

**IT IS SO ORDERED.**

Dated: September 2, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4