Pages 1 - 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

SHEILA I. HOFSTETTER, *et al.*,      )
                                     )
            Plaintiffs,              )
                                     )
   vs.                               )  NO. C 10-1313 WHA
                                     )
CHASE HOME FINANCE, LLC. *et al.*,   )
                                     )  San Francisco, California
            Defendants.              )  Wednesday
                                     )  September 1, 2010
_____)  12:00 p.m.

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

**For Plaintiffs:**          Nichols Kaster, PLLP
                             4600 IDS Center
                             80 South Eighth Street
                             Minneapolis, MN  55402
                             (877) 448-0492
                             (612) 215-6870 (fax)
                    **BY:  DONALD H. NICHOLS
                          KAI RICHTER**


**For Defendants:**          Burke Warren MacKay & Serritella, PC
                             22nd Floor IBM Plaza
                             330 North Wabash Avenue
                             Chicago, IL  60611-3607
                             (312) 840-7047
                             (312) 840-7900 (fax)
                    **BY:  STEPHEN R. MEINERTZHAGEN**




**Reported By:     Lydia Zinn, CSR #9223, RPR
                   Official Reporter - U.S. District Court**

2

1      **THE COURT:**  All right.  Let's go to work.  Please be

2  seated.  This is *Hofstetter versus Chase Home Finance*, Case

3  Number 10-1313.  Appearances, please.

4      **MR. RICHTER:**  Donald Nichols and Kai Richter, for the

5  plaintiff, Sheila Hofstetter.

6      **MR. MEINERTZHAGEN:**  Steve Meinertzhagen, for the

7  defendants Chase Home Finance, and J.P. Morgan Chase Bank.

8      **THE COURT:**  Thank you.  What are the issue I need to

9  resolve?

10      **MR. RICHTER:**  I think, unfortunately, just about all

11  of them, your Honor.

12      **THE COURT:**  I am discouraged, but I'll hear you for a

13  bit.  If this is the way it's going to be in this case, I'm

14  going to probably refer all of these discovery disputes to a

15  Magistrate Judge, but if you let me start on this, you know, we

16  have hundreds of cases here.  I can solve small problems, but

17  let me hear what you have to say, and I'll start on it.

18      If I can't make much progress, I'll have to cut

19  through it in some way.

20      Please go ahead, counsel.

21      **MR. RICHTER:**  May I approach, your Honor?

22      **THE COURT:**  Yes, you may.  I want you to.  Stand

23  right there and make sure we hear you loud and clear.  Start

24  with the one you feel the strongest about, because I may not

25  have the steam to go much further.

1     **MR. RICHTER:**  Well, your Honor, I'm not surprised

2    that we haven't made much progress during our meet and confer.

3    Really, throughout the litigation Chase has shown a history of

4    delay and obstructionism.  And it really started from the time

5    we filed our complaint.  We filed the complaint that requested

6    an extension.  We filed our amended complaint.  They requested

7    another extension to respond, even though their motion to

8    dismiss the first amended complaint was almost identical to

9    their motion to dismiss the original complaint.

10          When the initial disclosures came due on July 8th,

11    they failed to produce any documents or identify any witnesses

12    at that time.

13          Then, at the time of our case-management conference

14    on July 15th, they asked for a stay of discovery.  Your Honor

15    rejected the stay of discovery.  And so then they approached us

16    for an extension in which to respond to discovery.

17          At that time, we indicated that we had previously

18    granted them some professional courtesies in responding to the

19    complaint, but were growing a little bit tired of the repeated

20    requests for extension, but we did ultimately grant them a

21    request for extension of the time period to respond at least

22    until July 30th, based on the representations to us that they

23    were still investigating the facts and diligently conducting

24    their investigation.

25          Unfortunately when July 30th rolled around, they

1  failed to provide any meaningful responses to their discovery,

2  and they did not supplement their initial disclosures.

3        They provided almost no information.  In response to

4  the interrogatories, they failed to produce any documents

5  beyond the plaintiff's loan file.  And they failed to respond

6  to a corporate deposition notice which called for 30(b)(6)

7  depositions of Chase Home Finance and J.P. Morgan Chase on

8  August 9th and 10th, or we also proposed alternative dates in

9  August.

10        We met and conferred with the defendant now twice,

11  first by phone, and now in person this morning, and yet they've

12  still not responded or supplemented their responses to

13  discovery.

14        In fact, they have not even lived up to the limited

15  comment that they made during the meet-and-confer; one of those

16  being to produce certain documents, and once the protective

17  order was entered.  That protective order has now been entered,

18  but we still have not received any additional documents.  I'm

19  told that they'll be coming by the end of the week.

20        And then, with respect to the depositions, the

21  corporate depositions still have not taken place.  They've only

22  offered us one date for the depositions, even though we've

23  noticed depositions of both defendants.  And the one date that

24  the parties have managed to agree upon, which is October the

25  1st, they appeared to be backpedaling from as well.

1           With that said, let me indicate what I think to be

2    the real problem here, your Honor.  And the problem is just a

3    philosophical one with respect to discovery.

4           In their -- both their letter to the Court, and their

5    letter to us the previous ten days beforehand, defendant

6    asserted that, quote,

7                "Plaintiff cannot obtain discovery of

8                any matter relevant to the subject matter

9                involved in the action without a showing of

10               good cause and a Court order."

11          Your Honor, that's simply not the standard.

12          When discovery is done properly, as you know, it

13   should not require the Court's attention.  And if objections

14   are not substantially justified, the plaintiff is entitled to

15   sanctions.

16          In short, barring the language from Chase's mortgage

17   documents, the way the discovery process should proceed is that

18   defendants are required to produce the documents on the topics

19   and for the periods that plaintiff requests, without involving

20   the Court.

21          Moreover, defendant have not even complied with the

22   Court's orders in its supplemental record relating to discovery

23   Docket Number 3 with respect to witness disclosures, your

24   Honor's standing order, as well as the comments of the

25   case-management conference and case-management order were

1  perfectly clear that defendants were required to identify

2  persons with knowledge relating to the case.  And yet to this

3  day, your Honor, despite repeated requests, defendants still

4  have not identified anybody from either company in response to

5  our interrogatories or in their initial disclosures with

6  knowledge relating to the case.  And therefore, we believe that

7  they should not be allowed to call any company witnesses going

8  forward in the case.

9              Second, with respect to privilege, your Honor's

10  standing order provides --

11              **THE COURT:**  Wait.  Can I interrupt you?  You're

12  saying that there was no Rule 26(a) disclosure?

13              **MR. RICHTER:**  There was a Rule 26(a) disclosure.  And

14  Chase simply referred to persons within the company yet

15  unidentified, and failed to --

16              **THE COURT:**  Stop there.

17              Is that true?

18              **MR. MEINERTZHAGEN:**  No, your Honor.

19              **THE COURT:**  May I see the disclosures?

20              **THE COURT:**  Certainly.

21              **MR. MEINERTZHAGEN:**  I didn't realize 26(a)

22  disclosures were part of this meet-and-confer.  I have some

23  handwriting on it.

24              **THE COURT:**  I'll look at it and ignore your

25  handwritten --

1          MR. MEINERTZHAGEN:  Thank you.

2          (Whereupon a document was tendered to the Court)

3          THE COURT:  (Reading)

4              "Individuals likely to have

5          discoverable information that Chase may use

6          to support its defenses, except

7          impeachment:  Sheila Hofstetter,

8          David Hofstetter.  Individuals in

9          plaintiffs' family.  Individuals not yet

10         identified employed by CHF who may have

11         knowledge regarding" --

12             Et cetera, et cetera.

13         "Employees of defendant not yet identified."

14         MR. MEINERTZHAGEN:  Your Honor, as constitutional

15  defendants, the Chase defendants --

16         THE COURT:  Why did you tell me a moment ago that

17  what he said was not true, when it is absolutely true?

18         MR. MEINERTZHAGEN:  Well, your Honor, we did identify

19  the Hofstetters to the --

20         THE COURT:  Oh, wow.  They're the plaintiff.

21         MR. MEINERTZHAGEN:  Chase is an institution, your

22  Honor, and its knowledge is based upon its business records.

23         There isn't a person who force-places insurance on

24  the Hofstetters.

25         THE COURT:  That means you have no witnesses at

1  trial, except the plaintiffs.

2          All right.  You have a seat counsel.

3          **MR. MEINERTZHAGEN:**  Thank you, your Honor.

4          **THE COURT:**  Go ahead.  Let's just stop on that one.

5  I want you to bring a formal motion.  This is to be a formal

6  motion -- I don't want to do this on letters -- to bar Chase

7  from presenting any witnesses on summary judgment or at trial

8  on account of blatant disregard of Rule 37(c) and 26(a).

9          I'm not saying I'm going to grant that yet, but I

10 made it very clear at the case-management conference I was

11 giving you a little extra time in order to supplement your

12 disclosures.  I gave you, in fact, from July 19th all the way

13 to July 30th.  And I said, quote, "on pain of preclusion under

14 Rule 37(c)."

15         So you bring that motion.  That will have to be a

16 formal motion.  I'm not going to rule on that on the basis of a

17 letter, because the Ninth Circuit may say that there was not an

18 adequate opportunity to be heard.

19         All right.  What's your next point?

20         **MR. RICHTER:**  Next point is with respect to

21 privilege, your Honor.  Your Honor's supplemental order --

22         **THE COURT:**  I read that part.

23         You bring a similar motion.  That's the same thing.

24 You bring a similar motion to deem all those waived, on account

25 of failure to identify them with particularity that is required

1  by the Court's order.

2            What's your next problem?

3            That's going to be a formal motion on a 35-day track.

4            What's your next point?

5      **MR. RICHTER:**  With respect to --

6            Two points.

7            First, generally, with respect to the efforts that

8  defendants made to search and find documents they originally

9  did not disclose, as, again, required in the supplemental

10  order, what efforts or what files that they searched for

11  responsive documents.

12      **THE COURT:**  All right.  Aren't they supposed to do

13  that under my order?

14      **MR. RICHTER:**  Yes.  Now, they did eventually tell us

15  in a letter -- I think it's in their August 10th letter, which

16  is attached to their August 20th letter to the Court -- they

17  did eventually tell us who did the searching, but

18  interestingly, there's not anybody -- not a single person --

19  identified from J.P. Morgan Chase Bank.  Here's what they said.

20  Quote,

21            "You asked us to identify the persons

22            as CHF or JPMCB who searched for the

23            documents we produced, and what systems

24            they searched."

25            For the documents relating to the plaintiff,

1   Jacqueline Larochelle (phonetic), a litigation analyst for CHF,

2   searched for those documents on three systems.  She retrieved

3   the loan documents and correspondence from the iBolt electronic

4   imaging system, the loan history from the MSP servicing system,

5   and the customer-service notes from the customer-service

6   workbench, which is part of the MSP system.

7            For the flood-map documents, those documents were

8   provided by Kia Clay (phonetic), a home-equity project lead in

9   the Escrow Administration Department by CHF's flood vendor,

10  CoreLogic, who obtained the documents from FEMA.  There's not

11  one person identified from J.P. Morgan Chase.

12           Finally, your Honor, with respect to the specific

13  deficiencies, I'm not going to go through them all here.  We've

14  laid them out in our three-page letter to the Court.  We've

15  laid them out in the attached five-page letter to defendants'

16  counsel.  And I don't want to take more of the Court's time

17  unnecessarily.

18           **THE COURT:**  Well, show me a -- let's go through one

19  or two of your actual requests, so I can get the sense of what

20  it is.  You know, sometimes the person in your position has

21  made an unreasonable request, and therefore, you don't deserve

22  any more relief.

23           So I want to see how good your requests are.  So show

24  me one that you think is a good request that has been

25  stonewalled.

1          **MR. RICHTER:**  Well, let's start with Interrogatory

2    Numbers 1, 2, and 3.

3          **THE COURT:**  All right.  Where would I find that?

4          **MR. RICHTER:**  You would find that -- looking at their

5    responses, it would be Exhibit 3 to our -- to my letter to the

6    court.

7          **THE COURT:**  All right.  I see the interrogatories.

8    Exhibit 3.

9          **MR. RICHTER:**  We asked for the identity of all

10   persons in the proposed class in Interrogatory Number 1.

11          In Interrogatory Number 2, we asked for the identity

12   of all persons in the proposed class who were required by

13   defendants to procure flood insurance in excess of their

14   outstanding principal balance.

15          And, as I informed defense counsel today, we'd be

16   happy to amend this interrogatory to provide for outstanding

17   principal balance or available credit to reflect the Court's

18   recent order on the Rule 12 motion.

19          And then, third, Interrogatory Number 3 really asks

20   for data relating to the members of the proposed class; how

21   much flood insurance covers that defendants required --

22          **THE COURT:**  Why do you need Numbers 1 and 2?

23          **MR. RICHTER:**  With respect -- well, we -- as we told

24   defendants' counsel, we'd be willing to compromise on Number

25   1 -- all persons in the proposed class -- if we got the

1   information in Interrogatories Number 2 and 3.

2          We're seeking information relating to the proposed

3   class members and the amount of flood insurance that they were

4   required to procure, because -- to see the extent to which

5   other persons suffered the same injuries as the plaintiff.  So

6   we're seeking it on commonality, typicality, and numerosity.

7          And, with respect to the identities of the proposed

8   class members, your Honor, if your Honor felt it was

9   appropriate, I think perhaps we could compromise on that if

10  they were willing to provide a unique, identifying number.

11         **THE COURT:**  All right.  Are you going to be

12  contending in any way that they commonality and typicality

13  requirements are not met?

14         **MR. MEINERTZHAGEN:**  Your Honor, with respect to the

15  proposed class as it's alleged, the proposed class, your Honor,

16  is all persons who have or had loans -- loans or lines of

17  credit with defendants that was secured by their residential

18  property, and were required by defendants to purchase or

19  maintain flood insurance on their property.

20         Your Honor, plaintiffs claim is that she had a HELOC,

21  a particular type of loan; that her credit privileged were

22  suspended; that she had no available credit and zero balance;

23  and Chase force-placed insurance on her loan.

24         The class as defined doesn't relate to the

25  plaintiff's claims, because it's simply any loan where Chase

1    required flood insurance.

2            What we have agreed to do, your Honor -- and I think

3    it was a reasonable proposal -- was to provide the written

4    procedures relating to the forced placement of flood insurance

5    on HELOCs, and to provide the number of similarly situated

6    customers.  In other words, those customers with HELOCs who --

7    whose credit was suspended who had zero balance, and who had

8    their loans force-placed.

9            If there is a broader grouping than that that the

10   Court believes is appropriate, we can provide that number; but

11   the detailed loan-level information -- for instance,

12   your Honor, if you look at Interrogatory Number 3, they want a

13   running balance; a running tabulation of the loan balances

14   throughout first the life of a first loan; throughout the life

15   of a second loan; throughout the life of any fixed loan where

16   Chase force-placed insurance.  This information is not

17   necessary for class certification.  What would be necessary for

18   that would be the procedures.

19           Did Chase treat Hofstetter like it treated similarly

20   situated persons?

21           **THE COURT:**  Well, there must have been a lot of

22   people who got that same letter.

23           **MR. MEINERTZHAGEN:**  The --

24           **THE COURT:**  The letter that she got.

25           **MR. MEINERTZHAGEN:**  But that could be a person with a

1    loan balance.  It could be a person with an open -- with a --

2    with credit available.  It could be, perhaps, a person with a

3    first loan who was designated in a flood zone, your Honor.

4            THE COURT:  Well, how about the people who got that

5    letter for whom -- telling them they had to do flood insurance,

6    and who wound up being in a position where the available --

7    further available credit was zero, like our plaintiff?  Why

8    can't you give that?

9            MR. MEINERTZHAGEN:  Your Honor, we could give that

10   number -- we could do research to get that number, but that is

11   unacceptable to plaintiff.

12           THE COURT:  Why is that unacceptable?

13           MR. MEINERTZHAGEN:  It precludes first loans.

14           THE COURT:  Well, anyone who's in the same or roughly

15   arguably the same position as the plaintiff, then, I think they

16   should get that information.  You can code -- you can code the

17   identities.

18           MR. MEINERTZHAGEN:  But your Honor, the issue is that

19   we're having a disagreement as to who is in that similar

20   situation.

21           THE COURT:  Hold on.  First of all, you're not

22   entitled to the proposed class.  You haven't been certified

23   yet.  I haven't agreed to this, quote, "proposed class"; but I

24   do think you're entitled on the plaintiff's side to reasonable

25   discovery for people who were treated arguably similarly.

```
1              Now, you got somebody who had a zero zero argument.
2    That's the way I remember it.  Maybe you ought to be stuck with
3    that.
4              Now, are you trying to expand this beyond the zero
5    zero people?
6              MR. RICHTER:  Yes, your Honor.
7              THE COURT:  Whoa.  Wait, wait.  How can you do that?
8              MR. RICHTER:  Well, because that's exactly what we've
9    alleged in the complaint, your Honor.
10             THE COURT:  Yeah.  That's your problem.  You know,
11   you may be overreaching in a big-time way with who you're going
12   to put into this class.
13             I'm not going to grant this one, two, and three.
14   This is way too much.  So you're not going to get it.
15             I'm going to require this.
16             Everyone who has a zero zero and got that letter.
17             MR. MEINERTZHAGEN:  On a HELOC?
18             THE COURT:  Not necessarily on a HELOC.
19             MR. MEINERTZHAGEN:  I don't think it would apply on a
20   first loan.
21             THE COURT:  Any kind of a loan where they got that.
22             MR. MEINERTZHAGEN:  Where they have a credit line
23   available?  Where that's --
24             THE COURT:  Seems to me any kind of credit where they
25   had a zero zero situation and there was no way they were going
```

1  to be able to get anything further out of this, and -- and it

2  was like no credit at all available, and you were still

3  force-placing it.  So that's the -- that's the part that was

4  offensive about -- arguably, about what you did.

5          **MR. MEINERTZHAGEN:**  Zero loan balance and zero

6  credit.  That's the criteria, right?

7          **THE COURT:**  That was the plaintiff's situation?

8          **MR. MEINERTZHAGEN:**  Yes.

9          **THE COURT:**  What is wrong with that?

10         **MR. RICHTER:**  Your Honor, because there are -- there

11  are, quite likely, many persons who Chase required to take out

12  flood insurance in amounts greater than either their available

13  credit or their loan balance.

14         Let's take somebody -- let me take an example of

15  somebody that we already know about; a fellow named

16  Roger Meyersbach (phonetic).  I believe his available credit

17  and principal balance were both about $40,000.  And Chase

18  required him to take out an amount that was something like

19  seven times that amount.  I think they required him to take out

20  the $250,000 maximum.  So it's not just -- not just people who

21  had zero balance.  The fact that plaintiffs --

22         **THE COURT:**  He is not a plaintiff.  He's not a

23  plaintiff here.

24         **MR. RICHTER:**  But the harm, your Honor, is that Chase

25  required these individuals to take out amounts of flood

1  insurance that were greater than either their available credit

2  or their principal balance.  Those are the two criteria that

3  you laid down in your order.

4          So we don't believe that they should be able to limit

5  the class just to people who had a zero balance.  That's a --

6  the fact that somebody has a slightly greater principal balance

7  or available credit -- it's a different -- maybe a different

8  factual -- slightly different factual circumstances, but the

9  legal issues are exactly the same.

10         **THE COURT:**  Is this nationwide alleged class, or is

11 it statewide?

12         **MR. RICHTER:**  There are two classes.  There's a

13 statewide 17200 class; and then in our first or second proposed

14 amended complaint, we seek to add a nationwide Truth in Lending

15 Act class.

16         **THE COURT:**  How many -- if we just limited it to

17 California for now, and you did the ones where the amount of

18 the flood insurance was in excess of those two criteria, how

19 many would that mean in California?

20         **MR. MEINERTZHAGEN:**  In excess of the zero zero?

21         **THE COURT:**  No, no.  In excess of available balance

22 and -- what was the other thing?

23         **MR. RICHTER:**  Available credit or principal balance.

24         For lines of credit, I believe you ruled that it was

25 an either/or situation.

1          **THE COURT:**  All right.

2          **MR. MEINERTZHAGEN:**  Your Honor, I don't know what

3    that answer is, because that's not like plaintiff's claim.  I

4    know the approximate number of zero zeroes.

5          **THE COURT:**  How many is that?

6          **MR. MEINERTZHAGEN:**  It's around 150 in California.

7          **THE COURT:**  150?

8          **MR. MEINERTZHAGEN:**  150 of current loans.  I don't

9    know about closed loans.  That would be an additional figure

10   that we still need to research, but the only claims that are

11   like plaintiff's are those zero zero situations.  Simply

12   because you force-place insurance in greater than the unpaid

13   principal balance isn't the same claim as Sheila Hofstetter.

14   That wasn't an issue the Court had to decide, because that

15   wasn't the situation presented.

16          And there is a lot of guidance out there that says

17   that you can't just look at the outstanding principal balance

18   of a loan and determining the appropriate amount of flood

19   insurance, but that wasn't the issue the Court decided.

20         **THE COURT:**  I don't remember.  Did I actually say in

21   the order that it went beyond the zero zero case?  I don't

22   remember.  I remember focusing on the zero zero, thinking that

23   it doesn't seem fair, but I don't remember.

24         **MR. MEINERTZHAGEN:**  You said defendants were not

25   required under the NFIA and guidelines to purchase $175,000

1  worth of floored insurance when plaintiff's entire home equity

2  line of credit had been suspended, and there was no outstanding

3  principal on the loan.

4          **MR. RICHTER:**  Let me read from the order at page 13.

5          **THE COURT:**  Yes.  Go ahead.

6          **MR. RICHTER:**  Your Honor ruled, quote,

7              "The minimum requirements for a home

8              equity line of credit must take into

9              account, one, the maximum amount of funds

10              the borrower may draw on the line at the

11              time a flood determination is made, and,

12              two, the outstanding principal balance  of

13              the loan, whichever a greater."

14          And what we're seeking is information on persons who

15  were force-placed or who were required to take out flood

16  insurance greater than either of those amounts.  It's a claim

17  for unnecessary and/or excessive flood-insurance coverage.

18          **MR. MEINERTZHAGEN:**  Your Honor, this just wasn't an

19  issue that the Court decided.  The Court looked at the facts

20  alleged with respect to the plaintiff, and made --

21          **THE COURT:**  All right.  I'm not going to rule on this

22  now.  I'll get a written order out on this later on.

23          All right.  So what's the next one you want me to

24  look at?

25          **MR. RICHTER:**  Let me give -- another example,

1   your Honor, is customer complaints.  That's Request Number 30.

2           In the *Gutierrez* case, your Honor, which obviously

3   you're very familiar with, the plaintiff introduced hundreds of

4   customer complaints in that case.

5           Chase has refused to give us any.

6           **THE COURT:**  I'm sorry.  Where is the document

7   request?  I'm --

8           **MR. RICHTER:**  It's Request Number 30 at Tab 4 -- or

9   Exhibit 4.

10          **MR. MEINERTZHAGEN:**  May I respond, your Honor?

11          **THE COURT:**  Yes.

12          **MR. MEINERTZHAGEN:**  Unlike in *Gutierrez*, your Honor,

13  there is no fraud claim here.  The only claim is an unfair UCL

14  claim.

15          Either Chase's practice with respect to force-placing

16  flood insurance on Ms. Hofstetter and similarly situated

17  customers is unfair, or it isn't.  Ms. Hofstetter doesn't have

18  a claim relating to any complaint she made.  And information

19  about complaints is simply not relevant to her claims, or

20  whether class certification is appropriate.

21          In addition, your Honor, the only way to get that

22  information would be to look at the actual logs and

23  correspondence with respect to all putative class members.

24          You have to -- if someone calls in and says, I don't

25  think I'm in a flood zone, and Chase responds and says, Well,

1  you are.  And here's why you are.  Because FEMA designated you

2  in a flood zone on such-and-such a date, you have to manually

3  review all of the customers' service records and make a

4  determination about whether the type of complaint that the

5  plaintiff is seeking information on --

6          **THE COURT:**  I don't have some centralized person

7  who -- who is tracking this?

8          **MR. MEINERTZHAGEN:**  It's all tracked on a

9  loan-by-loan basis, your Honor.  What -- we would simply

10  probably have to produce the -- all correspondence and records

11  of communications with each putative class member.

12          **MR. RICHTER:**  It's not that hard, your Honor.

13  They've produced documents to us.  I'm reading from Chase 0233,

14  which was produced from their file relating to Plaintiff

15  Sheila Hofstetter.  There's something called a "Root-Cause

16  Reason Insurance -- Flood Zone Dispute."  And they also have

17  something called, "Source Reason Code Flood Insurance/Escrow

18  Dispute."  They have codes for customer complaints.  They could

19  probably get them in a keystroke.

20          **MR. MEINERTZHAGEN:**  Your Honor, it's simply not true.

21          **THE COURT:**  What is Counsel referring to?

22          **MR. MEINERTZHAGEN:**  Customer service log, which is a

23  document that would have to be reviewed and probably produced

24  for every single putative class member.

25          **THE COURT:**  Probably, or do you know that?

1          **MR. MEINERTZHAGEN:**  I'm certain it would, your Honor.

2    There's no keystroke that you can plug in to find out borrowers

3    who are complaining about the amount of force-placed insurance.

4          The type -- this is the type of discovery that's

5    necessary for Sheila Hofstetter to prove her individual claim,

6    but it's putting the Rule 23 mechanism on its head, your Honor.

7          Under Rule 23, a plaintiff has to establish the class

8    claims may be proven based on generalized evidence.  And what

9    the plaintiff is arguing here is that they're entitled to the

10   same type of information as they've already received on

11   Mrs. Hofstetter's loan for every member of the putative class,

12   whatever the putative class is.

13         **THE COURT:**  Well, in the *Gutierrez* case, the

14   existence of a large number of complaints was -- did have some

15   probative value, even though you could argue the circumstances

16   varied from individual to individual.

17         **MR. MEINERTZHAGEN:**  As I say, your Honor, I believe

18   in *Gutierrez* there was a fraud claim.

19         There isn't a fraud claim here.

20         **MR. RICHTER:**  It was an unfair claim.

21         **MR. MEINERTZHAGEN:**  It was UCL.

22         **THE COURT:**  It was 17200.

23         **MR. MEINERTZHAGEN:**  It was under the fraudulent prong

24   as well, right?

25         **THE COURT:**  One of the prongs was, yes.

1          **MR. MEINERTZHAGEN:**  There is no fraudulent UCL claim

2    in this case.

3          **MR. RICHTER:**  I would suggest that the fact that

4    customers are complaining because they're getting, in essence,

5    stepped on by Chase is evidence of unfairness.

6          **MR. MEINERTZHAGEN:**  Your Honor, Chase has a policy

7    and procedure.  It did what it did with respect to the handling

8    of Ms. Hofstetter's loan.  It did what it did with respect to

9    similarly situated borrowers.  Either that's an unfair

10   practice, or it's not.

11         **THE COURT:**  I'm not going to rule on Number 30.  I'm

12   going to give you my view on the -- step back for a moment.

13         Plaintiff received a letter that I remember, that

14   said she had to force-place.  I'm sure that hundreds and maybe

15   thousands of other people got that same letter.  And you should

16   know who all those people are at the bank.  The bank ought to

17   know who they sent that letter to.

18         **MR. MEINERTZHAGEN:**  But your Honor, the problem

19   wasn't that she got the letter.  The problem was that when she

20   got the letter, she had a HELOC that was with zero zero.

21         **THE COURT:**  This other person -- I'm talking now to

22   the plaintiff.  You said you had some other person who had a

23   claim, but it wasn't a class -- it wasn't plaintiff?  So is

24   there going to be another lawsuit or an attempt to bring -- add

25   somebody as a plaintiff?

1       **MR. RICHTER:**  Well, we didn't see any reason to add

2   him as a named plaintiff, because Ms. Hofstetter -- he lives in

3   California.  And he's a member of the proposed class.  He's

4   somebody who is similarly situated to plaintiff.

5       If the Court --

6       **THE COURT:**  Yeah, but you -- that's -- you know, you

7   don't have the right to tell the Judge what the proper class

8   is.  You can propose it, but you know, there's always a risk.

9       How many times does a class get certified the way the

10  plaintiff wants?

11      One in ten.  It always gets modified.

12      So it is a foreseeable possibility that it will be

13  limited to the zero zero people.  That's a possibility that

14  you --

15      So just by saying, well, you didn't see any need to

16  because you thought he was going to be in the class -- I don't

17  know.

18      **MR. RICHTER:**  Well, it's --

19      **THE COURT:**  I've got to think about this.  You know,

20  I don't like the idea that you're taking an extreme case --

21  zero zero -- and now trying to leverage that out to cover

22  marginal people; marginal cases.

23      All right.  Let me -- I'm not ruling on Number 30.

24  I'm going to think about it.

25      Tell me one other -- you know, one other item that

1 you want me to try to look at and try to rule on.

2          **MR. RICHTER:**  Yes, your Honor.  One area of critical

3 importance that we've been seeking documents and information on

4 is the relationship between Chase and its affiliates and the

5 insurance company here.

6          **THE COURT:**  Yes.

7          **MR. RICHTER:**  ASIC.

8          **THE COURT:**  Yes.  You're going to -- I'm going to

9 allow all of that.

10          **MR. MEINERTZHAGEN:**  Your Honor, we've already agreed

11 to produce the commission agreement between Chase's affiliate

12 and ASIC.

13          **THE COURT:**  I'm going to -- I don't know what these

14 requirements are here.  I'm just going to say this.  Anything

15 and everything that relates to the kickbacks.

16          **MR. MEINERTZHAGEN:**  We've agreed.  --

17          Commission, your Honor.

18          **THE COURT:**  Commissions.  Whatever you want to call

19 them.

20          And the entire financial relationship between these

21 related companies and placement of this insurance -- that

22 should definitely be produced.

23          Here's the other thing I want you to note; that if it

24 turns out I think you have not produced what you should have,

25 I'm going to presume commonality.  I'm going to presume

1   typicality.  And -- because you've stonewalled them.

2             MR. MEINERTZHAGEN:  Your Honor, we have not

3   stonewalled them.  We've agreed to produce the commission

4   agreement.

5             THE COURT:  No.

6             MR. MEINERTZHAGEN:  That's the only benefit that

7   is --

8             THE COURT:  Well, I see this all the time.

9             And I -- you know, I practiced law for 25 years

10  before I got this job.  And I've been on this job 11 years.

11  I've seen this a million times in a class action.  The

12  plaintiff makes a motion for certification.  And then you come

13  in and say, "Ah, well, they haven't found discovery to back up

14  this class"; and the reason is because you've stonewalled them

15  on it.  Well, the person in your position; not you personally.

16            So you just be aware that I didn't fall off the

17  turnip truck.  And if I think you have not coöperated on

18  discovery, too bad for you.  It's going to be certified.

19            MR. MEINERTZHAGEN:  Your Honor, we have already

20  agreed to produce the commission agreement.  There is no other

21  benefit.

22            THE COURT:  Well, maybe there are some e-mails.

23  Maybe there's some e-mails that say things like, "Hey, Chase.

24  Here's a way to make some more fees.  Why don't you get out

25  there and promote our insurance policy to these people with

1  zero zero balances?"

2          I bet you there are e-mails just like that.  If there

3  aren't, I'd be shocked.  So you get out there and produce those

4  e-mails.  Produce those memos.

5          **MR. MEINERTZHAGEN:**  I'm sorry, your Honor.  I don't

6  even know what request this is responsive to.

7          **THE COURT:**  Well, if there is not one, then you don't

8  have to do it.

9          **MR. MEINERTZHAGEN:**  There's an agreement on

10  commissions that's been in place, I think, since 2006 or 2007.

11  I don't know of any other benefit.

12          **THE COURT:**  All right.  Look.  Here's what I'm going

13  to wind up probably doing:  Referring this to -- I'm going to

14  tell you, plaintiff, this.  If it turns out that Chase has

15  stonewalled you, I'm going to give you as much time as you need

16  with a Magistrate Judge to get all of the discovery that you're

17  entitled to before I'm going to hold you to any deadline on the

18  moving for certification.

19          Now, I have given you a deadline, and I want you to

20  meet that, but if it turns out you can show that Chase has

21  stonewalled you, now -- and this is in response to reasonable

22  requests.  Some of these requests don't look reasonable to me.

23  It has to be a reasonable request.  If it's a reasonable

24  request and you've got stonewalled, then you can ask for more

25  time.

1              I am going to probably rule on some of these items,

2    and the rest I'm going to have to refer to a Magistrate Judge,

3    but I do want you to bring those motions, because it looks to

4    me like, on the face of it, Chase has no witnesses.  This is

5    going to be some one-sided trial.

6              **MR. MEINERTZHAGEN:**  Well, your Honor --

7              **THE COURT:**  You're not going to have a single

8    witness.

9              **MR. MEINERTZHAGEN:**  Your Honor, I understood you to

10   say that.  And we'll articulate more fully in our position in

11   our response to their motion, but the bottom line:  it's

12   business records, as an institution.

13             **THE COURT:**  Well, you know, you're not even going to

14   have a witness to put on your business records.

15             **MR. MEINERTZHAGEN:**  Well, we identified one.

16             **THE COURT:**  No, you didn't.  You didn't identify a

17   single person.  How are they -- you know, take a look at

18   Rule 37(c).  I've got it right here.  It's called, "Failure to

19   Make Disclosures or to Coöperate in Discovery.  Sanctions.

20   Rule 37(c)."

21                  "If a party fails to provide

22             information or identify a witness as

23             required by Rule 26(a) or (e), the party is

24             not allowed to use that information or

25             witness to supply evidence on a motion at a

1              hearing or at trial, unless the failure was

2              substantially justified or is harmless."

3         **MR. MEINERTZHAGEN:**  Well, your Honor, there were no

4    percipient fact witnesses related to Ms. Hofstetter's claim.

5    There are witnesses who can testify concerning Chase's business

6    records.  We identified that there are such witnesses.  We've

7    identified a 30(b)(6) witness who'll testify competently about

8    the business records relating to Ms. Hofstetter.

9         **THE COURT:**  You're in trouble on this.  The motion

10   should be filed soon.  And if I was in the position of Chase, I

11   would think very hard about trying to throw yourself on the

12   mercy of the Court and supplement.  I'm not saying it would be

13   good enough.  You might have to pay a lot of fees to them on

14   account of this stonewalling that I've seen so far.  That is

15   stonewalling; not to get -- you know, you're probably the first

16   lawyer in five years that has failed to identify a single

17   client witness on a Rule 26(a).  You go back and tell your

18   client, Chase, that that's what I said, because I believe it's

19   true.

20             You go look at the 26(a) disclosures that are

21   routinely made in this Court.  Dozens of witnesses names are

22   listed by people like Chase.

23             All right.  That's the best I'm going to do.  You

24   file those two motions.  Waive the privilege.

25             Now I'm going to say one more time I would not

1  enforce that if your requests were unreasonable; if they were

2  overbroad; so overbroad that no one would be -- no.  You don't

3  get the benefit of a waiver.

4        **MR. MEINERTZHAGEN:**  Your Honor, may I be heard on

5  that?

6        **THE COURT:**  No.  You're not going to be allowed to be

7  heard right now, because you're going to get a chance to be

8  heard fully when they file their motion, but I am just making

9  it clear that I am tired of stonewalling on the defense side;

10 I'm tired of overbroad requests on the plaintiffs' side; but

11 you two are beyond the pale.  So I'm going to get to the bottom

12 of one of these -- these two motions I'm going to get to the

13 bottom of.  I'm going to rule on a couple of these things; and

14 the rest, I'm sending to the Magistrate Judge.

15       And if the Magistrate Judge tells me there has been

16 stonewalling, the plaintiff's going to get more time to take as

17 long as you want to get the facts you need to bring your motion

18 for Rule 23, but it's got to -- you must be reasonable.  I'm

19 telling you some of these requests are not reasonable.  They're

20 too broad at this stage.

21       I'm sorry, but I can't do more for you.  I wish I had

22 more time here, but you know, this is -- we have hundreds of

23 cases.  And I'm going to have to ask for some help on this one.

24       **MR. RICHTER:**  We appreciate the Court's time,

25 your Honor.

1          **MR. MEINERTZHAGEN:**  Thank you, your Honor.

2              (At 12:42 p.m. the proceedings were adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C. 10-1313 WHA, Hofstetter v. Chase Home Finance, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Wednesday, September 8, 2010