1  GEORGE G. WEICKHARDT (SBN 58586)
   ROPERS, MAJESKI, KOHN & BENTLEY PC
2  201 Spear Street, Suite 1000
   San Francisco California 94105
3  Telephone:    (415) 972-6370
   Facsimile:    (415) 972-6301
4  Email:        gweickhardt@rmkb.com

5  LEANN PEDERSEN POPE (admitted *pro hac vice*)
     lpope@burkelaw.com
6  STEPHEN R. MEINERTZHAGEN (admitted *pro hac vice*)
     smeinertzhagen@burkelaw.com
7  ANDREW D. LeMAR (admitted *pro hac vice*)
     alemar@burkelaw.com
8  BURKE, WARREN, MACKAY & SERRITELLA, P.C.
   330 North Wabash Avenue, 22nd Floor
9  Chicago, Illinois 60611
   Telephone:    (312) 840-7000
10 Facsimile:    (312) 840-7900

11 Attorneys for Defendants
   CHASE HOME FINANCE, LLC and JPMORGAN CHASE
12 BANK, N.A.

13              **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15

16 Sheila I. Hofstetter, individually, as a
   representative of the class, and on behalf
   of the general public,
17                                              Case No. CV-10-1313 WHA

18              Plaintiff,
                                                **CHASE HOME FINANCE LLC AND**
19 vs.                                          **JPMORGAN CHASE BANK, N.A.'S**
                                                **MEMORANDUM OF POINTS AND**
20 Chase Home Finance, LLC, JPMorgan            **AUTHORITIES IN OPPOSITION TO**
   Chase Bank, N.A., and DOES 1 through         **PLAINTIFF'S MOTION TO AMEND THE**
21 50, inclusive,                               **PLEADINGS, ADD A NAMED PLAINTIFF,**
                                                **AND FILE SECOND AMENDED**
22              Defendants.                     **COMPLAINT**

23                                              Hearing Date:  October 28, 2010
                                                Hearing Time:  8:00 a.m.
24
                                                Complaint Filed:  March 29, 2010
25                                              Trial Date:  October 17, 2011

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

1

# TABLE OF CONTENTS

2   INTRODUCTION ............................................................................ 1

3   BACKGROUND ............................................................................. 1

4   STANDARD................................................................................... 4

5   ARGUMENT.................................................................................. 5

6   I.    ADDING MODERSBACH AS A PLAINTIFF WOULD BE FUTILE
7         BECAUSE HE CANNOT STATE ANY CLAIM AGAINST
         DEFENDANTS......................................................................... 5

8   II.   THE PROPOSED AMENDMENT TO THE TILA CLAIM IS FUTILE......... 7

9         A.    TILA Does Not Require Disclosures of "Flood Insurance
               Requirements" Or Of Hofstetter and Modersbach's Flood
10              Insurance Premiums. ........................................................ 8

11        B.    Hofstetter and Modersbach's Proposed TILA Claims Are Time-
               Barred, And They Have Not Sufficiently Alleged Equitable
12              Tolling. ......................................................................... 9

13        C.    The New Allegations Regarding Purported Violations Of
               226.5b(f)(3) And 226.9(c) In The Proposed SAC Fail To State A
14              Claim. ..........................................................................12

15  III.  HOFSTETTER AND MODERSBACH CANNOT STATE AN
         "UNLAWFUL" UCL CLAIM. ....................................................17
16

17  IV.   THE PUTATIVE CLASS ALLEGATIONS FAIL TO CONFORM
         WITH THE COURT'S DISMISSAL ORDER AND SHOULD BE
18        STRICKEN. ..........................................................................18

19  V.    CHF AND JPMCB WOULD BE PREJUDICED BY THE PROPOSED
         AMENDMENTS.......................................................................20

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation

Case No. CV-10-1313 WHA

1

# <u>TABLE OF AUTHORITIES</u>

2

**<u>Federal Cases</u>**

3

*Adams v. GMAC Mortgage Corp.*, 1994 WL 702639 (N.D. Ill. Dec. 14, 1994) .................... 9, 16

4

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988)........................................ 12

5

*Ambat v. City and County of San Francisco*, No. C 07-03622 SI, 2009 WL 3045937

6
(N.D. Cal. Sep. 18, 2009) .............................................................................................. 20

7

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006)........................ 5

8

*Amparan v. Plaza Home Mortg., Inc.*, 678 F. Supp. 2d 961 (N.D. Cal. 2008) ........................... 18

9

*Bloom v. Martin*, 865 F. Supp. 1377 (N.D. Cal. 1994)............................................................... 10

10

*Cunningham v. Nat'l City Bank*, 588 F.3d 49 (1st Cir. 2009) .................................................... 14

11

*Feliciano v. Wash. Mut. Bank, FA*, No. 02:09-CV-01304 FCD KJM, 2009 WL

12
2390842 (E.D. Cal. Aug. 3, 2009).................................................................................. 11

13

*Guerrero v. Citi Residential Lending, Inc.*, No. CV F 08-1878, 2009 WL 926973
(E.D. Cal. Apr. 3, 2009).................................................................................................. 11

14

*Hayes v. Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743 (E.D. La. Oct.

15
31, 2006) ........................................................................................................................... 9

*Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) .......................................... 11

16

*In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2465329 (N.D.

17
Cal. June 10, 2010) ......................................................................................................... 19

18

*Johnson v. Scala*, No. 05 Civ. 5529(LTS)(KNF), 2007 WL 2852758 (S.D.N.Y. Oct.
1, 2007) ..................................................................................................................... 10, 11

19

*Jordan v. Paul Fin., LLC*, No. 07-04496, 2009 WL 192888 (N.D. Cal. Jan. 27, 2009) ............. 19

20

*Kearns v. Ford Motor Co.*, 567 F.3d 1124 (9th Cir. 2009)........................................................ 12

21

*King v. State of Cal.*, 784 F.2d 910 (9th Cir. 1986).................................................................... 9

22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) .................................................. 19

23

*Motley v. Homecomings Financial, LLC*, 557 F. Supp. 2d 1005 (D. Minn. 2008).................... 16

24

*Rubio v. Capital One Bank (USA), N.A.*, 572 F.Supp.2d 1157 (C.D. Cal. 2008) ..................... 17

25

*S.W. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805 (N.D. Cal. 1989) ............... 20

26

*Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) ........................................... 10

27

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)......................................................... 19

28

<div style="writing-mode: vertical">Ropers Majeski Kohn & Bentley
A Professional Corporation</div>

1    *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995) .......................................... 16

2    *Ung v. GMAC Mortg.*, No. 09-893, 2009 WL 2902434 (C.D. Cal. Sep. 4, 2009) ...................... 11

3    *Valenzuela v. Am. Home Mortg. Investment Tr.* 2005-2, No. CV-F-08-1179
     OWW/SMS, 2009 WL 839930 (E.D. Cal. March 30, 2009) ........................................................ 17

4

5    *Vega v. JPMorgan Chase Bank, N.A.*, No. CV F 09-1444 LJO GSA, 2009 WL
     2731039, (E.D. Cal. Aug. 26, 2009) ...................................................................................... 12

6    *Vician v. Wells Fargo Home Mortg.*, No. 2:05-CV-144, 2006 WL 694740 (N.D. Ind.
     Mar. 16, 2006) ...................................................................................................................... 16

7

8    **State Cases**

9    *Bionghi v. Metro. Water Dist.*, 70 Cal.App.4th 1358, 83 Cal.Rptr.2d 388 (1999) ..................... 17

10    *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83
     Cal.Rptr.2d 548, 973 P.2d 527 (1999) .................................................................................... 17

11    *Mitsui Mfrs. Bank v. Super. Ct.*, 212 Cal.App.3d 726, 260 Cal.Rptr. 793 (1989) ..................... 18

12    *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989) ................................................. 18

13    **Federal Statutes**

14    § 1637 ...................................................................................................................................... 8

15    15 U.S.C. § 1632 ...................................................................................................................... 8

16    15 U.S.C. § 1640(a) ............................................................................................................... 20

17    15 U.S.C. § 1640(e) ................................................................................................................. 9

18    15 U.S.C. §§ 1601 *et seq.* ............................................................................................... passim

19

20    **State Statutes**

21    Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... passim

22    Cal. Bus. & Prof. Code § 17203 ............................................................................................ 20

23    Cal. Civ. Code §§ 1750 *et seq.* .................................................................................... 2, 5, 17

24    **Federal Rules**

25    Fed. R. Civ. P. 15(a) ................................................................................................................ 4

26    **Federal Regulations**

27    12 C.F.R. § 226.17(c) .............................................................................................................. 8

28

*Ropers Majeski Kohn & Bentley*
A Professional Corporation

Case No. CV-10-1313 WHA          iii          **DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT**

12 C.F.R. § 226.18.................................................................................................. 12, 16

12 C.F.R. § 226.2(a) .............................................................................................. 12

12 C.F.R. § 226.20.................................................................................................. 12

12 C.F.R. § 226.4(d) ............................................................................................ 8, 9

12 C.F.R. § 226.5b ............................................................................ 12, 13, 14, 15

12 C.F.R. § 226.6(a) .............................................................................................. 15

12 C.F.R. § 226.9.................................................................................................... 16

12 C.F.R. § 226.9(c) .................................................................................. 12, 15, 16

74 Fed. Reg. 35,914, 35,918 (July 21, 2009) .................................................... 6

74 Fed. Reg. at 35,935 .......................................................................................... 6

74 Fed. Reg. at 35,936 .......................................................................................... 6

**Other Authorities**

FEMA Guidelines ....................................................................................................... 6

National Flood Insurance Program ...................................................................... 6, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT**

**INTRODUCTION**

This Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Dkt. No. 51; "Dismissal Order") held that Plaintiff Sheila Hofstetter ("Hofstetter") could only state an "unfair" claim under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), based on her allegations that Chase Home Finance ("CHF") was not required under federal law to force-place flood insurance on Hofstetter's home when her home equity line of credit ("HELOC") was suspended with no available credit and a zero balance.

Nonetheless, Hofstetter now attempts to add Roger Modersbach ("Modersbach") – a non-zero-zero borrower with a positive balance and available credit whose credit was not suspended – as a second named plaintiff.   Modersbach cannot plausibly state any claim against CHF or JPMCB.  He is unquestionably required under federal law to maintain flood insurance on his home, and CHF could not have misled him by stating that he was required to maintain flood insurance.  Furthermore, the Proposed Second Amended Complaint ("Proposed SAC") does not contain any allegations that Modersbach was required to "over-insure" his home.  Therefore, his "unfair" UCL claim fails on its face.

In addition, Hofstetter and Modersbach attempt to bring a claim against JPMorgan Chase Bank, N.A. ("JPMCB") under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), even though this suit was filed well beyond TILA's one-year limitations period and they cannot assert any equitable tolling allegations.  The proposed TILA claim is also futile because neither Hofstetter nor Modersbach can state any TILA claim against JPMCB based on the new allegations.

Hofstetter also seeks to file proposed SAC on behalf of two overly broad putative classes that encompass all customers of Defendants in California and the United States, respectively, who live in a flood zone, regardless of whether their circumstances are at all similar to Hofstetter's or even Modersbach's, for that matter.

**BACKGROUND**

**Procedural History.**  Hofstetter filed her original complaint on March 29, 2010 against CHF and Chase Bank USA, N.A. ("Chase Bank").  (Dkt. No. 1.)  After CHF and Chase Bank

1

Ropers Majeski Kohn & Bentley

A Professional Corporation

Ropers Majeski Kohn & Bentley
A Professional Corporation

1    moved to dismiss the original complaint, on June 1, 2010, Hofstetter filed a First Amended

2    Complaint ("FAC"; Dkt. No. 26) dropping Chase Bank as a defendant and adding JPMCB as a

3    defendant.  The FAC brought claims under the California Consumer Legal Remedies Act, Cal.

4    Civ. Code §§ 1750 *et seq.* ("CLRA"), all three prongs (fraudulent, unlawful, and unfair) of the

5    California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and the

6    federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), against CHF and JPMCB

7    based on the theory that Hofstetter was not required under federal law to maintain flood insurance

8    and, therefore, CHF's force-placement of flood insurance was improper.  On June 28, 2010, CHF

9    and JPMCB filed a motion to dismiss the FAC in its entirety (Dkt. No. 35), on July 13, 2010,

10   Hofstetter filed her opposition to the motion to dismiss (Dkt. No. 38), and on July 29, 2010, CHF

11   and JPMCB filed their reply.  (Dkt. No. 45.)

12       **The Court's Dismissal Order.**  On August 13, 2010, the Court issued its Dismissal Order

13   (Dkt. No. 51), granting in part and denying in part Defendants' motion to dismiss.  The Court

14   determined that, based on Hofstetter's particular factual allegations – *i.e.*, that CHF force-placed

15   flood insurance on Hofstetter's property when her HELOC was suspended and her available credit

16   and balance were zero – CHF was not required to force-place any flood insurance under federal

17   law.  (Dismissal Order at 14.)[1]

18       **Hofstetter's Proposed SAC.**  For the most part, Hofstetter's Proposed SAC contains the

19   same factual allegations as her FAC, and her overarching theory remains the same (*i.e.*, that it

20   was improper for CHF to force-place flood insurance in an amount greater than her outstanding

21   HELOC balance).  Hofstetter no longer seeks to bring a CLRA claim, a claim under the

22   "fraudulent" prong of the UCL, or a TILA claim against CHF.

23       **Allegations Regarding Modersbach.** Hofstetter seeks leave to add Modersbach as a

24   second plaintiff who, unlike Hofstetter, has a HELOC with a positive balance and available

---

25       [1] The Court has since further clarified that Hofstetter has standing only to bring a claim on
26   behalf of so-called "zero/zero" borrowers – *i.e.*, those HELOC borrowers for whom CHF force-
     placed flood insurance whose outstanding balance was zero and whose available credit was zero
27   at the time of the force-placement.  (*See* Order on Certain Discovery Issues and Referring
     Remaining and Future Discovery Disputes for Assignment to a Magistrate Judge at 2-4 (Dkt. No.
28   56).)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

credit.   According to the Proposed SAC, Modersbach obtained a HELOC from JPMCB in December 2004 in the amount of $100,000, secured by his Alamo, California property. (Proposed SAC, paras. 5, 26; *see also* Modersbach Deed of Trust and HELOC Agreement (attached as Exs. 1-2).)  CHF is the servicer of Modersbach's HELOC.  (Proposed SAC para. 27.) Modersbach alleges his current balance is approximately $37,000.  (*Id.* para. 28.)  He does not allege his HELOC was ever suspended or reduced.

CHF sent Modersbach a letter on August 11, 2009, indicating that Modersbach's home was in a flood zone and, therefore, he was required to maintain flood insurance.  (*Id.* para. 29.) CHF sent Modersbach a second letter on September 1, 2009 indicating that CHF would force-place an insurance policy with a coverage amount of $100,000 if Modersbach failed to obtain his own insurance.  (*Id.* para. 30.)  CHF eventually force-placed a $100,000 policy on Modersbach's home and charged Modersbach for the premium.  (*Id.* para. 31.)  Subsequently, Modersbach obtained his own flood insurance coverage, his force-placed policy was cancelled, and CHF refunded the charge for the premium on the force-placed policy.  (*Id.* paras. 32-33.)

On May 13, 2010, CHF sent Modersbach another letter indicating that he must increase his flood insurance coverage by $150,000 for a total coverage amount of $250,000.  (*Id.* para. 34; *see also*  May 13, 2010 Letter (Ex. 3).)  The letter stated:

> At a minimum, the flood insurance coverage amount you need to obtain on your flood insurance policy must be equal to the least of the following:
>
> • 100% of the full replacement cost value of the dwelling and insurable improvements, or
>
> • The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000.00.

(May 13, 2010 Letter.)

Modersbach disputed CHF's requested increase, and CHF eventually sent him a letter on June 29, 2010 explaining that CHF would stand by its decision to require Modersbach to obtain a total of $250,000 in flood insurance coverage.  (*Id.* paras. 35-38; *see also* June 29, 2010 Letter (Ex. 4).)  The June 29, 2010 Letter also explained CHF's reasoning for requiring $250,000 in coverage:

> At a minimum, the flood insurance coverage amount you need to obtain on your flood insurance policy must be equal to the least of the following:

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

Ropers Majeski Kohn & Bentley
A Professional Corporation

• 100% of the full replacement cost value of the dwelling and insurable improvements, or

• The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000.00.

Based on the preceding information and *your dwelling coverage amount being $696,700.00* with CSAA Inter-Insurance Bureau for the period of June 14, 2010 to June 14, 2011, your minimum acceptable flood insurance coverage is $250,000.00.

(June 29, 2010 Letter (emphasis added).)

CHF eventually force-placed the additional $150,000 in flood insurance coverage, but Modersbach obtained his own coverage for the additional $150,000 and the force-placed policy was again cancelled.  (Proposed SAC paras. 41-43.)

**Claims in the Proposed SAC.** Hofstetter and Modersbach seek to bring two claims: (1) a proposed TILA claim against JPMCB only; and (2) a proposed claim under the unlawful and unfair prongs of the UCL against both CHF and JPMCB.  While Hofstetter's previous two complaints contained only one putative class (a California-only class), she and Modersbach purport to bring the Proposed SAC on behalf of two putative classes, defined as follows:

**Proposed Nationwide Class:**  All persons who have or had a loan or line of credit with [JPMCB] secured by their property and were required by [JPMCB] (or its agents or affiliates) to purchase or maintain flood insurance on their property in the United States within one year prior to this action's filing date through the date of final disposition of this action.

. . . .

**Proposed California Class:**  All persons who have or had a loan or line of credit with Defendants that was secured by their residential property and were required by Defendants to purchase or maintain flood insurance on their property in the State of California within four years prior to this action's filing date through the date of final disposition of this action.

(*Id.* paras. 53-54.)

## STANDARD

In its Dismissal Order, the Court allowed Hofstetter "to file a motion . . . for leave to amend the complaint and cure the deficiencies *identified herein* . . . ."  (Dismissal Order at 21.) (emphasis added.)  While leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is

futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted).

## ARGUMENT

Hofstetter's Proposed SAC goes beyond the Court's Dismissal Order allowing her to file a motion for leave to amend the complaint to cure "the deficiencies identified herein," and, in many instances, the proposed amendments would be futile.[2]

**I.    ADDING MODERSBACH AS A PLAINTIFF WOULD BE FUTILE BECAUSE HE CANNOT STATE ANY CLAIM AGAINST DEFENDANTS.**

Unlike Hofstetter, Modersbach is not a "zero-zero" borrower.  Rather, he has a positive loan balance and available credit on his HELOC, and his HELOC is not suspended or reduced. Under this Court's Dismissal Order, only HELOC borrowers like Hofstetter, with a zero balance and zero available credit may not be required under the NFIA to purchase flood insurance. (Dismissal Order at 14.)  Modersbach alleges he has both an outstanding balance and available credit.  (*See* Proposed SAC paras. 26, 28.)  Therefore, he was required under federal law to maintain flood insurance on his home, and CHF could not have acted deceptively or misled Modersbach when it sent him a letter stating that "[f]ederal law requires that flood insurance be purchased and maintained for the life of the loan if the secured property is located in an SFHA." (*See* August 11, 2009 letter to Modersbach (Ex. 5.)  For this reason alone, Modersbach's proposed claims fail.

Furthermore, Modersbach does not allege his building was "over-insured."  Modersbach's "unfair" UCL claim in the Proposed SAC parrots the Court's Dismissal Order, alleging "Defendants'" business practices are unfair because they "are contrary to the principle that (i) 'lenders should avoid creating situations where a building is over-insured', 74 Fed. Reg. 35,914,

---

[2] Defendants agree that the Proposed SAC complies with the Court's dismissal order by: (1) dropping the CLRA claim; (2) dropping the claim under the "fraud" prong of the UCL; (3) removing CHF from the TILA claim; and (4) realleging Hofstetter's UCL "unfair" claim against both defendants.

Ropers Majeski Kohn & Bentley
A Professional Corporation

35,918 (July 21, 2009)."  (Proposed SAC para. 82.)  Modersbach does not plausibly assert an "unfair" business practice based on this principal.[3]

The Proposed SAC cites a portion of the 2009 interagency guidance stating that "Lenders should avoid creating situations where a building is over-insured," and alleges that insurance in excess of the loan balance constitutes "over" insurance.  However, the Proposed SAC fails to include the important guidance before the sentence cited:

> *[A] lender can require more flood insurance than the minimum required by the Regulation.  The Regulation requires a minimum amount of flood insurance; however, lenders may require more coverage, if appropriate. . . . [L]enders should avoid creating situations where a building is over-insured.*

74 Fed. Reg. 35,914, 35,918 (July 21, 2009) (emphasis added).  For second loans,

> [t]he lender must ensure that adequate flood insurance is in place or require that additional flood insurance coverage be added to the flood insurance policy in the amount of the lesser of either the combined total outstanding principal balance of the first and second loan, the maximum amount available under the Act (currently $250,000 for a residential building . . .), or the insurable value of the building . . . .

*See* 74 Fed. Reg. at 35,940.

The reference to "over-insured" in the 2009 interagency guidance quoted in the Proposed SAC (74 Fed. Reg. at 35,918) refers to the situation where the insurance coverage exceeds "the insurable value of the building," not where the coverage exceeds the loan balance.  *Id.*  A building is over-insured only if it is insured in an amount greater than its replacement cost value (RCV), and if the RCV is more than $250,000, it cannot be over-insured because the NFIP maximum is $250,000.  *See* 74 Fed. Reg. at 35,935 ("An NFIP policy will not cover an amount exceeding the 'insurable value' of the structure.").

A building simply is not over-insured because it is insured in an amount greater than the combined unpaid balance of the first and second loans because that is a minimum amount of coverage, and "[l]enders are permitted to require more flood insurance coverage than required by the Regulation." 74 Fed. Reg. at 35,936.  Furthermore, the FEMA Guidelines emphasize that the best practice is to require flood insurance coverage up to the RCV, and using the outstanding balance alone may not be adequate.  FEMA Guidelines at 27 ("A sound flood insurance risk

---

[3] As discussed below in Parts II and III, respectively, neither Hofstetter nor Modersbach can state a claim under TILA or the "unlawful" prong of the UCL.

6

*Ropers Majeski Kohn & Bentley*
A Professional Corporation

Ropers Majeski Kohn & Bentley
A Professional Corporation

1    management approach follows the insurance industry practice of insuring buildings to full RCV.

2    Such a risk management strategy meets or exceeds the minimal compliance requirements and is

3    the easiest approach for lenders to implement.   Security interests in [Special Flood Hazard Areas]

4    should be protected with flood insurance to the full insurable value, to the extent possible under

5    the NFIP."); *id.* at 27-28 ("If the lender opts to protect only its security in the loan, the amount of

6    the policy may be insufficient to cover the cost of repairing the building.   By insuring buildings

7    to the full RCV, the lender and borrower are both better protected."); *id.* at 41 ("If the lender opts

8    to protect only its security in the loan (loan balance), the insurance proceeds may be

9    inadequate.").

10          Modersbach does not allege that his building was over-insured.   He was required to

11   maintain $250,000 in flood insurance.   Because $250,000 is equal to the federal maximum,

12   Modersbach's home could be over-insured only if $250,000 is greater than his home's RCV.   As

13   noted in CHF's June 29, 2010 letter to Modersbach (which is referenced in paragraph 38 of the

14   Proposed SAC), the replacement value (RCV) of his dwelling, according to his hazard insurance

15   policy, was $696,700.   (*See* June 29, 2010 Letter (Ex. 4).)   The Proposed SAC does not contain

16   any allegations regarding the value of Modersbach's home, much less that his home was worth

17   less than $250,000 at the time CHF force-placed flood insurance in May 2010, nor does the

18   Proposed SAC contain any allegations regarding whether Modersbach maintains or maintained

19   any other flood insurance on his property.   Without these allegations, Modersbach does not allege

20   that his property is over-insured.   As a result, Modersbach cannot plausibly state any claim based

21   on the amount of flood insurance he was required to maintain.   The Court should deny Hofstetter

22   leave to add Modersbach as a plaintiff.

23   **II.      THE PROPOSED AMENDMENT TO THE TILA CLAIM IS FUTILE.**

24          The proposed TILA claim is futile.   TILA does not require lenders to disclose flood

25   insurance requirements, nor does TILA require disclosure of insurance premiums where, as here,

26   the borrower is free to obtain coverage from other providers.   Moreover, any TILA claim based

27   on this non-existent violation would be time-barred.   Further, the claim that JPMCB changed

28   "the terms of the credit plans as described in the deeds of trust" (Proposed SAC paras. 71) fails

Ropers Majeski Kohn & Bentley

A Professional Corporation

1    because the deeds of trust expressly obligated these borrowers to keep their properties insured

2    from loss by any hazard, including floods or flooding, "in the amounts and for the periods that we

3    require," and provided that if the borrower failed to do so, JPMCB was authorized to obtain such

4    coverage.   (Hofstetter Deed of Trust § 4; Modersbach Deed of Trust (Exs. 1, 8).)   Obtaining

5    flood insurance where the borrower failed to do so does not "change" these terms.

6       **A.       TILA Does Not Require Disclosures Of "Flood Insurance Requirements" Or
               Of Hofstetter and Modersbach's Flood Insurance Premiums.**

7              Hofstetter and Modersbach cite several sections of TILA and Regulation Z in alleging that

8    JPMCB violated TILA requirements by failing to disclose "its flood insurance requirements."

9    (Proposed SAC paras. 67-70.)   Contrary to their allegations, none of the provisions that they cite

10   (nor any other provision of TILA or Regulation Z) require JPMCB to disclose its flood insurance

11   requirements.[4]

12             The only TILA disclosure requirement that addresses insurance premiums, and whether

13   insurance premiums must be disclosed as a "finance charge," confirms that the Hofstetter and

14   Modersbach flood insurance premiums are *not* a "finance charge."   While § 1637 requires

15   disclosures related to the "finance charge," insurance premiums are specifically excluded from the

16   definition of "finance charge" where "[t]he insurance coverage may be obtained from a person of

17   the consumer's choice and this fact is disclosed."   12 C.F.R. § 226.4(d)(2)(i).   Courts have thus

18   rejected borrowers' claims that a force-placed insurance premium violates TILA, where these two

19   conditions are met.  *See Adams v. GMAC Mortgage Corp.*, 1994 WL 702639, (N.D. Ill. Dec. 14,

---

21          [4] The TILA and Regulation Z requirements cited in Proposed SAC ¶¶ 67-70 deal with
     disclosures required before a HELOC account is even opened.   Moreover, none of these
22   provisions require disclosure of a lender's flood insurance requirements.   15 U.S.C. § 1637
     requires disclosure of the method of determining the finance charge, the conditions for imposition
23   of a finance charge, and the statement required in each billing cycle; 15 U.S.C. § 1637a requires
     disclosure of the annual percentage rate or variable percentage rate, an itemization of fees, etc.;
24   and 15 U.S.C. § 1632 requires "disclosures to be made "clearly and conspicuously."

           The Proposed SAC also refers to 12 C.F.R. 226.5(c), which provides no basis for their
25   claims here because it addresses disclosures that must be provided in applications and
     solicitations for credit cards. (Proposed SAC para. 70.)   To the extent Plaintiffs meant to
26   reference 12 C.F.R. 226.17(c) ("disclosures shall reflect the terms of the legal obligation between
     the parties"), that provision addresses "disclosures and the use of estimates" in *closed-end* credit
27   transactions.   More importantly, that provision does not require all contract terms to be disclosed
     in the Truth-in-Lending disclosures; rather, it provides that required disclosures (finance charge,
28   annual percentage rate) reflect the terms to which the parties agreed.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
                                                       MOTION TO AMEND PLEADINGS AND FILE
                                                       SECOND AMENDED COMPLAINT**

1   1994) (granting motion to dismiss claim that lender violated TILA in connection with force-

2   placed insurance, where borrower was informed she could choose her own insurer and mortgage

3   expressly authorized lender to purchase insurance if borrower failed to maintain it);   *Hayes v.*

4   *Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743, at *7 (E.D. La. Oct. 31, 2006)

5   (where the mortgage agreement allowed the borrower to choose flood insurer, "the Lender was

6   not required to disclose the amount of flood insurance premiums under TILA, in accordance with

7   Section 226.4(d)(2)(i)").

8           Here, both Hofstetter and Modersbach's Deeds of Trust state that the borrower may

9   choose his or her flood and hazard insurer.  (*See* Hofstetter Deed of Trust § 4 ("You may choose

10   any insurer reasonably acceptable to us."); Modersbach Deed of Trust § 4 (same) (Exs. 1, 8).)

11   Because Hofstetter and Modersbach's flood insurance premiums are not a "finance charge" that

12   must be disclosed under TILA, their proposed TILA claim fails.  Such claims also fail because

13   neither Hofstetter nor Modersbach were required to have flood insurance on their properties until

14   years after the origination of their HELOCs.

15   **B.      Hofstetter And Modersbach's Proposed TILA Claims Are Time-Barred, And
             They Have Not Sufficiently Alleged Equitable Tolling.**

16           Even if TILA required the disclosures they seek, Hofstetter and Modersbach's claims

17   would be time barred.  As this Court held in dismissing Hofstetter's previous TILA claim, "any

18   challenges to 'inadequate' disclosures in the terms of her loan regarding defendants' ability to

19   force-place flood insurance are time-barred under 15 U.S.C. § 1640(e)." (Dismissal Order at 16-

20   17 (citing *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) ("[T]he limitations period in

21   Section 1640(e) runs from the date of consummation of the transaction.").)   Hofstetter and

22   Modersbach still claim JPMCB violated TILA by inadequately disclosing loan terms regarding

23   flood insurance.  (Proposed SAC paras. 67-70.)   Hofstetter consummated her transaction on

24   January 30, 2006, but she did not file suit until March 29, 2010.  Modersbach consummated his

25   transaction on December 9, 2004, but did not attempt to join this suit until September 16, 2010.

26   Therefore, to the extent Hofstetter and Modersbach are attempting to assert TILA claims against

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation

JPMCB based on any alleged failure to disclose terms at origination, their claims are time-barred and it would be futile to allow amendment.

Without a timely TILA claim, Hofstetter and Modersbach attempt to allege equitable tolling:

> Plaintiffs did not discover and did not have a reasonable opportunity to discover [JPMCB's] fraud and nondisclosures until Defendants required them to carry flood insurance on their property in an amount greater than their principal balance and available credit.  Prior to this moment, which occurred less than one year before Plaintiffs asserted their TILA claim, Plaintiffs had no reason or opportunity to complain about [JPMCB's] TILA violations because it was not yet apparent that [JPMCB's] disclosures were incomplete, inaccurate, and misleading.

(Proposed SAC para. 72.)  While the court granted Hofstetter leave to plead a "*plausible* equitable tolling argument" (Dismissal Order at 17 (emphasis added)), this implausible new fraudulent concealment theory is not supported by any facts and, as a result, the TILA disclosure claim, such as it is, would still be time-barred.

"Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan." *Johnson v. Scala*, No. 05 Civ. 5529(LTS)(KNF), 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007) (collecting cases).  "Equitable tolling generally applies in extraordinary circumstances beyond plaintiffs' control which made it impossible to file their claims on time."  *Bloom v. Martin*, 865 F. Supp. 1377, 1387 (N.D. Cal. 1994) (citations and quotation marks omitted) (refusing to apply equitable tolling where "defendant did nothing to conceal the possibility that plaintiffs might at future point in time incur" certain fees that formed the basis of plaintiffs' suit). Equitable tolling only applies if, "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claims."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).

While Hofstetter and Modersbach make the conclusory allegation that JPMCB's "fraud and nondisclosures" prevented them from discovering their alleged TILA claim until "Defendants required them to carry flood insurance on their property in an amount greater than their principal balance and available credit" (Proposed SAC para. 72), they do not allege any facts showing that JPMCB concealed anything from them regarding their purported TILA claim.  They do not allege

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND PLEADINGS AND FILE SECOND AMENDED COMPLAINT

Ropers Majeski Kohn & Bentley
A Professional Corporation

Ropers Majeski Kohn & Bentley

A Professional Corporation

1   any conduct by JPMCB that would have led them to believe that flood insurance premiums were

2   included in their finance charge when they were not.[5] They do not allege any facts to show that

3   JPMCB prevented them from recognizing the validity of their alleged TILA claim within one

4   year of the origination of their respective HELOCs, nor do they allege any facts to show that they

5   were unable to discover their TILA claim despite their due diligence.   Rather, their factual

6   allegations show that once FEMA designated their properties as within Special Flood Hazard

7   Areas ("SFHAs"), CHF notified them in 2009 that they were required to maintain flood coverage.

8   (Proposed SAC, paras. 16, 29.)    Hofstetter and Modersbach's fraudulent concealment theory

9   would require that following origination of their respective HELOCs in December 2004 and

10  January 2006, JPMCB actively concealed the non-disclosure of flood premiums in their loan

11  documents, even though no such disclosures were required under TILA because such insurance is

12  not a finance charge, and because their properties would not be designated in a SFHA until years

13  in the future.

14         Even if it were plausible (which it is not), Hofstetter and Modersbach's fraud-based

15  equitable tolling theory is not alleged with the requisite particularity.  There are no facts alleged

16  concerning "the time, place, and specific content of the false representations as well as the

17  identities of the parties to the misrepresentation" that caused them delay in discovering their

18  purported TILA claims.  *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir.

---

20         [5]  Moreover, courts have consistently rejected the notion that a TILA claim based on allegedly deficient disclosures can be subject to equitable tolling. *Johnson*, 2007 WL 2852758, at

21  *4 ("In cases involving TILA, the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations.")

22  (citation and quotation marks omitted).  *See also Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting tolling argument for TILA claim because "nothing prevented

23  [plaintiff] from comparing the loan contract, . . . initial disclosures, and TILA's statutory and regulatory requirements"); *Ung v. GMAC Mortg.*, No. 09-893, 2009 WL 2902434, at *2 (C.D.

24  Cal. Sep. 4, 2009) (rejecting tolling argument for TILA claim because "Plaintiff's failure to inspect or understand the documents does not toll TILA's statute of limitations."); *Feliciano v.*

25  *Wash. Mut. Bank, FA*, No. 02:09-CV-01304 FCD KJM, 2009 WL 2390842, at *4 (E.D. Cal. Aug. 3, 2009) ("where plaintiffs were not prevented from comparing their loan documents and

26  disclosures with TILA statutory and regulatory requirements, equitable tolling is not applicable."); *Guerrero v. Citi Residential Lending, Inc.*, No. CV F 08-1878, 2009 WL 926973, at

27  *5 (E.D. Cal. Apr. 3, 2009) (tolling inapplicable where plaintiff was not prevented from comparing loan documents and disclosures with TILA statutory and regulatory requirements).

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

Ropers Majeski Kohn & Bentley
A Professional Corporation

1988). *See also Kearns v. Ford Motor Co.*, 567 F.3d 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. A party alleging fraud must set forth *more* than the neutral facts necessary to identify the transaction.") (citation and quotations omitted) (emphasis in original). "[I]in a fraud action against a corporation, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Vega v. JPMorgan Chase Bank, N.A.*, No. CV F 09-1444 LJO GSA, 2009 WL 2731039, at *8 (E.D. Cal. Aug. 26, 2009) (citation and quotations omitted). Modersbach alleges he spoke with several CHF and JPMCB representatives when he disputed the amount of flood insurance CHF was requiring him to maintain, but these communications were after the force-placement and after any alleged disclosure, and cannot possibly (or plausibly) relate to any equitable tolling claim.

Hofstetter and Modersbach's attempt to assert equitable tolling is futile.

### C.    The New Allegations Regarding Purported Violations Of 226.5b(f)(3) And 226.9(c) In The Proposed SAC Fail To State A Claim.

To the extent Hofstetter and Modersbach now attempt to state TILA claims based on the alleged post-origination failure to disclose flood insurance requirements, their claims also fail. Hofstetter and Modersbach allege for the first time that JPMCB violated 12 C.F.R. § 226.5b(f)(3) by "adversely changing the terms of Plaintiffs' credit plans after origination without Plaintiffs' consent by requiring and force-placing more insurance than appropriate to protect its interest in the property." (Proposed SAC para. 71.) They also allege that JPMCB violated 12 C.F.R. § 226.9(c) by "failing to provide proper notice, after origination, that [JPMCB] was amending the terms of the credit plans as described in the deeds of trust." (*Id.*) Not only do these claims go beyond the Court's Dismissal Order, but both of these claims are facially deficient.[6]

---

[6] The Proposed SAC also cites, without any elaboration, 12 C.F.R. §§ 226.18 and 226.20. (*See* Proposed SAC para. 71.), Hofstetter and Modersbach cannot state a claim under §§ 226.18 or 226.20 because both of those sections relate to requirements for *closed-end* credit transaction, while both Hofstetter and Modersbach's HELOC transactions were open-end credit transactions. *See* 12 C.F.R. § 226.2(a)(20) (defining open-end credit transaction).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

1.    **The new purported TILA claims go beyond what the Court allowed in its Dismissal Order.**

Hofstetter and Modersbach's new TILA claims in paragraph 71 of the Proposed SAC go beyond what the Court allowed in its Dismissal Order.  The Court did not permit Hofstetter to attempt to assert new TILA theories.  Rather, the Court stated, "[w]hile a plausible equitable tolling argument could possibly blaze a path around [the statute of limitations] obstacle, no such theory was pleaded" (Dismissal Order at 17), and the Court only gave Hofstetter leave amend to "cure the deficiencies *identified herein*."  (*Id.* at 21 (emphasis added).)  While Hofstetter and Modersbach attempt to allege equitable tolling (which, as discussed above, is futile), they have gone beyond the Court's Dismissal Order by attempting to inject an entirely new theory of TILA liability into the Proposed SAC – claims that Hofstetter could have brought in her original complaint or in her FAC.  The Court should not allow Hofstetter and Modersbach to bring these new claims and should deny the motion for leave to amend with respect to the claims asserted in paragraph 71 of the Proposed SAC.

2.    **Hofstetter and Modersbach cannot state a claim under 12 C.F.R. § 226.5b(f)(3).**

Regardless, Hofstetter and Modersbach's allegation that JPMCB violated 12 C.F.R. § 226.5b(f)(3) by "adversely changing the terms of Plaintiffs' credit plans after origination without Plaintiffs' consent by requiring and force-placing more insurance than appropriate to protect its interest in the property" fails to state a claim.  (Proposed SAC para. 71.)  12 C.F.R. § 226.5b(f)(3) provides, in pertinent part, that "[n]o creditor may, by contract or otherwise":

> (3) Change any term, except that a creditor may:
>
> (i) Provide in the initial agreement that it may prohibit additional extensions of credit or reduce the credit limit during any period in which the maximum annual percentage rate is reached. *A creditor also may provide in the initial agreement that specified changes will occur if a specified event takes place* (for example, that the annual percentage rate will increase a specified amount if the consumer leaves the creditor's employment).
>
> . . . .
>
> (iii) Make a specified change if the consumer specifically agrees to it in writing at that time.

12 C.F.R. § 226.5b(f)(3) (emphasis added).  Hofstetter and Modersbach cannot base a TILA violation on this allegation for several reasons.

Ropers Majeski Kohn & Bentley
A Professional Corporation

First, Hofstetter and Modersbach agreed in their respective Deeds of Trust that they would be required to maintain flood insurance if their respective properties fell within a flood zone, that "insurance shall be maintained in the amounts and for the periods [JPMCB and CHF] require," and that JPMCB and CHF could force-place coverage in an amount "as we in our sole discretion determine appropriate to protect our interest in the Property" if Hofstetter and Modersbach failed to maintain adequate flood insurance on their own. (Hofstetter Deed or Trust § 4; Modersbach Deed of Trust § 4 (Exs. 1, 8).) Because the prospect of flood insurance and force-placement was specifically provided for in Plaintiffs' Deeds of Trust, Hofstetter and Modersbach cannot allege there was a "change" in terms. Therefore, their claim that the terms of credit were changed by the force-placement of flood insurance is implausible. *See Cunningham v. Nat'l City Bank*, 588 F.3d 49, 55, n.7, 8 (1st Cir. 2009) (lender's termination of HELOC due to late payment did not violate § 226.5b(f)(3) because HELOC contract allowed for termination; fact that lender did not previously enforce the right to terminate "does not mean that the right did not exist at that time").

Second, where Regulation Z prohibits certain changes to "terms," the word "term" refers to the payment terms, such as the length of the draw period, the repayment period, how the minimum periodic payment is determined, and timing of payments. *See* 12 C.F.R. § 226.5b(d)(5) (discussing payment terms). Plaintiffs' obligation to maintain flood insurance and in what amount are not "terms" of credit. Therefore, the proposed claim under § 226.5b(f)(3) fails on its face.

Third, Hofstetter and Modersbach allege that CHF – *not* JPMCB – was the entity that required them to maintain flood insurance on their properties. Therefore, even under their own allegations, JPMCB did not "change the terms" of their respective credit plans. However, their proposed TILA claim is brought against JPMCB only, and as this Court indicated in its Dismissal Order, they cannot bring a TILA claim against CHF because CHF is a loan servicer that is not a creditor or an assignee subject to TILA. (Dismissal Order at 17 (collecting authority).) Therefore, Hofstetter and Modersbach's allegation that *JPMCB* changed the terms of credit based on CHF's alleged conduct is implausible and contradicted by their factual allegations, and their proposed 12 C.F.R. § 226.5b(f)(3) claim is futile.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

Ropers Majeski Kohn & Bentley

A Professional Corporation

3.    **Hofstetter and Modersbach cannot state a claim under 12 C.F.R. § 226.9(a).**

Hofstetter and Modersbach also allege, for the first time in the Proposed SAC, that JPMCB violated 12 C.F.R. § 226.9(c) by "failing to provide proper notice, after origination, that [JPMCB] was amending the terms of the credit plans as described in the deeds of trust." (Proposed SAC para. 71.)  As with their claim under § 226.5b(f)(3), the purported claim under § 226.9(c) fails on its face.

Section 226.9(c), titled "Subsequent disclosure requirements" states, in pertinent part:

> For home-equity plans subject to the requirements of § 226.5b, whenever any term required to be disclosed under § 226.6(a) is changed or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected. The notice shall be mailed or delivered at least 15 days prior to the effective date of the change. The 15-day timing requirement does not apply if the change has been agreed to by the consumer; the notice shall be given, however, before the effective date of the change.

12 C.F.R. § 226.9(c)(1)(i).

First, any claim under § 226.9(c) would fail because, as discussed in the previous section, Hofstetter and Modersbach do not allege JPMCB changed any term of credit.  Their Deeds of Trust explicitly stated that flood insurance could be force-placed at their expense if they failed to obtain it on their own.  Section 226.9(c) does not require lenders (or servicers) to issue new disclosures when a borrower's home is rezoned by FEMA to be in a flood zone.  Nor does TILA dictate the amount of flood insurance a lender or servicer may require; the NFIA, related regulatory guidance and the mortgage agreements do.  By its terms, § 226.9(c) applies "whenever any term required to be disclosed under § 226.6(a) is changed" or when the "minimum periodic payment is increased."  The proposed SAC does not allege that either of these events that would trigger § 226.9(c) disclosures has occurred here.  Force-placed insurance is not a term that is "required to be disclosed" under § 226.6(a) and, as discussed above, it is not required to be disclosed as a "finance charge."

Furthermore, as discussed in the previous section, Hofstetter and Modersbach allege that CHF – not JPMCB – was the entity that required them to maintain flood insurance on their properties.  However, even if CHF was subject to TILA and its regulations, CHF would have

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND PLEADINGS AND FILE
SECOND AMENDED COMPLAINT

complied with § 226.9(c) because, as Hofstetter and Modersbach allege, CHF *did* send notices to both of them explaining: (1) their properties were in areas identified by FEMA as SFHAs and, as a result, they were required to maintain flood insurance; (2) how much flood insurance coverage was required; (3) how that amount was determined; (4) CHF would force-place flood insurance if Plaintiffs did not obtain their own insurance or provide CHF with evidence of current adequate flood insurance; and (5) how much such force-placed flood insurance would cost. (*See* August 11, 2009, September 1, 2009, and October 6, 2009 letters from CHF to Hofstetter and Modersbach, and May 13, 2010, June 3, 2010 and July 7, 2010 letters to Modersbach (Exs. 3, 5-7, 9-13).) Furthermore, CHF specifically informed both Hofstetter and Modersbach that CHF would not force-place flood insurance for 45 days after the initial notice. (*See id.*) Therefore, even if § 226.9(c) applied to force-placed insurance, the letters sent to Hofstetter and Modersbach comply with any subsequent disclosure requirement and their proposed amendment in this regard is futile.[7] *See Adams*, 1994 WL 702639 at * 4 (dismissing TILA claims based on force-placed insurance where lender letter disclosed that "absent evidence of an existing policy," the borrower would be charged $949 for an annual premium: "Whether GMAC was required to make

---

[7] The cases Hofstetter cites on pages 13-14 of her Motion to Amend are inapposite. None of the cases analyze § 226.9, nor do they involve force-placement of authorized insurance. In *Vician v. Wells Fargo Home Mortg.*, No. 2:05-CV-144, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006), the entity that force-placed hazard insurance was an assignee subject to TILA, and not a servicer like CHF. *Id.* at *1. Furthermore, the condominium rider at issue in *Vician* did not permit force-placed hazard insurance where the condominium homeowners association maintained coverage, *id.*, unlike the Deeds of Trust here, which explicitly provided for force-placement of flood insurance. Finally, in *Vician*, the assignee was not alleged to have provided any notice to the borrower before force-placing insurance, *id.*, unlike here, where CHF provided Hofstetter and Modersbach with notice at least 45 days before it force-placed flood insurance. Likewise, in *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995), the entity that force-placed several types of insurance in an automobile loan was the borrower's creditor and, thus subject to TILA. *Id.* at 1228. *Travis* further involved premiums for insurance that was not authorized by the contract; defendant had purchased several types of "default" and other coverage for lender acts, but the contract permitted only insurance against "fire, theft and collision." *Id.* 1229-1230. *Travis* contains no discussion of whether the defendant creditor provided notice to the borrower of force-placement, and the defendant lender did not dispute that the imposition of unauthorized insurance (and charging the borrower for the related premiums) constituted a new credit transaction that required new disclosures under 12 C.F.R. § 226.18, which governs closed-end transactions. *Id.* at 1229-30. Finally, *Motley v. Homecomings Financial, LLC*, 557 F. Supp. 2d 1005 (D. Minn. 2008), does not deal with force-placement of insurance of any kind or whether force-placement of insurance requires new disclosures under § 226.9(c) (or any other section, for that matter).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND PLEADINGS AND FILE SECOND AMENDED COMPLAINT**

Ropers Majeski Kohn & Bentley
A Professional Corporation

1  disclosures of the policy's cost and term is somewhat mooted by the disclosures GMAC actually

2  made.").

3  **III. HOFSTETTER AND MODERSBACH CANNOT STATE AN "UNLAWFUL" UCL CLAIM.**

4      In its Dismissal Order, the Court dismissed Hofstetter's purported "unlawful" UCL claim

5  based on the alleged violation of TILA and the CLRA because she could not state an underlying

6  TILA or CLRA claim. (Dismissal Order at 19-20.) Hofstetter and Modersbach now attempt to

7  base their "unlawful" UCL claim on JPMCB's alleged violation of TILA and "Defendants'"

8  alleged breach of the duty of good faith and fair dealing. (Proposed SAC paras. 80(d), (e), (h).)

9  However, Hofstetter and Modersbach cannot state a TILA claim or a claim for alleged breach of

10  the duty of good faith and fair dealing, and, therefore, any proposed amendment to assert a UCL

11  claim on these bases is futile.

12      "[T]o state a claim for an 'unlawful' business practice under the UCL, a plaintiff must

13  assert the violation of any other law." *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

14  20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999). "Where a plaintiff cannot state a

15  claim under any other law, a claim of 'unlawful' business practices under Section 17200 cannot be

16  stated either." (Dismissal Order at 19 (quoting *Cel-Tech*, 20 Cal. 4th at 182).) *See also Rubio v.*

17  *Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) ("Where a plaintiff

18  cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.") (citation

19  omitted) (dismissing UCL claim based on barred TILA claim), *aff'd in part and rev'd in part on*

20  *other grounds* 613 F.3d 1195 (2010).

21      As discussed above, Hofstetter and Modersbach cannot state a TILA claim. Therefore,

22  their "unlawful" UCL claim must be dismissed to the extent it is based on alleged TILA

23  violations. In addition, they cannot bring a claim for breach of the implied covenant of good faith

24  and fair dealing "in the absence of a special relationship with fiduciary characteristics."

25  *Valenzuela v. Am. Home Mortg. Investment Tr. 2005-2*, No. CV-F-08-1179 OWW/SMS, 2009

26  WL 839930, at *27 (E.D. Cal. Mar. 30, 2009) (dismissing breach of implied covenant claim

27  against lender). *See also Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1370, 83 Cal.

28

Ropers Majeski Kohn & Bentley
A Professional Corporation

Ropers Majeski Kohn & Bentley

A Professional Corporation

1   Rptr. 2d 388 (1999) (implied covenant of good faith and fair dealing "is available only in limited

2   circumstances, generally involving a special relationship between the contracting parties").  They

3   cannot allege a special relationship or fiduciary duty because "[a] debt is not a trust and there is

4   not a fiduciary relation between debtor and creditor as such."  *Price v. Wells Fargo Bank*, 213

5   Cal. App. 3d 465, 476 (1989).  *See also Amparan v. Plaza Home Mortg., Inc.*, 678 F. Supp. 2d

6   961, 978 (N.D. Cal. 2008) ("Courts have 'reject[ed][the] argument that [the covenant] . . . should

7   encompass normal commercial banking transactions.'") (quoting *Mitsui Mfrs. Bank v. Super. Ct.*,

8   212 Cal. App. 3d 726, 729, 260 Cal. Rptr. 793 (1989)).  Because Hofstetter and Modersbach have

9   not alleged (and cannot allege) a fiduciary or special relationship between either of them and CHF

10  and/or JPMCB, they cannot state a claim for breach of the implied covenant of good faith and fair

11  dealing. *See Amparan*, 678 F. Supp. 2d at 978 ("[T]here appears to be no basis upon which

12  Plaintiff could allege . . . the type of special relationship required to invoke the covenant.")

13  (dismissing implied covenant claim brought against lender).  As a result, they cannot premise

14  their UCL claim on the alleged breach of the implied covenant of good faith and fair dealing.

15  **IV.   THE PUTATIVE CLASS ALLEGATIONS FAIL TO CONFORM WITH THE
        COURT'S DISMISSAL ORDER AND SHOULD BE STRICKEN.**

16          In its Dismissal Order, the Court held that Hofstetter could state a claim under the "unfair"

17  prong of the UCL based on the theory that it was improper for CHF to require her to maintain

18  flood insurance on her HELOC when the HELOC was suspended and she had a zero balance.

19  (Dismissal Order at 14, 20.)  The Court has since further clarified that Hofstetter has standing

20  only to bring a claim on behalf of so-called "zero/zero" borrowers – *i.e.*, those HELOC borrowers

21  for whom CHF force-placed flood insurance whose outstanding balance was zero and whose

22  available credit was zero at the time of the force-placement.  (*See* Order on Certain Discovery

23  Issues and Referring Remaining and Future Discovery Disputes for Assignment to a Magistrate

24  Judge at 2-4 (Dkt. No. 56).)  Hofstetter attempts to avoid limiting the putative class claims to

25  "zero-zero" borrowers by adding Modersbach – a borrower whose line was not suspended or

26  reduced, but who simply complains, without legal basis, that he cannot be required to maintain

27

28

Ropers Majeski Kohn & Bentley

A Professional Corporation

1   flood insurance coverage in an amount greater than his outstanding balance and/or amount

2   borrowed.

3        Hofstetter and Modersbach ignore the Court's Dismissal Order and now attempt to bring

4   their Proposed SAC on behalf of the following two putative classes:

5        **Proposed Nationwide Class:** All persons who have or had a loan or line of
         credit with [JPMCB] secured by their property and were required by [JPMCB] (or
6        its agents or affiliates) to purchase or maintain flood insurance on their property
         in the United States within one year prior to this action's filing date through the
7        date of final disposition of this action.

         . . . .

8        **Proposed California Class:** All persons who have or had a loan or line of credit
9        with Defendants that was secured by their residential property and were required
         by Defendants to purchase or maintain flood insurance on their property in the
10       State of California within four years prior to this action's filing date through the
         date of final disposition of this action.

11  (Proposed SAC paras. 53-54.)

12       The putative classes are overly broad and would encompass borrowers who either have no

13  claim at all or whose circumstances are not similar to Hofstetter and Modersbach's. Both putative

14  classes include every borrower in a flood zone, regardless of type of loan, loan balance, or any

15  other factor limiting the putative class to the type of claims Hofstetter and Modersbach assert. In

16  addition, the putative TILA class is not limited to loans subject to TILA, nor is it limited to

17  creditors or assignees. An amendment to include such broad putative class allegations not only

18  goes well beyond this Court's ruling, but also subjects Hofstetter and Modersbach to a motion to

19  strike those allegations because they have no standing to assert claims on behalf of borrowers

20  who are not similarly situated to them and who cannot plausibly assert any injury-in-fact. *See In*

21  *re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2465329, at *2 (N.D. Cal. June

22  10, 2010) ("To satisfy the standing requirement of Article III, there must be the 'irreducible

23  constitutional minimum' of an injury-in-fact. An injury-in-fact is 'an invasion of a legally

24  protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not

25  conjectural or hypothetical.'") (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

26  *See also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) ("That a suit may be a

27  class action . . . adds nothing to the question of standing . . . ."); *Jordan v. Paul Fin., LLC*, No. 07-

28

04496, 2009 WL 192888, at *3 (N.D. Cal. Jan. 27, 2009) (plaintiff whose TILA claim was time-barred did not have standing to pursue TILA claim on behalf of putative class). Because Hofstetter and Modersbach's putative class definitions are susceptible to a motion to strike, their Proposed SAC is futile in this regard.[8]

## V. CHF AND JPMCB WOULD BE PREJUDICED BY THE PROPOSED AMENDMENTS.

Hofstetter and Modersbach are attempting to take advantage of the Court's Dismissal Order at the expense of CHF and JPMCB. If the Court grants Hofstetter's Motion to Amend in whole, then both CHF and JPMCB will be prejudiced. "To decide whether the addition of new parties or new claims will prejudice the defendant, the court looks to whether the plaintiff's amendment(s) will necessitate additional discovery, research or preparation, delay the proceedings, or increase the cost of litigation." *Ambat v. City and County of San Francisco*, No. C 07-03622 SI, 2009 WL 3045937, at *2 (N.D. Cal. Sep. 18, 2009) (citation omitted).

In *Ambat*, the court denied a motion for leave to amend where the proposed amendment would expand the liability period and would result in the need to conduct additional discovery in light of the new claims. *Id.* at *2. Here, both CHF and JPMCB will be prejudiced by the proposed amendments because both entities will have to expend time and expense defending against meritless claims and overly broad putative classes. First and foremost, Hofstetter is seeking to add Modersbach as a new named plaintiff. Modersbach's circumstances are vastly different from Hofstetter, who is a "zero-zero" borrower. Modersbach is borrower with a non-

---

[8] Hofstetter and Modersbach also seek an improper amount of damages on behalf of the putative TILA class. They seek "actual damages and a penalty of $500,000.00 or 1 % of Defendants' net worth, whichever is greater, as provided by 15 U.S.C. § 1640(a)(1)-(2)." (Proposed SAC para. 76.) However, TILA provides that "the total recovery . . . in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the *lesser* of $500,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B) (emphasis added). In addition, Hofstetter and Modersbach seek actual damages, punitive damages, and "penalties" as part of her UCL claim. (*See* Proposed SAC paras. 85, 87(D).) However, none of these remedies are available under the UCL, as the remedies under the UCL are limited to equitable relief and restitution. Cal. Bus. & Prof. Code § 17203; *S.W. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 810 (N.D. Cal. 1989) ("[P]laintiff's relief under Section 17200 is limited to equitable relief, including restitution. Thus, no claim for punitive damages under Section 17200 may be had.") (citations omitted).

Ropers Majeski Kohn & Bentley

A Professional Corporation

1   suspended, non-reduced HELOC, whose claim is that CHF should not be able to require flood

2   insurance in an amount greater than his outstanding balance and/or amount borrowed.

3       Defendants will be subjected to significant additional briefing and discovery if the Court

4   were to allow Modersbach to become a named plaintiff.  With Modersbach as a named plaintiff,

5   Defendants would have to brief yet another dismissal motion, and Plaintiffs will certainly seek

6   discovery relating to any borrower in the country whose flood insurance coverage amount is

7   greater than his or her outstanding HELOC balance or amount borrowed – even though this is

8   permitted under federal law.

9       Furthermore, Hofstetter attempts to add two new TILA claims, and her putative classes

10   reach far beyond the limits of reasonableness.  The new putative TILA class includes every

11   borrower in the nation who lives in a flood zone and who obtained any type of loan from JPMCB

12   *or* any of its "agents or affiliates."  (Proposed SAC para. 53.)  Litigation regarding this putative

13   class (and the California-only putative class, which is equally overbroad) is unfair to Defendants

14   and would require them to needlessly expend time and resources.

## CONCLUSION

16       For all of the foregoing reasons, the Court should deny in part Hofstetter's Motion to

17   Amend the Pleadings and File Second Amended Complaint.

19   Dated: October 7, 2010                    ROPERS, MAJESKI, KOHN & BENTLEY

20                                              By:  /s/ George G. Weickhardt
                                                    _____
21                                                  GEORGE G. WEICKHARDT

22                                                  Attorney for Defendants

23                                                  CHASE HOME FINANCE, LLC and
                                                    JPMORGAN CHASE BANK, N.A.

25   09135\00590\744057v17

Ropers Majeski Kohn & Bentley
A Professional Corporation