United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHEILA I. HOFSTETTER, individually, as
a representative of the class, and on behalf
of the general public,

            Plaintiff,

  v.

CHASE HOME FINANCE, LLC,
JP MORGAN CHASE BANK, N.A.,
and DOES 1 through 50, inclusive,

            Defendants.

                              /

No. C 10-01313 WHA

**ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION TO
AMEND THE PLEADINGS,
FILE A SECOND AMENDED
COMPLAINT, AND ADD A
SECOND NAMED PLAINTIFF**

**INTRODUCTION**

In this putative class action involving federal flood insurance requirements for

home-equity lines of credit, plaintiff Sheila Hofstetter moves for leave to file a second amended

complaint following the dismissal of all but one of her originally pleaded claims. Additionally,

plaintiff moves for leave to add a second named plaintiff to this action, Roger Modersbach, who

like Ms. Hofstetter was allegedly forced by defendants to purchase flood insurance coverage in

excess of National Flood Insurance Act requirements but whose circumstances differed from

Ms. Hofstetter in several important ways. For the reasons stated below, plaintiff's motion is

**GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

An in-depth history of this dispute, the National Flood Insurance Act (NFIA), and the National Flood Insurance Program (NFIP) was set forth in great detail in two recently filed orders: (1) an August 2010 order granting in part and denying in part defendants' motion to dismiss, and (2) a September 2010 order addressing certain discovery disputes between the parties (Dkt. Nos. 51, 56). Only the relevant details will be repeated herein.

In brief, this putative class action involves federal flood insurance requirements under the NFIA for home-equity lines of credit ("HELOCs"). Under the NFIA, federal and federally regulated lenders, including national banks and their associated servicers, are required to ensure that HELOCs secured by real property in a "special flood hazard area" are adequately protected by a minimum amount of flood insurance coverage as required under the Act. As discussed in detail in the August 2010 order, defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC are federally regulated entities subject to NFIA requirements.

The central issue addressed in the August 2010 order was whether defendants were required (and if not required, expressly authorized) under the NFIA to purchase $175,000 worth of flood insurance coverage for the real property securing plaintiff Sheila Hofstetter's HELOC. Critically, at the time defendants purchased this flood insurance coverage for plaintiff, her principal loan balance and available line of credit were both zero dollars. Following a comprehensive examination of the NFIA, its implementing regulations, the legislative history of the Act, and relevant agency materials, the August 2010 order concluded that defendants were neither required nor authorized under the NFIA to *force* Ms. Hofstetter to purchase flood insurance for her home given her "zero/zero" circumstances. While this ruling (in tandem with the conclusion that the NFIA did not preempt the field of flood insurance) meant that defendants could *not* invoke the shield of preemption under the Act, the August 2010 order nevertheless dismissed all but one of plaintiff's claims as insufficiently pleaded under FRCP 12(b)(6). Only plaintiff's claim of "unfair" business practices under Section 17200 of the California Business and Professions Code survived.

Soon thereafter, the parties became embroiled in a myriad of discovery disputes. Two of these disputes culminated in a pair of sanction motions filed by plaintiff.[1] A third dispute, however, involved whether plaintiff had standing to assert a claim under Section 17200 for non-"zero/zero" borrowers who carried either a positive principal loan balance on their HELOCs or a non-zero available line of credit at the time defendants forced them to purchase allegedly "excessive" flood insurance coverage.

The September 2010 order concluded that claims brought by borrowers who carried a positive principal loan balance and/or had a non-zero available credit line presented different factual and legal questions than "zero/zero" borrowers like Ms. Hofstetter. As an example, Ms. Hofstetter received a series of flood insurance "form letters" from defendants (bearing the name "Chase Home Finance") stating that "Federal law requires that flood insurance be purchased and maintained for the life of [her] loan if the secured property is located in [a special flood hazard area]" and that she was required to purchase flood insurance coverage for her home equal to the "lesser" of (Dkt. No. 64, Exh. A ("Compl.") at ¶ 22):

- The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000; or

- 100% of the full replacement cost value of the dwelling and insurable improvements; or

- The principal balance of the loan or credit line amounts for lines of credit.

Of course, at the time she received these letters, the principal balance on her HELOC was zero dollars and her *entire* credit line had been suspended. Given these facts, the September 2010 order found that a "zero/zero" borrower like Ms. Hofstetter could reasonably have interpreted defendants' letter as stating that *no flood insurance coverage* was necessary. This, however, would *not* necessarily be true of a borrower who carried either a positive principal loan balance or had a non-zero available line of credit. Such a borrower, under both the terms set forth in the letter and the terms of the NFIA, *would* be required under federal law to maintain a particular amount of flood insurance coverage. Thus, the letter reproduced above would have arguably

---

[1] These motions have been addressed in a companion order filed alongside this one.

United States District Court

For the Northern District of California

provided fair notice of such a requirement to non-"zero/zero" borrowers.  For these reasons, the September 2010 order concluded that plaintiff only had standing to bring a claim of "unfair" business practices on behalf of "zero/zero" borrowers who, like her, were not required to maintain *any* flood insurance coverage under the NFIA.

It is in direct response to this ruling that plaintiff now seeks to add a second named plaintiff, Roger Modersbach, to this action.  Mr. Modersbach's story follows a similar arc to that of Ms. Hofstetter.  He obtained a $100,000 home-equity line of credit from JPMorgan Chase Bank in December 2004, which was serviced through the life of the loan by Chase Home Finance (Compl. ¶¶ 26–27).  An initial disbursement of $50,000 was paid to him at the time he opened his loan.  While Mr. Modersbach received no further disbursements on his line of credit, he did *not* pay off the initial disbursement in its entirety.  Rather, he carried a positive principal loan balance of approximately $37,000 at the time defendants "force purchased" flood insurance coverage for his property.  Additionally, his $100,000 line of credit — based upon the facts as alleged — was never suspended or reduced by defendants during the events at issue herein (*id.* at ¶ 28).

On August 10, 2009, Chase Home Finance advised Mr. Modersbach via a "form letter" that his home — which was used to secure his HELOC — was deemed by the Federal Emergency Management Agency to be located in a "special flood hazard area" and that he was required to maintain flood insurance coverage on his home pursuant to the NFIA.  The letter contained exactly the same language that was excerpted above from a similar letter sent to Ms. Hofstetter (*id.* at ¶ 29).  On September 1, 2009, Chase Home Finance sent Mr. Modersbach another "form letter" stating that if he did not obtain "adequate" flood insurance coverage for his home, then it would "have no choice" but to purchase a $100,000 flood insurance policy for him and charge him $900 for the premium (*id.* at ¶ 30).  The letter further advised him that the policy would be purchased through an affiliate of Chase and that it would likely cost more than comparable coverage that could be independently obtained.  On October 7, 2009, Chase Home Finance notified Mr. Modersbach that — due to his failure to obtain sufficient flood insurance coverage — it had force-purchased a flood insurance policy in the amount of $100,000 for his home with a

4

premium of $900.  The letter further stated:  "A licensed affiliate of Chase was paid a commission in connection with the policy that we purchased for you" (*id.* at ¶ 31).

After he received this notice, Mr. Modersbach contested defendants' purchase of flood insurance in a letter mailed to Chase Home Finance on October 10, 2009.  In his letter, he informed Chase Home Finance that he had already provided it with proof of $100,000 in flood insurance coverage that he had independently obtained in September 2009 (with a much lower premium of only $503).  In response to this letter, Chase Home Finance cancelled the flood insurance policy it had "force purchased" for him and refunded the $900 premium it had charged to his account (*id.* at ¶¶ 32–33).

For six months, Mr. Modersbach received no additional flood insurance "form letters" from defendants.  Then, on May 12, 2010, Mr. Modersbach received a new form letter from Chase Home Finance that stated "you must increase your flood insurance coverage by $150,000" and submit proof of such additional insurance or Chase Home Finance would "have no choice" but to purchase the additional flood insurance for him (*id.* at ¶ 34).  Upon receiving this letter, Mr. Modersbach called and wrote letters to defendants protesting the increase in required flood insurance coverage above his then-existing $100,000 policy.  At the time, neither his line of credit nor his principal loan balance exceeded $100,000.  Chase Home Finance responded by sending another letter to him justifying its position and indicating that an additional $150,000 worth of flood insurance coverage would be purchased if he did not submit proof of additional coverage by a certain deadline.  Eventually, Mr. Modersbach managed to contact a representative from JPMorgan Chase Bank on June 19, 2010, who told him that the bank had changed its insurance requirements to "federal maximums in all cases, without regard to individual circumstances" and further stated that there was "no leeway" with respect to this policy (*id*. at ¶¶ 35–37).

Ten days later, defendants sent Mr. Modersbach another form letter that was surprisingly different from all other form letters he had been previously sent.  It stated that "your minimum acceptable flood insurance amount is $250,000" and that "your flood coverage amount of $100,000.00 . . . is below the minimum requirement for your loan."  The letter further explained how it reached this figure (*id*. at ¶ 38):

United States District Court

For the Northern District of California

> At a minimum, the flood insurance coverage amount you need to obtain on your flood insurance policy must be equal to the least of the following:
>
> • 100% of the full replacement cost value of the dwelling and insurable improvements, or
>
> • The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000.00.

Notably, unlike the prior "form letters" that had been sent to Mr. Modersbach and Ms. Hofstetter, this letter did not list "[t]he principal balance of the loan or credit line amounts for lines of credit" as one of the factors to determine the minimum flood insurance coverage amount. This comparison sheds light on why Mr. Modersbach's minimum required flood insurance coverage had skyrocketed from $100,000 (the amount of his credit line) to $250,000 (the federal maximum under the NFIA and NFIP).

On July 7, 2010, Mr. Modersbach was informed by a letter from Chase Home Finance that an additional $150,000 in flood insurance had been force-purchased for his home at a premium of $1,350. The letter further stated: "A licensed affiliate of Chase was paid a commission in connection with the policy that we purchased for you" (*id.* at ¶ 40).

\* \* \*

This action was filed in March 2010. After plaintiff filed her first amended complaint, defendants moved to dismiss the action as both preempted under the NFIA and inadequately pleaded under FRCP 12(b)(6). As stated, the August 2010 order concluded that while plaintiff's claims were *not* preempted by the NFIA, the first amended complaint had sufficiently alleged only *one* claim — a claim of "unfair" business practices under Section 17200 of the California Business and Professions Code (Dkt. No. 51 at 20). Plaintiff's claims of "unlawful" and "fraudulent" business practices under Section 17200, as well as her claims asserted under the Truth in Lending Act and the California Consumer Legal Remedies Act, were all dismissed. Plaintiff, however, was given the opportunity to cure these deficiencies within fourteen calendar days. The instant motion represents plaintiff's timely efforts to re-plead some (but not all) of her dismissed claims, as well as her attempt to add an additional named plaintiff to this action.

**ANALYSIS**

As set forth in the case management scheduling order, the deadline for either side to seek leave to add new parties or pleading amendments expired on September 30, 2010 (Dkt. No. 40). The instant motion, however, was filed two weeks prior to this deadline (Dkt. No. 64). Given its timely nature, plaintiff's motion is governed by FRCP 15(a).

Under FRCP 15(a), a court should freely give leave to amend the pleadings "when justice so requires." This policy is to be applied "with extreme liberality[,]" without regard to "whether the amendment will add causes of action or parties." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). This does not mean, however, that leave to amend should be granted automatically. Rather, a district court may properly "deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations and citations omitted). When weighing these factors, however, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

These factors will be addressed in turn.

**1.     UNDUE DELAY, BAD FAITH, REPEATED FAILURES, AND UNDUE PREJUDICE**

Given that the instant motion was filed pursuant to specific instructions set forth in the August 2010 order and was submitted well before the September 30 deadline for pleading amendments, this order finds that none of the proposed amendments (including the addition of Mr. Modersbach) has been brought in bad faith, is a product of undue delay, or will cause undue prejudice to defendants. All of the claims plaintiff seeks to amend stem from the same federal and state laws seen in the prior complaint. This is the first time that plaintiff has moved to amend the complaint, and the proposed changes should come as no surprise to defendants.

As for the proposed second named plaintiff, Mr. Modersbach, there is no dispute that he was disclosed to defendants by plaintiff's counsel months ago in July 2010, shortly after he had

1   contacted counsel with his "story" regarding his flood-insurance dealings with defendants.

2   Additionally, his potential addition to this action was expressly mentioned at the September 1

3   discovery dispute hearing, and necessitated by the rulings in the September 2010 order.  For these

4   reasons, there is no basis — especially at such an early point in this action — for defendants to

5   claim undue prejudice or undue delay for any of the proposed pleading amendments herein.

6           All of these factors weigh *in favor* of granting plaintiff's motion.

7           **2.      FUTILITY OF PROPOSED AMENDMENTS**

8           Whether an amendment is "futile" is measured by the same standards that govern a motion

9   to dismiss.  An amended claim is not "futile" if, taking all well-pleaded factual allegations as true,

10  it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

11  ---- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

12  570 (2007)).  That said, "[t]hreadbare recitals of the elements of a cause of action, supported by

13  mere conclusory statements, do not suffice." *Ibid.* (citation omitted).  A court, however, must

14  "draw on its judicial experience and common sense" to determine whether a plausible claim for

15  relief has been stated. *Id.* at 1950.

16          In the instant motion, plaintiff seeks leave to re-plead her claims under the Truth in

17  Lending Act ("TILA") and for "unlawful" business practices under Section 17200 of the

18  California Business and Professions Code.  The proposed complaint also attempts to add

19  Mr. Modersbach to the claims asserted against defendants.  Each of these proposed amendments

20  will be addressed separately.

21          **A.      TILA**

22          Congress enacted the Truth in Lending Act to "assure a meaningful disclosure of credit

23  terms so that the consumer will be able to compare more readily the various credit terms available

24  to him and avoid the uninformed use of credit[.]"  15 U.S.C. 1601(a).  The Federal Reserve Board

25  was granted authority to promulgate regulations under the TILA, and Congress specially

26  designated the Board as the primary source for interpretation and application of truth-in-lending

27  law. *See Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, 235, 238 (2004) (citations

28  omitted).  Regulation Z, set forth in 12 C.F.R. Part 226, represents the Board's exercise of this

**United States District Court**
For the Northern District of California

8

authority.  Generally speaking, the TILA requires a creditor to disclose information relating to finance charges, annual percentage rates of interest, and borrowers' rights.  Civil liability is prescribed for any creditor who fails to abide by its disclosure rules, whether intentional or not. *See* 15 U.S.C. 1631–1632, 1635, 1637–1639, 1640.  A claim for damages under the TILA, however, is subject to a one-year statute of limitations, which runs from "the date of the occurrence of the violation."  15 U.S.C. 1640(e).

Plaintiff's prior TILA claim was dismissed in the August 2010 order on two separate grounds:  (1) it appeared to be time-barred under the one-year statute of limitations set forth in 15 U.S.C. 1640(e) and (2) it was improperly pleaded against defendant Chase Home Finance, who was not alleged to be the owner, or prior owner, of the loan (Dkt. No. 51 at 16–17).  The prior order did *not* reach the question of whether and to what extent federal flood insurance requirements fell within the scope of disclosures mandated under the TILA for HELOCs. *See* 15 U.S.C. 1637, 1637a.  Plaintiff, however, was allowed to seek leave to amend her complaint to cure the deficiencies identified in the August 2010 order.

In the instant motion, plaintiff argues that the proposed complaint now states a plausible and *timely* claim for a violation of the TILA.  Specifically, instead of targeting the *initial* disclosures made by JPMorgan Chase Bank prior to the origination of the loan, the proposed complaint alleges that the bank violated the requirements of the TILA by adversely changing, without authorization or providing proper notice to the borrower, the terms of the HELOCs in question via the flood insurance "form letters" that were mailed to Ms. Hofstetter and Mr. Modersbach in 2009 and 2010 and the contemporaneous imposition of allegedly "excessive" flood insurance coverage requirements (Compl. ¶¶ 64–71).  As explained below, this order agrees with plaintiff that a plausible and timely claim under the TILA has now been stated.

### i.    Violations Based Upon *Subsequent* Loan Disclosures

The central reason why plaintiff's TILA claim was dismissed as time-barred in the August 2010 order was its apparent focus on the *initial* disclosures made by JPMorgan Chase Bank when the HELOCs in question were consummated.  Plaintiff's revamped TILA claim now focuses upon *subsequent* disclosures made by JPMorgan Chase Bank years after the loans were originated that

9

supposedly "changed the terms" of the mortgages held by Ms. Hofstetter and Mr. Modersbach. Specifically, the proposed complaint alleges (Compl. ¶ 71):

> In addition, JPM violated the TILA by, *inter alia*, (i) adversely changing the terms of Plaintiffs' credit plans after origination without Plaintiffs' consent by requiring and force-placing more insurance than appropriate to protect its interest in the property, *see* 12 C.F.R. § 226.5b(f)(3); and (ii) failing to provide proper notice, after origination, that JPM was amending the terms of the credit plans as described in the deeds of trust, *see* 12 C.F.R. § 226.9(c). *See* 12 C.F.R. §§ 226.18, 226.20.

In their opposition brief, defendants take issue with each of the allegations set forth in this paragraph. *First,* defendants argue that 12 C.F.R. 226.5b(f)(3) does not apply to federal flood insurance coverage requirements because such requirements are not "terms" under the TILA. *Second*, defendants contend that 12 C.F.R. 226.5b(f)(3) was not violated because borrowers "agreed" in their deeds of trust and policy documents that they would have to maintain flood insurance as required by JPMorgan Chase Bank. *Third*, defendants argue that they *did* provide proper notice under 12 C.F.R. 226.9(c) that they were amending the terms of the credit plans at issue. *Fourth*, defendants argue that 12 C.F.R. 226.18 and 226.20 — the two regulations cited at the end of the above paragraph — do not even apply to HELOCs. As explained below, all but one of defendants' arguments fail.

Starting with defendants' sole victory, defendants are correct that 12 C.F.R. 226.18 and 226.20 do not apply to *open-end* lines of credit like HELOCs. *See* 12 C.F.R. 226.20(a)(20) (defining open-end credit transactions). Rather, these regulations apply to *closed-end* credit plans. As such, they are inapplicable to the instant dispute, and leave to amend to allege any TILA claims under these regulations is **DENIED**.

Turning next to the allegations based upon 12 C.F.R. 226.5b(f)(3), this code section — entitled "[r]equirements for home-equity plans" — states in relevant part:

> (f)  Limitations on home equity plans. No creditor may, by contract or otherwise:
>
> \*                      \*                      \*
>
> (3)  Change any term, except that a creditor may:
>
> (i)  Provide in the initial agreement that it may prohibit additional extensions of credit or reduce the credit limit during any period in

which the maximum annual percentage rate is reached.  A creditor
also may provide in the initial agreement that specified changes
will occur if a specified event takes place (for example, that the
annual percentage rate will increase a specified amount if the
consumer leaves the creditor's employment).

*                              *                              *

(iii)  Make a specified change if the consumer specifically agrees
to it in writing at that time.

(iv)  Make a change that will unequivocally benefit the consumer
throughout the remainder of the plan.

(v)  Make an insignificant change to terms.

According to the proposed complaint, by "requiring and force-placing more insurance than

appropriate to protect its interest in the property," JPMorgan Chase Bank adversely changed the

terms of the HELOCs in question without the consent of the borrower.  Moreover, since these

changes were allegedly made after March 2009, they are timely under the TILA's one-year

limitations period.  For these reasons, plaintiff contends that the proposed complaint states a

plausible claim for a violation of 12 C.F.R. 226.5b(f)(3).

    This order agrees.  The fees and premiums associated with property insurance agreements

written in connection with a credit transaction are clearly "terms" of a home-equity plan under the

TILA.  In fact, the TILA expressly requires lenders to disclose these fees and premiums as part of

their initial disclosures to borrowers.  *See* 12 C.F.R. 226.6(a)(1) (requiring lenders to disclose

"finance charges" in their initial disclosures); 12 C.F.R. 226.4 (b)(8) (listing among examples of

finance charges "[p]remiums or other charges for insurance against loss of or damage to property,

or against liability arising out of the ownership or use of property, written in connection with a

credit transaction"); 12 C.F.R. 226.4(d)(2) (setting forth an exception to the inclusion of property

insurance premiums in finance charges).  Additionally, the Federal Reserve Board's commentary

on what constitutes a "change of terms" to a credit plain is instructive:

In general, a creditor may not change the terms of a plan after it is
opened.  For example, a creditor may not increase any fee or
impose a new fee once the plan has been opened, even if the fee is
charged by a third party, such as a credit reporting agency, for a
service.  *The change of terms prohibition applies to all features of
a plan, not only those required to be disclosed under this section.*
For example, this provision applies to charges imposed for late

11

United States District Court

For the Northern District of California

payment, although this fee is not required to be disclosed under § 226.5b(d)(7).

2 C.F.R. Pt. 226, Supp. I, § 5b(f)(3), cmt. 1 (emphasis added). Since the "change of terms" prohibition encompasses more than just those terms that are required to be disclosed under the TILA, it is safe to say that the imposition and modification of mandatory flood insurance coverage (and the fees and premiums associated with such coverage) are clearly encompassed by this regulation.

Given this backdrop, a lender's imposition of mandatory flood insurance coverage in connection with a HELOC, where no such insurance was required at the loan's consummation and insufficient initial disclosures were made to the borrower that such insurance would have to be purchased in the future, must be deemed a "change of terms" under 12 C.F.R. 226.5b(f)(3). In the instant case, it is undisputed that the purchase of flood insurance coverage was *not* required as a condition for either Ms. Hofstetter or Mr. Modersbach to obtain their HELOCs from JPMorgan Chase Bank. Additionally, as well be discussed shortly, the terms of their loans at consummation did not reserve the right for JPMorgan Chase Bank to impose mandatory flood insurance coverage requirements at a later date and at its sole discretion.

An important point, however, must be emphasized regarding the interplay between the disclosure requirements of the TILA and the mandatory flood insurance requirements of the NFIA. As discussed in detail in the August 2010 order, the NFIA has specific notice provisions that *require* federally regulated lenders (and their affiliated servicers) to notify borrowers in writing that they *must* purchase flood insurance within a specified period of time if they lack the minimum insurance coverage required under the Act. *See* 42 U.S.C. 4012a(e)(1). The Act further authorizes these lenders to force-purchase a sufficient amount of flood insurance coverage to achieve compliance with the NFIA if a borrower fails to purchase adequate insurance. *See* 42 U.S.C. 4012a(e)(2). Critically, these requirements of the NFIA make no reference to the terms set forth in loan agreements between lenders and borrowers. Stated differently, even if the borrower was not required to maintain flood insurance when the loan was consummated, the NFIA would nevertheless *require* the lender to impose such a requirement and *require* a certain amount of

flood insurance coverage to be placed on the property that secures the loan if the property was later found to be located in a "special flood hazard area."

In light of this discussion, if JPMorgan Chase Bank properly complied with the requirements of the NFIA and acted pursuant to its notice and "force-purchase" provisions, it cannot be held liable under the TILA for "changing the terms" of the HELOCs at issue in this dispute. *See Watt v. Alaska*, 451 U.S. 259, 267 (1981) (holding that courts should read federal statutes "to give effect to each . . . while preserving their sense and purpose"). To hold that a lender's compliance with the provisions of the NFIA would render it liable for "changing terms" under the TILA (under the circumstances presented herein) would frustrate the intent and effect of these congressional acts.[2]

As explained in the August 2010 order, however, JPMorgan Chase Bank was *not* required under the NFIA to purchase flood insurance coverage for the property securing Ms. Hofstetter's HELOC. For this reason, the NFIA does not shield the bank from liability under the TILA for changing the terms of her HELOC after origination. As to her situation, the proposed complaint states a plausible claim under 12 C.F.R. 226.5b(f)(3). With respect to the proposed second named plaintiff, Mr. Modersbach, his situation is somewhat different. Since he indisputably carried a positive principal loan balance and a $100,000 open line of credit at the time the property securing his HELOC was deemed by FEMA to be located within a "special flood hazard area," the initial set of flood insurance "form letters" sent to him by defendants (requiring him to obtain at least $100,000 in flood insurance coverage) were arguably authorized and required under the NFIA. Plaintiff's counsel conceded as much at the hearing on this motion, acknowledging that if defendants had only required Mr. Modersbach's to maintain $100,000 in flood insurance coverage, he would likely have no claims against defendants.

JPMorgan Chase Bank, however, decided to *increase* Mr. Modersbach's minimum flood insurance requirements for his HELOC to $250,000 in coverage. This move was arguably *not* authorized by the NFIA or any of its implementing regulations. Since Mr. Modersbach's credit

---

[2] Of course, a different analysis might apply if the NFIA's requirement of flood insurance coverage existed at the time the loan was consummated. This order takes no position on this issue.

13

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

limit at the time the bank imposed the $250,000 minimum-coverage requirement was only $100,000, and because his principal loan balance was far below that amount, the NFIA only required flood insurance coverage in the amount of $100,000 (*see* Dkt. No. 51 at 13). *See* 42 U.S.C. 4012a(b)(1). Given this conclusion, any decision by JPMorgan Chase Bank to increase Mr. Modersbach's minimum required flood insurance coverage above $100,000 — even if based upon the "best practices" set forth by FEMA or some other agency — forms a plausible basis for "change of terms" liability under 12 C.F.R. 226.5b(f)(3).[3] In other words, Mr. Modersbach can state a plausible claim that JPMorgan Chase Bank violated this regulation.

None of defendants' arguments to the contrary is persuasive. *First*, this order wholly rejects defendants' contention that property insurance requirements are not "terms" under the TILA and 12 C.F.R. 226.5b(f)(3). As stated, both the regulations and Federal Reserve Board commentary on this issue confirm that fees and premiums associated with property insurance written in connection with a loan are terms under the TILA. *Second*, this order rejects defendants' argument that the borrowers "agreed in their respective Deeds of Trust that they would be required to maintain flood insurance if their respective properties fell within a flood zone" and that defendants' actions in imposing and increasing flood insurance requirements were authorized under 12 C.F.R. 226.5b(f)(3)(i) (Opp. 14). The proposed complaint plausibly alleges that no such "agreement" existed. The deeds of trust for both Ms. Hofstetter and Mr. Modersbach merely stated (Dkt. Nos. 39-1, 92):

> You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. . . . If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6.

---

[3] Adhering to flood insurance "best practices" set forth by a regulatory agency does not absolve lenders from complying with the requirements of the TILA or applicable state laws. Simply because an agency recommends that lenders maintain a certain amount of flood insurance coverage does not mean that lenders have *carte blanche* to do so without regard to the terms of their loan agreements with borrowers.

United States District Court

For the Northern District of California

If defendants intended for this language in its initial disclosures to reserve their right to impose a requirement of flood insurance at a later date pursuant to 12 C.F.R. 226.5b(f)(3)(i), they should have disclosed — as the regulation requires — "that specified changes will occur if a specified event takes place."  As explained in the Federal Reserve Board's commentary on this rule, "[b]oth the triggering event and the resulting modification *must be stated with specificity*."  12 C.F.R. Pt. 226, Supp. I, § 5b(f)(3), cmt. 1 (emphasis added).  In the excerpt from the deeds of trust shown above, no "triggering event" was disclosed for the imposition or increase of flood insurance coverage by the lender.  Similarly, no specificity was provided as to *how much* flood insurance coverage would be required.  In sum, JPMorgan Chase Bank cannot rely on this so-called "agreement" to justify the "change of terms" alleged herein.

*Third*, this order rejects defendants' argument that because their flood insurance notices were sent from Chase Home Finance (the servicer of the HELOCs in question), JPMorgan Chase Bank (the owner of the loans) cannot be held liable under the TILA.  While it is true that only "creditors" (*i.e.*, the owners of a loan) can be held liable for the alleged TILA violations, the mere fact that the notices were mailed by the servicer of the loan says nothing conclusive about whether JPMorgan Chase Bank was responsible for changing the terms of the loan.  Discovery will color in these details.  As pleaded, the proposed complaint sufficiently alleges that JPMorgan Chase Bank "changed the terms" at issue.

For all these reasons, and since all factors under FRCP 15(a) weigh in favor of allowing this amendment, leave to amend the complaint to add a TILA claim against JPMorgan Chase Bank based upon a "change of terms" under 12 C.F.R. 226.5b(f)(3) is **GRANTED**.

Finally, this order also finds that a plausible claim under 12 C.F.R. 226.9(c) has been stated.  This particular claim is premised on the allegation that JPMorgan Chase Bank "fail[ed] to provide proper notice, after origination, that [it] was amending the terms of the credit plans as described in the deeds of trust" (Compl. ¶ 71).  This regulation states in relevant part:

> For home-equity plans subject to the requirements of § 226.5b, whenever any term required to be disclosed under § 226.6(a) is changed or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected.  The notice shall be mailed or delivered at least 15 days prior to the effective date of the change.

United States District Court

For the Northern District of California

> The 15-day timing requirement does not apply if the change has been agreed to by the consumer; the notice shall be given, however, before the effective date of the change.

12 C.F.R. 226.9(c)(1)(i).

This order has already concluded that property insurance coverage written in connection with a loan triggers mandatory "finance charge" disclosures under 226.6(a). It has also been determined that the loan agreements in question did *not* authorize defendants to unilaterally impose or increase mandatory flood insurance requirements to whatever amounts they deemed proper. Accordingly, unless the notices sent to borrowers were *required* under the NFIA and its implementing regulations, the requirements of 12 C.F.R. 226.9(c)(1)(i) apply to the various flood insurance "form letters" sent to Ms. Hofstetter and Mr. Modersbach by defendants. Given that Ms. Hofstetter was *not* required to purchase *any* flood insurance coverage under the NFIA, the notices mailed to her were clearly subject to the requirements of 12 C.F.R. 226.9(c)(1)(i). Similarly, the letters mailed to Mr. Modersbach informing him that he was required to purchase $250,000 in flood insurance coverage (above and beyond the minimum coverage amount required under the NFIA) similarly fell within the reach of 12 C.F.R. 226.9(c)(1)(i).

For these reasons, and since all factors under FRCP 15(a) weigh in favor of allowing this amendment, leave to amend the complaint to add a TILA claim against JPMorgan Chase Bank under 12 C.F.R. 226.9(c)(1)(i) is also **GRANTED**.

### ii.    Violations Based Upon *Initial* Loan Disclosures

At the hearing on the instant motion, plaintiff's counsel made clear that the flood insurance "form letters" sent by defendants to Ms. Hofstetter and Mr. Modersbach in 2009 and 2010 formed the backbone of their proposed amended TILA claim. In other words, the *initial* loan disclosures made by JPMorgan Chase Bank years earlier are not being challenged as "inadequate" under the TILA. Given this clarification, it is unnecessary to address whether equitable tolling applies to plaintiff's revised TILA claim. So long as plaintiff's TILA challenge is limited to the bank's supplemental disclosures — *e.g.*, the flood insurance "form letters" — mailed to Ms. Hofstetter and Mr. Modersbach, there is no need to "toll" the TILA claim herein. In sum, there is no TILA claim targeting the bank's initial disclosures.

**United States District Court**
For the Northern District of California

**B.      Section 17200 Claims**

Turning next to plaintiff's state claims, the proposed complaint seeks to add two additional claims against JPMorgan Chase Bank and Chase Home Finance:  (1) a claim of "unlawful" business practices under Section 17200 of the California Business and Professions Code, and (2) a claim of "unfair" business practices pertaining to the factual allegations tied to Mr. Modersbach.

**i.      "Unlawful" Business Practices**

Since this order has already found that a plausible claim for a violation of the TILA has been stated, it follows that a claim of "unlawful" business practices under Section 17200 of the California Business and Professions Code has also been stated.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Since all factors under FRCP 15(a) weigh in favor of allowing this amendment, leave to amend the complaint to allege a claim of "unlawful" business practices under Section 17200 is **GRANTED**.

**ii.      "Unfair" Business Practices**

With respect to the proposed complaint's claim of "unfair" business practices, the August 2010 order already found that a plausible claim for relief had been stated against defendants by the original named plaintiff, Ms. Hofstetter (Dkt. No. 51 at 20).  As explained in that order, conduct is "unfair" if it is "tethered" to some legislatively declared policy or proof of some actual or threatened impact on competition.  *Id.* at 186–87.  In this connection, the prior complaint cited to two legislatively declared policies pertaining to flood insurance coverage to satisfy the "tethering" requirement under *Cel-Tech*.  These policies state (Compl. ¶ 58):

> These business practices are contrary to the principle that (i) "lenders should avoid creating situations where a building is overinsured", 74 Fed. Reg. 35,914, 35,918 (July 21, 2009) [and] (ii) consumers should receive "meaningful disclosure of credit terms", 15 U.S.C. § 1601(a).

Both of these policies — one of which is found within the language of the TILA itself — support plaintiff's theory that defendants' conduct in sending allegedly misleading flood insurance "form letters" to borrowers regarding federal flood insurance requirements, and force-purchasing flood insurance coverage in excess of the minimum amount required under the NFIA were "unfair"

17

1 under Section 17200. Accordingly, the August 2010 order concluded that a claim of "unfair"

2 business practices had been plausibly stated.

3      The only issue that needs to be addressed herein is whether Mr. Modersbach — the

4 proposed second named plaintiff — has also stated a plausible claim for "unfair" business

5 practices under Section 17200. The answer is yes. At the time his property was determined to be

6 located in a "special flood hazard area," Mr. Modersbach had a $100,000 line of credit with

7 JPMorgan Chase Bank and a principal loan balance of around $37,000. When defendants initially

8 informed Mr. Modersbach that he was required to purchase flood insurance coverage under the

9 NFIP, he was instructed to purchase insurance coverage in an amount that was the "lesser" of

10 (Compl. ¶ 29):

11        •   The maximum amount of insurance coverage available
            through the National Flood Insurance Program (NFIP),
12             which is currently $250,000; or

13        •   100% of the full replacement cost of the dwelling and
            insurable improvements; or
14

15        •   The principal balance of the loan or credit line amount for
            lines of credit.

16 This language reasonably tracks the minimum flood insurance requirements set forth in the NFIA

17 and its implementing regulations (*see* Dkt. No. 51 at 13). In response, Mr. Modersbach purchased

18 flood insurance coverage in the amount of $100,000 — the amount of his credit line at the time.

19 The proposed complaint does not challenge this conduct by defendants.

20      The complaint, however, *does* challenge the notice that was mailed to Mr. Modersbach six

21 months later, wherein he was informed that he was now required to purchase flood insurance

22 coverage in an amount equal to the "lesser" of (Compl. ¶ 38):

23        •   The maximum amount of insurance coverage available
            through the National Flood Insurance Program (NFIP),
24             which is currently $250,000; or

25        •   100% of the full replacement cost of the dwelling and
            insurable improvements.
26

27 Unlike the prior notice which included language that tracked the minimum requirements of the

28 NFIA, the criteria set forth in the "new" notice made no reference to either the principal balance

of the loan or the credit line amount for lines of credit. The effect of this change for was that

United States District Court

For the Northern District of California

1   Mr. Modersbach was now required to purchase $250,000 in flood insurance coverage — over

2   $150,000 more than his credit limit and over $100,000 more than his principal loan balance.

3         By making this move, defendants exposed themselves to both the requirements of the

4   TILA and applicable state laws.  Indeed, the regulating agencies of the NFIA commented directly

5   upon the risks of requiring flood insurance coverage in excess of the Act's minimum required

6   coverage, stating that while "[l]enders are permitted to require more flood insurance coverage

7   than required by" the NFIA, "lenders should avoid creating situations where a building is

8   'over-insured.'"  74 Fed. Reg. 35914, 35936 (July 21, 2009).  The agencies further explained that

9   while "there are no penalties for over insurance under the Act and Regulation[s] . . . *there may be*

10  *penalties for over-insurance under applicable State law*."  *Id.* at 35918 (emphasis added).  In

11  other words, the regulating agencies expressly contemplated the applicability of state law to

12  situations where a lender exceeds the minimum flood insurance coverage requirements under the

13  NFIA.  This is exactly what has been plausibly alleged with respect to Mr. Modersbach.

14        This does not mean, however, that liability for "unfair" business practices would be a

15  foregone conclusion any time a lender requires flood insurance coverage in excess of minimum

16  NFIA requirements.  In fact, the regulating agencies have also expressly stated that while "[t]he

17  Regulation requires a minimum amount of flood insurance . . . , lenders may require more

18  coverage, if appropriate."  *Ibid*.  On this point, the agencies further explained that "[e]ach lender

19  has the responsibility to tailor its own flood insurance policies and procedures to suit its business

20  needs and protect its ongoing interest in the collateral."  *Id.* at 35936.  In this connection, defense

21  counsel correctly noted at the hearing that FEMA's own guidelines encourage lenders to consider

22  other factors, such as the replacement cost value of the property securing the loan, when

23  determining an "appropriate" amount of flood insurance coverage to impose on borrowers.

24  Defendants also reasonably argued that the presence of a senior lien might be an appropriate

25  consideration for deviating upwards from the NFIA's minimum requirements.  Any one of these

26  considerations could potentially be a strong defense against a claim of "unfair" business practices.

27        That said, the sole question presented in the instant motion is whether a plausible claim of

28  "unfair" business practices has been stated, not whether defendants' had plausible justifications

**United States District Court**

For the Northern District of California

1   for their actions.  Whether defendants' actions were consistent with FEMA's "best practices" and

2   other agency materials is irrelevant to whether plaintiff's claim can proceed.  For these reasons,

3   and since all factors under FRCP 15(a) weigh in favor of allowing this amendment, leave to

4   amend the complaint to state a claim of "unfair" business practices under Section 17200 based

5   upon the factual allegations of Mr. Modersbach is **GRANTED**.

6           **3.      PROPOSED PLAINTIFF ROGER MODERSBACH**

7           Given that the claims brought by Mr. Modersbach against defendants overlap on many

8   levels with those asserted by Ms. Hofstetter, plaintiff's motion for leave to add Mr. Modersbach

9   as a second named plaintiff is **GRANTED**.  As stated, his addition to this action is not being sought

10  in bad faith, will not unduly prejudice defendants, and is not the product of undue delay or

11  repeated failures by plaintiff.  Moreover, his addition will neither "greatly alter[] the nature of the

12  litigation" nor "require[] defendants to . . . undertake[], at a late hour, an entirely new course of

13  defense."  *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

14          This order will, however, comment briefly upon potential hurdles on the horizon with

15  respect to Rule 23 and Mr. Modersbach's claim.  While defendants' alleged adherence to FEMA

16  "best practices" and other agency guidelines in its flood insurance practices cannot bar plaintiff's

17  "unfair" business practices claim, it appears highly relevant to whether the flood insurance

18  coverage they required for Mr. Modersbach's HELOC and property was "appropriate" and not

19  "unfair."  In this connection, the specific circumstances surrounding Mr. Modersbach's HELOC

20  — such as whether he had a first mortgage — may significantly impact whether his claims are

21  "typical" of other borrowers.  This order should not be interpreted as taking a position on any

22  Rule 23 issues at this time.  That said, counsel should be mindful of these considerations as class

23  certification approaches.

24          **4.      PUTATIVE CLASS AND DAMAGES ALLEGATIONS**

25          Finally, defendants' criticisms targeting the scope of the putative class allegations and the

26  appropriateness of various "remedies" set forth in the proposed complaint are premature and will

27  not be addressed at this time.  The propriety of plaintiff's proposed class definitions will be

28  addressed during the class certification process, when full attention can be given to the issue.

Similarly, the appropriateness of the various remedies sought in the complaint need not be addressed until, if ever, the proceedings reach a point where liability is established and relief ordered.  For these reasons, defendants' requests to strike these portions of the proposed complaint is **DENIED**.  This denial is without prejudice to defendants re-raising these objections and arguments when the issues become ripe for adjudication.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file a second amended complaint and add a second named plaintiff is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff shall file the amended complaint within **FIVE CALENDAR DAYS** of this order and an answer must be filed within **TWENTY CALENDAR DAYS** thereafter.  No further dismissal motions will be allowed.

**IT IS SO ORDERED.**

Dated:  October 29, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE