Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

James H. Kaster, CA State Bar No. 248949
Kaster@nka.com
Paul J. Lukas, MN State Bar No. 22084X
Lukas@nka.com
(admitted **pro hac vice**)
Kai Richter, MN State Bar No. 0296545
KRichter@nka.com
(admitted **pro hac vice**)
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

Attorneys for Plaintiffs and the Proposed Classes

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sheila I. Hofstetter and Roger Modersbach, individually, as representatives of the classeses, and on behalf of the general public,<br><br>      Plaintiff,<br><br> vs.<br><br>Chase Home Finance, LLC, JP Morgan Chase Bank, N.A. , and DOES 1-50, inclusive,<br><br>      Defendants. | Case No. CV-10-1313 WHA<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>**(1) Violation of The Truth and Lending Act (15 U.S.C. § 1601 *et seq.*)**<br><br>**(2) Violation of California's Unfair Business Practices Act (Business and Professional Code § 17200 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

**PRELIMINARY STATEMENT**

1.      Plaintiffs Sheila I. Hofstetter and Roger Modersbach ("Plaintiffs") bring this action under the Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) and California's Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200 *et seq.*), on their own behalf and on behalf of the Proposed Classes identified below.   Plaintiffs and the putative class members are or were customers of Chase Home Finance, LLC ("CHF") and/or JP Morgan Chase Bank, N.A. ("JPM") (collectively, "Defendants").   Plaintiffs and the putative class members have or had loans or lines of credit with Defendants secured by their property and were improperly required by Defendants to purchase and/or maintain flood insurance not required by law, or in amounts greater than required by law or necessary to secure the sums borrowed or the amount of credit available. Defendants unfairly and unlawfully imposed these excessive flood insurance requirements in breach of their duty of good faith and fair dealing to their customers, without any reasonable basis or justification, and without clearly, conspicuously, or adequately disclosing such requirements in the relevant loan and mortgage documents.   In addition, Defendants misrepresented federal flood insurance requirements at the time such insurance was demanded and/or force-placed, improperly changed the terms of their customers' credit plans without proper notice or authorization, purchased force-placed flood insurance coverage through and/or from related entities in bad faith at inflated premiums for their own financial gain, and disregarded generally-applicable standards of business conduct.

2.      Plaintiffs bring this action on behalf of two proposed classes.   Plaintiffs assert a federal Truth in Lending Act ("TILA") claim on behalf of a Proposed Nationwide Class consisting of all persons who have or had a loan or line of credit with JPM secured by their residential property, and were required by JPM (or its agents or affiliates) to purchase or maintain flood insurance on their property in the United States within one year prior to this action's filing date through the date of final disposition of this action.   Plaintiffs assert a claim under the California Unfair Business Practices Act ("CUBPA") on behalf of a Proposed California Class consisting of all persons who have or had a loan or line of credit with Defendants secured by their residential property, and were required by Defendants to purchase or maintain flood insurance on

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

their property in the State of California within four years prior to this action's filing date through the date of final disposition of this action.

3.      On behalf of themselves and the Proposed Classes, Plaintiffs seek monetary relief, injunctive relief, declaratory relief, penalties, and attorneys' fees and costs pursuant to the TILA and CUBPA.

## THE PARTIES

4.      Individual and representative Plaintiff Sheila I. Hofstetter ("Hofstetter") resides in Alamo, California (Contra Costa County).  Hofstetter is a member of the Proposed Classes.

5.      Individual and representative Plaintiff Roger Modersbach ("Modersbach") also resides in Alamo, California.  Modersbach is a member of the Proposed Classes.

6.      Defendant JP Morgan Chase Bank, N.A. ("JPM") is a national banking association that does business in California and several other states throughout the United States.

7.      Defendant Chase Home Finance, LLC ("CHF") is a Delaware limited liability company that services mortgage loans originated by JPM, including mortgage loans to California homeowners.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case is being brought under the Truth in Lending Act, 12 U.S.C. § 1601 *et seq.*.  The Court also has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").  Plaintiffs are citizens of the state of California.  Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members in each of the Proposed Classes.

9.      In addition, this Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(a).  The matter in controversy is greater than $75,000 and this matter is between citizens of different states.  This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in the United States District Court, Northern District of California pursuant to 28 U.S.C. § 1391, because Plaintiffs reside in Contra Costa County and Defendants

-3-

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

1   regularly conduct business in this District, and because a substantial part of the events giving rise

2   to the claims occurred in this district.

3       11.   Pursuant to Civil L.R. 3-2(c) and (d), this action is properly assigned to the San

4   Francisco Division of the Northern District of California because a substantial portion of the

5   events giving rise to this dispute occurred in Contra Costa County, California.

6   **FACTUAL ALLEGATIONS**

7   ***Individual and Representative Allegations Relating to Plaintiff Hofstetter***

8       12.   In connection with the purchase of their home in January of 2006, Plaintiff

9   Hofstetter and her husband (the "Hofstetters") obtained a $175,000.00 line of credit from JPM.

10  All sums advanced under this line of credit were secured by a deed of trust dated January 30,

11  2006, which was signed by the Hofstetters.  This deed of trust identified JPM "or its successors or

12  its assignees" as the beneficiary.

13      13.   CHF serviced the Hofstetters' line of credit with JPM.  The Hofstetters paid an

14  annual fee for these services, plus other valuable compensation.  On information and belief,

15  CHF's conduct was authorized and/or ratified by JPM at all relevant times, and JPM was

16  responsible for its conduct.

17      14.   The only advance that the Hofstetters ever received in connection with their line of

18  credit was a required initial disbursement, which was paid back quickly.  The Hofstetters never

19  received any further advances under the line of credit.

20      15.   In 2008, JPM sent the Hofstetters a letter stating that, due to an alleged decline in

21  the value of their property, "we are suspending future draws against your account as of August

22  16, 2008."  The letter further stated: "You will not be able to draw on the line."  Subsequent to

23  receiving this letter, the Hofstetters received statements from "Chase" indicating that their

24  available credit was $0.

25      16.   On or about August 11, 2009, CHF advised the Hofstetters via form letter that

26  their property was located in a Special Flood Hazard Area ("SFHA").  This letter stated that

27  "Federal law requires" that flood insurance be purchased and maintained for the property, and

28  indicated that CHF would "have no choice" but to purchase flood insurance for the property if

-4-

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

they did not obtain flood insurance coverage on their own.

17.     Contrary to the statements in this letter, federal law did not require the Hofstetters to purchase or maintain flood insurance, and does not require flood insurance beyond the principal balance or available credit under an existing loan or credit line.  Accordingly, this statement was false, deceptive, misleading, unfair, and/or unlawful.

18.     On September 1, 2009, CHF sent the Hofstetters a second letter, stating that "according to the terms of your mortgage, you are required to maintain continuous flood insurance on your property."

19.     This statement also was fraudulent, deceptive, misleading, unfair, and/or unlawful. JPM's mortgage interest in the Hofstetters' property extended only insofar as its financial stake in the Hofstetters' property, and at the time of this letter, all "advances" secured by the deed of trust already had been repaid in full.  JPM's Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC Agreement") specifically provided that "We will release the Mortgage when all amounts due under the Mortgage and this Agreement have been paid."

20.     CHF's September 1, 2009 letter advised the Hofstetters that if they did not obtain "adequate" flood insurance coverage, then CHF would "have no choice" but to purchase a $175,000 flood insurance policy for them and charge the Hofstetters $1,575.00 for the premium. This letter further advised them that this policy would be purchased through an affiliate of Chase and likely would cost more than comparable coverage that could be independently obtained. Approximately one month thereafter, on or about October 6, 2009, CHF notified the Hofstetters by form letter that it had force-placed a flood insurance policy issued by American Security Insurance Company ("ASIC") in the amount of $175,000, and added $1,575.00 to the Hofstetters' loan balance.  This letter further stated: "A licensed affiliate of Chase was paid a commission in connection with the policy that we purchased for you."

21.     JPM and CHF owed a duty of good faith and fair dealing to the Hofstetters. Defendants breached this duty by demanding that the Hofstetters procure flood insurance in excess of their loan balance and available credit, by force-placing $175,000 worth of coverage on their property when their loan balance and available credit were $0, by charging the cost of this

coverage to the Hofstetters, by purchasing such force-placed flood insurance coverage through and/or from related entities at an inflated premium instead of through and/or from disinterested parties, and by asserting that Defendants "had no choice" but to do so when in fact Defendants had no reasonable basis or justification for doing so and the Hofstetters' line of credit was effectively terminated.

22. Defendants also failed to clearly, conspicuously, adequately, or meaningfully disclose to the Hofstetters, upon origination of their line of credit, that Defendants would demand flood insurance coverage in excess of the Hofstetters' loan balance or available credit. To the contrary, the deed of trust provided that Defendants only would purchase force-placed insurance coverage if "appropriate to protect our interest in the Property". Further, each of the three letters referenced above (dated August 11, September 1, and October 6, 2009) contained language indicating that the needed amount of coverage was equal to the "lesser" of:

- The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000; or
- 100% of the full replacement cost value of the dwelling and insurable improvements; or
- The principal balance of the loan or credit line amount for lines of credit.

23. The Hofstetters have contacted Defendants by phone and by letter in an effort to reverse the improper flood insurance charges. Plaintiff's final attempt was by certified letter on February 23, 2010.

24. In spite of these efforts, Defendants have refused to reverse the charges, and CHF has advised the Hofstetters that the only way to prevent additional charges for flood insurance premiums is to close the account. CHF has further advised the Hofstetters that in order to close their account, they will be required to first pay the outstanding balance of $1,575.00.

25. Defendants' conduct with respect to the Hofstetters is unfair, unconscionable, and unlawful. The Hofstetters have suffered a wrongful encumbrance on their property as a result of Defendants' conduct, and have paid interest charges on the flood insurance premiums, which were added to their loan balance, in order to prevent Defendants from taking steps to collect on

-6-

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

1   this "debt" which could affect their credit rating.

2         *Individual and Representative Allegations Relating to Plaintiff Modersbach*

3       26.     In December of 2004, Plaintiff Moderbach obtained a $100,000.00 line of credit
4   from JPM, which was secured by his home.  In connection with this line of credit, Modersbach
5   and his wife signed a deed of trust for the property dated December 9, 2004.  This deed of trust
6   identified JPM "or its successors or its assignees" as the beneficiary.

7       27.     CHF serviced Modersbach's line of credit with JPM.  Modersbach paid an annual
8   fee for these services, plus other valuable compensation.  On information and belief, CHF's
9   conduct was authorized and/or ratified by JPM at all relevant times, and JPM was responsible for
10   its conduct.

11       28.     At the time Modersbach opened his line of credit, he received an advance of
12   $50,000 under the line.  He never received any further advances under this line of credit, and has
13   paid down the balance of the line to less than $37,000.

14       29.     On or about August 10, 2009, CHF advised Modersbach via form letter that his
15   property was located in a Special Flood Hazard Area ("SFHA").  This form letter was
16   substantially the same as the form letter that CHF sent to the Hofstetters on August 11, 2009.  In
17   this letter, CHF stated that "Federal law requires" that flood insurance be purchased and
18   maintained for the property, and indicated that CHF would "have no choice" but to purchase
19   flood insurance for the property if Modersbach did not obtain flood insurance coverage on his
20   own.  This letter further stated that the needed amount of coverage was equal to the "lesser" of:

21         •   The maximum amount of insurance coverage available through the National Flood
22            Insurance Program (NFIP), which is currently $250,000; or

23         •   100% of the full replacement cost value of the dwelling and insurable
24            improvements; or

25         •   The principal balance of the loan or credit line amount for lines of credit.

26       30.     On September 1, 2009, CHF sent Modersbach a second form letter that was
27   substantially the same as the form letter that CHF sent to the Hofstetters on the same date.  This
28   letter advised Modersbach that if he did not obtain "adequate" flood insurance coverage, then

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

CHF would "have no choice" but to purchase a $100,000.00 flood insurance policy for him and charge him $900.00 for the premium. This letter further advised him that this policy would be purchased through an affiliate of Chase and likely would cost more than comparable coverage that could be independently obtained.

31.     On October 6, 2009, CHF sent Modersbach a third form letter that again was substantially similar to the form letter that CHF sent to Hofstetters on the same date. This form letter claimed that CHF had not received proof of flood insurance from Modersbach, and advised Modersbach that CHF therefore had force-placed a flood insurance policy issued by ASIC in the amount of $100,000, at a premium of $900.00. This letter further stated: "A licensed affiliate of Chase was paid a commission in connection with the policy that we purchased for you."

32.     Contrary to CHF's October 6, 2009 form letter, Modersbach previously had provided CHF with proof of flood insurance on September 8, 2009, demonstrating that Modersbach had obtained a flood insurance policy for his property in the amount of $100,000, at a cost of $503 (approximately $400 less than the amount charged by CHF for force-placed coverage). Accordingly, Modersbach sent a follow-up letter to CHF on October 10, 2009, asking it to confirm that "I am in compliance with your flood insurance requirement and that there will be **no** charges for the flood insurance you have purportedly obtained on my behalf."

33.     After receiving this follow-up letter from Modersbach, CHF cancelled the flood insurance policy that it had force-placed on his property, and refunded the $900.00 premium charge on October 28, 2009. Defendants did not demand more than $100,000 in flood insurance coverage on Modersbach's property at that time.

34.     On May 12, 2010, while Modersbach's $100,000 flood insurance policy remained in effect, CHF sent a new form letter to Modersbach, asserting that "we do not have proof of adequate flood insurance coverage on your property." This letter further asserted that "you must increase your flood insurance coverage by $150,000", and indicated that if CHF did not receive proof of additional flood insurance, CHF would "have no choice" but to purchase such additional insurance for him. This assertion was false, deceptive, misleading, unfair, and unlawful because Defendants were not legally obligated to require or force-place additional flood insurance

-8-

coverage for Modersbach's property.

35.     Upon receiving this May 12, 2010 letter from CHF, Moderbach promptly called CHF and also wrote to both CHF and JPM on May 26, 2010, to object to this increase in Defendants' flood insurance requirements.  Modersbach pointed out that his existing $100,000 in flood insurance coverage was already more than adequate to cover Defendants' financial interest, and objected that it was "arbitrary" for Defendants to require additional coverage that was not required by federal law.

36.     Notwithstanding Modersbach's May 26, 2010 letter, Defendants continued to require that he increase his flood insurance coverage.  On June 3, 2010, CHF sent another form letter to Modersbach, reasserting that "you must increase your flood insurance coverage by $150,000."  This letter further asserted: "Since you have not provided us with proof of additional flood coverage as of the date of this letter, we have asked an insurance company to issue a binder placing additional flood coverage on your dwelling."  In addition, this letter repeated CHF's earlier false assertion that CHF would "have no choice" but to purchase a flood insurance policy for him if he did not provide CHF with proof of additional coverage.

37.     After receiving this June 3, 2010 form letter, Modersbach spoke to a company representative on June 19, 2010, Duan Witcher, who claimed to speak on behalf of JPM's CEO with regard to Modersbach's situation.  This company representative asserted that Chase had changed its insurance requirements to federal maximums in all cases, without regard to individual circumstances, and further stated that there "is no leeway" with respect to this policy.

38.     On June 29, 2010, CHF sent another form letter to Modersbach.  This letter stated that "your minimum acceptable flood insurance amount is $250,000", and further asserted that "your flood coverage amount of $100,000.00 . . . is below the minimum requirement for your loan." The letter also stated:

> At a minimum, the flood insurance coverage amount you need to obtain on your flood insurance policy must be equal to the least of the following:
>
> • 100% of the full replacement cost value of the dwelling and insurable improvements, or

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

- The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000.00.

Notably, unlike the form letter that CHF sent to Modersbach on August 10, 2009, this letter did *not* include a third bulleted option allowing for flood insurance in the amount of "[t]he principal balance of the loan or credit line amount for lines of credit." It was unfair, unlawful, and deceptive for Defendants not to provide Modersbach this third option, and to arbitrarily change their flood insurance requirements without his consent.

39. The following day, on June 30, 2010, Modersbach spoke to another company representative, Misty Johnson, who identified herself as being in JPM's executive office. During this call, Modersbach pointed out the sizeable difference between his outstanding balance (less than $37,000) and the $250,000 insurance requirement imposed by Defendants. In response, she indicated that Defendants were aware of greater extremes than that.

40. On July 7, 2010, CHF sent another form letter to Modersbach, indicating that it had purchased a flood insurance policy issued by ASIC in the amount of $150,000, at a premium of $1,350. This letter further stated: "A licensed affiliate of Chase was paid a commission in connection with the policy that we purchased for you."

41. A few days later, "Chase" sent Modersbach a Home Equity Line of Credit Statement ("Statement") for the period from June 12, 2010 through July 12, 2010. This statement added the cost of the flood insurance policy ($1,350) to his loan balance, and included 1/12 of the premium ($112.50) in the minimum payment due. This premium charge exceeded Modersbach's interest charges for the same month. Upon receiving this statement, Modersbach paid the full minimum payment due ($213.28), plus an additional $100 in principal.

42. CHF's July 7, 2010 letter indicated that Defendants would cancel the force-placed flood insurance policy issued by ASIC if Modersbach provided proof of additional coverage. Therefore, in order to avoid paying further exorbitant charges for force-placed flood insurance, Modersbach increased the coverage on his existing $100,000 flood insurance policy to $250,000. Modersbach paid approximately $600 to increase his coverage amount by $150,000, substantially less than the $1,350 premium that Defendants charged him for the $150,000 force-placed policy

issued by ASIC.

43.     Modersbach provided proof of such additional coverage to CHF on the same date that it was obtained.  However, in his correspondence to CHF, Modersbach expressly noted: "By securing the increased coverage to $250,000 I do not agree to the legality of that coverage, and I am doing so with a reservation of rights."  Shortly thereafter, Modersbach received a notice dated August 3, 2010, indicating that the force-placed policy issued by ASIC had been cancelled.

44.     JPM and CHF owed a duty of good faith and fair dealing to Modersbach. Defendants breached this duty by demanding that Modersbach procure flood insurance substantially in excess of his loan balance and available credit, by force-placing $150,000 worth of flood insurance coverage on his property when the property already was insured to the full amount of his line (and well in excess of his principal balance), by charging the cost of this force-placed flood insurance coverage to Modersbach, by purchasing such force-placed flood insurance coverage through and/or from related entities at inflated premiums instead of through and/or from disinterested parties, and by asserting that Defendants "had no choice" but to do so when in fact Defendants had no reasonable basis or justification for doing so.

45.     Defendants also failed to clearly, conspicuously, adequately, or meaningfully disclose to Modersbach, upon origination of his line of credit, that they would demand flood insurance coverage in excess of the Modersbach's loan balance or available credit.  To the contrary, the deed of trust provided that Defendants only would purchase force-placed insurance coverage if "appropriate to protect our interest in the Property".

46.     Defendants' conduct with respect to Modersbach was unfair, unconscionable, and unlawful.  As a result of Defendants' conduct, Modersbach has been forced to pay significant charges for excessive flood insurance coverage that he did not want.

### *Defendants' Financial Incentives to Unfairly Take Advantage of Their Customers*

47.     Defendants have engaged in the above practices in order to reap unfair financial advantage from their customers, including Hofstetter and Modersbach.

48.     By adding the cost of force-placed flood insurance coverage to their customers' balance, Defendants earn interest (and in some cases late fees or other fees) on the amounts

-11-

1   charged.

2       49.     By purchasing force-placed flood insurance coverage through an affiliate (e.g.,

3   JPMorgan Insurance Agency, Inc., Chase Insurance Agency, Inc., etc.), instead of through an

4   independent broker, Defendants also earn a commission for their affiliate.

5       50.     In addition, JPM also has a significant indirect financial stake in ASIC, the

6   company that issues force-placed flood insurance policies for Defendants.  ASIC is a wholly-

7   owned subsidiary of Assurant, Inc. ("Assurant"), and JPM holds a significant ownership stake in

8   Assurant.  As of January 19, 2010, JP Morgan Chase & Co. held 3,829,722 shares in Assurant

9   through JPM and other affiliates, according to a SEC report filed on behalf of JP Morgan Chase

10  & Co. and JPM.  *See* http://www.secinfo.com/dJ5e.r1b.htm#1stPage (last visited Sept. 15, 2010).

11  Assurant's headquarters are located at One Chase Manhattan Plaza in New York.

12      51.     Upon information and belief, discovery will reveal other direct and indirect

13  financial benefits and incentives that accrue to Defendants as a result of their unfair, unlawful,

14  and unconscionable conduct set forth above.

15                              **CLASS ALLEGATIONS**

16      52.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

17  Rules of Civil Procedure.

18      53.     Plaintiffs assert their TILA claim in Count 1 on behalf of a Proposed Nationwide

19  Class defined as follows:

20              **Proposed Nationwide Class:**  All persons who have or had a loan or line of credit

21              with JPM secured by their residential property, and were required by JPM (or its

22              agents or affiliates) to purchase or maintain flood insurance on their property in the

23              United States within one year prior to this action's filing date through the date of

24              final disposition of this action.

25      54.     Plaintiffs assert their CUBPA claim in Count 2 on behalf of the Proposed

26  California Class defined as follows:

27              **Proposed California Class:**  All persons who have or had a loan or line of credit

28              with Defendants secured by their residential property, and were required by

-12-

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

1      Defendants to purchase or maintain flood insurance on their property in the State

2      of California within four years prior to this action's filing date through the date of

3      final disposition of this action.

4      55.   <u>Numerosity</u>:   The Proposed Classes are so numerous that joinder of all members

5 is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the

6 relevant time period, thousands of Defendants' customers satisfy the definition of each of the

7 Proposed Classes.

8      56.   <u>Typicality</u>:   Plaintiffs' claims are typical of the Proposed Class members.

9 Plaintiffs are informed and believe that their loan and mortgage documents were typical of those

10 of other Proposed Class members, that the flood insurance notices they received were typical of

11 those received by other Proposed Class members, that Defendants treated them consistent with

12 other Proposed Class members in accordance with Defendants' policies and practices, and that it

13 was typical for Defendants to require customers to purchase and maintain unnecessary flood

14 insurance, or flood insurance in an amount greater than that required by law and/or than required

15 to insure the amount of funds borrowed or the amount of credit available, without any reasonable

16 basis or justification, and without clearly, conspicuously, or adequately disclosing such

17 requirements in the relevant loan and mortgage documents.

18      57.   <u>Superiority</u>:   A class action is superior to other available methods for the fair and

19 efficient adjudication of the controversy, particularly in the context of a consumer claim where

20 each individual plaintiff's claims are too small to justify vigorous prosecution of separate lawsuits

21 in state or federal court against large corporate Defendants.

22      58.   <u>Adequacy</u>:   Plaintiffs will fairly and adequately protect the interests of the

23 Proposed Classes, and have retained counsel experienced in complex class action litigation.

24      59.   <u>Commonality</u>: Common questions of law and fact exist as to all members of the

25 Proposed Classes and predominate over any questions solely affecting individual members of the

26 Proposed Classes, including but not limited to:

27      A.   Whether federal law requires Defendants' customers to purchase and/or

28      maintain flood insurance in amounts greater than necessary to secure the

-13-

1   amount of funds borrowed and/or credit available under a home loan or

2   line of credit;

3   B.   Whether Defendants maintain a policy and practice of unfairly and

4        deceptively representing to their customers that federal law requires flood

5        insurance or additional flood insurance on loans or lines of credit for which

6        flood insurance or additional flood insurance is not required by law;

7   C.   Whether Defendants' standard loan and mortgage documents clearly,

8        conspicuously, and adequately disclose the amount of flood insurance that

9        Defendants require, and authorize Defendants to demand and/or force-

10       place flood insurance in amounts greater than necessary to secure the

11       amount of funds borrowed and/or credit available;

12   D.   Whether Defendants' conduct was inconsistent with JPM's uniform

13        representation in its boilerplate deeds of trust that Defendants would only

14        purchase force-placed insurance coverage if "appropriate to protect our

15        interest in the Property";

16   E.   Whether Defendants owe their customers a duty of good faith and fair

17        dealing and/or have an obligation to avoid creating situations where

18        properties are over-insured, and if so, whether Defendants breached this

19        duty and/or obligation by, *inter alia*, (i) demanding and/or force-placing

20        flood insurance in amounts greater than necessary to secure the amount of

21        funds borrowed and/or credit available; and/or (ii) purchasing force-placed

22        flood insurance coverage through and/or from related entities at inflated

23        premiums instead of through disinterested brokers and/or insurance

24        carriers;

25   F.   Whether Defendants' conduct described in this Complaint was unfair;

26   G.   Whether Defendants' conduct described in this Complaint constitutes one

27        or more violations of the TILA or its accompanying regulations;

28   H.   Whether Defendants' conduct described in this Complaint constitutes one

-14-

1    or more violations of the CUBPA;

2    I.    The appropriateness and form of any equitable relief reversing charges for

3          insurance coverage, allowing customers to close credit lines without first

4          paying premiums for flood insurance that were not required by law or

5          necessary, ordering Defendants to cease and desist from such conduct in

6          the future, or any other injunctive relief;

7    J.    The appropriateness and proper measure of monetary and other damages

8          sustained by the Proposed Classes;

9    K.    The appropriateness and proper measure of any penalties, fines, or other

10         remedies.

11   60.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because

12   prosecution of actions by or against individual members of the Proposed Classes would result in

13   inconsistent or varying adjudications and create the risk of incompatible standards of conduct for

14   Defendants.  Further, adjudication of each individual Class member's claim as separate action

15   would potentially be dispositive of the interest of other individuals not a party to such action,

16   impeding their ability to protect their interests.

17   61.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because

18   Defendants have acted or refused to act on grounds that apply generally to the Proposed Classes,

19   so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

20   classes as a whole.

21   62.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because

22   questions of law and fact common to the Proposed Classes predominate over any questions

23   affecting only individual members of the Proposed Classes, and because a class action is superior

24   to other available methods for the fair and efficient adjudication of this litigation.  Defendants'

25   conduct described in this Second Amended Complaint stemmed from common and uniform

26   policies and practices, resulted in unnecessary charges of premiums and interest that are readily

27   calculable from Defendants' records and other class-wide evidence, and rendered Defendants'

28   customers unable to close their loans or credit lines without incurring such costs.  Members of the

-15-

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

1   Proposed Classes do not have an interest in pursuing separate actions against Defendants, as the

2   amount of each Class member's individual claims is small compared to the expense and burden of

3   individual prosecution of this litigation, and Plaintiffs are unaware of any similar claims brought

4   against Defendants under the TILA or CUBPA by any members of the Proposed Classes on an

5   individual basis.   In the interests of justice and judicial efficiency, it would be desirable to

6   concentrate the litigation of all Proposed Class members' claims in a single forum in California,

7   where all of the Proposed California Class members and many of the Proposed Nationwide Class

8   members reside.   Moreover, management of this action as a class action will not present any

9   likely difficulties.   In addition, class certification is superior because it will obviate the need for

10  unduly duplicative litigation that might result in inconsistent judgments concerning Defendants'

11  practices.

12      63.     Plaintiffs intend to send notice to all members of the Proposed Classes to the

13  extent required by Rule 23.   The names and addresses of the Proposed Class members are

14  available from Defendants' records.

15                      **FIRST CLAIM FOR RELIEF**

16          **(Violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*)**

17      64.     Plaintiffs allege and incorporate by reference the allegations in the preceding

18  paragraphs.

19      65.     Plaintiffs' lines of credit were open end consumer credit plans secured by their

20  principal dwellings, and were subject to the disclosure requirements of the Truth in Lending Act,

21  15 U.S.C. § 1601 *et seq.*, and all related regulations, commentary, and interpretive guidance

22  promulgated by the Federal Reserve Board.

23      66.     JPM is a "creditor" as defined by the TILA.

24      67.     JPM was required to timely disclose all finance charges, other charges, and third-

25  party charges which may be imposed in connection with lines of credit.   *See, e.g.*, 15 U.S.C. §§

26  1637, 1637a.

27      68.     JPM was required to make these disclosures clearly and conspicuously.   *See, e.g.*,

28  15 U.S.C. § 1632.

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

69.    JPM was further required to accurately and fully disclose the terms of the legal obligation between the parties.  *See, e.g.,* 12 C.F.R. § 226.5(c).

70.    JPM violated these and other requirements under the TILA by (i) failing to clearly, fully, and accurately disclose its flood insurance requirements; and (ii) misrepresenting in its flood insurance notices that Plaintiffs were obligated to maintain flood insurance in amounts greater than required by federal law, greater than authorized in the deeds of trust,  and greater than appropriate to protect its interest in the Property.

71.    In addition, JPM violated the TILA by, *inter alia*, (i) adversely changing the terms of Plaintiffs' credit plans after origination, without Plaintiffs' consent, by requiring and force-placing more insurance than appropriate to protect its interest in the property, *see* 12 C.F.R. § 226.5b(f)(3); and (ii) failing to provide proper notice, after origination, that JPM was amending the terms of the credit plans as described in the deeds of trust, *see* 12 C.F.R. § 226.9(c).

72.    The TILA violations set forth above occurred within one year of the date that such violations were first alleged in this action, after the origination of Plaintiffs' lines of credit.  To the extent that these violations occurred earlier, Plaintiffs did not discover and did not have a reasonable opportunity to discover JPM's fraud and nondisclosures until Defendants required them to carry flood insurance on their property in an amount greater than their principal balance and available credit.   Prior to this moment, which occurred less than one year before Plaintiffs asserted their TILA claims, Plaintiffs had no reason or opportunity to complain about JPM's TILA violations because it was not yet apparent that JPM's disclosures were incomplete, inaccurate, and misleading.

73.    Plaintiffs' TILA claim is timely.  The statute of limitations on Plaintiffs' TILA claim did not begin to run and/or was equitably tolled until such time that Plaintiffs had a reasonable opportunity to discover JPM's TILA violations and complain about such violations.  *See, e.g., King v. California*, 784 F.2d 910, 915 (9th Cir. 1986); *Madrid v. JP Morgan Chase Bank, N.A.*, No. 2:09-cv-00731-JAM-GGH, 2009 WL 3255880, at *2 (E.D.Cal. Oct. 8, 2009); *Plascencia v. Lending 1st Mort.*, 583 F. Supp. 2d 1090, 1097 (N.D.Cal. 2008); *Goldman v First Nat'l Bank*, 532 F.2d 10, 21-22 (7th Cir. 1976).  It would be manifestly unjust and inconsistent

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

with the purposes of the TILA to apply and enforce an earlier accrual date for Plaintiffs' TILA claim.

74.    JPM systematically engaged in similar violations of the TILA to the detriment of other members of the Proposed Nationwide Class.

75.    Plaintiffs and the Proposed Nationwide Class have been injured and have suffered a monetary loss as a result of JPM's violations of the TILA.

76.    As a result of JPM's TILA violations, Plaintiffs and the Proposed Nationwide Class are entitled to recover actual damages and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

77.    Plaintiffs and the Proposed Nationwide Class also are entitled to recovery of attorneys' fees and costs to be paid by JPM, as provided by 15 U.S.C. § 1640(a)(3).

## SECOND CLAIM FOR RELIEF

### (Violation of Business & Professional Code § 17200, *et seq.*)

78.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

79.    Defendants were required to adhere to the requirements of the CUBPA when conducting business with Plaintiffs and other members of the Proposed California Class.

80.    Defendants engaged in unfair and unlawful business practices in violation of the CUBPA by, among other things:

      a.    Demanding and force-placing flood insurance not required by law, or in amounts greater than required by law or necessary to secure the amount of funds borrowed and/or credit available;

      b.    Deceptively misrepresenting federal flood insurance requirements and falsely asserting that Defendants "had no choice" but to require and/or force-place flood insurance coverage in amounts greater than the minimum required under federal law;

      c.    Deceptively misrepresenting the rights, remedies, and obligations conferred

by Defendants' boilerplate deeds of trust and HELOC agreements;

d. Breaching their duty of good faith and fair dealing to their customers;

e. Failing to clearly, conspicuously, and adequately disclose, in standard loan and mortgage documents, the amount of flood insurance that Defendants required;

f. Misrepresenting in their flood insurance notices that Plaintiffs were obligated to maintain flood insurance in amounts greater than required by federal law, greater than authorized in the deeds of trust, and greater than appropriate to protect Defendants' interest in the Property;

g. Purchasing force-placed flood insurance coverage through and/or from related entities at inflated premiums instead of through disinterested brokers and/or insurance carriers;

h. Violating the TILA, 15 U.S.C. § 1601, *et seq*.; and

i. Engaging in other unfair and/or unlawful conduct as described in this Complaint.

81. Defendants systematically engaged in these unfair and unlawful business practices, to the detriment of Plaintiffs and other members of the Proposed California Class;

82. These business practices are contrary to the principle that (i) "lenders should avoid creating situations where a building is over-insured", 74 Fed. Reg. 35,914, 35,918 (July 21, 2009); (ii) consumers should receive "meaningful disclosure of credit terms", 15 U.S.C. § 1601(a); and (iii) other clearly articulated principles of law.

83. The harm caused by these business practices vastly outweighs any legitimate business utility they possibly could have;

84. Plaintiffs and other members of the Proposed California Class have been injured and have suffered a monetary loss as a result of Defendants' violations of the CUBPA.

85. Plaintiffs and the Proposed California Class are entitled to restitution in the form of actual damages and injunctive relief for Defendants' violations of the CUBPA.

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

86.     As a result of Defendants' violations of the CUBPA, Plaintiffs and the Proposed California Class are also entitled to recovery of attorneys' fees and costs to be paid by Defendants, as provided by Code of Civil Procedure section 1021.5 and other applicable law.

## PRAYER FOR RELIEF

87.     WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Proposed Classes, pray for relief as follows:

A.      Determining that this action may proceed as a class action under Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, appointing Plaintiffs' counsel as counsel for the Proposed Classes, and directing that proper notice be distributed to the Proposed Classes;

B.      Declaring that JPM has committed multiple, separate violations of the TILA;

C.      Declaring that Defendants have committed multiple, separate violations of the CUBPA;

D.      Awarding Plaintiffs and the Proposed Classes all damages, restitution, penalties, and interest provided by the TILA, CUBPA, and other applicable authority;

E.      Requiring Defendants to reverse all unlawful, unfair, or otherwise improper charges for insurance coverage, allow customers to close credit lines without first paying premiums for flood insurance that was not required by law or otherwise necessary, cease and desist from such conduct in the future, and granting any other appropriate equitable or injunctive relief;

F.      Awarding reasonable attorneys' fees and costs as provided by the TILA, CUBPA, and other applicable authority; and

G.      Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

88.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury.


Dated: November 1, 2010                         NICHOLS KASTER, PLLP

                                   By:        s/ Kai Richter
                                              Matthew C. Helland
                                              Paul J. Lukas
                                              Kai Richter

                                              NICHOLS KASTER, LLP

                                   Attorneys for Plaintiffs and the Proposed Classes

-21-

SECOND AMENDED COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF