Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

James H. Kaster, CA State Bar No. 248949
Kaster@nka.com
Paul J. Lukas, MN State Bar No. 22084X
Lukas@nka.com
(admitted **pro hac vice**)
Kai Richter, MN State Bar No. 296545
KRichter@nka.com
(admitted **pro hac vice**)
Rebekah L. Bailey, CA State Bar No. 258551
Bailey@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

Attorneys for Plaintiffs and the Proposed Classes

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sheila I. Hofstetter and Roger Modersbach, individually, as representatives of the classes, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>Chase Home Finance, LLC, JP Morgan Chase Bank, N.A. , and DOES 1-50, inclusive,<br><br>Defendants. | Case No. CV-10-1313 WHA<br><br><br><br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: March 24, 2011 (8:00 a.m.) |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

    I.    Chase's Explanation for Its Increased Flood Insurance Requirements Is False ..... 2

    II.    The Proposed TILA Class Should Be Certified ........................................................ 5

        A.    The Rule 23(a) Requirements Are Satisfied ................................................. 5

        B.    Certification Is Appropriate Under Rule 23(b)(2) ....................................... 5

        C.    Certification Is Also Appropriate Under Rule 23(b)(3) .............................. 6

        D.    The Proposed Class Is Not Overbroad .......................................................... 8

    III.    The Proposed CUBPA Class Also Should Be Certified ......................................... 9

        A.    Plaintiffs Are Adequate Class Representatives ............................................ 9

            1.    Sheila Hofstetter ................................................................................ 10

            2.    Roger Modersbach ............................................................................ 12

        B.    Individualized Issues Do Not Predominate ................................................ 13

        C.    The Proposed Class Is Not Overbroad ........................................................ 14

    IV.    The Force-Placed Subclass Should be Certified .................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Statutes**

42 U.S.C. § 4012a(b)(1) .......................................................................................................... 11

Cal. Bus. & Prof. Code § 17204 .............................................................................................. 12

**Federal Regulations**

62 Fed. Reg. 39523 (July 23, 1997) ........................................................................................... 4

74 Fed. Reg. 34914 (July 21, 2009) ........................................................................................... 3

22 C.F.R. § 22.7 ....................................................................................................................... 15

**Federal Rules**

Fed. R. Civ. P. 23(b)(2) .................................................................................................. 2, 5, 6, 13

Fed. R. Civ. P. 23(b)(2), committee note (1966) ....................................................................... 9

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 2, 6, 8, 13

**Cases**

*Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008) ..................................................... 6

*Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010) ............................................................. 12

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ............................................... 13

*Ferrington v. McAfee, Inc.*, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................... 12

*Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313 (W.D. Mo. 1997) ................................... 6

*Guarte v. Furniture Fair, Inc.*, 75 F.R.D. 525 (D. Md. 1977) .................................................. 6

*Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) .............. 8

*Hamilton v. Wells Fargo Bank, N.A.*, 2010 WL 1460253 (N.D.Cal. Apr. 12, 2010) ................ 6

*Honorable v. The Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553 (N.D. Ill. 1998) .............. 10

*Simmons v. City of Kansas City*, 129 F.R.D. 178 (D.Kan. 1989) ........................................... 10

*Simon v. World Omni Leasing, Inc.*, 146 F.R.D. 197 (S.D. Ala. 1992) ................................... 6

*Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003) ....................... 6, 9

*Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) ............................................... 8

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (Dist. Ct. App. 2009) ....................... 12

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ................................ 9

## Other Authorities

FEMA Mandatory Purchase of Flood Insurance Guidelines (1997) ............................... 11

Newberg on Class Actions § 21:9 ................................................................................... 6

Newberg on Class Actions § 3:16 ................................................................................. 10

*Propriety, under Rule 23 of the Federal Rules of Civil Procedure, of Class Action for Violation of Truth in Lending Act*, 61 A.L.R.Fed. 603 ............................................................... 6

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

Chase has no legitimate basis for opposing class certification in this case.[1] Although it now argues that the Court must consider the individual circumstances of each borrower, Chase's flood insurance requirements give *no* consideration to individual circumstances. For example, Chase now argues that the Court must consider whether borrowers have an uninsured first mortgage with another lender before it can determine whether Chase's flood insurance requirements are unfair.[2] However, Chase itself gives no consideration to whether a borrower has a first mortgage in determining the amount of flood insurance that it requires, and none of the flood insurance policies that it purchased on behalf of borrowers protect any other lender. *First Richter Decl., Ex. 11 (Request ## 18-19)*. Chase also argues that the Court must give consideration to the underlying deed of trust or mortgage for each borrower.[3] However, Chase also gives no consideration to these documents. Chase's flood insurance requirements are the same "regardless of the language of [the borrower's] underlying deed of trust or mortgage" (*Wheeler Dep. 158:9-13*), and "the underlying mortgage agreements and deeds of trust . . . are not reviewed . . . before flood insurance notices are sent out[.]" *First Richter Decl., Ex. 9*.

Moreover, the evidence presented by Chase merely underscores that class certification is appropriate. Specifically, Chase relies heavily on a few dozen mortgage documents that were belatedly produced a week before Plaintiffs' class certification motion was due. *See Second Richter Decl., Ex. 8*. *None* of these mortgages require borrowers to carry flood insurance to the lesser of replacement cost value or $250,000 (Chase's current policy). *See LeMar Decl., Ex. 52*. Moreover, the minority of mortgages that provide for replacement cost coverage (without regard to a borrower's balance or line amount) were originated by *Washington Mutual*, and therefore are irrelevant to Plaintiffs' TILA class, which is limited to borrowers with credit lines originated by JPM. At most, Chase presents an argument for a subclass of borrowers within the CUBPA class.

---

[1] Plaintiffs use the term "Chase" or "Defendants" to collectively refer to Defendants JP Morgan Chase Bank, N.A. ("JPM") and Chase Home Finance, LLC ("CHF").

[2] Chase's counsel previously argued that "discovery relating to first mortgage loans is not relevant[.]" *ECF No. 52, Exhibit 2 at 2*.

[3] Chase's counsel previously asserted that the underlying mortgages are irrelevant because Plaintiffs assert "no contract-based claims[.]" *ECF No. 52 at 4*.

-1-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

The other supposedly individualized issues raised by Chase go, at best, to the issue of damages, and do not predominate over the class-wide issues. Accordingly, certification is appropriate under Rule 23(b)(3). Moreover, Chase almost entirely ignores (until the next-to-last page of its brief) that Plaintiffs also seek certification under Rule 23(b)(2). Under this rule, certification is clearly appropriate because Chase "has acted or refused to act on grounds that apply generally to the class[.]" Fed. R. Civ. P. 23(b)(2).

Finally, the proposed classes are not overbroad. Although certain class members may not yet have suffered an immediate financial impact as a result of Chase's flood insurance requirements (because their principal balance or available credit exceeds the amount of flood insurance required by Chase), all borrowers face the risk that they will suffer an adverse financial impact as they pay down their balance, or in the event that Chase suspends or reduces their credit line. Therefore, Plaintiffs respectfully request that the Court certify the proposed classes.[4]

## ARGUMENT

### I. Chase's Explanation for Its Increased Flood Insurance Requirements Is False

As an initial matter, it is worth exploring Chase's explanation for its decision to change its flood insurance requirements effective December 23, 2009. According to Chase, ███████████████████████████████████████████████████████████████████████████████████████████████. This explanation does not bear scrutiny, for several reasons.

---

[4] Plaintiffs wish to clarify the scope of the proposed TILA class. First, Chase correctly points out that the proposed TILA class definition contains a typo, and should read "December 23, 200**9**" instead of "December 23, 2010." *Chase Memo at 19 n.18*. Second, Plaintiffs agree to limit the scope of the proposed TILA class to borrowers with credit lines, and exclude borrowers from that class with closed-end loans, consistent with this Court's ruling that Plaintiffs' "change of terms" claim under TILA is limited to borrowers with open-ended credit plans. *See Chase Memo at 19*.

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1   First, Chase *does* track information relating to first liens. Indeed, it is precisely because Chase tracks this information that it suspended Hofstetter's credit line. When Chase suspended her line effective August 16, 2008, it estimated her home's value at $998,900. *Hofstetter Decl., Ex. 3*. Although this valuation was more than five times the amount of her existing line of credit ($175,000), Chase claimed that this "valuation no longer supports the full amount of your Line of Credit[.]" *Id.* Thus, the *only* reason Chase terminated Hofstetter's credit line is that she had a $705,000 first lien mortgage with Bank of America. If Chase can track first lien information for the purpose of shutting down a borrower's credit line, it should be able to track the same information for the purpose of determining the appropriate amount of flood insurance coverage.

Second, the fact that a borrower may have a first mortgage loan with another lender is *not* an excuse for the lender in the second lien position to automatically require the borrower to insure to replacement cost value or the National Flood Insurance Program ("NFIP") limit of $250,000. Rather, the 2009 Interagency Q&A makes clear that lenders have two options under that scenario: (1) "A junior lienholder should work with the senior lienholder, the borrower, or with both of these parties, to determine how much flood insurance is needed"; or (2) "In the limited situation where a junior lienholder or its servicer is unable to obtain the necessary information about the amount of flood insurance in place on the outstanding balance of a senior lien . . . , the lender may presume that the amount of insurance coverage relating to the senior lien in place at the time the junior lien was first established . . . continues to be sufficient." 74 Fed. Reg. 34914, 35940-41 (July 21, 2009). Chase adopted neither of these two approaches. Instead, it chose to go further than what the federal law required, even though its flood insurance notices invoked "federal law" to justify its coverage requirements. *See, e.g., Hofstetter Decl., Ex. 4; Modersbach Decl., Ex. 6.*

Third, Chase cannot justify its December 2009 policy change on allegedly "new" federal mandates in the July 2009 Interagency Q&A because the 2009 Q&A merely repeated earlier federal guidance with respect to taking account of first liens. Chase knows this. When Chase filed its reply memorandum in support of its earlier motion to dismiss, it submitted (as an exhibit) an excerpt from a consumer compliance handbook published by the Office of the Comptroller of the Currency ("OCC") in May 1999. This OCC handbook provided:

-3-
**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

> If a junior lienholder determines that a first mortgagee has not required sufficient coverage based on the total amount of liens on the collateral, the junior lienholder must protect its priority as to insurance proceeds by requiring the borrower to buy additional coverage. The amount required should be the lesser of all outstanding loan amounts, the value of the improved structure, or the maximum amount available.

*ECF No. 45-2*. The *1997* Interagency Q&A contained similar guidance. 62 Fed. Reg. 39523, 39528 (July 23, 1997). Therefore, even if Chase did not track first lien information (which it does) and even if federal law required lenders to insure to replacement cost value or $250,000 in the absence of first lien information (which it does not), Chase should have imposed this flood insurance requirement from the beginning instead of changing its insurance requirements after-the-fact. *See ECF No. 110 at 13 n.2* (compliance with the NFIA will not subject a lender to liability for changing the terms of a credit plan under TILA, but "a different analysis might apply if the NFIA's requirement of flood insurance existed at the time the loan was consummated").

Fourth, Chase has provided *no* documentary evidence to support its assertion that the 2009 Interagency Q&A is what triggered its decision to change its flood insurance requirements. Because Chase has failed to turn over such supporting evidence in discovery, the Court should give no weight to the self-serving testimony of its corporate representative, Jeffrey Nack.[5]

Finally, even if Chase's self-serving, lawyer-crafted, after-the-fact explanation for its December 2009 policy change were not so lacking in credibility, it is not a proper basis to oppose class certification. As Chase's counsel previously argued before Magistrate Judge Zimmerman:

---

[5] Plaintiffs asked Chase for "[a]ll Documents that relate to the reasons for any changes to company policies concerning flood insurance[,]" but Chase responded to this request with blanket objections. *Lemar Decl., Ex. 4 (Request # 24)*. Prior to Mr. Nack's deposition as a Rule 30(b)(6) witness, Plaintiffs also requested that Defendants produce any documents authored by, received by, copied to, or in the possession of Nack that related to the topics listed in Plaintiffs' deposition notices, including Topic No. 1: "Defendants' policies and practices related to flood insurance and the reasons for those policies and practices and any changes to those policies and practices." *Second Richter Decl., Exs. 1-2*. However, Nack never searched for such documents, even though he was one of the decision-makers responsible for the December 2009 policy change. *Nack Dep. 16:12-19:9; 92:1-93:24*. Finally, after multiple letters from Plaintiffs to Magistrate Judge Zimmerman requesting relief (*see ECF Nos. 67, 115*), Chase finally agreed to search for documents relating to its December 2009 policy change. On December 23, 2010 and again on January 7, 2011, Chase's counsel advised Plaintiffs that Chase was searching for responsive documents. *First Richter Decl., Ex. 9*. However, this turned out to be nothing but a stall tactic; Chase still has not produced any documents relating to the reasons for its policy change.

-4-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

> The reasons for the procedure change are not relevant to prove any element of Plaintiffs' TILA or "unfair" UCL claims, or to class certification. Plaintiffs' TILA claim relates to *whether* the terms of Plaintiffs' loans were changed and whether Plaintiffs received notice of those changes. Neither TILA nor "unfair" UCL claims require intent to prove a violation.

*ECF No. 116* (emphasis in original; internal citations omitted). Moreover, even if Chase's intent were at issue, this simply would present another common issue for class-wide resolution.

## II. The Proposed TILA Class Should Be Certified

Plaintiffs agree with Chase that TILA is a strict liability statute. Plaintiffs also agree that their TILA claim raises common questions regarding, *inter alia*, whether the terms of borrowers' credit lines were changed and whether Chase provided statutorily-required notice of those changes. *See Pls' Memo (ECF No. 131) at 18* (identifying same common questions). In light of these common questions, there is no reason to deny certification of a TILA class in this case.

### A. The Rule 23(a) Requirements Are Satisfied

Chase does not dispute that each of the Rule 23(a) requirements are satisfied as to Modersbach's TILA claim. The only Rule 23(a) challenge it mounts to the TILA class is whether Hofstetter is an adequate class representative. *See Defs' Memo at 23-24*. According to Chase, Hofstetter is not a proper representative because "she was required to maintain $175,000 in flood coverage both before and after December 2009" and was not required to carry more insurance after December 2009. *Id. at 23-24 & n.19.* This is false. Elsewhere in its memorandum, Chase concedes that "[i]n September 2010, CHF renewed Hofstetter's lender-placed insurance policy and increased her coverage to $250,000[.]" *Defs' Memo at 8*. Although Chase has not yet billed her for this increased coverage, it does not deny that it will do so once the litigation is over.[6] Regardless, Modersbach clearly was required to increase his coverage from $100,000 to $250,000.

### B. Certification Is Appropriate under Rule 23(b)(2)

There is no dispute that Chase's December 2009 policy change applied generally to each and every credit line customer in the TILA class. Accordingly, certification of the TILA class is

---

[6] When asked whether Hofstetter might be charged for this increased coverage, Ms. Groff (who requested the increase) testified: "I cannot answer that. I don't know." *Groff Dep. 113:3-114:1*.

-5-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  appropriate under Rule 23(b)(2). *See* Fed. R. Civ. P. 23(b)(2) ("A class action may be maintained
2  if . . . the party opposing the class has acted . . . on grounds that apply generally to the class, so
3  that final injunctive relief . . . is appropriate respecting the class").

4  Chase's sole basis for opposing class certification under Rule 23(b)(2) is that TILA does
5  not explicitly authorize injunctive relief. However, numerous courts have certified TILA classes
6  under Rule 23(b)(2) seeking injunctive and/or declaratory relief. *See, e.g.*, *Smith v. Tower Loan
7  of Mississippi, Inc.*, 216 F.R.D. 338, 378 (S.D. Miss. 2003) ("Injunctive relief is . . . available for
8  the Class' claims under the Truth-in-Lending Act."); *Simon v. World Omni Leasing, Inc.*, 146
9  F.R.D. 197, 202 (S.D. Ala. 1992) ("Plaintiffs also seek statutory relief under 15 U.S.C. § 1640
10 which would seem to lend itself better to (b)(2) management."); *Fielder v. Credit Acceptance
11 Corp.*, 175 F.R.D. 313, 320-21 (W.D. Mo. 1997) ("The fact that the Plaintiffs also seek damages
12 does not alter the ruling that certification is proper under Rule 23(b)(2)"); *Guarte v. Furniture
13 Fair, Inc.*, 75 F.R.D. 525, 529 (D. Md. 1977) ("While the majority of the courts confronted with
14 class certification in the truth-in-lending area have dealt with certification under [Rule] 23(b)(3),
15 and have come out in favor of class certification, this court finds that this case requesting only
16 injunctive and declaratory relief under [Rule] 23(b)(2) is an even more appropriate suit for class
17 certification."). Indeed, there are entire treatise sections devoted to Rule 23(b)(2) classes in TILA
18 cases. *See* NEWBERG ON CLASS ACTIONS § 21:9 (TILA Actions as Rule 23(b)(2) Classes);
19 *Propriety, under Rule 23 of the Federal Rules of Civil Procedure, of Class Action for Violation of
20 Truth in Lending Act*, 61 A.L.R.Fed. 603 at § 23[a]. Consistent with this long line of authority,
21 this Court also should certify a TILA class under Rule 23(b)(2).[7]

22 **C. Certification Is Also Appropriate Under Rule 23(b)(3)**

23 Certification of the TILA class is also appropriate under Rule 23(b)(3). Contrary to
24 Chase's arguments, individual questions will not "overwhelm" the common issues.

---

[7] The single case cited by Chase to support its argument that injunctive and declaratory relief is unavailable under TILA is an outlier, is not controlling, and should not be followed here. *See Defs' Memo* at 24 (*citing Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008)). In fact, another judge in this district recently declined to follow *Christ* and held that a "[p]laintiff may seek the remedy of declaratory relief if she can truthfully allege her TILA claims." *Hamilton v. Wells Fargo Bank, N.A.*, 2010 WL 1460253, at *2 (N.D.Cal. Apr. 12, 2010).

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

The principal basis for Chase's argument appears to be that certain borrowers have different language in their underlying deeds of trust and mortgages. While there may be a handful of variations among the applicable provisions, it is undisputed that *none* of the deeds of trust or mortgages that were produced included language that mirrored Chase's current policy and required borrowers to carry flood insurance equal to the lesser of replacement cost value or the NFIP limit of $250,000. *See LeMar Decl., Ex. 52*. Although some mortgages do generically provide for coverage to replacement cost value (without regard to the NFIP limit), all of these mortgages were originated by *Washington Mutual*, (*id.*), and therefore are irrelevant to the TILA class, because the TILA class is limited to borrowers with credit lines originated by *JPM*. Indeed, even the cherry-picked mortgages that Chase produced outside of the random sample do not include a single mortgage originated by JPM calling for insurance coverage to replacement cost value (or to the NFIP program limit). *Id.*[8]

Moreover, it is also undisputed that none of the underlying mortgages or deeds of trust that were produced by Chase set forth, with specificity, any "triggering events" that would precipitate a change in Chase's flood insurance requirements, much less how Chase's flood insurance requirements would change upon the happening of such a triggering event. As a result, Chase cannot rely on these documents to defeat class certification or defend its actions:

> If defendants intended for this language in its initial disclosures to reserve their right to impose a requirement of flood insurance at a later date pursuant to 12 C.F.R. 226.5b(f)(3)(i), they should have disclosed — as the regulation requires — "that specified changes will occur if a specified event takes place." As explained in the Federal Reserve Board's commentary on this rule, "[b]oth the triggering event and the resulting modification *must be stated with specificity*." 12 C.F.R. Pt. 226, Supp. I, § 5b(f)(3)(i), cmt. 1 (emphasis added). In the excerpt from the deeds of trust shown above, no "triggering event" was disclosed for the imposition or increase of flood insurance coverage by the lender. Similarly, no specificity was provided as to *how much* flood insurance coverage would be required. In sum, JPMorgan Chase Bank cannot rely on this so-called "agreement" to justify the "change of terms" alleged herein.

*ECF No. 110 at 15* (emphasis in original).

---

[8] While Chase apparently found it convenient to apply WAMU's stricter requirements (which disregarded the borrower's principal balance and line amount) to all borrowers after it acquired WAMU, that is not a valid basis for changing the terms of a borrower's credit plan.

-7-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Further, regardless of the language of the underlying mortgages, Chase did *not* require borrowers with JPM-originated credit lines to insure to the lesser of replacement cost value or $250,000 prior to December 2009. The language of the underlying mortgages is simply a red herring that has no bearing on Plaintiffs' TILA claim.[9]

The other linchpin of Chase's argument that individual issues predominate is that "each class member's TILA claim will require an individual inquiry into the status of any first loan on their property[.]" *Defs' Memo at 23*. This argument also fails. The relevant question for purposes of Plaintiffs' TILA claim is whether JPM changed the terms of its credit plans, not whether it hypothetically might have adopted different terms. Prior to December 23, 2009, Chase allowed borrowers with JPM-originated credit lines to insure to the amount of their credit line with JPM, and after that date, it eliminated this option. Neither the old policy nor the new policy required borrowers to cover first liens with other lenders. Consequently, whether a borrower had a first lien with another lender is irrelevant to Plaintiffs' "change of terms" claim under TILA.

To the extent that any individualized issues exist, they are far outweighed by the common questions presented by Chase's uniform flood insurance policies and practices. *See Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *13 (N.D. Cal. Sept. 11, 2008) (Alsup, J.) ("[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank); *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 364 (N.D. Cal. 2010) ("[U]niform corporate practices and policies that cumulatively impact the class in a particular manner can satisfy the predominance requirement."). Therefore, certification is appropriate under Rule 23(b)(3).

**D. The Proposed Class Is Not Overbroad**

Chase's overbreadth objections do not present a significant obstacle to certification. In response to Chase's first objection, Plaintiffs have agreed to limit the TILA class to borrowers with open-ended credit lines. *Supra at 2 n.4*. Chase's remaining objections should be rejected.

Although Chase points out that certain borrowers within the TILA class may not have suffered an immediate financial impact from Chase's new flood insurance requirements (because

---

[9] As Chase itself previously recognized, the underlying mortgage documents are irrelevant because Plaintiffs assert "no contract-based claims[.]" *ECF No. 52 at 4*.

-8-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

their available credit is not less than $250,000 or the replacement cost value of their home), this does not render the class overbroad. Because Chase's policy applies generally to the class, all borrowers within the class are entitled to injunctive and declaratory relief regardless of whether they have suffered an immediate effect:

> Action or inaction is directed to a class within the meaning of this subdivision *even if it has taken effect or is threatened only as to one or a few members of the class*, provided it is based on grounds which have general application to the class.

Fed. R. Civ. P. 23(b)(2), committee note (1966) (emphasis added); *accord*, *Smith*, 216 F.R.D. at 378 ("That today, some Class Members may not presently have an outstanding loan balance does not undo the significance of injunctive relief, generally or as to them."). While the size of a class member's existing line may have a bearing on his or her TILA damages, variations in damages do not defeat class certification. *See, e.g., Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010)).

Finally, the fact that some class members may have first liens is irrelevant to certification for the reasons explained above. Although Chase could have adopted a policy of requiring borrowers to insure to the total amount of all loans and lines, that is not what it elected to do. *See supra* at 8. Moreover, the flood policies that it obtained on behalf of borrowers did not protect any other lender. *First Richter Decl., Ex. 11 (Request ## 18-19)*. Therefore, there is no reason to differentiate between borrowers with first liens and other types of borrowers. [10]

### III. The Proposed CUBPA Class Also Should Be Certified

This Court also should certify the proposed CUBPA class. Chase's objections to this class are meritless.

#### A. Plaintiffs Are Adequate Class Representatives

Chase has no basis for challenging the adequacy of the proposed class representatives under Rule 23(a).[11] It is undisputed that Plaintiffs have vigorously represented the interests of the

---

[10] It appears that Chase wishes to use first liens as a basis for set-off against damages. Even if Chase had such a right to set-off (which it does not), this merely would go to the amount of damages recoverable by class members with first liens, and is not a basis for excluding them from the class altogether.

[11] Chase does not seriously contest the other elements of Rule 23(a). To the extent that Chase contests "typicality," its arguments are duplicative of its "adequacy" arguments.

-9-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  class, and there is no evidence of any adversity between Plaintiffs and other class members.
2  Although Chase attempts to draw factual distinctions between Plaintiffs and certain subgroups of
3  borrowers, these distinctions do not give rise to a "conflict of interest" or render Plaintiffs
4  inadequate class representatives. *See Simmons v. City of Kansas City*, 129 F.R.D. 178, 180
5  (D.Kan. 1989) ("[A]t most, defendants have highlighted the inevitable factual variations among
6  named plaintiffs and potential class members. Such variations are insufficient to undermine the
7  adequacy of the named plaintiffs' representation."). Moreover, even if the distinctions drawn by
8  Chase were relevant to the adequacy inquiry (which they are not), Plaintiffs have all the bases
9  covered.[12] Chase's arguments concerning the adequacy of the proposed class representatives are
10 nothing but a shell game designed to distract from the overwhelming common issues in this case.

11  **1. Sheila Hofstetter**

12  Chase challenges Hofstetter's adequacy as a class representative solely on the ground that
13  she has a first mortgage with Bank of America that allegedly renders her subject to a "senior lien
14  defense." *See Defs' Memo at 12-13*.[13] No such defense applies to Hofstetter (or any other Chase
15  borrower) because Chase did *not* demand or force-purchase flood insurance to protect any other
16  lender. Hofstetter's situation underscores this point. When Chase initially force-placed flood
17  insurance on her property in 2009, it purchased $175,000 worth of coverage. This amount was
18  identical to the amount of her suspended credit line with Chase, and was not intended to protect

---

[12] For example, although some class members have a first mortgage and some do not, Plaintiffs represent both subgroups of borrowers (as Hofstetter has a first mortgage and Modersbach does not). Similarly, although some class members had flood insurance force-placed upon them by Chase and others purchased their own flood insurance, Plaintiffs also represent both types of borrowers (as Hofstetter suffered force-placed insurance and Modersbach purchased his own flood policy). Likewise, although some class members are "zero/zero" borrowers and others are not, Plaintiffs again represent both types of borrowers.

[13] The fact that Chase conceives a defense to Hofstetter's CUBPA claim does not make her an inadequate class representative or render her claim atypical. *See Honorable v. The Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 560 (N.D. Ill. 1998) ("The existence of defenses unique to the named plaintiff does not automatically preclude a finding of typicality because rule 23(a)(3) mandates the typicality of the named plaintiffs' claims-not defenses. It is only when a unique defense will consume the merits of a case that a class should not be certified.") (internal quotation marks and ellipses omitted); NEWBERG ON CLASS ACTIONS § 3:16 ("[D]efenses asserted against a class representative should not make his or her claims atypical.").

-10-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Bank of America. The flood insurance policy that Chase purchased for Hofstetter named "Chase Home Finance LLC" as the "FIRST MORTGAGEE[,]" and provided no coverage whatsoever to Bank of America. *Hofstetter Decl., Ex. 7 at NKA0000031.* Therefore, Chase cannot defend its actions on the ground that it was acting to protect the first lienholder. The only "number one" that Chase looked out for was itself.

Moreover, Chase had no basis for requiring *any* flood insurance – much less flood insurance for the benefit of other lenders – because Hofstetter's home is not located in a Special Flood Hazard Area ("SFHA"). Although Chase's counsel contends that Chase has produced documents showing "Hofstetter's property in 2009 to be in a flood zone," *Lemar Decl., ¶ 5* (*citing* CHASE 269, 271-83), this assertion is less than candid. Under federal law, the relevant test for determining whether flood insurance is required is not whether a borrower's property (i.e. lot) falls within a SFHA, but whether the *building* on the property falls inside a SFHA. *See* 42 U.S.C. § 4012a(b)(1); FEMA MANDATORY PURCHASE OF FLOOD INSURANCE GUIDELINES at 11 (1997) ("Even though a portion of real property on which a building is located may lie within an SFHA, the purchase and notice requirements do not apply unless the building itself, or some part of the building, is in the SFHA."). The only map that Chase has produced specific to Hofstetter's property (CHASE 270)[14] shows that her home is located *outside* of the SFHA. *Second Richter Decl., Ex. 4; Nack Dep. 162:8-164:10.* Moreover, the current maps that are available from Contra Costa County reflect that her home is located outside of the SFHA. *Second Richter Decl., Exs. 5-6.*[15] Thus, in Hofstetter's case, Chase required her to carry $175,000 worth of flood insurance – and later the maximum amount of flood insurance available under the NFIP ($250,000) – even though she had no principal balance, no available credit, and her home is not even located in a SFHA. If this does not render Hofstetter "adequate" to bring an unfair business practices claim, it is difficult to envison who would be adequate.

---

[14] Curiously, CHASE 270 was omitted from Exhibit 22 to Mr. LeMar's Declaration.
[15] The SFHA determination form that Chase produced for Hofstetter's property also shows that her home is located outside the SFHA. *Second Richter Decl., Ex. 3.* Although this form is dated December 19, 2005, Chase has not produced any subsequent determination form for her property.

-11-
**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

### 2. Roger Modersbach

Chase's sole basis for challenging Modersbach's adequacy as a class representative is that he allegedly "has no standing to assert any claims for restitution" under the CUBPA. *Defs' Memo at 17*. This argument ignores both the record in this case and applicable California law.

While it is true that Chase refunded the premiums that it charged Modersbach for the force-placed "gap" policy that it purchased through American Security Insurance Company ("ASIC"), *see Chase Memo at 17-18*, this tells only half the story. The reason that that Chase cancelled this force-placed coverage was that Modersbach obtained alternate coverage that satisfied Chase's insurance requirements. *See Modersbach Decl., ¶ 13*. Modersbach paid $581 for this increased flood insurance coverage. *Id.* Therefore, he plainly "has suffered an injury in fact and has lost money" due to Chase's unfair business practices, as required to bring suit under the CUBPA. *See* Cal. Bus. & Prof. Code § 17204.

Although Chase appears to suggest that monies paid to a third party cannot give rise to a claim for restitution, California law is to the contrary. *See, e.g., Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *7-8 (N.D. Cal. Oct. 5, 2010); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1338 (Dist. Ct. App. 2009) (California law "does *not* hold that a plaintiff who paid a third party money . . . may not seek UCL restitution from a defendant whose unlawful business practice caused the plaintiff to pay that money") (emphasis in original). Indeed, restitution is particularly appropriate here because Modersbach increased his flood insurance coverage at Chase's request, for the benefit of Chase, and named Chase as the insured mortgagee on the declarations page of the policy (*Second Richter Decl., Ex. 7*). *See Troyk*, 171 Cal. App. 4th at 1340 ("In the circumstances of this case, although the class members did not pay the service charges directly to [defendant], the trial court could have properly inferred from the undisputed facts that [defendant] received a benefit from those service charge payments (which [defendant] required) even though they did not directly receive money.").[16]

---

[16] Even if Modersbach were not entitled to seek restitution (which he is), he still would be entitled to seek injunctive relief on behalf of himself and the class. *See Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1088 (Cal. 2010) ("[T]he right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies.").

-12-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**B. Individualized Issues Do Not Predominate**

Chase's only other challenge to certification of the CUBPA class is that individualized issues allegedly predominate under Rule 23(b)(3). Of course, this has no bearing on Plaintiffs' request for certification under Rule 23(b)(2). *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010) ("[C]ourts must keep in mind that different parts of Rule 23 require different inquiries."). Moreover, the purportedly individualized issues identified by Chase in connection with Plaintiffs' CUBPA claim are duplicative of the issues it raises in connection with Plaintiffs' TILA claim, and fail to defeat certification under Rule 23(b)(3) for the reasons already explained.

Specifically, Chase cannot rely on differences in language in the underlying mortgage documents to defeat certification because (1) Chase disregarded these differences when adopting a uniform set of flood insurance requirements for all borrowers; (2) none of the insurance provisions in the underlying mortgages match the language of Chase's flood insurance notices; (3) to the extent that any of the underlying mortgages provide for flood insurance in excess of a borrower's principal balance or credit line, Chase did not require strict compliance with these provisions and waived its right to later enforce the mortgages according to their terms; (4) Chase's flood insurance notices invoked "federal law" to support its flood insurance requirements; (5) Chase's counsel previously asserted that the underlying mortgage documents are irrelevant to the issues in this case; and (6) Chase refused to produce a Rule 30(b)(6) witness on the topic of its mortgage documents. *See ECF No. 52, Exhibit 2 at 3-4, Topic No. 3 to JPM*.[17]

Similarly, the fact that some Chase borrowers have first mortgages with other lenders is not a barrier to certification because: (1) Chase itself gives no consideration to whether borrowers have a first mortgage with another lender when determining the amount of flood insurance that it requires; (2) Chase's flood insurance requirements are not designed to protect other lenders; (3) the flood insurance policies that Chase force-purchases on behalf of borrowers do not name other

---

[17] Further, *none* of the JPM-originated mortgages that Chase produced for California (or any other state) call for insurance to replacement cost value. *See LeMar Decl., Ex. 52*. Therefore, even if the language of the underlying mortgage documents had any relevance here (which it does not), Chase still would have no grounds for excluding borrowers with JPM-originated loans and lines from the CUBPA class.

-13-

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

lenders as insured mortgagees; (4) the fact that a borrower may have a first mortgage with another lender is not a basis, under federal law, to automatically require the borrower to insure to the lesser of replacement cost value or $250,000; (5) Chase's flood insurance notices give no indication that Chase is seeking flood insurance to protect the interests of other lenders; (6) Chase's lawyers previously conceded that "discovery relating to first mortgage loans is not relevant"; and (7) Chase has produced no documents or other information in discovery relating to whether (or which) other borrowers hold uninsured first mortgages with other lenders.

### C. The Proposed Class Is Not Overbroad

Finally, the proposed CUBPA class is not overbroad. Chase has no basis for seeking to limit the class to "just zero/zero lender-placed borrowers" (*Defs' Memo at 11*), since this Court previously held that non-zero/zero borrowers have a CUBPA claim and allowed Modersbach to join the suit on that basis. Moreover, Chase confuses Plaintiffs' CUBPA claim with Plaintiffs' TILA claim by arguing that the CUBPA class should be limited to borrowers who were "subject to the change in the home equity flood insurance procedures." *Id.* The question for purposes of Plaintiffs' CUBPA claim is whether Chase's coverage requirements are unfair, not whether its requirements changed. To the extent that Chase is requiring its mortgage loan customers to insure in excess of their principal balance, this is no less unfair than requiring home equity customers to insure in excess of their line. Finally, as explained *supra* at 8-9, the fact that some borrowers have not yet been financially impacted by Chase's flood insurance requirements (because they have a high principal balance and/or credit line) is not a basis for excluding them from the class.

### IV. The Force-Placed Subclass Should Be Certified

Notably, Chase says almost nothing (except for a footnote on the last page of its brief) about the commissions that it generated for its affiliate on force-placed flood insurance. As noted in Plaintiffs' opening brief, Chase generated millions of dollars in commissions from the force-placement of flood insurance (*Pls' Memo at 13*), and Plaintiffs present an overarching common question for both mortgage loan borrowers and home equity borrowers regarding whether these commissions were fairly earned at the ultimate expense of its borrowers. Although Chase insists

-14-

that it foreswore commissions on home equity accounts once it decided to increase its flood insurance requirements, this claim is dubious at best.[18] In any event, it is undisputed that (1) Chase earned commissions on force-placed flood insurance for both mortgage and home equity borrowers from 2007-2009, and (2) Chase continues to earn commissions in connection with force-placed flood insurance for mortgage borrowers. *See Pls' Memo at 11-14*. The fairness of these commissions presents a class-wide issue that supports certification of the Force-Placed Subclass.[19] *See* 22 C.F.R. § 22.7 ("The bank or its servicer may charge the borrower for the cost of premiums and fees *incurred* in purchasing the insurance.") (emphasis added).

## CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Court certify the proposed classes.

Dated: 3/10/11       NICHOLS KASTER, PLLP
                     By:   s/ Kai Richter
                           Kai Richter
                     Attorneys for Plaintiffs and the Proposed Classes

---

[18] ████████████████████████████████████████████████████ *Wheeler Dep. 128:18-129:3; 130:15-131:7*. Chase has produced *no* evidence of any contrary agreement or of any written waiver of the commissions. *Wheeler Dep. 108:10-109:7*. Moreover, its corporate representative testified that the alleged decision to suspend commissions on home equity accounts was not even "communicated" to ASIC until June 2010 – three months after this lawsuit was filed in March – betraying the true reason for Chase's alleged decision to suspend commissions for home equity accounts. *See id. at 116:4-8*.

[19] The Second Amended Complaint expressly alleges that there is a common question concerning whether Defendants breached their duty of good faith and fair dealing by "purchasing force-placed flood insurance coverage through and/or from related entities at inflated premiums instead of through disinterested brokers and/or insurance carriers[.]" *SAC, ¶ 59(e)*. Plaintiffs further allege that "[b]y purchasing force-placed flood insurance coverage through an affiliate (e.g., JPMorgan Insurance Agency, Inc., Chase Insurance Agency, Inc., etc.), instead of through an independent broker, Defendants . . . earn a commission for their affiliate. *Id., ¶ 49*. Chase cannot wish away these allegations. Chase's financial incentives been part of the case from the beginning, and were the subject of much discussion at the hearing on September 1, 2010.