# EXHIBIT 17
# PART 1 OF 9

Recording requested by and
when recorded return to:
WASHINGTON MUTUAL BANK
CONSUMER LOAN RECORDS CENTER
1170 SILBER RD
HOUSTON, TX 77055
ATTN: MAILSTOP: CLRVLTTX

**▥ Washington
Mutual**

# DEED OF TRUST

Loan Number: ███████3846

THIS DEED OF TRUST is between:

whose address is: ███████████████████CA██████████
("Trustor");
corporation, the address of which is: ████████████████████████

and its successors in trust and assigns ("Trustee"); and:
WASHINGTON MUTUAL BANK, A FEDERAL ASSOCIATION, WHICH IS ORGANIZED AND
EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND WHOSE ADDRESS IS
2273 N GREEN VALLEY PARKWAY, SUITE #14, HENDERSON, NV 89014 ("BENEFICIARY") AND
ITS SUCCESSORS OR ASSIGNS.

   1.  **Granting Clause.** Trustor hereby grants, bargains, sells and conveys to Trustee in
trust, with power of sale, the real property in ████████████████ County, California,
described below and all interest in it Trustor ever gets:

This Deed of Trust is second and subordinate to ████████████████ first Deed of
Trust in the amount of $███████████ recording concurrently herewith.

Tax Parcel Number: ████████████████████████████ together with all
insurance and condemnation proceeds related to it; all plumbing, lighting, air conditioning and
heating apparatus and equipment; and all fencing, blinds, drapes, floor coverings, built-in

32083 (03/24/06) w7.2                BORROWER COPY                Page 1 of 7

CHASE 02478

8846

appliances and other fixtures at any time installed on or in or used in connection with such real property.

All of the property described above will be called the "Property." As used herein "State" shall refer to the State of California.

2.  **Security.** This Deed of Trust is given to secure performance of each promise of Trustor contained herein and the payment of:

_____ Dollars ( _____ ) (called the "Loan") with interest as provided in the note which evidences the Loan (the "Note") and any renewals, modifications, or extensions thereof. It also secures payment of certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust and repayment of money advanced by Beneficiary under Section 6 or otherwise to protect the Property or Beneficiary's interest in the Property. All amounts due under the Note and this Deed of Trust are called the "Debt."

☐ **If this box is checked, the Note provides for a variable rate of interest. Changes in the interest rate will cause the payment amount to also change.**

3.  **Representations of Trustor.** Trustor represents that:
    (a)  Trustor is the owner or contract purchaser of the Property, which is unencumbered except by easements, reservations and restrictions of record not inconsistent with the intended use of the Property and any existing mortgage, deed of trust or real estate contract given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and,
    (b)  The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4.  **Sale, Transfer or Further Encumbrance of Property.** The Loan is personal to Trustor and the entire Debt shall become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by Trustor by contract of sale or otherwise including, without limitation, further encumbrance of the Property. Trustor agrees to advise Beneficiary immediately in writing of any change in Trustor's name, address or employment.

5.  **Promises of Trustor.** Trustor promises:
    (a)  To keep the Property in good repair and not to move, alter or demolish any of the improvements on the Property without Beneficiary's prior written consent;
    (b)  To allow representatives of Beneficiary to inspect the Property at any reasonable hour and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
    (c)  To pay on time all lawful taxes and assessments on the Property;
    (d)  To perform on time all terms, covenants and conditions of any prior real estate contract, mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
    (e)  To keep the Property and the improvements thereon insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements and to deliver evidence of such insurance coverage to Beneficiary. Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause and the amount collected under any insurance policy may be applied upon any indebtedness hereby secured in the same manner as payments under the Note or at the Beneficiary's sole option,

CHASE 02479

8846

released to Trustor. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Trustor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale; and

(f)   To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a) and to keep the Property free of all encumbrances which may impair Beneficiary's security. It is agreed that if anyone asserts the priority of any encumbrance other than those described in Section 3(a) over this Deed of Trust in any pleading filed in any action, the assertion alone shall be deemed to impair the lien of this Deed of Trust for purposes of this Section 5(f).

6.   **Curing of Defaults.**  If Trustor fails to comply with any of the covenants in Section 5, including all the terms of any prior mortgage, deed of trust or real estate contract, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Trustor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Trustor shall be secured by this Deed of Trust. The amount spent shall bear interest at the rate of interest specified in the Note and be repayable by Trustor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7.   **Remedies for Default.**

(a)   Prompt performance under this Deed of Trust is essential. If Trustor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Note, or if Trustor fails to comply with any other term, condition, obligation, or covenant contained in the Note or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Trustor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Trustor shall thereafter bear interest at the rate(s) stated in the Note. Beneficiary may then or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Trustor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the proceeds of the sale as follows: (i) to the expenses of the sale, including a reasonable trustee's fee and lawyer's fee; (ii) to the obligations secured by this Deed of Trust; and (iii) the surplus, if any, shall go to the person(s) legally entitled thereto or, at Trustee's discretion, to the government or other official authorized by state law to accept such amounts.

(b)   Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Trustor had or the interest in the Property which Trustor had the power to convey at the time of execution of this Deed of Trust and any interest which Trustor subsequently acquired. Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

CHASE 02480

███████8846

(c) To the extent permitted by law, the power of sale conferred by this Deed of Trust is not an exclusive remedy. Beneficiary may cause this Deed of Trust to be judicially foreclosed, sue on the Note or take any other action available to law or in equity. Beneficiary may also take such other action as it considers appropriate including the securing of appointment of a receiver and/or exercising the rights of a secured party under the Uniform Commercial Code as then in effect in State. During pendency of any foreclosure or other realization proceedings Beneficiary shall also have the right to collect the income, rents and profits of the Property and apply the amounts so collected toward payment of the Debt in the manner provided in the Note and shall have the right to secure the appointment of a receiver for the Property; its income, rents and profits.

(d) By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8.  **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the Debt and all other obligations secured by this Deed of Trust, shall be paid to Beneficiary to be applied thereto in the same manner as payments under the Note.

9.  **Fees and Costs.** Trustor shall pay Beneficiary's and Trustee's reasonable costs of searching records, other reasonable expenses as allowed by law and reasonable lawyers' fees: in any lawsuit or other proceeding to foreclose this Deed of Trust in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; in any other action taken by Beneficiary to collect the Debt, including any disposition of the Property under the State Uniform Commercial Code; and any action taken in bankruptcy or appellate proceeding.

10. **Reconveyance.** Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary following satisfaction of the Debt and other obligations secured hereby. Beneficiary and Trustee shall be entitled to charge Trustor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law.

11. **Trustee; Successor Trustee.** Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor trustee shall be vested with all powers of the original Trustee. Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Trustor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

12. **Savings Clause.** If a law, which applies to this Deed of Trust or the Note and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the interest or other loan charges collected or to be collected in connection with this Deed of Trust or the Note exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Trustor which exceeded permitted limits will be refunded to Trustor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

13. **Miscellaneous.** This Deed of Trust shall benefit and obligate the parties, their heirs, devisees, legatees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the holder and owner of the Note secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become

CHASE 02481

████████8846

responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law, and, to the extent federal law does not apply the laws of the State. If any provision of this Deed of Trust is determined to be invalid under law, that fact shall not invalidate any other provision of this Deed of Trust, but the Deed of Trust shall be construed as if not containing the particular provision or provisions held to be invalid, and all remaining rights and obligations of the parties shall be construed and enforced as though the invalid provision did not exist.

14. **Beneficiary and Similar Statements.** Beneficiary may assess a Statement Fee for providing a beneficiary statement, payoff statement or other statement in an amount determined by Beneficiary, except as prohibited by law.

15. **Riders.** If one or more riders are executed by Trustor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider                    ☐ Other: _____
                                                        (specify)
☐ Planned Unit Development Rider

32083 (03/24/06) w7.2                    BORROWER COPY                    Page 5 of 7

CHASE 02482

████8846

By signing below Trustor accepts and agrees to the provisions of this Deed of Trust and of any rider(s) executed by Trustor concurrently therewith.

DATED at ███████ _CA_ this _4th_ day of _APRIL_, _2007_

TRUSTOR(S):



CHASE 02483

█████8846

STATE OF CALIFORNIA

COUNTY OF ██████████████████████

On *4/4/07* before me, ████████████████████████████, Notary Public,

personally appeared

█████████████████████

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that █████ executed the same in ███████ authorized capacity(ies), and that by ███████ gnature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Seal or Stamp)

NOTARY PUBLIC · CALIFORNIA
My Comm. Exp. Apr. 15, 2009

## REQUEST FOR FULL RECONVEYANCE
### (Do not record. To be used only when note has been paid.)

TO: TRUSTEE

The undersigned is the legal owner and holder of the Note and all other indebtedness secured by the within Deed of Trust. Said Note, together with all other indebtedness secured by this Deed of Trust, has been fully paid and satisfied and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of this Deed of Trust to cancel the Note above mentioned and all other evidences of indebtedness secured by this Deed of Trust together with the Deed of Trust and to convey, without warranty, to the parties designated by the terms of this Deed of Trust all the estate now held by you thereunder.

DATED _____   _____

_____

Mail reconveyance to _____

32083 (03/24/06) w7.2                    BORROWER COPY                    Page 7 of 7

CHASE  02484





This instrument prepared by:
MORTGAGE MASTER, INC.
102 ELM STREET, 3RD FLOOR
WALPOLE, MASSACHUSETTS 02081

Parcel Identification No.

9023

———————— [Space Above This Line For Recording Data] ————————

## FLORIDA
## HOME EQUITY LINE OF CREDIT MORTGAGE
### (Securing Future Advances)

**THIS MORTGAGE** is made on **JULY 7, 2005** The mortgagor is ███████████████. This Mortgage is given to **MORTGAGE MASTER, INC**, whose address is **102 ELM STREET, 3RD FLOOR, WALPOLE, MASSACHUSETTS 02081** ("Lender") In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s) The terms "we," "us" and "our" refer to the Lender

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns **MERS is the mortgagee under this Security Instrument** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of ████████████████ The Agreement provides for a final scheduled installment due and payable not later than on ████ You agree that this Mortgage shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement

This Mortgage secures to us. (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement, (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage, and (c) the performance of your covenants and agreements under this Mortgage and the Agreement For this purpose, you do hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in ████████ County, Florida.

HC#27186v.3  Chase Correspondent FL (2/01)          1



which has the address of ████████████████████████████ Florida,
████ ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1    Payment of Principal, Interest and Other Charges. You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.    Application of Payments. Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.    Prior Mortgages; Charges; Liens.    You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

HC#27186v.3  Chase Correspondent FL (2/01)          2

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law

4. **Hazard Insurance**. You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property

HC#27186v.3   Chase Correspondent FL (2/01)          3

**5.    Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6.    Protection of Our Rights in the Property, Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7.    Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8.    Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9.    You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

HC#27186v.3   Chase Correspondent FL (2/01)          4

CHASE 02488

10.   **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several  Anyone who co-signs this Mortgage but does not execute the Agreement. (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property, (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

11.   **Loan Charges** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from you which exceed permitted limits will be refunded to you  We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12.   **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us.  Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you  Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph

13.   **Governing Law; Severability** The interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law  In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision  To this end the provisions of this Mortgage and the Agreement are declared to be severable

14.   **Transfer of the Property**  If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage.  However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage

15.   **Sale of Agreement; Change of Loan Servicer** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage.  There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement.  If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made The notice will also contain any information required by applicable law

16.   **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property  You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized) to be appropriate to normal residential uses and to maintenance of the Property  You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you  learn or are notified by any government or regulatory authority, that any removal or other  remediation of any Hazardous Substance affecting the Property

HC#27188v.3  Chase Correspondent FL (2/01)          5

is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

17. **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.

18. **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

19. **Release.** This Mortgage secures future advances made pursuant to the Agreement, regardless of whether at the time any such advance is made there is any outstanding indebtedness under the Agreement. Thus, you may obtain future advances pursuant to the Agreement, even though all prior indebtedness has been paid in full. At any time when all sums secured by this Mortgage have been paid in full, we will release this Mortgage at your request. You will be responsible for all costs of recording such release.

20. **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter except a release of the Mortgage upon full repayment of all sums secured thereby.

CHASE 02490

**21    Documentary Stamp Taxes and Intangible Taxes.**   You agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.  You shall indemnify and hold us harmless from and against any and all loss, liability, claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

**22.    Waiver**  No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the note secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time

**23.    Riders to this Mortgage.**  If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were a part of this Mortgage   [Check applicable box(es)]



**IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above written

Witnesses

### ACKNOWLEDGMENTS

STATE OF FLORIDA, MA                County, ss.

The foregoing instrument was acknowledged before me, on this   7th          day of JULY          , 2005       by

who is personally known to me (yes/no) or who provided     drivers license
                                                      as identification

My Commission expires     09/05/08

Notary Public
Comm. Exp: 9/5/2008
Commonwealth of MA

HC#27186v.3  Chase Correspondent FL (2/01)          7



This instrument prepared by:
BRADFORD MORTGAGE COMPANY, LLC
1400 WESTGATE CENTER DR., SUITE 100
WINSTON-SALEM, NORTH CAROLINA 27103

# SOUTH CAROLINA
# HOME EQUITY LINE OF CREDIT MORTGAGE
### (Securing Future Advances)

**THIS MORTGAGE** is made on **FEBRUARY 28, 2005.** The mortgagor is ████████ This Mortgage is given to **BRADFORD MORTGAGE COMPANY, LLC** whose address is **1400 WESTGATE CENTER DR., SUITE 100, WINSTON-SALEM, NORTH CAROLINA 27103** ("Lender"). In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and "our" refer to the Lender.

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of ████████ The Agreement provides for a final scheduled installment due and payable not later than on ████████ You agree that this Mortgage shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement. Any interest or discounts, of any nature or kind, charged in connection with the indebtedness secured by this Mortgage may be deferred, accrued, or capitalized.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Charleston** County, South Carolina:

HC#27871v2 - Chase Correspondent-SC (3/01)          1

which has the address of ███████████████████████ South Carolina ██████ ("Property Address"); which Property being the identical property conveyed to you by deed of _____ dated _____, and recorded _____ in the _____ County RMC Office in Deed Book _____ at Page _____.

**TO HAVE AND TO HOLD**  this property unto us and our successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1.  **Payment of Principal, Interest and Other Charges.**  You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.  **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.  **Prior Mortgages; Charges; Liens.**  You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

CHASE  02493

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

4.   **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5.   **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. A significant impairment in the prospect of payment, performance, or realization of the Property will exist, and you shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. A significant impairment in the prospect of payment, performance, or realization of the Property will also exist, and you shall also be in default if you, during the loan application

CHASE 02494

process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6.     Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees not to exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7.     Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8.     Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9.     You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**10.     Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

HC#27871v2 - Chase Correspondent-SC (3/01)          4

**11.    Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.    Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

**13.    Governing Law; Severability.** The interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**14.    Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, you agree that a significant impairment in the prospect of payment, performance, or realization of the Property will exist, and we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**15.    Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**16.    Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

CHASE 02496

17.   **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; or (2) a significant impairment in the prospect of payment, performance, or realization of the Property will exist which will include, without limitation, the following: (a) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (b) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 15% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.

18.   **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

19.   **Release.** Upon your request and payment of all sums secured by this Mortgage, this Mortgage shall become null and void and we shall release this Mortgage. You will be responsible for all costs of recording such release.

20.   **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

21.   **Waiver.** You waive all rights of homestead exemption in the property. You waive the right to assert any statute providing appraisal rights which may reduce any deficiency judgment obtained by us against you in the event of foreclosure under this Mortgage. No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the note secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

22.   **Future Advances.** The lien of this Mortgage shall secure the indebtedness under the Agreement as may be outstanding from time to time. In addition, the lien of this Mortgage shall secure all future advances made under this Mortgage to protect our security and to perform any covenants contained in this Mortgage, there being no commitment on our part to make such future advances up to one hundred fifty percent (150%) of the original credit line provided in the Agreement plus interest thereon, reasonable attorneys' fees not to exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, and court costs as permitted by law.

CHASE_02497

**23.     Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

 

**IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above written.

 

_____(Seal)          _____(Seal)
(Signature)                              (Date)                  (Signature)                            (Date)

_____                 _____
(Print Name)                                                     (Print Name)

_____(Seal)          _____(Seal)
(Signature)                              (Date)                  (Signature)                            (Date)

_____                 _____
(Print Name)                                                     (Print Name)

Signed, sealed and delivered in the presence of:

CHASE  02498

**PROBATE:**

**STATE OF SOUTH CAROLINA,** ▮▮▮▮▮▮▮▮▮▮ ▯

Personally appeared before me the undersigned witness who, being duly sworn, deposed and said that (s)he saw the mortgagor (and each mortgagor if more than one) sign, seal and deliver the foregoing mortgage and that (s)he together with the other witness whose name appears as a witness, witnessed the execution thereof.

Sworn to and subscribed before me this $28\underline{th}$ day of _February, 2005_ .



My commission expires: _10|18|14_ .



Notary Public for South Carolina
My Commission Expires Oct. 18, 2014

CHASE 02499

*1206*

ELECTION DISTRICT ███████████████████████
PARCEL IDENTIFIER ███████████████████████████

THIS PROPERTY IS SOLEY A PRINCIPAL RESIDENCE

## NON-PURCHASE MONEY
## MARYLAND
### HOME EQUITY LINE OF CREDIT DEED OF TRUST
#### (Securing Future Advances)

THIS  DEED  OF  TRUST  is made  on  AUGUST  16, 2004. The  grantor  is ██████████████ The
trustee  is  ██████████████████████████
("Trustee"). The beneficiary is RESIDENTIAL MORTGAGE SOLUTIONS, INC., whose address is
1515 MARTIN  BLVD, SUITE 208, BALTIMORE, MARYLAND 21220.  In this Deed of Trust, the
terms "you," "your" and "yours" refer to the mortgagor(s).  The terms "we," "us" and "our" refer to
the beneficiary.

Pursuant  to  a Home Equity Line of Credit Agreement dated the same date as this Deed of Trust
("Agreement"),  you  may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts  fluctuating  from  time to time up to the maximum principal sum outstanding at any time of
██████████████████████████████████ The Agreement provides for a
final  scheduled installment due and payable not later than on ███████████  You agree that this
Deed  of Trust  shall  continue  to  secure all sums now or hereafter advanced under the terms of the
Agreement including,  without  limitation,  such  sums that are advanced by us whether or not at the
time the sums are advanced there is any principal sum outstanding under the Agreement.  The parties
hereto  intend  that  this  Deed of Trust shall secure unpaid balances, and all other amounts due to us
hereunder and under the Agreement.

This  Deed  of  Trust secures to us: (a) the repayment of the debt evidenced by the Agreement,
with  interest,  and all refinancings, renewals, extensions and modifications of the Agreement; (b) the
payment of all other sums, with interest, advanced under this Deed of Trust to protect the security of
this  Deed  of  Trust;  and  (c) the performance of your covenants and agreements under this Deed of
Trust  and  the  Agreement.  For this purpose and in consideration of the debt, you irrevocably grant
and  convey  to  the  Trustee, in trust, with power of sale, the following described property located in
███████County, Maryland:

HC# 27864v3 - Chase Correspondent-MD
Non-Purchase Money (4/01)

CHASE  02500



which has the address of ▮▮▮▮▮▮▮▮▮▮▮▮ Maryland, ▮▮▮ ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Deed of Trust. All of the foregoing is referred to in this Deed of Trust as the "Property."

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1.   Payment of Principal, Interest and Other Charges. You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.   Application of Payments. Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.   Prior Mortgages; Charges; Liens. You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Deed of Trust, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Deed of Trust.

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

CHASE 02501

4.     **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose the insurer to provide this coverage. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgage clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

We may also, at our option and on your behalf, adjust and compromise any claims under the insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and shall not be affected by your subsequent disability or incompetence.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Deed of Trust, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5.     **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Deed of Trust or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Deed of Trust or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Deed of Trust is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

CHASE  02502

6.   **Protection of Our Rights in the Property; Mortgage Insurance.**  If you fail to perform the covenants and agreements contained in this Deed of Trust, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property.  Our actions may include paying any sums secured by a lien which has priority over this Deed of Trust or any advance under the Agreement or this Deed of Trust, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Deed of Trust and entering on the Property to make repairs.  We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Deed of Trust.  These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request.  If we required mortgage insurance as a condition of making the loan secured by this Deed of Trust, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

7.   **Inspection.**  We may enter and inspect the Property at any reasonable time and upon reasonable notice.

8.   **Condemnation.**  The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us.  If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due.  Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

9.   **You Are Not Released; Forbearance by Us Not a Waiver.**   Extension of time for payment or modification of amortization of the sums secured by this Deed of Trust granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest.  We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by you or your successors in interest.  Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

10.   **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Deed of Trust shall bind and benefit your successors and permitted assigns.  Your covenants and agreements shall be joint and several.  Anyone who co-signs this Deed of Trust but does not execute the Agreement: (a) is co-signing this Deed of Trust only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Deed of Trust; and (c) agrees that we and anyone else who signs this Deed of Trust may agree to extend, modify, forbear or make any accommodations regarding the terms of this Deed of Trust or the Agreement without such person's consent.

HC# 27864v3 - Chase Correspondent-MD               4
    Non-Purchase Money (4/01)

11.   **Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12.   **Notices.** Unless otherwise required by law, any notice to you provided for in this Deed of Trust shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Deed of Trust shall be deemed to have been given to you or us when given as provided in this paragraph.

13.   **Governing Law; Severability.** The interpretation and enforcement of this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Deed of Trust or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Agreement are declared to be severable.

14.   **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust.

15.   **Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Deed of Trust) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Deed of Trust. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

16.   **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Deed of Trust, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Deed of Trust, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

CHASE  02504

17.   **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Deed of Trust is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under Section 14, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense you may have to acceleration and sale. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may foreclose this Deed of Trust by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees not to exceed 20% of the amount you owe for principal and interest and costs of title evidence.

If we invoke the power of sale, we shall mail or cause Trustee to mail a notice of sale to you in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on you, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Either we or our designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty whatsoever. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5% of the gross sale price and reasonable attorneys' fees not to exceed 20% of the amount you owe for principal and interest; (b) to all sums secured by this Deed of Trust; and (c) any excess to the person or persons legally entitled to it.

You, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, do hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consent to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Deed of Trust, together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 17 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Deed of Trust.

18.   **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Deed of Trust under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Deed of Trust.

19.   **Release.** Upon payment of all sums secured by this Deed of Trust, we or Trustee shall release this Deed of Trust without charge to you and mark the Note "paid" and return the Note to you. You shall pay any recordation costs.

CHASE  02505

20.   **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

21.   **Substitute Trustee.** We may, at our option, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22.   **Possession of the Property.** You shall have possession of the Property until we have given you notice of default pursuant to paragraph 18 of this Deed of Trust.

23.   **Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Deed of Trust or in the note secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

24.   **Riders to this Deed of Trust.** If one or more riders are executed by you and recorded together with this Deed of Trust, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust.  [Check applicable box(es)]

[ ]  Condominium Rider          [ ] 2-4 Family Rider          [ ]  Planned Unit Development Rider

[ ]  Second Home Rider          [ ] Other(s) [specify]

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by you and recorded with it.

Signed, sealed and delivered in the presence of:

CHASE 02506

STATE OF MARYLAND, ████████████████ to wit:

   I HEREBY CERTIFY that on this ___16___ day of _August 2004_,
before me, a Notary Public in and for the State aforesaid, personally appeared _____
████████████████████████████████████████████████████
known to me (or satisfactorily proven), and he/she/they acknowledged his/her/their execution of the
foregoing instrument for the reasons recited therein.

   WITNESS my hand and notarial seal.

My Commission Expires: _5/1/05_

CHASE  02507

Recording requested by and
when recorded return to:
2005 Cabot Blvd. West

Langhorne, PA 19047
Attn: Group 9, Inc.
This Mortgage was prepared by:

████████████████

Washington Mutual Bank, FA
3990 S BABCOCK ST
MELBOURNE, FL 32901

 **Washington Mutual**

# OPEN-END MORTGAGE

### THIS MORTGAGE SECURES FUTURE ADVANCES

Loan Number: ████████ 3555

THIS MORTGAGE is from:

████████████████████████

whose address is:
████████████████████████ PA ██████
("Borrower"); in favor of:

Washington Mutual Bank, FA, a federal association, which is organized and existing under the
laws of the United States of America and whose address is 2273 N Green Valley Parkway, Suite
#14, Henderson, NV 89014 ("Lender") and its successors or assigns.

   1.  **Granting Clause.** Borrower hereby grants, bargains, sells, conveys and mortgages to
Lender and its successors and assignees, the real property in ████████████████ County,
Pennsylvania, described below and all rights and interest in it Borrower ever gets:



Tax Parcel Number: _____ ████████████████ _____ together with
all insurance and condemnation proceeds related to it; all income, rents and profits from it; all
plumbing, lighting, air conditioning, and heating apparatus and equipment; and all fencing, blinds,
drapes, floor coverings, built-in appliances and other fixtures at any time installed on or in or used
in connection with such real property, all of which at the option of Lender may be considered  to be
either personal property or to be part of the real estate.

30207 (08/16/05) W6.3                   **BANK**                 Page 1 of 6

CHASE 02508

██████8555

All of the property described above will be called the "Property". If any of the Property is subject to the Uniform Commercial Code, this Mortgage is also a Security Agreement which grants Lender, as secured party, a security interest in all such property.

2.   **Obligation Secured.**
(a)   This Mortgage is given to secure performance of each promise of Borrower contained herein or in a ___WaMu Equity Plus(TM)___ Agreement and Disclosure with Lender with a maximum credit limit of ███████████████ (the "Credit Agreement"), including any extensions, renewals or modifications thereof and repayment of all sums borrowed by Borrower under the Credit Agreement with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement the Borrower may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Mortgage. This Mortgage also secures payment of certain fees and charges payable by Borrower under the Credit Agreement, certain fees and costs of Lender as provided in Section 9 of this Mortgage and repayment of money advanced by Lender to protect the Property or Lender's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that, unless sooner repaid, the Debt is due and payable in full on ████████████ (the "Maturity Date"). All of this money is called the "Debt".

(b)   In addition to the Debt secured by this Mortgage, this Mortgage shall also secure and constitute a lien on the Property for all future advances made by Lender to Borrower for any purpose within thirty (30) years after the date of this Mortgage, just as if the advances were made on the date of this Mortgage. Any future advances may be made in accordance with the terms of the Credit Agreement or at the option of Lender. The total amount of the indebtedness that may be secured by this in accordance with the terms of the Credit Agreement or Mortgage may increase or decrease from time to time but the total unpaid balance secured at any one time by this Mortgage shall not exceed two (2) times the maximum credit limit that is set forth in Section 2(a) of this Mortgage, together with accrued interest and all of Lender's costs, expenses and disbursements made under this Mortgage.

3.   **Representations of Borrower.**   Borrower represents that:
(a)   Borrower is the owner of the Property which is unencumbered except by easements, reservations and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or mortgage given in good faith and for value, the existence of which has been disclosed in writing to Lender; and
(b)   The Property is not used for any agricultural or farming purposes.

4.   **Promises of Borrower.**   Borrower promises:
(a)   To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property without first obtaining Lender's written consent;
(b)   To allow representatives of Lender to inspect the Property at any reasonable hour and to comply with all laws, ordinances, regulations, covenants, conditions, and restrictions affecting the Property;
(c)   To pay on time all lawful taxes and assessments on the Property;
(d)   To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
(e)   To see to it that this Mortgage remains a valid lien on the Property superior to all liens except those described in Section 3(a); and
(f)   To keep the improvements on the Property insured by a company satisfactory to Lender against fire and extended coverage perils, and against such other risks as Lender may reasonably require, in an amount equal to the full insurable value of the improvements and to deliver evidence of such insurance coverage to Lender. Lender will be named as the loss payee on all such

CHASE_02509

████████8555

policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured in the same manner as payments under the Note or, at Lender's sole option, released to Borrower. In the event of foreclosure or sale of the Property, all rights of the Borrower in insurance policies then in force shall pass to the purchaser.

Without limiting any other provisions of this Mortgage, the Lender may make future advances, and this Mortgage shall secure repayment of such future advances and the interest thereon, for the payment of taxes, assessments, maintenance charges, insurance premiums or costs similar or dissimilar incurred for the protection of the Property or for the lien of this Mortgage, expenses incurred by the Lender by reason of default of the Borrower or advances made under a construction loan (if applicable) to enable the completion of improvements for which the construction loan was originally made.

5.   **Sale, Transfer or Further Encumbrance of Property.** The Loan is personal to Borrower and the entire Debt shall be accelerated and become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by Borrower including, without limit, further encumbrance of the Property. A sale or other transfer of the Property or any interest therein by Borrower without the full payment of the Debt shall constitute an event of default hereunder.

6.   **Curing of Defaults.** If Borrower fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Lender may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Borrower's failure to comply. Repayment to Lender of all the money spent by Lender on behalf of Borrower shall be secured by this Mortgage. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Borrower on demand. Although Lender may take action under this paragraph, Lender is not obligated to do so.

7.   **Remedies For Default.**
     (a)   Prompt performance under this Mortgage is essential. If Borrower does not pay any installment of the Debt on time, or any other event occurs that entitles Lender to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, the Debt and any other money whose repayment is secured by this Mortgage shall immediately become due and payable in full, at the option of the Lender, and the total amount owed by Borrower on the day repayment in full is demanded, including all unpaid interest, will thereafter bear interest at the rate specified in the Credit Agreement.
     (b)   Upon the occurrence of a default as set forth in Section 7(a) above, Lender may institute an action to foreclose this Mortgage under Pennsylvania law. Lender may seek any other remedies available to it under applicable Pennsylvania law.
     (c)   The foreclosure of this Mortgage is not the exclusive remedy of Lender to collect the Debt. Lender may, upon the occurrence of a default as set forth in Section 7(a) above, institute any other remedies available to a creditor under Pennsylvania law. In connection with any portion of the Property which is personal property, Lender shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the Commonwealth of Pennsylvania.
     (d)   By accepting payment of any sum secured by this Mortgage after its due date, Lender does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8.   **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the obligation secured by this Mortgage, shall be paid to Lender to be applied to the obligation in the same manner as payments under the Credit Agreement.

CHASE 02510

█████8555

9.  **Fees and Costs.**  Borrower shall pay Lender's reasonable cost of searching records, other reasonable expenses as allowed by law and reasonable attorney's fees in any lawsuit or other proceeding to foreclose this Mortgage, in any lawsuit or proceeding which Lender is obligated to prosecute or defend to protect the lien of this Mortgage, in any other action taken by Lender to collect the Debt, including without limitation any disposition of the Property under the Uniform Commercial Code, and any action taken in bankruptcy proceedings as well as any appellate proceedings.

10.  **Release.**  Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage.  Borrower shall pay Lender a release fee, unless prohibited by law, and for all recordation costs of any satisfaction of this Mortgage.

11.  **Limitation of Future Advances.**  In the event Borrower executes a Notice of Limitation of Future Advances of this Mortgage in accordance with Pennsylvania law, Borrower shall send a copy of each Notice by prepaid certified mail within two (2) business days of execution thereof to the attention of Loan Service Director at:
Washington Mutual Bank, FA
Consumer Lending -- BR2CLFL
PO Box 6868
Lake Worth, FL 33466
The Notice of Limitation of Future Advances of this Mortgage will not be effective unless notice is provided to Lender as set forth above.

12.  **Payoff and Similar Statements.**  Unless prohibited by law, Lender may collect a fee in the amount determined by Lender for furnishing a payoff demand statement or similar statement.

13.  **Miscellaneous.**  This Mortgage shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors and assigns of the parties hereto.  The words used in this Mortgage referring to one person shall be read to refer to more than one person if two or more have signed this Mortgage or become responsible for doing the things this Mortgage requires.  This Mortgage shall be governed by and construed in accordance with federal law and, to the extent federal law does not apply, the laws of the Commonwealth of Pennsylvania.  In the event of any action hereunder or related hereto, and subject to applicable law, Borrower hereby waives any right to a jury trial.  If any provision of this Mortgage is determined to be invalid under law, that fact shall not invalidate any other provision of this Mortgage, but the Mortgage shall be construed as if not containing the particular provision or provisions held to be invalid and all remaining rights and obligations of the parties shall be construed and enforced as though the invalid provision did not exist.

☐  14.  **Joining in Exicution.**  If this box is checked, _____ joins in the execution and delivery of this Mortgage to induce Lender to make the loan and to create a valid enforceable lien under Pennsylvania homestead law. _____ does not undertake any responsibility for payments of the note secured by this Mortgage or the performance of any warranties, terms or conditions of the Mortgage.

15.  **Riders.**  If one or more riders are executed by Grantor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box(es)]

☐ Condominium Rider                     ☐ Other: _____
                                                                        (specify)
☐ Planned Unit Development Rider

30207 (08/16/05) W6.3                        **BANK**                              Page 4 of 6

█████ 8555

DATED AT ██████ Pennsylvania this 30 day of January, 2006.

BORROWER(S): ████████████████

████████████████████
████████████████████
████████████████████
████████████████████

30207 (08/16/05) W6.3                    **BANK**                    Page 5 of 6

█████ 8555

——————————————[Space Below This Line For Acknowledgment]——————————————

I certify that the address of the foregoing mortgagee is: *1201 Hundh Ave Seattle WA 98101*

Washington Mutual Bank, FA, a federal association, which is organized and existing under the laws of the United States of America and whose address is 2273 N Green Valley Parkway, Suite #14, Henderson, NV  89014 ("Lender") and its successors or assigns.

███████████████████████████

01/19/2006

———————————————————
Date

Bank Employee

COMMONWEALTH OF PENNSYLVANIA, ████████████████ County ss:

On  this,  the   *30th*   day of   *January*   _____, *2006*  , before me, _____ officer, personally appeared

███████████████████ _____ and
███████████████ _____ and
_____ and
_____ and
_____ and
_____ and
_____ and

known to me (or satisfactorily proven) to be the person whose name *s are* subscribed to the within instrument and acknowledged that *they* executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Notary Public
My Commission Expires June 21, 2008

██████████████████████████

CHASE  02513

  

Prepared By:

Record and Return Address:
Chase Manhattan Bank USA, N.A.
c/o Chase Manhattan Mortgage Corporation
1500 N. 19th St.
Monroe, LA  71201
Attn: Document Control 6th FL. - HE

Servicing #         0956

## MULTIPLE INDEBTEDNESS MORTGAGE

BY:

UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF



IN FAVOR OF:

Chase Manhattan Bank USA, N.A.
Chase Home Equity
200 White Clay Center Drive
Newark, DE  19711

And Any Future Holder or Holders

BE IT KNOWN, that on  06/25/03                          :

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses;



LALCMT (Rev. 09/05/01)
Louisiana Line of Credit Mortgage

Page 1 of 7



**PERSONALLY CAME AND APPEARED:**

**WHO DECLARED THAT:**

## TERMS AND CONDITIONS:

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Account.** The word "Account" means my credit line Account with Lender, evidenced by the HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT ("Account Agreement").

**Additional Advances.** The words "Additional Advances" mean any and all additional sums that Mortgagee may advance on Mortgagor's behalf as provided under this Mortgage.

**Encumbrances.** The word "Encumbrances" means individually, collectively and interchangeably any and all presently existing and/or future mortgages, liens, privileges, encumbrances, and other contractual and/or statutory security interests and rights of every nature and kind that, now and/or in the future, may affect the mortgaged Property or any part or parts thereof.

**Event of Default.** The words "Event of Default" mean individually, collectively and interchangeably any of the Events of Default set forth below in the section entitled "DEFAULT".

**Guarantor.** The word "Guarantor" means and includes individually, collectively, interchangeably and without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means any and all present and future loan advances that Lender may make or extend from time to time, one or more times, under my Account with Lender, including any renewals, substitutions, and/or promissory note(s) executed to evidence debts under my Account, together with Finance Charges, late charges, attorneys' fees and other fees and charges as provided in my Account Agreement. Notwithstanding any other provision of this Mortgage to the contrary, this Mortgage will secure consumer loan advances under my Account only up to my credit limit as adjusted from time to time under my Account, plus Finance Charges, late charges and other fees and charges. All consumer loan advances under my Account in excess of my credit limit as adjusted from time to time will be secured by this Mortgage, if and when Lender agrees to increase the credit limit under my Account and if and when Lender complies with the subsequent disclosure, rescission, and other requirements under Federal Reserve Board Regulation Z, as applicable. **The maximum amount of Indebtedness secured under this Mortgage is limited to** ██████████.

**Lender.** The word "Lender" Means: **Chase Manhattan Bank USA, N.A.** ██████████ , a national banking association          Taxpayer Identification Number:22-238208, its successors and assigns, assigns, and any future holder or holders of any Indebtedness under my Account.

**Mortgage.** The word "Mortgage" means this Mortgage as this Mortgage may be amended, supplemented, restated or otherwise modified from time to time.

**Mortgagee.** The word "Mortgagee" means: **Chase Manhattan Bank USA, N.A.** ██████████ , a national banking association          Taxpayer Identification Number:22-238208, its successors and assigns, and any future holder or holders of any Indebtedness under my Account.

**Mortgagor.** The words "I", "me", "my", "we", "us", and "our" mean individually, collectively and interchangeably the above referenced Borrower(s) as well as any and all persons and entities subsequently purchasing the mortgaged Property, with or without assumption of this Mortgage.

**Property.** The word "Property" means individually, collectively and interchangeably any and all of my present and future property subject to this Mortgage.

**Related Documents.** The words "Related Documents" mean and include individually, collectively, interchangeably and without limitation all promissory notes, credit agreements, loan agreements, environmental

CHASE 02515

agreements, guaranties, security agreements, mortgages, collateral mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**MY ACCOUNT.** I have entered into an Account Agreement with Mortgagee on **06/25/03**        , under which I (or any of us) may from time to time obtain loan advances from Lender under the Account.

**GRANTING OF MORTGAGE.** To secure the prompt and punctual payment and satisfaction of my Indebtedness, in principal, interest, costs, late charges, and attorneys' fees, and additionally to secure repayment of all Additional Advances that Mortgagee may advance on my behalf as provided under this Mortgage, together with interest thereon, I am hereby specifically mortgaging, affecting and hypothecating unto and in favor of Mortgagee, any and all of my present and future rights, title and interests in and to the following described Property:



The Real Property or its address is commonly known as:
LA

**MORTGAGE SECURING PRESENT AND FUTURE INDEBTEDNESS.** This Mortgage is granted pursuant to Article 3298 of the Louisiana Civil Code for the purpose of securing the Indebtedness that may now be existing and/or that may arise in the future as provided herein, with the preferences and priorities provided under applicable Louisiana law. However, nothing under this Mortgage shall be construed as limiting the duration of this Mortgage or the purpose or purposes for which the Indebtedness may be requested or extended.

**DURATION OF MORTGAGE.** This Mortgage will remain in effect until my Account is closed and my Indebtedness is paid in full, and I cancel my Mortgage by filing a written cancellation instrument signed by Mortgagee. I understand that after my Indebtedness is paid in full, I may request Mortgagee to provide me with such a cancellation instrument by writing to Mortgagee as its main office or at another office that Mortgagee tells me to write to. Mortgagee may delay providing me with such a mortgage cancellation instrument for up to sixty (60) days following receipt of my written request.

**MATURITY DATE OF ACCOUNT AGREEMENT.** This Mortgage secures an Account Agreement dated the same date as this Mortgage that has a maturity date of                    .

**PROHIBITIONS REGARDING MORTGAGED PROPERTY.** So long as this Mortgage remains in effect, I agree not to, without Mortgagee's prior written consent: (a) sell, assign, transfer or convey the mortgaged Property; (b) do or fail to do anything or permit anything to be done that may in any way impair Mortgagee's security interests and rights in and to the mortgaged Property (for example, fail to maintain required insurance on the Property, fail to maintain the Property, allow a tax lien that primes Mortgagee's security interest to be filed against the Property, allow a prior lienholder to foreclose on the Property or allow another creditor to enforce a judgment against the Property; (c) enter into a Bond for Deed contract.

**REPRESENTATIONS AND WARRANTIES CONCERNING THE MORTGAGED PROPERTY.** Except as previously disclosed to Mortgagee in writing, I am representing and warranting that: (a) I am and will continue to be the lawful owner of the mortgaged Property; (b) I have the right to mortgage the property to Mortgagee; (c) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, Encumbrances, or claims of, or in favor of, any person, firm, corporation, or other entity; and (d) this Mortgage is binding upon me as well as my heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage, are and will be continuing in nature and will remain in full force and effect until such time as this Mortgage is canceled in the manner provided above.

**EXISTING MORTGAGE LOAN.** I have previously disclosed to Mortgagee that the lien of this Mortgage is junior and inferior to an existing mortgage loan, which existing mortgage loan has a current principal balance outstanding of approximately U.S. $                    . I agree that any default under my existing mortgage loan will also be considered an Event of Default under this Mortgage. I further agree not to modify, amend, extend, or renew my existing mortgage loan, or my existing mortgage, without the prior written consent of Mortgagee. I additionally agree not to request or accept further advances under my existing mortgage loan without Mortgagee's prior written consent, where such further advances may be secured by the mortgaged Property with possible preference and priority over the lien of this Mortgage.

LALCMT                                    Page 3 of 7

CHASE 02516

**ABANDONMENT: USE OF MORTGAGED OF PROPERTY.** So long as this Mortgage remains in effect, I agree not to abandon, or permit others to abandon, or commit waste of, or destroy the mortgaged Property. I further agree to observe and abide by and to cause others to observe and abide by all laws, rules, regulations and ordinances, as well as all policies of insurance, affecting the mortgaged Property or its use.

**REQUIRED INSURANCE.** I agree to maintain insurance on the Property at my expense for as long as this Mortgage remains in effect. This insurance is to be in the amounts and of the types required by Mortgagee and must be issued by a financially responsible insurance company or companies acceptable to Mortgagee. I agree to name Mortgagee as a lender loss payee beneficiary under such insurance policies, which must contain noncontributory lender loss payable clauses in Mortgagee's favor. My policies of insurance must also contain a provision prohibiting the cancellation or alteration of such insurance without at least thirty (30) days' prior written notice to Mortgagee. I further agree to provide Mortgagee with originals or certified copies of such insurance policies along with evidence that I have paid the policy premiums and all renewal premiums when due. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance to the extent such insurance is required and is or becomes available, for the term of the loan and for the full unpaid principal balance of the loan, or the maximum limit of coverage that is available, whichever is less.

I further agree that Mortgagee shall have the right to directly receive all proceeds payable under my insurance policies. Should I receive any such insurance proceeds, I agree immediately to turn such proceeds over and pay the same to Mortgagee. Mortgagee may apply such insurance proceeds at its sole option and discretion (after payment of all reasonable costs, expenses and attorneys' fees incurred by Mortgagee), for the purpose of (a) repairing, replacing or restoring the lost, stolen or damaged property, or (b) reducing the outstanding balance of the Indebtedness, and repaying all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon, in the manner provided under this Mortgage.

**TAXES.** I agree to promptly pay when due all taxes, local and special assessments and other governmental charges of every type and description that may from time to time be imposed, assessed, or levied against the mortgaged Property. I further agree to provide Mortgagee with evidence that such taxes, assessments and other governmental charges have been paid in full and in a timely manner.

**ALTERATIONS.** I agree not to, without Mortgagee's prior written consent, demolish, remove, construct, restore, add to, or alter any building(s) or other improvements to the mortgaged Property. Mortgagee may condition its consent to permit me to demolish or to remove any improvements to the Property upon my agreement to replace such improvements with new improvements of at least equal value satisfactory to Mortgagee.

**INSPECTION OF MORTGAGED PROPERTY.** I agree that Mortgagee or Mortgagee's agents may periodically inspect the mortgaged property at all reasonable times.

**REPAIRS AND MAINTENANCE.** I agree to keep and maintain, and to cause others to keep and maintain, the mortgaged property in good order, repair and condition at all times while this Mortgage remains in effect. I further agree to pay when due all claims for work done on, or services rendered or material furnished in connection with the mortgaged Property so that no Encumbrance may ever attach to or be filed against the Property.

**ADDITIONAL ADVANCES; INTEREST.** Should I fail to maintain insurance on the mortgaged property, or fail to pay taxes, assessments and other governmental charges when due, or should I fail to repair and maintain the Property as required under this Mortgage, then Mortgagee shall have the right, at Mortgagee's sole option and without any responsibility or liability to do so, to purchase such insurance on my behalf (including insurance protecting only Mortgagee's interests in the Property), to pay such taxes, assessments and governmental charges, and to make necessary repairs to the Property. Should I default under any other loan or extension of credit directly or indirectly secured by the mortgaged Property, or should the mortgaged Property become subject to or threatened with seizure and/or sale, then Mortgagee shall have the additional right, again at Mortgagee's sole option and discretion and without any responsibility or liability to do so, to cure such default(s) or to cause such default(s) to be cured, whether by making payments on my behalf or by taking such other actions as Mortgagee may deem to be necessary and proper within its sole discretion. All such Additional Advances that Mortgagee may advance on my behalf during the existence of this Mortgage, as well as Mortgagee's additional expenses as further provided under this Mortgage, shall be secured by this Mortgage. I agree to reimburse Mortgagee immediately for all additional sums that Mortgagee may advance for such purposes, together with interest thereon at the rate as provided under my Account Agreement from the date of each Additional Advance under this Mortgage until I repay Mortgagee in full.

**DEFAULT.** The following are Events of Default under this Mortgage:

**Default Under Indebtedness.** Should I fail to meet the repayment terms of my Indebtedness or any other obligations as specified under my Account Agreement.

**Default Under Mortgage.** Should any action or inaction by me adversely affect Mortgagee's equity interest in my property. For example, if I transfer title to the Property or sell the property without Mortgagee's permission, if

CHASE 02517

I fail to maintain the Property, if a tax lien that primes Mortgagee's security interest is filed against the Property or all or part of the Property is taken by eminent domain, if the Property is foreclosed on by a prior lienholder, or if another creditor attempts to enforce a judgment against the Property.

**Death.** Should my death result in an impairment of your security interest in my Property.

**False Statements.** Should I act fraudulently in connection with my Indebtedness or materially misrepresent any information with regard to my Indebtedness, including but not limited to material misrepresentations in my credit application or financial statements that I provide to Lender, and any correspondence or discussions that I may have with Lender regarding my Indebtedness.

**MORTGAGEE'S RIGHTS IN EVENT OF DEFAULT.** Should one or more Events of Default occur or exist under this Mortgage, Mortgagee shall have the following rights in addition to any other rights Mortgagee may have:

**Accelerate Payment.** To accelerate payment of any and all amounts which I may owe to Mortgagee under my Account, in principal, interest, costs, expenses, attorneys's fees and other fees and charges, as well as all Additional Advances that Mortgagee may have advanced on my behalf, as provided under this Mortgage, together with interest thereon.

**Foreclosure.** To commence appropriate foreclosure proceedings under this Mortgage under ordinary or executory process, under which Mortgagee may cause the mortgaged Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with applicable Louisiana law, without the necessity of further demanding payment from me, or of notifying me, or of placing me in default.

**Confession of Judgment.** For purposes of foreclosure under Louisiana executory process procedures, I confess judgment and acknowledge to be indebted to Mortgagee up to the full amount of the Indebtedness, in principal interest, costs, expenses, attorneys' fees and other fees and charges, and in the amount of all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon.

**Waivers.** To the extent permitted under applicable Louisiana law, I am waiving: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (b) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. I further agree that any declaration of fact made by authentic act before a Notary Public and two witnesses, by a person declaring that such facts are within his or her knowledge, shall constitute authentic evidence of such facts for purposes of foreclosure under applicable Louisiana law and for purposes of La. R.S. 9:3504(D)(6), where applicable.

**Cumulative Remedies.** I agree that the above remedies are cumulative in nature and nothing under this Mortgage shall limit or restrict the remedies available to Mortgagee following any Event of Default under this Mortgage.

**Keeper.** Should any or all of the mortgaged property be seized as an incident to an action for the recognition or enforcement of this Mortgage, by executory process, sequestration, attachment, writ or fieri facias or otherwise, I hereby agree that the court issuing any such order shall, if requested by Mortgagee, appoint Mortgagee, or any agent designated by mortgagee, or any person or entity named by Mortgagee, as keeper of the Property as provided under La. R.S. 9:5136, et seq. I agree to pay the reasonable fees of such a keeper, which are hereby fixed at $50.00 per hour. Any fees paid to the keeper by Mortgagee shall be secured by this Mortgage as an additional expense.

**APPLICATION OF PROCEEDS.** Mortgagee may apply any proceeds derived or to be derived from the sale or other disposition of the mortgaged Property first to the reimbursement of any additional expenses incurred by Mortgagee in connection therewith, including Mortgagee's attorneys' fees and court costs; and then to the payment of any Additional Advances that Mortgagee may advance on my behalf, together with interest thereon as provided under this Mortgage; and then to the payment of my Indebtedness in favor of Mortgagee, in such order and with such priorities as Mortgagee may determine within its sole discretion.

**PROTECTION OF MORTGAGEE'S SECURITY RIGHTS.** I agree to be fully responsible for any losses that Mortgagee may suffer as a result of anyone other than Mortgagee asserting any rights to or interest in the mortgaged Property. I agree to appear in and to defend all actions or proceedings purporting to affect Mortgagee's security rights and interests. Should I fail to do what is required of me under this Mortgage, or if any action or proceeding is commenced naming Mortgagee as a party, or affecting Mortgagee's security interests or the rights and powers granted under this Mortgage, then Mortgagee may, without releasing me from any of my obligations, do whatever Mortgagee believes is necessary and proper within its sole discretion, including making Additional

LALCMT                                    Page 5 of 7

CHASE 02518

Advances on my behalf as provided herein, to protect the security of this Mortgage. Should the reappraisal of the mortgaged Property occur, whether to comply with appropriate regulatory requirements or otherwise, I agree to pay the costs of such appraisal or reappraisals or to reimburse Mortgagee for the costs thereof.

**INDEMNIFICATION OF MORTGAGEE.** I further agree to indemnify, to defend and to save and hold Mortgagee harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including Mortgagee's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever, that may be asserted against or incurred by Mortgagee, arising out of or in any way occasioned by this Mortgage or the rights and remedies granted to and in favor of Mortgagee hereunder.

**ADDITIONAL WAIVERS.** In granting this Mortgage, I am waiving any homestead and other exemptions from seizure with regard to the mortgaged Property to which I may be entitled under the laws of the State of Louisiana. I am also waiving the production of Mortgage, Conveyance and any and all other Certificates and relieve and release the Notary Public before whom this Mortgage was passed from all responsibility and liability in connection therewith.

**GENERAL PROVISIONS.** The following general provisions are a part of this Mortgage:

**Solidary Liability.** When there is more than one Mortgagor under this Mortgage, our obligations to Mortgagee shall be on a "solidary" or "joint and several" basis. We further agree that either or any of us, acting alone or with others, may obtain additional advances under the Account, without the further necessity that all of us further agree, concur, or join in each such loan or other extension of credit.

**Notices.** All required notices under this Mortgage shall be in writing and shall be effective when actually delivered, or when deposited in the United States mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above, or at such other addresses as any party may designate to the other(s) in writing. If there is more than one Mortgagor under this Mortgage, notice given to any Mortgagor shall constitute notice to all Mortgagors.

**Waiver of Additional Rights.** I agree that any failure or delay on the part of Mortgagee to exercise any of the rights and remedies granted under this mortgage shall not constitute a waiver of such rights and remedies. Any waiver or forbearance on the part of Mortgagee shall be effective against Mortgagee only if agreed to in writing.

**Governing Law.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC § 85 incorporates Delaware law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Account Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Account Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Account Agreement are declared to be severable.

**Successors and Assigns.** My obligations under this Mortgage shall be binding upon my heirs, administrators, executors, successors and assigns, as well as upon any person, firm or corporation subsequently acquiring title to or ownership of the mortgage Property, whether in whole or in part.

**Taxation of Mortgages.** Should there be any change in local, Louisiana or federal law with regard to taxation of mortgages, I agree to pay any taxes, assessments or charges that may be imposed on Mortgagee as a result of this Mortgage.

**Severability.** If any provision of this Mortgage is deemed to be invalid or unenforceable, such invalidity or unenforceability will not affect the validity and enforceability of the remaining provisions of this Mortgage.

**Caption Headings.** The caption headings in this Mortgage are for convenience purposes only and are not to be construed as a summary of each provision of this Mortgage.

**DEDUCTIBILITY OF INTEREST.** I acknowledge and agree that Mortgagee has made no representations or warranties to me and has in no way advised me as to whether interest and other Finance Charges under my Account with Mortgagee are or will be deductible for purposes of federal, state or local income or other taxation.

**SPOUSAL INTERVENTION.** The following paragraph is to be completed and will be considered a part of this Mortgage only if this Mortgage is being given by a spouse who also is not a borrower under the Account Agreement.

And now into these presents intervenes                    (SSN                              ), my spouse, appearing herein for the limited purpose of concurring with the granting of this Mortgage consistent with Article 2347 of the Louisiana Civil Code, without creating any liability with regard to my spouse's separate property not subject to this Mortgage, as well as for the purpose (as applicable) of waiving any homestead and other exemptions from seizure with regard to the Property to which my spouse may be entitled under Louisiana law. My

LALCMT                                          Page 6 of 7

CHASE 02519

spouse further agrees and concurs that I, acting alone or with others, may obtain additional loans and other extensions of credit secured by this Mortgage without the necessity that my spouse further agree to or concur in each such additional loan or other extension of credit.

**THUS DONE AND PASSED, on the day, month and year first above, in the presence of the undersigned Notary and the undersigned competent witnesses, who hereunto sign their names with Mortgagor after reading of the whole.**

**WITNESSES:**                                    **MORTGAGOR:**

(Seal) _____     X _____

(Seal) _____     X _____

(Seal) _____     X _____

                                            X _____
                                            **Non-Borrowing Spouse**

LALCMT                          Page 7 of 7

CHASE 02520



Prepared By

Record and Return Address

 Southpointe Plaza II
Suite 300
380 Southpointe Blvd.
Canonsburg, PA 15317
(800) 920-0050

Servicing # ███████8178

## CALIFORNIA
## OPEN END DEED OF TRUST
### (Securing Future Advances)

**THIS DEED OF TRUST** is made on ___ **August 27, 2005** ___ The trustor is

The trustee is ██████████████████████████████████ ("Trustee")  The beneficiary is
**JPMorgan Chase Bank, N.A.**, a national banking association whose address is
**1111 Polaris Parkway, Columbus, OH   43240**
or its successors or its assignees  Any communication to the Lender should be sent to
c/o Chase Home Finance LLC, 250 West Huron Road, P O. Box 93764, Cleveland, OH  44113

In this Deed of Trust, the terms "you," "your" and "yours" refer to the trustor(s)  The terms "we," "us" and "our" refer to the beneficiary

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Deed of Trust ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of ████████████████████████████████████████████████████████ **Dollars** (U S. $ ██████████████ )  The Agreement provides for a final scheduled installment due and payable not later than on ██████████████████  You agree that this Deed of Trust shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement  The parties hereto intend that this Deed of Trust shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

CALCDT (Rev  09/14/04)                    Page 1 of 7

CHASE 02521

This Deed of Trust secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Deed of Trust to protect the security of this Deed of Trust; and (c) the performance of your covenants and agreements under this Deed of Trust and the Agreement. For this purpose and in consideration of the debt, you irrevocably grant and convey to the Trustee and Trustee's successors and assigns, in trust, with power of sale, the property located in ▮▮▮▮▮▮▮▮▮▮ County, California, and more fully described in EXHIBIT A, which is attached hereto and made a part hereof, which property is more commonly known as ▮▮▮▮▮▮▮▮▮▮ CA ▮▮▮▮▮▮▮▮▮▮ ("Property Address"),

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Deed of Trust. All of the foregoing is referred to in this Deed of Trust as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to  grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

**YOU AND WE** covenant and agree as follows

**1**     **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

**2.**     **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

**3.**     **Prior Deed of Trusts, Charges, Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Deed of Trust, including your covenants to make payments when due  You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust or any advance under this Deed of Trust, and leasehold payments or ground rents, if any  Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly  You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Deed of Trust or any advance under this Deed of Trust.

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law

**4.**     **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require  You may choose any insurer reasonably acceptable to us  Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein  You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

CHASE  02522

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Deed of Trust, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

   5.   **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application, Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Deed of Trust or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Deed of Trust or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Deed of Trust is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

   6.   **Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Deed of Trust, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Deed of Trust or any advance under the Agreement or this Deed of Trust, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this Deed of Trust and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Deed of Trust. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Deed of Trust, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

   7   **Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

   8.   **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**CALCDT**                                    Page 3 of 7

CHASE 02523

9.    **You Are Not Released; Forbearance by Us Not a Waiver** Extension of time for payment or modification of amortization of the sums secured by this Deed of Trust granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successors in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy

10.   **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Deed of Trust shall bind and benefit your successors and permitted assigns Your covenants and agreements shall be joint and several Anyone who co-signs this Deed of Trust but does not execute the Agreement: (a) is co-signing this Deed of Trust only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Deed of Trust; and (c) agrees that we and anyone else who signs this Deed of Trust may agree to extend, modify, forbear or make any accommodations regarding the terms of this Deed of Trust or the Agreement without such person's consent.

11.   **Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12.   **Notices.** Unless otherwise required by law, any notice to you provided for in this Deed of Trust shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you  Any notice provided for in this Deed of Trust shall be deemed to have been given to you or us when given as provided in this paragraph.

13.   **Governing Law; Severability**  The extension of credit secured by this Deed of Trust is governed by federal law, which for the purposes of 12 USC º 85 incorporates Ohio law  However, the interpretation and enforcement of this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law  In the event that any provision or clause of this Deed of Trust or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Agreement are declared to be severable

14.   **Transfer of the Property**  If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust.

15.   **Sale of Agreement; Change of Loan Servicer**  The Agreement or a partial interest in the Agreement (together with this Deed of Trust) may be sold one or more times without prior notice to you  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Deed of Trust. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made  The notice will also contain any information required by applicable law

CHASE 02524

**16.**   **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Deed of Trust, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Deed of Trust, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**17.**   **Acceleration, Remedies. You will be in default if (1) any payment required by the Agreement or this Deed of Trust is not made when it is due, (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under Section 14, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense you may have to acceleration and sale. If the default is not cured on or before the date specified in the notice, we, at our option, may require immediate payment in full of all sums secured by this Deed of Trust without further demand and may invoke the power of sale and other remedies permitted by applicable law. We shall be entitled to collect all expenses incurred in pursuing remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the outstanding principal and interest and cost of title evidence.**

**If we invoke the power of sale, we shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of our election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. We or the Trustee shall mail copies of the notice as prescribed by applicable law to you and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on you, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Either we or our designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warrant, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, as set forth above; (b) to all sums secured by this Deed of Trust; and (c) any excess to the _person or_ persons legally entitled to it.**

CHASE 02525

18.   **Reconveyance.** Upon your request and payment of all sums secured by this Deed of Trust, we shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it and may charge a $45 fee as permitted by law to the person or persons legally entitled to the reconveyance. Such person or persons shall pay any recordation costs

19.   **Substitute Trustee.** We may, at our option, from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by us and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original lender, Trustee and borrower, the book and page where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

20.   **Request for Notices.** You request that copies of the notices of default and sale be sent to your address which is the Property Address.

21.   **Statement of Obligation Fee.** We may collect a fee not to exceed $30, the maximum amount permitted by law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California

22.   **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Deed of Trust under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Deed of Trust.

23.   **Waiver** No waiver by us at any time of any term, provision or covenant contained in this Deed of Trust or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

24.   **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Deed of Trust upon full repayment of all sums secured thereby

25.   **Riders to this Deed of Trust.** If one or more riders are executed by you and recorded together with this Deed of Trust, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust. [Check applicable box(es)]

☐ Condominium Rider                    ☐ 1-4 Family Rider

☐ Planned Unit Development Rider       ☐ Other(s) _____

CALCDT

CHASE 02526

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by you and recorded with it.

Signed, sealed and delivered in the presence of:

Witness:

_____

_____

_____(Seal)

_____(Seal)

_____(Seal)

_____(Seal)

STATE OF CALIFORNIA,                              )
                                                  ) SS:
COUNTY OF ███████████████                         )

On this 27ᵗʰ day of AuGusT 2005, before me ██████████ a notary public in and for said county and state, personally appeared ████████████████████ ( ) personally known to me or (x) proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is̶/are subscribed to the within instrument and acknowledged to me that h̶e̶/s̶h̶e̶/they executed the same in h̶i̶s̶/h̶e̶r̶/their authorized capacity(ies), and that by h̶i̶s̶/h̶e̶r̶/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year first above written

(Seal)

NOTARY PUBLIC-CALIFORNIA
My Comm. Expires April 18, 2009

CALCDT                                    Page 7 of 7

CHASE 02527

**WHEN RECORDED MAIL TO:**
JPMorgan Chase Bank, N.A.
Retail Loan Servicing KY2-1606
P.O. Box 11606
Lexington, KY 40576-1606

8390

DEED OF TRUST / MORTGAGE

This Mortgage prepared by:

Name: ████████████
Company: JPMorgan Chase Bank, N.A.
Address: , PHOENIX, AZ 85034

---

# MORTGAGE

## FOR USE WITH SECURED REVOLVING CREDIT AGREEMENT

**MAXIMUM LIEN.** The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed ████████████ plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**THIS MORTGAGE** dated July 5, 2006, is made and executed between ████████████████████████ (referred to below as "Grantor") and JPMorgan Chase Bank, NA, whose address is 1111 Polaris Parkway, Columbus, OH 43240) (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ████████████ County, State of Florida:

████████████████████████████████████████████████████████

The Real Property or its address is commonly known as ████████████████ FL████. The Real Property tax identification number is ████████████████.

**REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Mortgage secures a revolving line of credit under which, upon request by Borrower, Lender, within twenty (20) years from the date of this Mortgage, may make future advances to Borrower. Such future advances, together with interest thereon, are secured by this Mortgage. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Mortgage and any intermediate balance.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT WITH THE CREDIT LIMIT OF ████████████ THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in

**MORTGAGE**
(Continued)

**Loan No:** ▮▮▮▮8390                                                                                          Page 3

---

any way by any act, omission or default of Grantor or any other person.  The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area.  Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.  If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.**  During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement.  If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.**  If Grantor fails  (A)  to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims  (B)  to provide any required insurance on the Property, or  (C)  to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so.  If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests.  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Credit Agreement; or  (C)  be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity.  The Property also will secure payment of these amounts.  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default.  Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.**  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.**  All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.**  The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.**  The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation.  The existing obligation has a current principal balance of approximately ▮▮▮▮▮  Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.**  Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender.  Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have

CHASE  02530

| Loan No: ████8390 | **MORTGAGE**<br>(Continued) | Page 4 |
|---|---|---|

the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Mortgage if any of the following happen:

(A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Borrower's or Grantor's income, assets, liabilities, or any other aspects of Borrower's or Grantor's financial condition.

(B) Borrower does not meet the repayment terms of the Credit Agreement.

(3) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph

## MORTGAGE
(Continued)

include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender. Notwithstanding the foregoing, the address for notice for Lender is:  JPMorgan Chase Bank, N.A., P.O. Box 901008, Fort Worth, TX 76101-2008.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender will have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Compliance with Regulations of Association.** Grantor shall perform all of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, Grantor shall perform all of the obligations imposed on Grantor by the lease of the Real Property from its owner.

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**NON-WAIVER.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION.** It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Florida except for matters related to: (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and the laws of the State of Ohio; and (2) the validity and enforcement of Lender's security interest in the Property, which will be governed by the laws of the State where the Property is located. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means ▮▮▮▮

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated July 5, 2006, **in the original principal amount of** ▮▮▮▮ from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Credit Agreement is ▮▮▮▮

CHASE  02532

**MORTGAGE**                                                    Page 6
Loan No:████████8390                    (Continued)

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means ████████████████████

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. **In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Revolving Line of Credit paragraph of this Mortgage. However, the term "Indebtedness" is subject to the limitations identified in the Maximum Lien section of this Mortgage.**

**Lender.** The word "Lender" means JPMorgan Chase Bank, NA, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE.** Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

GRANTOR:



| Loan No: ████ 8390 | **MORTGAGE** (Continued) | Page 7 |
|---|---|---|

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_                    )

                                     ) SS

COUNTY OF ████████████               )

The foregoing instrument was acknowledged before me this _____ 5^(th) day of _July_ ___, 20 6
by ████████████ who are personally known to me or who have produced _IX. and_
_ID Card_ _____ as identification and did / did not take an oath.

[Notary seal: Notary Public - State of Florida, My Commission Expires Jan 15, 2010]

_____

(Title or Rank)

_____

(Serial Number, if any)

---

LASER PRO Lending, Ver. 5.19.40.00 Copr. Harland Financial Solutions, Inc. 1997, 2006.   All Rights Reserved.   - FL/GFH bi\cfi\Vilaser pro\CFFLPL\G03.FC  TR-53714330  PR-0 IMBTH.

CHASE  02534

**WHEN RECORDED MAIL TO:**
JPMorgan Chase Bank, N.A.
710 Kansas Lane, LA4-2022
Monroe, LA 71203

4203

DEED OF TRUST / MORTGAGE

This Mortgage prepared by:

Name:
Company: JPMorgan Chase Bank, N.A.
Address: 1820 E SKY HARBOR CIRCLE SOUTH, PHOENIX, AZ 85034

# MORTGAGE

## FOR USE WITH SECURED REVOLVING CREDIT AGREEMENT

**MAXIMUM LIEN.** The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $_____ plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**THIS MORTGAGE** dated May 2, 2008, is made and executed between _____ and JPMorgan Chase Bank, NA, whose address is 1111 Polaris Parkway, Columbus, OH 43240 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in _____ County, State of Florida:

**The Real Property or its address is commonly known as** _____ FL _____. **The Real** Property tax identification number is _____

**REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Mortgage secures a revolving line of credit under which, upon request by Grantor, Lender, within twenty (20) years from the date of this Mortgage, may make future advances to Grantor. Such future advances, together with interest thereon, are secured by this Mortgage. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Mortgage and any intermediate balance.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT WITH THE CREDIT LIMIT OF _____ THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and

HASE 02535

ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspection or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and

CHASE 02536

Loan No: ████████4203          (Continued)

which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Compliance with Existing Indebtedness. During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

LENDER'S EXPENDITURES. If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims (B) to provide any required insurance on the Property, or (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Property also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Promises. All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

EXISTING INDEBTEDNESS. The following provisions concerning Existing Indebtedness are a part of this Mortgage:

Existing Lien. The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation. The existing obligation has a current principal balance of approximately ████████ Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

No Modification. Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

CONDEMNATION. The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or

CHASE 02537

**MORTGAGE**
(Continued)

Loan No: [blacked out]4203                                                                                                Page 4

continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Mortgage if any of the following happen:

(A)  Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition.

(B)  Grantor does not meet the repayment terms of the Credit Agreement.

(3)  Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender. Notwithstanding the foregoing, the address for notice for Lender is: Chase, Attn: Home Equity Loan Servicing, P.O. Box 24714, Columbus, OH 43224.

CHASE  02538

IDENTITY OF LENDER. Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

NON-WAIVER. A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

SUPPLEMENT TO PERSONAL PROPERTY DEFINITION. It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Mortgage:

Amendments. What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

Caption Headings. Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

Governing Law. This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Florida except for matters related to: (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and the laws of the State of Ohio; and (2) the validity and enforcement of Lender's security interest in the Property, which will be governed by the laws of the State where the Property is located. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

Joint and Several Liability. All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

No Waiver by Lender. Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

Severability. If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

Merger. There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Successors and Assigns. Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Mortgage.

DEFINITIONS. The following words shall have the following meanings when used in this Mortgage:

Borrower. The word "Borrower" means ████████████ and all other persons and entities signing the Credit Agreement.

Credit Agreement. The words "Credit Agreement" mean the credit agreement dated May 2, 2008, in the original principal amount of $████████ from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is ████████.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

Grantor. The word "Grantor" means ████████████████.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition, and without limitation, the term "Indebtedness" includes all amounts

Loan No: ████4203

**MORTGAGE**
(Continued)

Page 6

identified in the Revolving Line of Credit paragraph of this Mortgage. However, the term "Indebtedness" is subject to the limitations identified in the Maximum Lien section of this Mortgage.

**Lender.** The word "Lender" means JPMorgan Chase Bank, NA, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE.** Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

GRANTOR:



**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _FLORIDA_ )
) SS
COUNTY OF ████████ )

The foregoing instrument was acknowledged before me this _2nd_ day of _May_, 20 _08_ by ████████ who are personally known to me or who have produced _DRIVER'S LIC._ as identification and did / did not take an oath.

████████
(Name of Acknowledger Typed, Printed or Stamped)

████████
(Title or Rank)

EXPIRES: October 24, 2009

(Serial Number, if any)