# EXHIBIT 17
## PART 2 OF 9

Recording requested by and
when recorded return to:
2150 Cabot Blvd. West

Langhorne, PA 19047
Attn: Group 9, Inc.

This Mortgage was prepared by:

Washington Mutual Bank, FA
3990 S BABCOCK ST
MELBOURNE, FL 32901

**Washington Mutual**

# EQUITY LINE OF CREDIT MORTGAGE

Loan number: ████6696

**THIS MORTGAGE is from**

whose address is: ████ FL ████

("Borrower"); in favor of:

Washington Mutual Bank, FA, a federal association, which is organized and existing under the laws of the United States of America, and whose address is 400 E. Main Street, Stockton, CA 95290 ("Lender") and its successors or assigns.

1. **Granting Clause.** Borrower hereby grants, bargains, sells, conveys and mortgages to Lender and its successors and assignees, the real property in ████ County, Florida, described below, and all rights and interest in it Borrower ever gets:

Tax Parcel Number: ████
together with all insurance and condemnation proceeds related to it; all income, rents and profits from it; all plumbing, lighting, air conditioning and heating apparatus and equipment; and all fencing, blinds, drapes, floor coverings, built-in appliances, and other fixtures, at any time installed on or in

3208 (04/15/05) W6.2                    **BANK**                    Page 1 of 6

CHASE 02541

██████6696

or used in connection with such real property, all of which at the option of Lender may be considered to be either personal property or to be part of the real estate.

All of the property described above will be called the "Property." If any of the Property is subject to the Uniform Commercial Code, this Mortgage is also a Security Agreement which grants Lender, as secured party, a security interest in all such property.

2.  **Obligation Secured.**
(a)  This Mortgage is given to secure performance of each promise of Borrower contained herein or in a  Home Equity Line of Credit Agreement and Disclosure with Lender with a maximum credit limit of ████████████ (the "Credit Agreement") including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Borrower under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Borrower may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Mortgage. This Mortgage also secures payment of certain fees and charges payable by Borrower under the Credit Agreement, certain fees and costs of Lender as provided in Section 9 of this Mortgage and repayment of money advanced by Lender to protect the Property or Lender's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, the Debt is due and payable in full on ████████ (the "Maturity Date"). All of this money is called the "Debt." In addition to the Debt secured by this Mortgage, this Mortgage shall also secure and constitute a lien on the Property for all future advances made by Lender to Borrower for any purpose within 20 years after the date of this Mortgage, just as if the advance made by were made on the date of this Mortgage. Any future advance may be made in accordance with the terms of the Credit Agreement or at the option of Lender. The total amount of the indebtedness that may be secured by this in accordance with the terms of the Credit Agreement or Mortgage may increase or decrease from time to time but the total unpaid balance secured at any one time by this Mortgage shall not exceed two times the maximum credit limit that is set forth in Paragraph 2(a) of this Mortgage, together with accrued interest and all of Lender's costs, expenses and disbursements made under this Mortgage.

3.  **Representations of Borrower.** Borrower represents that:
(a)  Borrower is the owner of the Property, which is unencumbered except by: easements reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or mortgage given in good faith and for value, the existence of which has been disclosed in writing to Lender; and
(b)  The Property is not used for any agricultural or farming purposes.

4.  **Promises of Borrower.** Borrower promises:
(a)  To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Lender's written consent;
(b)  To allow representatives of Lender to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
(c)  To pay on time all lawful taxes and assessments on the Property;
(d)  To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
(e)  To see to it that this Mortgage remains a valid lien on the Property superior to all liens except those described in Section 3(a); and

3208 (04/15/05) W6.2                                    **BANK**                                    Page 2 of 6

CHASE  02542

6696

(f)   To keep the improvements on the Property insured by a company satisfactory to Lender against fire and extended coverage perils, and against such other risks as Lender may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Lender.  Lender will be named as the loss payee on  all such policies pursuant to a standard lender's loss payable clause.  The amount collected under any insurance policy may be applied upon any indebtedness hereby secured in the same manner as payments under the Note or, at Lender's sole option, released to Borrower.  In the event of foreclosure or sale of the Property all rights of the Borrower in insurance policies then in force shall pass to the purchaser.

5.   **Sale, Transfer or Further Encumbrance of Property.**  The loan is personal to Borrower, and the entire Debt shall be accelerated and become immediately due and payable in full upon any sale or other transfer of the Property or any interest therein by Borrower including, without limit, further encumbrance of the Property.  A sale or other transfer of the Property or any interest therein by Borrower without the full payment of the Debt shall constitute an event of default hereunder.

6.   **Curing of Defaults.**  If Borrower fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or mortgage, Lender may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Borrower's failure to comply.  Repayment to Lender of all the money spent by Lender on behalf of Borrower shall be secured by this Mortgage.  The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Borrower on demand. Although Lender may take action under this paragraph, Lender is not obligated to do so.

7.   **Remedies For Default.**

(a)   Prompt performance under this Mortgage is essential. If Borrower doesn't pay any installment of the Debt on time, or any other event occurs that entitles Lender to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, the Debt and any other money whose repayment is secured by this Mortgage shall immediately become due and payable in full, at the option of the Lender and the total amount owed by Borrower on the day repayment in full is demanded, including all unpaid interest, will thereafter bear interest at the rate specified in the Credit Agreement.

(b)   Upon the occurrence of a default as set forth in Paragraph 7(a) above, Lender may institute an action to foreclose this Mortgage under Florida law.  Lender may seek any other remedies available to it under applicable Florida law.

(c)   The foreclosure of this Mortgage is not the exclusive remedy of Lender to collect the Debt.  Lender may, upon the occurrence of a default, as set forth in Paragraph 7(a) above, institute any other remedies available to a creditor under Florida law.  In connection with any portion of the Property which is personal property, Lender shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the State of Florida.

(d)   By accepting payment of any sum secured by this Mortgage after its due date, Lender does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8.   **Condemnation; Eminent Domain.**  In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the obligation secured by this Mortgage shall be paid to Lender to be applied to the obligation in the same manner as payments under the Credit Agreement.

9.   **Fees and Costs.**  Borrower shall pay Lender's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other

CHASE 02543

6696

proceeding to foreclose this Mortgage, in any lawsuit or proceeding which Lender is obligated to prosecute or defend to protect the lien of this Mortgage and, in any other action taken by Lender to collect the Debt, including without limitation any disposition of the Property under the Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

   **10. Release.**  Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage.  Borrower shall pay Lender a release fee, unless prohibited by law, and for all recordation costs of any satisfaction of this Mortgage.

   **11. Limitation of Future Advances.**  In the event Borrower executes a Notice of Limitation of Future Advances of this Mortgage in accordance with  Florida law, Borrower shall send a copy of each Notice by prepaid certified mail within two (2) business days of execution thereof to the attention of Loan Service Director at:
Washington Mutual Bank, FA
Consumer Lending -- BR2CLFL
PO Box 6868
Lake Worth, FL 33466
The Notice of Limitation of Future Advances of this Mortgage will not be effective unless notice is provided to Lender as set forth above.

   **12. Payoff and Similar Statements.**  Unless prohibited by law, Lender may collect a fee in the amount determined by Lender, for furnishing a payoff demand statement or similar statement.

   **13. Miscellaneous.**  This Mortgage shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto.  The words used in this Mortgage referring to one person shall be read to refer to more than one person if two or more have signed this Mortgage or become responsible for doing the things this Mortgage requires.  This Mortgage shall be governed by and construed in accordance with federal law and to the extent federal law does not apply, the laws of the State of Florida.  In the event of any action hereunder or related hereto, and subject to applicable law, Borrower hereby waives any right to a jury trial.  If any provision of this Mortgage is determined to be invalid under law, that fact shall not invalidate any other provision of this Mortgage, but the Mortgage shall be construed as if not containing the particular provision or provisions held to be invalid, and all remaining rights and obligations of the parties shall be construed and enforced as though the invalid provision did not exist.

☐ If this box is checked, _____ joins in the execution and delivery of this Mortgage to induce Lender to make the loan and to create a valid, enforceable lien under Florida homestead law, _____ does not undertake any responsibility for payments of the note secured by this Mortgage or the performance of any warranties, terms, or conditions of the Mortgage.

   **14. Riders.**  If one or more riders are executed by Grantor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box(es)]



3208 (04/15/05) W6.2                    **BANK**                            Page 4 of 6

CHASE  02544

6696

DATED at

, 2005.

BORROWER(S):

**BANK**

CHASE  02545

█████ 6696

STATE OF _FLORIDA_ )
                                      ss.
COUNTY OF ████████████ )

The foregoing instrument was acknowledged before me this _4_ day of _Aug_, _2005_ by
████████████████ _____ and
_____ and
_____ and
_____ and
_____ and
_____ and
_____ and
_____ ,
who is/are personally known to me or has produced ████████████ ____
as identification.

Notary Public - State of Florida
My Commission Expires Apr 13, 2008

3208 (04/15/05) W6.2                  **BANK**                    Page 6 of 6

CHASE  02546

This instrument prepared by

250 West Huron Road

Cleveland, OH 44113
(Name and Address of Preparer)

After recording return to.
JPMorgan Chase Bank, N.A.
HE Post Closing, KY2-1606
PO Box 11606
Lexington, KY 40576-1606

Loan Number: █████████1029

**FLORIDA**
**HOME EQUITY LINE OF CREDIT MORTGAGE**
**(Securing Future Advances)**

Maximum Principal Loan Indebtedness Secured: ████████████████

THIS MORTGAGE is made on August 16, 2007  The mortgagor is
████████████████████████████████████████
████████████████████  This Mortgage is given to JPMorgan Chase Bank, N.A.,
whose address is 1111 Polaris Parkway, Columbus, OH 43240 ("Lender") or its
successors or assignees.  All notices and correspondence to the Lender pursuant to
Section 13 should be addressed to Chase Home Finance LLC, 250 West Huron Road,
P.O. Box 93764, Cleveland, OH 44113.  In this Mortgage, the terms "you," "your" and
"yours" refer to the mortgagor(s).  The terms "we," "us" and "our" refer to the Lender.

Pursuant to a Home Equity Line of Credit Agreement ("Agreement") dated the
same date as this Mortgage, you may incur maximum unpaid loan indebtedness
(exclusive of interest thereon) in amounts fluctuating from time to time up to the
maximum principal sum outstanding at any time of ██████████████████
██████████████████████████████  The Agreement provides for a
final scheduled installment due and payable not later than on ████████████  You
agree that this Mortgage shall continue to secure all sums now or hereafter advanced
under the terms of the Agreement including, without limitation, such sums that are
advanced by us whether or not at the time the sums are advanced there is any principal
sum outstanding under the Agreement.  The parties hereto intend that this Mortgage
shall secure unpaid balances, and all other amounts due to us hereunder and under the
Agreement.

This Mortgage secures to us:  (a) the repayment of the debt evidenced by the
Agreement, with interest, and all refinancings, renewals, renegotiations, extensions and
modifications of the Agreement; (b) the payment of all other sums, with interest,
advanced under this Mortgage to protect the security of this Mortgage; and (c) the
performance of your covenants and agreements under this Mortgage and the
Agreement.  For this purpose and in consideration of the debt, you do hereby mortgage,
grant and convey to us and our successors and assigns the following-described
property located in ████████ County, Florida and more fully described in Exhibit A, which
is attached hereto and made a part hereof.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Florida Open-End Mortgage (HC#58252v2) (8/05)                          08/14/2007 07:58 PM
HFLLCM01.UFF                                                                            C

CHASE 02555

Loan Number: ███1029

The property is more commonly known as: ████████████████ FL ██████
("Property Address"); and the property tax identification number is ████████

   **TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property   All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

   **YOU COVENANT** that you are lawfully seised of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

   1.   **Payment of Principal, Interest and Other Charges.**  You shall pay when due the principal and of interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

   2.   **Payment of Taxes and Insurance.**  You shall pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the Property.

   We specifically reserve to ourselves and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes and assessments (including condominium assessments, if any) which may attain priority over this Mortgage and leasehold payments or ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law. We will exercise this right only if (1) you are not required under any transaction evidenced by a mortgage, deed of trust, or other security instrument with a lien that has priority over this Mortgage to make such payments to the lien holder secured by such instrument, and (2) you fail to make such tax, assessment, leasehold, rent or insurance payments in a timely manner, as agreed under this Mortgage.

   3.   **Application of Payments.**  Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

   4.   **Prior Mortgages; Charges; Liens.**   You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage or any Advance under this Mortgage, including your covenants to make payments when due.  You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage or any Advance under this Mortgage, and leasehold payments or ground rents, if any.  Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this Section and receipts evidencing any such payments you make directly.  You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage or any Advance under this Mortgage.

   5.   **Hazard Insurance.**   You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including hurricanes, floods or flooding, for which we require insurance.  If the Property is located in a special flood hazard area as determined by the Director of the Federal Emergency Management Agency, you will obtain and maintain Federal Flood Insurance, if available, within 45 days after we provide you with notice that the Property is in a special flood hazard area.  The insurance shall be maintained in the amounts and for the periods that we require.  You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause.  If we require, you shall promptly give us all receipts of paid premiums and renewal notices.

Florida Open-End Mortgage (HC#58252v2) (8/05)                                              08/14/2007 07:58 PM
HFLLCM02.UFF                                                                                                              C

CHASE  02556

Loan Number: ████1029

If you fail to maintain coverage as required in this Section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 7. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

**6. Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, or any persons or entities acting at your direction or with your knowledge or consent, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning occupancy of the Property. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**7. Protection of Our Rights in the Property.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this Section. Any amounts we pay under this Section shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request.

**8. Inspection.** We or our agent may enter and inspect the Property at any reasonable time and upon reasonable notice.

**9. Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned or, if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond

CHASE 02557

Loan Number: ████1029

to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**10.   You Are Not Released; Forbearance by Us Not a Waiver.**   Extension   of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**11.   Successors and Assigns Bound; Joint and Several Liability; Additional Signers.**   The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who signs this Mortgage but does not execute the Agreement: (a) is signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

**12.   Loan Charges.**   If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**13.   Notices.**   Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the mailing address stated above or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this Section.

**14.   Governing Law; Severability.**   The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC § 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**15.   Transfer of the Property.**   If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**16.   Sale of Agreement; Change of Loan Servicer.**   The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to

CHASE 02558

Loan Number: [REDACTED]1029

the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**17. Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**18. Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs other than under Section 15 hereof, unless applicable law provides otherwise, we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment), and costs of documentary evidence, abstracts and title reports.

**19. Advances to Protect Security.** This Mortgage shall secure the unpaid balance of advances made by us, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**20. Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 18, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**21. Satisfaction.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage without cost to you. You will be responsible for all costs of recording such release.

**22. Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this Section is intended to create and shall not be construed to create any

CHASE 02559

Loan Number: ████1029

duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured hereby.

**23.  Waiver.**  No waiver by us, at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

**24.  Documentary Stamp Taxes and Intangible Taxes.**  Unless we have expressly agreed to pay them for you, you agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.  You shall indemnify and hold us harmless from and against any and all loss, liability, claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

**25.  Waiver of Homestead.**  You acknowledge that, by executing this Mortgage, you are waiving any homestead exemption that you may have in the Property under state law.

**26.  Riders to this Mortgage.**  If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were a part of this Mortgage.

Florida Open-End Mortgage (HC#58252v2) (8/05)                                    08/14/2007 07:58 PM
HFLLCM06.UFF                                                                                                      C

CHASE 02560

Loan Number: ███████1029

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this Mortgage and in any rider(s) executed by you and recorded with it.

_____ Mortgagor

_____ Mortgagor

_____ Mortgagor

_____ Mortgagor

_____ Mortgagor

_____ Mortgagor

## ACKNOWLEDGMENT

STATE OF *FL*  ████████████ County, ss:

The foregoing instrument was acknowledged before me, on this *16* day of *August 2007* by ███████████████████, who is personally known to me (yes/no) or who provided *FL D riv r L i* as identification.

My Commission expires:
[Affix Notarial Seal, if any]

Notary Public - State of Florida
My Commission Expires Feb 24, 2008

CHASE 02561

Prepared By:

Record and Return Address:
**JPMorgan Chase Bank, N.A.**
**National Home Equity Post Closing KY2-1606**
**P.O. Box 11606**
**Lexington, KY 40576-1606**

Servicing #                     0971

## MULTIPLE INDEBTEDNESS MORTGAGE

BY:

UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF

IN FAVOR OF:

**JPMorgan Chase Bank, N.A.**
**C/O Chase Home Finance LLC**
**1111 Polaris Parkway**
**Columbus, OH 43240**

**And Any Future Holder or Holders. Any communication to the Lender should be sent to**
C/O Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113.

**BE IT KNOWN, that on  03/08/07                          :**

**BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses;**

LALCMT (Rev. 09/14/04)                    Page 1 of 9

CHASE  02562


**PERSONALLY CAME AND APPEARED:**

**WHO DECLARED THAT:**

TERMS AND CONDITIONS:

**DEFINITIONS. The following words shall have the following meanings when used in this Mortgage:**

**Account.** The word "Account" means my credit line Account with Lender, evidenced by the HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT ("Account Agreement").

**Additional Advances.** The words "Additional Advances" mean any and all additional sums that Mortgagee may advance on Mortgagor's behalf as provided under this Mortgage.

**Encumbrances.** The word "Encumbrances" means individually, collectively and interchangeably any and all presently existing and/or future mortgages, liens, privileges, encumbrances, and other contractual and/or statutory security interests and rights of every nature and kind that, now and/or in the future, may affect the mortgaged Property or any part or parts thereof.

**Event of Default.** The words "Event of Default" mean individually, collectively and interchangeably any of the Events of Default set forth below in the section entitled "DEFAULT".

**Guarantor.** The word "Guarantor" means and includes individually, collectively, interchangeably and without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means any and all present and future loan advances that Lender may make or extend from time to time, one or more times, under my Account with Lender, including any renewals, substitutions, and/or promissory note(s) executed to evidence debts under my Account, together with Finance Charges, late charges, attorneys' fees and other fees and charges as provided in my Account Agreement. Notwithstanding any other provision of this Mortgage to the contrary, this Mortgage will secure consumer loan advances under my Account only up to my credit limit as adjusted from time to time under my Account, plus Finance Charges, late charges and other fees and charges. All consumer loan advances under my Account in excess of my credit limit as adjusted from time to time will be secured by this Mortgage, if and when Lender agrees to increase the credit limit under my Account and if and when Lender complies with the subsequent disclosure, rescission, and other requirements under Federal Reserve Board Regulation Z, as applicable. **The maximum amount of Indebtedness secured under this Mortgage is limited to** ███████████ .

**Lender.** The word "Lender" Means: JPMorgan Chase Bank, N.A. _____ ,
a national banking association, Taxpayer Identification Number:22-238208, its successors and assigns, and any future holder or holders of any Indebtedness under my Account.

LALCMT                                              Page 2 of 9

CHASE 02563

**Mortgage.** The word "Mortgage" means this Mortgage as this Mortgage may be amended, supplemented, restated or otherwise modified from time to time.

**Mortgagee.** The word "Mortgagee" means: ___JPMorgan Chase Bank, N.A._____ , a national banking association, Taxpayer Identification Number:22-238208, its successors and assigns, an any future holder or holders of any Indebtedness under my Account.

**Mortgagor.** The words "I", "me", "my", "we", "us", and "our" mean individually, collectively and interchangeably the above referenced Borrower(s) as well as any and all persons and entities subsequently purchasing the mortgaged Property, with or without assumption of this Mortgage.

**Property.** The word "Property" means individually, collectively and interchangeably any and all of my present and future property subject to this Mortgage.

**Related Documents.** The words "Related Documents" mean and include individually, collectively, interchangeably and without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, collateral mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**MY ACCOUNT.** I have entered into an Account Agreement with Mortgagee on__03/08/07_____ , under which I (or any of us) may from time to time obtain loan advances from Lender under the Account.

**GRANTING OF MORTGAGE.** To secure the prompt and punctual payment and satisfaction of my Indebtedness, in principal, interest, costs, late charges, and attorneys' fees, and additionally to secure repayment of all Additional Advances that Mortgagee may advance on my behalf as provided under this Mortgage, together with interest thereon, I am hereby specifically mortgaging, affecting and hypothecating unto and in favor of Mortgagee, any and all of my present and future rights, title and interests in and to the following described Property:



**The Real Property or its address is commonly known as** ████████████████████ LA█

**MORTGAGE SECURING PRESENT AND FUTURE INDEBTEDNESS.** This Mortgage is granted pursuant to Article 3298 of the Louisiana Civil Code for the purpose of securing the Indebtedness that may now be existing and/or that may arise in the future as provided herein, with the preferences and priorities provided under applicable Louisiana law. However, nothing under this Mortgage shall be construed as limiting the duration of this Mortgage or the purpose or purposes for which the Indebtedness may be requested or extended.

**DURATION OF MORTGAGE.** This Mortgage will remain in effect until my Account is closed and my Indebtedness is paid in full, and I cancel my Mortgage by filing a written cancellation instrument signed by Mortgagee. I understand that after my Indebtedness is paid in full, I may request Mortgagee to provide me with such a

LALCMT                                        Page 3 of 9

cancellation instrument  by writing to Mortgagee as its main office or at another office that Mortgagee tells me to write to. Mortgagee may delay providing me with such a mortgage cancellation instrument for up to sixty (60) days following receipt of my written request.

**MATURITY DATE OF ACCOUNT AGREEMENT.** This Mortgage secures an Account Agreement dated the same date as this Mortgage that has a maturity date of ███████████████ .

**PROHIBITIONS REGARDING MORTGAGED PROPERTY.** So long as this Mortgage remains in effect, I agree not to, without Mortgagee's prior written consent:  (a) sell, assign, transfer or convey the mortgaged Property; (b) do or fail to do anything or permit anything to be done that may in any way impair Mortgagee's security interests and rights in and to the mortgaged Property (for example, fail to maintain required insurance on the Property, fail to maintain the Property, allow a tax lien that primes Mortgagee's security interest to be filed against the Property, allow a prior lienholder to foreclose on the Property or allow another creditor to enforce a judgment against the Property; (c) enter into a Bond for Deed contract.

**REPRESENTATIONS AND WARRANTIES CONCERNING THE MORTGAGED PROPERTY.** Except as previously disclosed to Mortgagee in writing, I am representing and warranting that:  (a) I am and will continue to be the lawful owner of the mortgaged Property; (b) I have the right to mortgage the property to Mortgagee; (c) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, Encumbrances, or claims of, or in favor of, any person, firm, corporation, or other entity; and (d) this Mortgage is binding upon me as well as my heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage, are and will be continuing in nature and will remain in full force and effect until such time as this Mortgage is canceled in the manner provided above.

**EXISTING MORTGAGE LOAN.** I have previously disclosed to Mortgagee that the lien of this Mortgage is junior and inferior to an existing mortgage loan, which existing mortgage loan has a current principal balance outstanding of approximately U.S. $███████████████ . I agree that any default under my existing mortgage loan will also be considered an Event of Default under this Mortgage. I further agree not to modify, amend, extend, or renew my existing mortgage loan, or my existing mortgage, without the prior written consent of Mortgagee. I additionally agree not to request or accept further advances under my existing mortgage loan without Mortgagee's prior written consent, where such further advances may be secured by the mortgaged Property with possible preference and priority over the lien of this Mortgage.

**ABANDONMENT: USE OF MORTGAGED OF PROPERTY.** So long as this Mortgage remains in effect, I agree not to abandon, or permit others to abandon, or commit waste of, or destroy the mortgaged Property. I further agree to observe and abide by and to cause others to observe and abide by all laws, rules, regulations and ordinances, as well as all policies of insurance, affecting the mortgaged Property or its use.

**REQUIRED INSURANCE.** I agree to maintain insurance on the Property at my expense for as long as this Mortgage remains in effect. This insurance is to be in the amounts and of the types required by Mortgagee and must be issued by a financially responsible insurance company or companies acceptable to Mortgagee. I agree to name Mortgagee as a lender loss payee beneficiary under such insurance policies, which must contain noncontributory lender loss payable clauses in Mortgagee's favor. My policies of insurance must also contain a provision prohibiting the cancellation or alteration of such insurance without at least thirty (30) days' prior written notice to Mortgagee. I further agree to provide Mortgagee with originals or certified copies of such insurance policies along with evidence that I have paid the policy premiums and all renewal premiums when due. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance to the extent such insurance is required

LALCMT                                          Page 4 of 9

and is or becomes available, for the term of the loan and for the full unpaid principal balance of the loan, or the maximum limit of coverage that is available, whichever is less.

I further agree that Mortgagee shall have the right to directly receive all proceeds payable under my insurance policies. Should I receive any such insurance proceeds, I agree immediately to turn such proceeds over and pay the same to Mortgagee. Mortgagee may apply such insurance proceeds at its sole option and discretion (after payment of all reasonable costs, expenses and attorneys' fees incurred by Mortgagee), for the purpose of (a) repairing, replacing or restoring the lost, stolen or damaged property, or (b) reducing the outstanding balance of the Indebtedness, and repaying all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon, in the manner provided under this Mortgage.

**TAXES.** I agree to promptly pay when due all taxes, local and special assessments and other governmental charges of every type and description that may from time to time be imposed, assessed, or levied against the mortgaged Property. I further agree to provide Mortgagee with evidence that such taxes, assessments and other governmental charges have been paid in full and in a timely manner.

**ALTERATIONS.** I agree not to, without Mortgagee's prior written consent, demolish, remove, construct, restore, add to, or alter any building(s) or other improvements to the mortgaged Property. Mortgagee may condition its consent to permit me to demolish or to remove any improvements to the Property upon my agreement to replace such improvements with new improvements of at least equal value satisfactory to Mortgagee.

**INSPECTION OF MORTGAGED PROPERTY.** I agree that Mortgagee or Mortgagee's agents may periodically inspect the mortgaged property at all reasonable times.

**REPAIRS AND MAINTENANCE.** I agree to keep and maintain, and to cause others to keep and maintain, the mortgaged property in good order, repair and condition at all times while this Mortgage remains in effect. I further agree to pay when due all claims for work done on, or services rendered or material furnished in connection with the mortgaged Property so that no Encumbrance may ever attach to or be filed against the Property.

**ADDITIONAL ADVANCES; INTEREST.** Should I fail to maintain insurance on the mortgaged property, or fail to pay taxes, assessments and other governmental charges when due, or should I fail to repair and maintain the Property as required under this Mortgage, then Mortgagee shall have the right, at Mortgagee's sole option and without any responsibility or liability to do so, to purchase such insurance on my behalf (including insurance protecting only Mortgagee's interests in the Property), to pay such taxes, assessments and governmental charges, and to make necessary repairs to the Property. Should I default under any other loan or extension of credit directly or indirectly secured by the mortgaged Property, or should the mortgaged Property become subject to or threatened with seizure and/or sale, then Mortgagee shall have the additional right, again at Mortgagee's sole option and discretion and without any responsibility or liability to do so, to cure such default(s) or to cause such default(s) to be cured, whether by making payments on my behalf or by taking such other actions as Mortgagee may deem to be necessary and proper within its sole discretion. All such Additional Advances that Mortgagee may advance on my behalf during the existence of this Mortgage, as well as Mortgagee's additional expenses as further provided under this Mortgage, shall be secured by this Mortgage. I agree to reimburse Mortgagee immediately for all additional sums that Mortgagee may advance for such purposes, together with interest thereon at the rate as provided under my Account Agreement from the date of each Additional Advance under this Mortgage until I repay Mortgagee in full.

**DEFAULT.** The following are Events of Default under this Mortgage:

**Default Under Indebtedness.** Should I fail to meet the repayment terms of my Indebtedness or any other obligations as specified under my Account Agreement.

LALCMT                                          Page 5 of 9

CHASE 02566

**Default Under Mortgage.** Should any action or inaction by me adversely affect Mortgagee's equity interest in my property. For example, if I transfer title to the Property or sell the property without Mortgagee's permission, if

I fail to maintain the Property, if a tax lien that primes Mortgagee's security interest is filed against the Property or all or part of the Property is taken by eminent domain, if the Property is foreclosed on by a prior lienholder, or if another creditor attempts to enforce a judgment against the Property.

**Death.** Should my death result in an impairment of your security interest in my Property.

**False Statements.** Should I act fraudulently in connection with my Indebtedness or materially misrepresent any information with regard to my Indebtedness, including but not limited to material misrepresentations in my credit application or financial statements that I provide to Lender, and any correspondence or discussions that I may have with Lender regarding my Indebtedness.

**MORTGAGEE'S RIGHTS IN EVENT OF DEFAULT.** Should one or more Events of Default occur or exist under this Mortgage, Mortgagee shall have the following rights in addition to any other rights Mortgagee may have:

**Accelerate Payment.** To accelerate payment of any and all amounts which I may owe to Mortgagee under my Account, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, as well as all Additional Advances that Mortgagee may have advanced on my behalf, as provided under this Mortgage, together with interest thereon.

**Foreclosure.** To commence appropriate foreclosure proceedings under this Mortgage under ordinary or executory process, under which Mortgagee may cause the mortgaged Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with applicable Louisiana law, without the necessity of further demanding payment from me, or of notifying me, or of placing me in default.

**Confession of Judgment.** For purposes of foreclosure under Louisiana executory process procedures, I confess judgment and acknowledge to be indebted to Mortgagee up to the full amount of the Indebtedness, in principal interest, costs, expenses, attorneys' fees and other fees and charges, and in the amount of all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon.

**Waivers.** To the extent permitted under applicable Louisiana law, I am waiving: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (b) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. I further agree that any declaration of fact made by authentic act before a Notary Public and two witnesses, by a person declaring that such facts are within his or her knowledge, shall constitute authentic evidence of such facts for purposes of foreclosure under applicable Louisiana law and for purposes of La. R.S. 9:3504(D)(6), where applicable.

**Cumulative Remedies.** I agree that the above remedies are cumulative in nature and nothing under this Mortgage shall limit or restrict the remedies available to Mortgagee following any Event of Default under this Mortgage.

CHASE 02567

**Keeper.** Should any or all of the mortgaged property be seized as an incident to an action for the recognition or enforcement of this Mortgage, by executory process, sequestration, attachment, writ or fieri facias or otherwise, I hereby agree that the court issuing any such order shall, if requested by Mortgagee, appoint Mortgagee, or any agent designated by mortgagee, or any person or entity named by Mortgagee, as keeper of the Property as provided under La. R.S. 9:5136, et seq. I agree to pay the reasonable fees of such a keeper, which are hereby fixed at $50.00 per hour. Any fees paid to the keeper by Mortgagee shall be secured by this Mortgage as an additional expense.

**APPLICATION OF PROCEEDS.** Mortgagee may apply any proceeds derived or to be derived from the sale or other disposition of the mortgaged Property first to the reimbursement of any additional expenses incurred by Mortgagee in connection therewith, including Mortgagee's attorneys' fees and court costs; and then to the payment of any Additional Advances that Mortgagee may advance on my behalf, together with interest thereon as provided under this Mortgage; and then to the payment of my Indebtedness in favor of Mortgagee, in such order and with such priorities as Mortgagee may determine within its sole discretion.

**PROTECTION OF MORTGAGEE'S SECURITY RIGHTS.** I agree to be fully responsible for any losses that Mortgagee may suffer as a result of anyone other than Mortgagee asserting any rights to or interest in the mortgaged Property. I agree to appear in and to defend all actions or proceedings purporting to affect Mortgagee's security rights and interests. Should I fail to do what is required of me under this Mortgage, or if any action or proceeding is commenced naming Mortgagee as a party, or affecting Mortgagee's security interests or the rights and powers granted under this Mortgage, then Mortgagee may, without releasing me from any of my obligations, do whatever Mortgagee believes is necessary and proper within its sole discretion, including making Additional Advances on my behalf as provided herein, to protect the security of this Mortgage. Should the reappraisal of the mortgaged Property occur, whether to comply with appropriate regulatory requirements or otherwise, I agree to pay the costs of such appraisal or reappraisals or to reimburse Mortgagee for the costs thereof.

**INDEMNIFICATION OF MORTGAGEE.** I further agree to indemnify, to defend and to save and hold Mortgagee harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including Mortgagee's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever, that may be asserted against or incurred by Mortgagee, arising out of or in any way occasioned by this Mortgage or the rights and remedies granted to and in favor of Mortgagee hereunder.

**ADDITIONAL WAIVERS.** In granting this Mortgage, I am waiving any homestead and other exemptions from seizure with regard to the mortgaged Property to which I may be entitled under the laws of the State of Louisiana. I am also waiving the production of Mortgage, Conveyance and any and all other Certificates and relieve and release the Notary Public before whom this Mortgage was passed from all responsibility and liability in connection therewith.

**GENERAL PROVISIONS.** The following general provisions are a part of this Mortgage:

**Solidary Liability.** When there is more than one Mortgagor under this Mortgage, our obligations to Mortgagee shall be on a "solidary" or "joint and several" basis. We further agree that either or any of us, acting alone or with others, may obtain additional advances under the Account, without the further necessity that all of us further agree, concur, or join in each such loan or other extension of credit.

**Notices.** All required notices under this Mortgage shall be in writing and shall be effective when actually delivered, or when deposited in the United States mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above, or at such other addresses as any party may designate to the other(s) in writing. If there is more than one Mortgagor under this Mortgage, notice given to any Mortgagor shall constitute notice to all Mortgagors.

LALCMT                                   Page 7 of 8

**Waiver of Additional Rights.** I agree that any failure or delay on the part of Mortgagee to exercise any of the rights and remedies granted under this mortgage shall not constitute a waiver of such rights and remedies. Any waiver or forbearance on the part of Mortgagee shall be effective against Mortgagee only if agreed to in writing.

**Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC ' 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**Successors and Assigns.** My obligations under this Mortgage shall be binding upon my heirs, administrators, executors, successors and assigns, as well as upon any person, firm or corporation subsequently acquiring title to or ownership of the mortgage Property, whether in whole or in part.

**Taxation of Mortgages.** Should there be any change in local, Louisiana or federal law with regard to taxation of mortgages, I agree to pay any taxes, assessments or charges that may be imposed on Mortgagee as a result of this Mortgage.

**Severability.** If any provision of this Mortgage is deemed to be invalid or unenforceable, such invalidity or unenforceability will not affect the validity and enforceability of the remaining provisions of this Mortgage.

**Caption Headings.** The caption headings in this Mortgage are for convenience purposes only and are not to be construed as a summary of each provision of this Mortgage.

**DEDUCTIBILITY OF INTEREST.** I acknowledge and agree that Mortgagee has made no representations or warranties to me and has in no way advised me as to whether interest and other Finance Charges under my Account with Mortgagee are or will be deductible for purposes of federal, state or local income or other taxation.

**SPOUSAL INTERVENTION.** The following paragraph is to be completed and will be considered a part of this Mortgage only if this Mortgage is being given by a spouse who also is not a borrower under the Account Agreement.

And now into these presents intervenes                                    (SSN                                    ), my spouse, appearing herein for the limited purpose of concurring with the granting of this Mortgage consistent with Article 2347 of the Louisiana Civil Code, without creating any liability with regard to my spouse's separate property not subject to this Mortgage, as well as for the purpose (as applicable) of waiving any homestead and other exemptions from seizure with regard to the Property to which my spouse may be entitled under Louisiana law. My

spouse further agrees and concurs that I, acting alone or with others, may obtain additional loans and other extensions of credit secured by this Mortgage without the necessity that my spouse further agree to or concur in each such additional loan or other extension of credit.

LALCMT                                        Page 8 of 9

**THUS DONE AND PASSED**, on the day, month and year first above, in the presence of the undersigned Notary and the undersigned competent witnesses, who hereunto sign their names with Mortgagor after reading of the whole.

**WITNESSES:**

X _____

_____    X _____

_____    X _____

X _____
**Non-Borrowing Spouse**

LALCMT                                    Page 8 of 8



Prepared

Record And Return Mortgage To:
GENERAL AMERICAN CORPORATION
707 GRANT STREET
SUITE 400
PITTSBURGH PA, 15219

Servicing #                7708

———— Space above this line for recording data ————

# FLORIDA
## HOME EQUITY LINE OF CREDIT MORTGAGE
### (Securing Future Advances)

**THIS MORTGAGE** is given      **February 23, 2006**                          . The mortgagor is

whose mailing address is

                              FL

This Mortgage is given to **JPMorgan Chase Bank, N.A.**
a national banking association whose address is
**1111 Polaris Parkway, Columbus, OH 43240**
or its successors or its assignees. Any communication to the Lender should be sent to
**C/O Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113.**
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and
"our" refer to **JPMorgan Chase Bank, N.A.**               .

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage
("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of

(U.S. $                  ). The Agreement provides for a final scheduled installment due and payable not
later than on                              You agree that this Mortgage shall continue to secure all sums

FLLCMT (Rev. 09/14/04)                          Page 1 of 8

CHASE  02571



now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the property located in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

County, Florida, and more fully described in <u>EXHIBIT A</u>, which is attached hereto and made a part hereof, which property is more commonly known as
▮▮▮▮▮▮▮▮▮▮▮▮FL▮▮▮▮▮▮▮▮▮▮
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

YOU COVENANT that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1.    **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.    **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.    **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

FLLCMT                                    Page 2 of 8

CHASE 02572



We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

   **4.    Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

   **5.    Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the

CHASE 02573



loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6.      Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7.      Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8.      Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9.      You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**10.     Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is

FLLCMT                                        Page 4 of 8

CHASE 02574

obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

**11.     Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.     Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

**13. Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC ° 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**14.     Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**15.     Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**16.     Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous

FLLCMT                                              Page 6 of 8

CHASE  02575




Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation

**17.    Acceleration; Remedies. You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.**

**18.    Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**19.    Release.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage. You will be responsible for all costs of recording such release.

**20.    Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

**21.    Documentary Stamp Taxes and Intangible Taxes.** You agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement. You shall indemnify and hold us harmless from and against any and all loss, liability,

FLLCMT                                    Page 6 of 8

CHASE 02576

claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

**22.    Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

**23.    Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐  Condominium Rider                    ☐  1-4 Family Rider

☐  Planned Unit Development            ☐  Other(s) _____
   Rider

**IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above                                                                          written.

Witnesses:                              Mortgagor(s):

_____            _____(Seal)
                                       Print

_____            _____(Seal)
                                       Print

_____            _____(Seal)
                                       Print

FLLCMT                                 Page 7 of 8

CHASE 02577

**ACKNOWLEDGMENTS**

.STATE OF FLORIDA, ████████████ County, ss:

The foregoing instrument was acknowledged before me, on this 23rd day of February, 2006 by ████████████████████████████ , who is personally known to me (yes/no) or who provided ████████████████ as identification.

████████████
My Commission Expires
February 15, 2007

My Commission expires: 2|15|07

STATE OF FLORIDA, _____ County, ss:

The foregoing instrument was acknowledged before me, on this _____ day of _____ , _____ by _____ , who is personally known to me (yes/no) or who provided _____ as identification.

_____
Print Name:
Notary Public

My Commission expires: _____

This instrument has been prepared by: _____ , whose post office address is _____

CHASE 02578

Prepared By:

Record & Return:
Sutton Land Services, LLC
50 Vantage Point Drive, Suite 3
Rochester, NY 14624

Servicing #        2446

## NEW YORK
## CREDIT LINE MORTGAGE
### (Open End)

## WORDS USED OFTEN IN THIS DOCUMENT

(A)   "Mortgage" means this document, which is dated          July 1, 2004

(B)   "Borrower" means

who shall also be the person(s) who signs this Mortgage. Borrower will sometimes be referred to as "I" and shall be deemed to be plural if more than one person signs this Mortgage. Borrower's address is
NY

(C)   "Lender" means   JPMorgan Chase Bank          . Lender is a New York state chartered bank, Lender's address is
One Chase Square S-4, Rochester, New York 14843
any communication to the Lender should be sent to
c/o Chase Manhattan Mortgage Corporation, 250 West Huron Road, P. O. Box 93784, Cleveland, OH  44113.

(D)   "Agreement" means the Home Equity Line of Credit Agreement dated the same date as this Mortgage.
*Under the Agreement, I may borrow up to a maximum principal amount of*

(U.S. $        ) subject to the terms of the Agreement.  The amount I owe may fluctuate from time to time.  Lender and I contemplate, as provided in the Agreement, that there will be a series of advances, payments and readvances during the period of time when I can "draw" against the line of credit. The aggregate amount of principal available to Borrower will never exceed the maximum principal amount shown above. I agree that this Mortgage shall continue to secure all sums advanced under the terms of the Agreement including, without limitation, any sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties to the Agreement intend that this Mortgage shall secure unpaid balances, and all other amounts due to Lender under this Mortgage and under the Agreement, including any extensions, renewals or modifications of the Agreement. For example, should the Agreement be amended to extend the period during which the Borrower can obtain advances, or a similar modification, this Mortgage will continue to secure the indebtedness owed under the Agreement.

(E)   "Property" means the property that is described below in the section titled "Description of the Property."

NYLCMT (Rev. 09/02/03)                          Page 1 of 12

CHASE 02579

(F)   "Sums Secured" means the amounts described below in the paragraph titled "Borrower's Transfer to Lender of Rights in the Property." The Sums Secured by this Mortgage will not exceed the amounts owed under the Agreement together with any expenses/costs incurred by Lender due to Borrower's default in meeting Borrower's obligations under the Mortgage which qualify as Incidental Amounts.

(G)   "Incidental Amounts" include amounts permitted under Part 648 of the New York Tax Regulations as disbursements made to protect the security of the Mortgage and the value of the Property, with interest on such disbursements at the periodic rate stated in the Agreement, including for example, where the payments represent:

    (i)   expenses incurred by Lender on behalf of Borrower in the event of Borrower's failure to perform a covenant or obligation relating to maintaining the Property or preserving its value and protecting Lender's lien under this Mortgage that would result in an event of default under the terms of this Mortgage;

    (ii)   expenses incurred by Lender in the event of a foreclosure, and

    (iii)   interest and late payment charges.

## CREDIT LINE MORTGAGE

This is a credit line mortgage as that phrase is defined in New York Real Property Law §281. The Mortgage secures the original indebtedness and also the indebtedness created by future advances made under the Agreement within 20 years from the date this Mortgage is recorded, to the same extent and with the same priority of lien as if such future advances had been made at the time this Mortgage was recorded, although there may have been no advances made at the time of execution and acknowledgement of the Mortgage and although there may be no indebtedness outstanding at the time any advance is made. The total amount of indebtedness secured by this Mortgage at any one time shall not exceed the Maximum Principal Amount, plus interest, and plus any additional Incidental Amounts.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A)   Pay all the amounts that I owe Lender as stated in the Agreement;

(B)   Pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property;

(C)   Keep all of my other promises and agreements under this Mortgage.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (I) below:

(A)   The Property which is located at ███████ NY█

This Property is in ███████ County in the State of New York. It has the following legal description;

SEE ATTACHED "EXHIBIT A" FOR THE DESCRIPTION OF THE PROPERTY

THE ABOVE MENTIONED PROPERTY IS OR WILL BE IMPROVED BY A 1-2 FAMILY DWELLING ONLY.

NYLCMT                                   Page 2 of 13

CHASE 02580

(B)     All buildings and other improvements that are located on the Property described in Paragraph (A) of this section;

(C)     All rights in other property that I have as owner of the Property described in Paragraph (A) of this section included in the phrase "together with the appurtenances and all the estate and rights of the grantor in and to said premises" as described in §255 of New York's Real Property Law;

(D)     All rents or royalties from the Property described in Paragraph (A) of this section;

(E)     All mineral, oil and gas rights and profits, water rights and water stock that are part of the Property described in Paragraph (A) of this section;

(F)     All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in paragraph (A) of this section;

(G)     All fixtures that are now or in the future will be on the Property described in Paragraphs (A) and (B) of this section, and all replacements of and additions to those fixtures, except for those fixtures, replacements and additions that under the law are "consumer goods" and that I acquire more than ten days after the date of the Agreement. Usually, fixtures are items that are physically attached to buildings, such as hot water heaters;

(H)     All of the rights and property described in Paragraphs (B) through (F) of this section that I acquire in the future; and

(I)     All replacements of or additions to the property described in Paragraphs (B) through (F) and Paragraph (H) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that except for the "exceptions" listed in any title insurance policy which insures Lender's rights in the Property: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender, and (C) There are no outstanding claims or charges against the Property except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE MORTGAGE

This Mortgage contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

I promise and I agree with Lender as follows:

## 1.     BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE AGREEMENT AND OTHER PAYMENT OBLIGATIONS

I will promptly pay to Lender when due: principal, interest, prepayment, late charges and all other charges due under the Agreement.

CHASE 02581

**2.   AGREEMENTS ABOUT PAYMENTS OF TAXES AND INSURANCE**

I will pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). Lender specifically reserves to itself and its successors and assigns the unilateral right to require that I pay to it on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as Lender reasonably estimates initially and from time to time, as allowed by and in accordance with applicable law.

**3.   BORROWER'S OBLIGATION TO PAY CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY**

I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this by making the payments that are described in Paragraph 2 above when they are due, directly to the person, organization, governmental authority, or other party. Promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against property because an obligation that has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Mortgage. However, this Mortgage does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) I, in good faith, argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up.

**4.   BORROWER'S OBLIGATIONS TO OBTAIN AND KEEP HAZARD INSURANCE ON THE PROPERTY**

I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. It is possible that the insurance policy will have provisions that may limit the insurance company's obligation to pay claims if the amount of coverage is too low. Those provisions are known as "coinsurance requirements." Lender may not require me to obtain an amount of coverage that is more than the larger of the following two amounts: either (i) the amount that I owe to Lender under the the Agreement and under this Mortgage; or (ii) the amount necessary to satisfy the coinsurance requirements. In addition to the hazard insurance required above, if the Property is located in a Special Flood Hazard area I will obtain and maintain flood damage insurance coverage equal to the lower of the unpaid principal balance of the Agreement or the maximum amount available from time to time under the National Flood Insurance Act of 1968 as amended.

I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. Lender will have the right to hold the policies and renewal notices that I receive.

I will pay premiums on the insurance policies by making payments as described in Paragraph 2 above by paying the insurance company directly when the premium payments are due. If Lender requires, I will promptly give Lender all receipts of paid premiums and all renewal notices that I receive.

If there is a loss of or damage to the Property, I will promptly notify the insurance company and Lender.

If I do not prove to the insurance company that the loss or damage occurred, then Lender may do so.

NYLCMT                                     Page 4 of 12

CHASE 02582

The amount paid by the Insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (a) it is not economically possible to make the repairs or restoration; or (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Mortgage; or (c) Lender and I have agreed in writing not to use the proceeds for this purpose. If the repair or restoration is not economically possible or if it would lessen Lender's protection under this Mortgage, then the proceeds will be used to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. The use of the proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Agreement.

If I abandon the Property, or if I do not answer, within 30 days, a notice from the Lender stating that the Insurance company has offered to settle a claim for Insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. The 30-day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Agreement, that use will not delay the due date or change the amount of my monthly payments under the Agreement and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes. If Lender acquires the Property under Paragraph 17 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the amount that I owe to Lender under the Agreement and under this Mortgage immediately before the Property is acquired by Lender or sold.

If I fail to maintain coverage as required in this section, I authorize Lender to obtain such coverage as Lender in its sole discretion determines appropriate to protect its interest in the Property in accordance with the provisions of Paragraph 6. I understand and agree that any coverage Lender purchases may cover only its interest in the Property and may not cover my interest in the Property or any personal property therein. I also understand and agree that the premium for any such insurance may be higher than the premium I would pay for such insurance.

**5.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If I acquire fee title to the Property, the leasehold and fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**6.    LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY**

If, (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's right in the Property (such as for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 6 may include, for example, paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorneys' fees, paying any sums which I am required to pay under this Mortgage, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. I will pay to Lender any amounts which Lender spends under this Paragraph 6. I will also pay interest on those amounts at the same rate stated in the Agreement. However, if payment of interest at that rate would violate the law, I will pay interest on the amounts spent by Lender under this Paragraph 6 at the highest rate that the law allows. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

NYLGMT                                    Page 6 of 12

This Mortgage will protect Lender in case I do not keep this promise and pay those amounts with interest. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

### 7. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. that purpose must be related to Lender's rights in the Property.

### 6. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right:  (A) to proceeds deriving from all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following amount:" (A) the total amount that I owe to Lender under the Agreement and under this Mortgage immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me. The use of the proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Agreement.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. The 30 day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered. If any proceeds are used to reduce the amount of principal which I owe to Lender under the Agreement, that use will not delay the due date or change the amount of any of my monthly payments under the Agreement and under Paragraphs 1 and 2 above.

### 9. CONTINUATION OF LENDER'S RIGHTS

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 17 below, to demand that I make Immediate Payment in Full (See Paragraph 17 for a definition of this phrase) of the amount that I owe to Lender under the Agreement and under this Mortgage.

### 10. LENDER'S ABILITY TO ENFORCE MORE THAN ONE OF LENDER'S RIGHTS

Each of the Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights under law, one at a time or all at once.

### 11. OBLIGATIONS OF BORROWERS; AGREEMENTS CONCERNING CAPTIONS

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Agreement and under this Mortgage. However, if one of us does not sign the Agreement, then (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; (B) that person is not personally obligated to make payments or to act under the Agreement or under this Mortgage; and (C) agrees that Lender and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without that person's consent. The captions and titles of this Mortgage are for convenience only. They may not be used to interpret or to define the terms of this Mortgage.

CHASE 02584

**12.     AGREEMENTS ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE**

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it addressed to me at the address stated in the section above titled "Description of the Property."

A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it to Lender's address stated in Paragraph (C) of the section above entitled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of a different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 12.

**13.     LAW THAT GOVERNS THIS MORTGAGE**

This Mortgage is governed by Federal law and the law that applies in the place that the Property is located. If any term of this Mortgage conflicts with the law, all other terms of this Mortgage will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

**14.     BORROWER'S COPY OF THE AGREEMENT AND OF THIS MORTGAGE**

I will be given a copy of the Agreement and of this Mortgage. Those copies must show that the original Agreement and Mortgage have been signed. I will be given those copies either when I sign the Agreement and this Mortgage or after this Mortgage has been recorded in the proper official records.

**15.     BORROWER'S OBLIGATION TO PAY MORTGAGE INSURANCE PREMIUMS**

If Lender requires mortgage insurance as a condition of making the loan that I promise to pay under the Agreement, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above.

**16.     TRANSFER OF THE PROPERTY OR OF A BENEFICIAL INTEREST IN BORROWER WHICH IS NOT A NATURAL PERSON**

If all or any part of the Property or any interest in the Property is sold or transferred by me (or if Borrower is not a natural person but is a corporation, partnership, trust or other legal entity and if a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at Lender's option, declare all the Sums Secured by this Mortgage to be immediately due and payable. This requirement is called "Immediate Payment in Full." Lender shall have no right to declare all sums immediately due and payable in the event of (a) the creation of a lien or encumbrance subordinate to this Mortgage which does not relate to a transfer of rights of occupancy in the Property; (b) the creation of a purchase money security interest for household appliances; (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant; or (d) the grant of any leasehold interest of three years or less containing an option to purchase.

If Lender exercises its option to declare the Sums Secured by this Mortgage to be immediately due and payable, Lender shall give me a notice of acceleration in accordance with Paragraph 12 hereof. Such notice shall provide for a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay the sums declared due. If I fail to pay such sums prior to the expiration of this period Lender may, without further notice or demand on me, invoke any remedies permitted by this Mortgage.

**17.     LENDER'S RIGHTS IF I FAIL TO KEEP MY PROMISES AND AGREEMENTS**

Except as provided in Paragraph 16 above, I will be in default:

CHASE 02585

(A)   I fail to make any payment required by this Mortgage or the Agreement when it is due;

(B)   I have engaged in or I engage in fraud or material misrepresentation, either by act or omission, in connection with this Mortgage and Agreement at any time during the application process or during the term of this Mortgage and Agreement; or

(C)   I act or fail to act in a way that adversely affects the Lender's security under this Mortgage or any right Lender has in such security under this Mortgage.

If a default occurs and all of the conditions stated in subparagraphs (D), (E) and (F) of this Paragraph 17 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Agreement and under this Mortgage. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 17 only if all of the following conditions are met:

(D)   I am in default.

(E)   Lender sends to me, in the manner described in Paragraph 12 above, a notice that states:

   (i)     The promise or agreement that I failed to keep;
   (ii)    The action that I must take to correct that default;
   (iii)   A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
   (iv)    That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
   (v)     That if I meet the conditions stated in Paragraph 18 below, I will have the right to have Lender's enforcement of this Mortgage discontinued and to have the Note and this Mortgage remain fully effective as if immediate payment in full had never been required; and
   (vi)    That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Mortgage, and to present any other defenses that I may have.

(F)   I do not correct the default stated in the notice from Lender by the date stated in that notice.

18.   MY RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS MORTGAGE DISCONTINUED.

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Mortgage discontinued. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A)   I pay to Lender the full amount that then would be due under this Mortgage and the Agreement as if immediate payment in full had never been required;

(B)   I correct my failure to keep any of my other promises or agreements made in this Mortgage; and

(C)   I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and

(D)   I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Agreement and under this Mortgage continue unchanged.

NYLCMT                                         Page 9 of 12

CHASE 02586

If I fulfill all of the conditions in this Paragraph 18, then the Agreement and this Mortgage will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Mortgage discontinued if Lender has required immediate payment in full under Paragraph 17 above.

**19.     DISCONTINUANCE OF ENFORCEMENT**

Lender may discontinue any proceeding Lender begins to enforce the terms of this Mortgage. Lender may do so in its sole discretion.

**20.     LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY**

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraph 17 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due if I have not given any of my rights to rental payments from the Property to anyone else, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraph 17 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may:

(A)  collect the rental payments, including overdue rental payments, directly from the tenants;
(B)  enter on and take possession of the Property;
(C)  manage the property; and
(D)  sign, cancel and change leases.

I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 19, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. The costs of managing the Property may include receiver's fees, reasonable attorneys' fees, and the costs of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

**21.     DEFAULT NOTICE**

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, I MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF I HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE ME WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH I CAN EXERCISE THIS RIGHT.

**22.     LOAN CHARGES**

If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

CHASE 02587

**23. LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE AGREEMENT AND THIS MORTGAGE ARE PAID IN FULL**

When Lender has been paid all amounts due under the Agreement, and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**24. AGREEMENTS ABOUT NEW YORK LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts, which I receive and which I have a right to receive from Lender under the Agreement, as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding these amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

**25. MORTGAGE RECORDING TAXES AND FILING FEES**

To the extent permitted by law, I will pay any additional mortgage recording taxes and filing fees which may become due in connection with this Mortgage. This will include the costs of filing any affidavits or other documents which may become necessary in order to obtain the priority of this Mortgage's lien, release this lien or enforce this Mortgage.

If I fail to pay any of these mortgage recording taxes or filing fees which may become due, the Lender may make these payments and the amounts paid will be added to the amount due under the Agreement.

**26. ADDITIONAL CHARGES**

I agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by Lender to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all Sums Secured thereby.

**27. AFFIDAVITS AND OTHER DOCUMENTS**

I will, on the Lender's request, sign any affidavits or other documents which may be necessary in order to maintain the priority of this Mortgage's lien, release the lien or enforce this Mortgage.

**28. RIDERS TO THIS MORTGAGE.**

If I execute one or more riders and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were a part of this Mortgage. [Check applicable box(es)]

☐ Condominium Rider      ☐ 1-4 Family Rider

☐ Planned Unit Development Rider      ☐ Other(s) _____

CHASE 02588

By signing this Mortgage I agree to all of the above.

Witnesses

Borrower(s)

_____   _____ (Seal)

_____   _____ (Seal)

_____   _____ (Seal)

_____   _____ (Seal)

## ACKNOWLEDGEMENT

STATE OF NEW YORK, COUNTY OF ███████████████ SS:

On the  1  day of July               , in the year of two   before me, the undersigned, personally appeared ████████████████████, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

, State Of New York

06

(Note: For acknowledgments tak███████████████████████████pires Sept. 2, 20___

NYLCMT                          Page 11 of 12



# MULTIPLE INDEBTEDNESS MORTGAGE

| Mortgagor(s): ███████████████ | Lender: | Bank One, Louisiana, N.A. TIN:<br>Canal Lasalle<br>1440 Canal Street, Ste 1<br>New Orleans, LA  70112 |
| --- | --- | --- |

| MULTIPLE INDEBTEDNESS MORTGAGE<br>BY: ███████████████ | UNITED STATES OF AMERICA<br>STATE OF LOUISIANA<br>PARISH OF ██████████ |
| --- | --- |

**IN FAVOR OF:**

Bank One, Louisiana, N.A.
Canal Lasalle
And Any Future Holder or Holders

BE IT KNOWN, that on the 12th day of April, 1999;

BEFORE ME, the undersigned Notary Public, and in the presence of the undersigned competent witnesses;

PERSONALLY CAME AND APPEARED:

WHO DECLARED THAT:

## TERMS AND CONDITIONS:

**DEFINITIONS. The following words shall have the following meanings when used in this Mortgage:**

**Additional Advances.** The words "Additional Advances" mean any and all additional sums that Mortgagee may advance on Mortgagor's behalf as provided under this Mortgage.

**Encumbrances.** The word "Encumbrances" means individually, collectively and interchangeably any and all presently existing and/or future mortgages, liens, privileges, encumbrances, and other contractual, legal and/or statutory security interests and rights of every nature and kind that, now and/or in the future, affect the mortgaged Property or the Rights or any part or parts thereof.

**Event of Default.** The words "Event of Default" mean individually, collectively and interchangeably any of the Events of Default set forth below in the section entitled "DEFAULT."

**Guarantor.** The word "Guarantor" means and includes individually, collectively, interchangeably and without limitation, each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means any and all present and future loans, extensions of credit, liabilities and obligations of every nature and kind that I may now and/or in the future owe to or incur in favor of Mortgagee, including without limitation, the loan evidenced by my promissory note dated April 12, 1999, in the amount of U.S. ██████████ whether such loans, extensions of credit, liabilities and obligations are direct or indirect, or by way of assignment or purchase of a participation interest, absolute or contingent, voluntary or involuntary, determined or undetermined, liquidated or unliquidated, due or to become due, and whether related or unrelated, or whether committed or purely discretionary, and whether secured or unsecured, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, whether any such Indebtedness may be barred under any statute of limitations or prescriptive period or may be otherwise unenforceable or voidable for any reason.  Notwithstanding any other provision of this Mortgage, my additional loans, extensions of credit, and other liabilities and obligations in favor of Mortgagee, which are entered into before or after the date of this Mortgage primarily for personal, family or household (consumer) purposes, will not be secured by this Mortgage, unless and until Mortgagee complies with the disclosure, rescission and other requirements of Federal Reserve Board Regulation Z, as applicable.  Further notwithstanding any other provision of this Mortgage, the maximum amount of Indebtedness secured hereby shall be limited to $ ██████████

**Mortgage.** The word "Mortgage" means this Multiple Indebtedness Mortgage as this Multiple Indebtedness Mortgage may be amended, supplemented, restated or otherwise modified from time to time.

**Mortgagee.** The word "Mortgagee" means Bank One, Louisiana, N.A. (TIN: ), Canal Lasalle, its successors and assigns, and any future holder or holders of any of the Indebtedness.

CHASE 02590

**Mortgagor.** The words "I", "me", "my", "we", "us", and "our" mean individually, collectively and interchangeably the above referenced Mortgagor(s), as well as any and all persons and entities subsequently purchasing the mortgaged Property, with or without assumption of this Mortgage.

**Property.** The words "Property" and Mortgagor's Property" and "mortgaged Property" interchangeably mean individually, collectively and interchangeably any and all of my present and future property subject to this Mortgage.

**Related Documents.** The words "Related Documents" mean and include individually, collectively, interchangeably and without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, collateral mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTING OF MORTGAGE.** To secure the prompt and punctual payment and satisfaction of my present and future Indebtedness, in principal, interest, costs, late charges, and attorneys' fees, and additionally to secure repayment of all Additional Advances that Mortgagee may advance on my behalf as provided under this Mortgage, together with interest thereon, I am hereby specifically mortgaging, affecting and hypothecating unto and in favor of Mortgagee, any and all of my present and future rights, title and interests in and to the following described Property:

The Real Property or its address is commonly known as ███████████████ LA



**MORTGAGE SECURING PRESENT AND FUTURE INDEBTEDNESS.** This Mortgage is granted pursuant to Article 3298 of the Louisiana Civil Code and shall secure present and future Indebtedness in favor of Mortgagee subject to the restrictions and maximum dollar limitations provided herein. My additional loans will automatically be secured by this Mortgage without the necessity that I agree or consent to such a result at the time additional loans are made and that the note or notes evidencing such additional loans reference the fact that such notes are secured by this Mortgage. I understand that I may not subsequently have a change of mind and insist that my additional loans not be secured by this Mortgage unless Lender specifically agrees to such a request in writing.

**DURATION OF MORTGAGE.** I agree that my Property is to remain mortgaged to Mortgagee until all of my Indebtedness is paid in full and Mortgagee has no further agreement to extend funds to me or to others for which I may be obligated, and Mortgagee delivers to me a written cancellation of this Mortgage. I understand that I may request Mortgagee to provide such a cancellation instrument which I will file to cancel this mortgage, by writing to Mortgagee at its main office, or, at another office that Mortgagee tells me to write to. Mortgagee may delay providing me with such a mortgage cancellation instrument for a period of sixty (60) days following receipt of my written request.

**PROHIBITIONS REGARDING MORTGAGED PROPERTY.** So long as this Mortgage remains in effect, I agree not to, without Mortgagee's prior written consent: (a) sell, assign, transfer, convey, option, mortgage, or lease the mortgaged Property; (b) permit any Encumbrance to be placed on or to attach to the mortgaged Property; or (c) do anything or permit anything to be done that may in any way impair Mortgagee's security interests and rights in and to the mortgaged Property.

**REPRESENTATIONS AND WARRANTIES CONCERNING THE MORTGAGED PROPERTY.** Except as previously disclosed to Mortgagee in writing, I am representing and warranting that: (a) I am and will continue to be the lawful owner of the mortgaged Property; (b) I have the right to mortgage the Property to Mortgagee; (c) as of the time this Mortgage is recorded, there are no Encumbrances affecting the mortgaged Property; (d) the security rights and interest granted under this Mortgage will at no time become subordinate or junior to any security rights, interests, Encumbrances, or claims of, or in favor of, any person, firm, corporation, or other entity; and (e) this Mortgage is binding upon me as well as my heirs, successors, legatees, administrators, executors, representatives and assigns, and is legally enforceable in accordance with its terms. The above representations and warranties, and all other representations and warranties contained in this Mortgage are, and will be, continuing in nature and will remain in full force and effect until such time as this Mortgage is cancelled in the manner provided herein.

**ABANDONMENT; USE OF MORTGAGED OF PROPERTY.** So long as this Mortgage remains in effect, I agree not to abandon, or permit others to abandon, or commit waste of, or destroy the mortgaged Property. I further agree to observe and abide by and to cause others to observe and abide by all laws, rules, regulations and ordinances, as well as all policies of insurance, affecting the mortgaged Property or its use.

**REQUIRED INSURANCE.** I agree to maintain insurance on the Property at my expense for as long as this Mortgage remains in effect. This insurance is to be in the amounts and of the types required by Mortgagee and must be issued by a financially responsible insurance company or companies acceptable to Mortgagee. I agree to name Mortgagee as a lender loss payee beneficiary under such insurance policies, which must contain noncontributory lender loss payable clauses in Mortgagee's favor. My policies of insurance must also contain a provision prohibiting the cancellation or alteration of such insurance without at least ten (10) days' prior written notice to Mortgagee. I further agree to provide Mortgagee with originals or certified copies of such insurance policies along with evidence that I have paid the policy premiums and all renewal premiums when due. The Real Property is located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. I agree to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maxiumum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

I further agree that Mortgagee shall have the right to directly receive all proceeds payable under my insurance policies. Should I receive any such insurance proceeds, I agree immediately to turn such proceeds over and pay the same to Mortgagee. Mortgagee may apply such insurance proceeds at its sole option and discretion (after payment of all reasonable costs, expenses and attorneys' fees incurred by Mortgagee), for the purpose of (a) repairing, replacing or restoring the lost, stolen or

CHASE 02591

| 04-12-1999<br>Loan No 1372 | **MORTGAGE**<br>(Continued) | Page 3 |
|---|---|---|

damaged Property, or  (b) reducing the outstanding balance of the Indebtedness, and repaying all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon, in the manner provided under this Mortgage.

**TAXES.**  I agree to promptly pay when due all taxes, local and special assessments and other governmental charges of every type and description that may from time to time be imposed, assessed, or levied against the mortgaged Property.  I further agree to provide Mortgagee with evidence that such taxes, assessments and other governmental charges have been paid in full and in a timely manner.

**ALTERATIONS.**  I agree not to, without Mortgagee's prior written consent, demolish, remove, construct, restore, add to, or alter any building(s) or other improvements to the mortgaged Property. Mortgagee may condition its consent to permit me to demolish or to remove any improvements to the Property upon my agreement to replace such improvements with new improvements of at least equal value satisfactory to Mortgagee.

**INSPECTION OF MORTGAGED PROPERTY.**  I agree that Mortgagee or Mortgagee's agents may periodically inspect the mortgaged Property at all reasonable times.

**REPAIRS AND MAINTENANCE.**  I agree to keep and maintain, and to cause others to keep and maintain, the mortgaged Property in good order, repair and condition at all times while this Mortgage remains in effect.  I further agree to pay when due all claims for work done on, or services rendered or material furnished in connection with the mortgaged Property so that no Encumbrance may ever attach to or be filed against the Property.

**ADDITIONAL ADVANCES; INTEREST.**  Should I fail to maintain insurance on the mortgaged Property, or fail to pay taxes, assessments and other governmental charges when due, or should I fail to repair and maintain the Property as required under this Mortgage, then Mortgagee shall have the right, at Mortgagee's sole option and without any responsibility or liability to do so, to purchase such insurance on my behalf (including insurance protecting only Mortgagee's interests in the Property), to pay such taxes, assessments and governmental charges, and to make necessary repairs to the Property.  Should I default under any other loan or extension of credit directly or indirectly secured by the mortgaged Property, or should the mortgaged Property become subject to or threatened with seizure and/or sale, then Mortgagee shall have the additional right, again at Mortgagee's sole option and discretion and without any responsibility or liability to do so, to cure such default(s) or to cause such default(s) to be cured, whether by making payments on my behalf or by taking such other actions as Mortgagee may deem to be necessary and proper within its sole discretion.  All such Additional Advances that Mortgagee may advance on my behalf during the existence of this Mortgage, as well as Mortgagee's additional expenses as further provided under this Mortgage, shall be secured by this Mortgage as an additional Indebtedness.  I agree to reimburse Mortgagee immediately for all additional sums that Mortgagee may advance for such purposes, together with interest thereon at the rate from the date of each Additional Advance under this Mortgage until I repay Mortgagee in full.

**DEFAULT.**  The following are Events of Default under this Mortgage:

**Default Under Indebtedness.**  Should I fail to make any payment under any of the Indebtedness in favor of Mortgagee when due.

**Other Defaults.**  Should I fail to comply with, or perform under the terms and conditions of this Mortgage, or should I fail to comply with, or perform under the terms and conditions of any other loan or agreement in favor of Mortgagee.

**Death.**  Should I or any guarantor of the Indebtedness, die.

**Insolvency.**  Should I or any guarantor become insolvent, or apply for bankruptcy or other relief from creditors.

**Creditor Proceedings.**  Should any other creditor attempt to take any of the mortgaged Property, or any of my other property on which Mortgagee may then have a lien or security interest.  This includes a garnishment of any of my deposit accounts with Mortgagee.

**False Statements.**  Should any representation, warranty, or statement made to Mortgagee in connection with any of the Indebtedness in favor of Mortgagee, or this Mortgage, prove to be false or misleading in any respect.

**MORTGAGEE'S RIGHTS IN EVENT OF DEFAULT.**  Should one or more Events of Default occur or exist under this Mortgage, Mortgagee shall have the following rights in addition to any other rights Mortgagee may have:

**Accelerate Payment.**  To accelerate payment of any and all amounts which I may owe to Mortgagee under the Indebtedness, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, as well as all Additional Advances that Mortgagee may have advanced on my behalf, as provided under this Mortgage, together with interest thereon.

**Foreclosure.**  To commence appropriate foreclosure proceedings under this Mortgage under ordinary or executory process, under which Mortgagee may cause the mortgaged Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with applicable Louisiana law, without the necessity of further demanding payment from me, or of notifying me, or of placing me in default.

**Confession of Judgment.**  For purposes of foreclosure under Louisiana executory process procedures, I confess judgment and acknowledge to be indebted to Mortgagee up to the full amount of the Indebtedness, in principal, interest, costs, expenses, attorneys' fees and other fees and charges, and in the amount of all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon.

**Waivers.**  To the extent permitted under applicable Louisiana law, I am waiving:  (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;  (b) the demand and three (3) days' option as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure;  (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure;  (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and  (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.  I further agree that any declaration of fact made by authentic act before a Notary Public and two witnesses, by a person declaring that such facts are within his or her knowledge, shall constitute authentic evidence of such facts for purposes of foreclosure under applicable Louisiana law and for purposes of La. R.S. 9:3504(D)(6), where applicable.

**MORGAGE**
(Continued)

**Cumulative Remedies.** I agree that the above remedies are cumulative in nature and nothing under this Mortgage shall limit or restrict the remedies available to Mortgagee following any Event of Default under this Mortgage.

**Keeper.** Should any or all of the mortgaged Property be seized as an incident to an action for the recognition or enforcement of this Mortgage, by executory process, sequestration, attachment, writ of fieri facias or otherwise, I hereby agree that the court issuing any such order shall, if requested by Mortgagee, appoint Mortgagee, or any agent designated by Mortgagee, or any person or entity named by Mortgagee, as keeper of the Property as provided under La. R.S. 9:5136, et seq. I agree to pay the reasonable fees of such a keeper. Any fees paid to the keeper by Mortgagee shall be secured by this Mortgage as an additional expense.

**APPLICATION OF PROCEEDS.** Mortgagee may apply any proceeds derived or to be derived from the sale or other disposition of the mortgaged Property first to the reimbursement of any additional expenses incurred by Mortgagee in connection therewith, including Mortgagee's attorneys' fees and court costs; and then to the payment of any Additional Advances that Mortgagee may advance on my behalf, together with interest thereon as provided under this Mortgage; and then to the payment of my Indebtedness in favor of Mortgagee, in such order and with such priorities as Mortgagee may determine within its sole discretion.

**PROTECTION OF MORTGAGEE'S SECURITY RIGHTS.** I agree to be fully responsible for any losses that Mortgagee may suffer as a result of anyone other than Mortgagee asserting any rights to or interest in the mortgaged Property. I agree to appear in and to defend all actions or proceedings purporting to affect Mortgagee's security rights and interests. Should I fail to do what is required of me under this Mortgage, or if any action or proceeding is commenced naming Mortgagee as a party, or affecting Mortgagee's security interests or the rights and powers granted under this Mortgage, then Mortgagee may, without releasing me from any of my obligations, do whatever Mortgagee believes is necessary and proper within its sole discretion, including making Additional Advances on my behalf as provided herein, to protect the security of this Mortgage. Should the reappraisal of the mortgaged Property occur, whether to comply with appropriate regulatory requirements or otherwise, I agree to pay the costs of such appraisal or reappraisals or to reimburse Mortgagee for the costs thereof.

**INDEMNIFICATION OF MORTGAGEE.** I further agree to indemnify, to defend and to save and hold Mortgagee harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including Mortgagee's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever, that may be asserted against or incurred by Mortgagee, arising out of or in any way occasioned by this Mortgage or the rights and remedies granted to and in favor of Mortgagee hereunder.

**ADDITIONAL WAIVERS.** In granting this Mortgage, I am waiving any homestead and other exemptions from seizure with regard to the mortgaged Property to which I may be entitled under the laws of the State of Louisiana. I am also waiving the production of Mortgage, Conveyance and any and all other Certificates and relieve and release the Notary Public before whom this Mortgage was passed from all responsibility and liability in connection therewith.

**GENERAL PROVISIONS.** The following general provisions are a part of this Mortgage:

**Solidary Liability.** When there is more than one Mortgagor under this Mortgage, our obligations to Mortgagee shall be on a "solidary" or "joint and several" basis. We further agree that either or any of us, acting alone or with others, may obtain additional loans and other extensions of credit from Mortgagee secured by this Mortgage, without the further necessity that all of us further agree, concur, or join in each such loan or other extension of credit.

**Notices.** All required notices under this Mortgage shall be in writing and shall be effective when actually delivered, or when deposited in the United States mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above, or at such other addresses as any party may designate to the other(s) in writing. If there is more than one Mortgagor under this Mortgage, notice given to any Mortgagor shall constitute notice to all Mortgagors.

**Waiver of Additional Rights.** I agree that any failure or delay on the part of Mortgagee to exercise any of the rights and remedies granted under this Mortgage shall not constitute a waiver of such rights and remedies. Any waiver or forbearance on the part of Mortgagee shall be effective against Mortgagee only if agreed to in writing.

**Governing Law.** This Mortgage shall be governed by and interpreted in accordance with the laws of the State of Louisiana.

**Successors and Assigns.** My obligations under this Mortgage shall be binding upon my heirs, administrators, executors, successors and assigns, as well as upon any person, firm or corporation subsequently acquiring title to or ownership of the mortgaged Property, whether in whole or in part.

**Taxation of Mortgages.** Should there be any change in local, Louisiana or federal law with regard to taxation of mortgages, I agree to pay any taxes, assessments or charges that may be imposed on Mortgagee as a result of this Mortgage.

**Severability.** If any provision of this Mortgage is deemed to be invalid or unenforceable, such invalidity or unenforceability will not affect the validity and enforceability of the remaining provisions of this Mortgage.

**Caption Headings.** The caption headings in this Mortgage are for convenience purposes only and are not to be construed as a summary of each provision of this Mortgage.

CHASE 02593

04-12-1999                              **MORTGAGE**                           Page 5
Loan No▆▆▆▆1372                          (Continued)

**THUS DONE AND PASSED, on the day, month and year first written above, in the presence of the undersigned Notary and the undersigned competent witnesses, who hereunto sign their names with Mortgagor after reading of the whole.**



WITNESSES:

MORTGAGOR:

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.25a (c) 1999 CFI ProServices, Inc. and National Compliance, Inc.  All rights reserved. [LA-G08 E3.25 F3.25 P3.25
55371372.LN R1.OVL]

CHASE  02594



Prepared

Record and Return Address:
**JPMorgan Chase Bank, N.A.**
**c/o Chase Home Finance LLC**
**1500 N. 19th St.**
**Monroe, LA 71201**
**Attn: Document Control 6th FL. - HE**

Reference
Servicing                 4010

──────── Space above this line for recording data ────────

# FLORIDA
# HOME EQUITY LINE OF CREDIT MORTGAGE
### (Securing Future Advances)

**THIS MORTGAGE** is given          **April 18, 2005**                              . The mortgagor is

whose mailing address is

This Mortgage is given to **JPMorgan Chase Bank, N.A.**
a national banking association whose address is
**1111 Polaris Parkway, Columbus, OH  43240**
or its successors or its assignees. Any communication to the Lender should be sent to
**c/o Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH  44113**
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and
"our" refer to **JPMorgan Chase Bank, N.A.** .

        Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage
("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of

(U.S. $            ). The Agreement provides for a final scheduled installment due and payable not
later than on                         . You agree that this Mortgage shall continue to secure all sums

FLLCMT (Rev. 09/14/04)          Page 1 of 8

CHASE 02595

now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the property located in ████████████

County, Florida, and more fully described in EXHIBIT A, which is attached hereto and made a part hereof, which property is more commonly known as ████████████████ FL ████████████████

("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3. **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

FLLCMT

CHASE 02596

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

**4.    Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

**5.    Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the

FLLCMT                                Page 3 of 9

loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6. Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7. Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8. Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9. You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is

CHASE 02598

obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

11.     **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12.     **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

13.     **Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC ° 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

14.     **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

15.     **Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

16.     **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous

**FLLCMT**                                        Page 5 of 8

CHASE 02599

Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation

**17. Acceleration; Remedies. You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.**

**18. Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**19. Release.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage. You will be responsible for all costs of recording such release.

**20. Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

**21. Documentary Stamp Taxes and Intangible Taxes.** You agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement. You shall indemnify and hold us harmless from and against any and all loss, liability,

FLLCMT                     Page 6 of 8

CHASE 02600

claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

**22. Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

**23. Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

**IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above written.

Witnesses:                                          Mortgagor(s):

_____    _____(Seal)
                                                    Print

_____    _____(Seal)
                                                    Print
**FLLCMT**                                          Page 7 of 8

CHASE 02601

**ACKNOWLEDGMENTS**

STATE OF FLORIDA,                    County, ss: ███████████

　　　　The foregoing instrument was acknowledged before me, on this _19th_ day of _April_ .
2005 by ███████████████ , who is personally known to me (yes/no) or
who provided _drivers licenses_ as Identification.

My Commission expires:

STATE OF FLORIDA,                    County, ss:

　　　　The foregoing instrument was acknowledged before me, on this _____ day of _____ .
_____ by _____ , who is personally known to me (yes/no) or
who provided _____ as identification.

_____
Print Name:
Notary Public

My Commission expires: _____

This instrument has been prepared by: _____ . whose post office
address is _____

FLLCMT                              Page 8 of 8

CHASE  02602





Recording requested by and
when recorded return to:
Washington Mutual Bank, FA
Consumer Loan Records Center
1170 Silber Rd
Houston, TX 77055
Attn: Mailstop: CLRVLTTX

 **Washington Mutual**

**EQUITY LINE OF CREDIT
DEED OF TRUST**

Loan Number: ████████0259

THIS DEED OF TRUST is between:

████████████████████████████

whose address is:

████████████████████████  CA  ██████████

("Trustor"); ████████████████████████████████

corporation, the address of which is: ████████████████████████

and its successors in trust and assigns ("Trustee"); and
Washington Mutual Bank, FA, a federal association, which is organized and existing under the
laws of the United States of America, and whose address is 400 E. Main Street, Stockton, CA
95290 ("Beneficiary") and its successors or assigns.

1.   **Granting Clause.** Trustor hereby grants, bargains, sells and conveys to Trustee in
trust, with power of sale, the real property in ████████████████ County, California,
described below and all interest in it Trustor ever gets:   *Exhibit One*

This Deed of Trust is second and subordinate to _____ first Deed of
Trust in the amount of $_____ recording concurrently herewith.

Tax Parcel Number:____████████████████████_____ together with all

4360 (0324/05) W6.2                          **BANK**                          Page 1 of 7

CHASE 02603

0259

insurance and condemnation proceeds related to it; all plumbing, lighting, air conditioning and heating apparatus and equipment; and all fencing, blinds, drapes, floor coverings, built-in appliances and other fixtures at any time installed on or in or used in connection with such real property. All of the property described above will be called the "Property." As used herein "State" shall refer to the state of California.

2. **Obligation Secured.** This Deed of Trust is given to secure performance of each promise of Trustor contained herein and in a Home Equity Line of Credit Agreement and Disclosure with Beneficiary of even date herewith with a maximum credit limit of ███████████ the ("Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Trustor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Trustor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Trustor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, all amounts due under the Credit Agreement are due and payable in full thirty (30) years from the date of this Deed of Trust (the "Maturity Date"). All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt".

3. **Representations of Trustor.** Trustor represents that:
    (a) Trustor is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and
    (b) The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4. **Promises of Trustor.** Trustor promises:
    (a) To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;
    (b) To allow representatives of Beneficiary to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
    (c) To pay on time all lawful taxes and assessments on the Property;
    (d) To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
    (e) To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security;
    (f) To keep the improvements on the Property insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Subject to the rights of the holder of any lien described in 3(a), Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy shall

CHASE 02604

0259

be applied to the repair of such improvements, unless doing so would impair Beneficiary's security, in which event such proceeds may be applied upon any indebtedness hereby secured. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Trustor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

(g) To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Trustor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Trustor's name and to execute all documents necessary to transfer title if there is a default; and

(h) To advise Beneficiary immediately in writing of any change in Trustor's name, address or employment.

5. **Sale, Transfer or Further Encumbrance of Property.** Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Trustor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

6. **Curing of Defaults.** If Trustor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Trustor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Trustor shall be secured by this Deed of Trust; at Beneficiaries option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Beneficiary from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Trustor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7. **Remedies For Default.**
(a) Prompt performance under this Deed of Trust is essential. If Trustor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, or if Trustor fails to comply with any other term, condition, obligation or covenant contained in the Credit Agreement or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Trustor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Trustor shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Beneficiary may then or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part, and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Trustor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the

CHASE 02605

■■■■0259

proceeds of the sale as follows: (i) to the expenses of the sale, including a reasonable trustee's fee and lawyer's fee; (ii) to the obligations secured by this Deed of Trust; and, (iii) the surplus, if any, shall go to the person(s) legally entitled thereto.

(b) Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Trustor had or had the power to convey at the time of execution of this Deed of Trust and any interest which Trustor subsequently acquired. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

(c) To the extent permitted by law the power of sale conferred by this Deed of Trust is not an exclusive remedy. In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of California.

(d) By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8. **Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the Debt, shall, except as required by applicable law, be paid to the Debt.

9. **Fees and Costs.** Trustor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

10. **Reconveyance.** Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby and Beneficiary and Trustee shall be entitled to charge Trustor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or reconveyance of your security instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you have received.

11. **Trustee; Successor Trustee.** Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor Trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Trustor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

12. **Savings Clause.** If a law, which applies to this Deed of Trust or the Credit Agreement and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the interest or other loan charges collected or to be collected in connection with this Deed of Trust or the Credit Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced

CHASE 02606

◼◼◼◼0259

by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Trustor which exceeded permitted limits will be refunded to Trustor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

    **13. Miscellaneous.** This Deed of Trust shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the Credit Agreement secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law and, to the extent federal law doesn't apply, the laws of the state of California. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in full force and effect.

    **14. Beneficiary and Similar Statements.** Beneficiary may collect a fee in the maximum amount allowed by law for furnishing any beneficiary statement, payoff demand statement or similar statement.

    **15. Riders.** If one or more riders are executed by Grantor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider          ☐ Other: _____

                                                          (specify)

☐ Planned Unit Development Rider

CHASE_02607

███████ 0259

By signing below Trustor accepts and agrees to the provisions of this Deed of Trust and of any rider(s) executed by Trustor concurrently therewith.

DATED a ████████████████████ s 28th day of June 2005.

TRUSTOR(S):

████████████████████████████

CHASE 02608

0259

STAT

COUN

On June 28, 2005, before me,

Public in and for the State of California, personal _____ a Notary

personally known to me (or proved to me on the basis of satisfactory eviden_____ person(s) whose name(s) is/are subscribed to the within instrument an_____ged to me _____ey executed the same _____er/their authorized capacity(ies), and th_____/their signature(s) on the instrument the _____sons) acted, executed the instrument.

Notary Public - California
My Comm. Expires Feb 27, 2006

## REQUEST FOR FULL RECONVEYANCE
### (Do not record.  To be used only when note has been paid.)

TO:    TRUSTEE

The undersigned is the legal owner and holder of the Note and all other indebtedness secured by the within Deed of Trust.  Said Note, together with all other indebtedness secured by this Deed of Trust, has been fully paid and satisfied and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of this Deed of Trust to cancel the Note above mentioned and all other evidences of indebtedness secured by this Deed of Trust together with the Deed of Trust and to convey, without warranty, to the parties designated by the terms of this Deed of Trust all the estate now held by you thereunder.

DATED _____    _____

_____

Mail reconveyance to    _____

4360 (0324/05) W6.2                    **BANK**                    Page 7 of 7

CHASE  02609