# EXHIBIT 17
# PART 3 OF 9



WHEN RECORDED MAIL TO
JPMorgan Chase Bank, N.A
Retail Loan Servicing KY2 1606
P.O Box 11606
Lexington, KY 40576-1606

0666

DEED OF TRUST / MORTGAGE

This Mortgage prepared by

Name
Company  JPMorgan Chase Bank, N.A
Address  1820 E SKY HARBOR CIRCLE SOUTH, PHOENIX, AZ 85034

# MORTGAGE

## FOR USE WITH SECURED REVOLVING CREDIT AGREEMENT

**MAXIMUM LIEN** The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $ ▮▮▮▮ plus interest, and amounts expended or advanced by Lender for the payment of taxes levies or insurance on the Property and interest on such amounts

**THIS MORTGAGE** dated October 7 2005, is made and executed between ▮▮▮▮▮▮▮▮▮▮ (referred to below as Grantor) and JPMorgan Chase Bank, NA whose address is 1111 Polaris Parkway Columbus OH 43240 (referred to below as Lender")

**GRANT OF MORTGAGE** For valuable consideration Grantor mortgages to Lender all of Grantor s right, title and interest in and to the following described real property together with all existing or subsequently erected or affixed buildings improvements and fixtures all easements rights of way and appurtenances all water water rights watercourses and ditch rights (including stock in utilities with ditch or irrigation rights) and all other rights, royalties and profits relating to the real property including without limitation all minerals, oil gas, geothermal and similar matters. (the "Real Property") located in ▮▮▮▮ County, State of Florida

The Real Property or its address is commonly known as ▮▮▮▮▮▮ FL The Real Property tax identification number is ▮▮▮▮▮▮

**REVOLVING LINE OF CREDIT** Specifically in addition to the amounts specified in the Indebtedness definition and without limitation this Mortgage secures a revolving line of credit under which, upon request by Grantor Lender within twenty (20) years from the date of this Mortgage, may make future advances to Grantor Such future advances, together with interest thereon, are secured by this Mortgage Such advances may be made repaid and remade from time to time subject to the limitation that the total outstanding balance owing at any one time not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Mortgage and any intermediate balance

Grantor presently assigns to Lender all of Grantor s right, title and interest in and to all present and future leases of the Property and all Rents from the Property In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT WITH THE CREDIT LIMIT OF $ ▮▮▮▮ THE RELATED DOCUMENTS AND THIS MORTGAGE THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS**

**PAYMENT AND PERFORMANCE** Except as otherwise provided in this Mortgage Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor s obligations under this Mortgage

**POSSESSION AND MAINTENANCE OF THE PROPERTY** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions

   **Possession and Use** Until Grantor s interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property (2) use, operate or manage the Property and (3) collect the Rents from the Property

   **Duty to Maintain** Grantor shall maintain the Property in good condition and promptly perform all repairs replacements and maintenance necessary to preserve its value

   **Compliance With Environmental Laws** Except as otherwise provided in this Mortgage Grantor represents and warrants to Lender that (1) During the period of Grantor s ownership of the Property there has been no use generation, manufacture, storage treatment disposal release or threatened release of any Hazardous Substance by any person on, under about or from the Property (2) Grantor has no knowledge of or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal release or threatened release of any Hazardous Substance on, under about or from the Property by any prior owners or occupants of the Property or (c) any actual

CHASE 02610

**MORTGAGE**
(Continued)

Loan No [        ]0666

Page 2

threatened litigation or claims of any kind by any person relating to such matters, and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor agent or other authorized user of the Property shall use, generate manufacture, store treat, dispose of or release any Hazardous Substance on, under about or from the Property and (b) any such activity shall be conducted in compliance with all applicable federal, state and local laws, regulations and ordinances, including without limitation all Environmental Laws Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor s expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage Any inspections or tests made by Lender shall be for Lender s purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person The representations and warranties contained herein are based on Grantor s due diligence in investigating the Property for Hazardous Substances Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use generation, manufacture storage, disposal release or threatened release occurring prior to Grantor s ownership or interest in the Property whether or not the same was or should have been known to Grantor The provisions of this section of the Mortgage including the obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property whether by foreclosure or otherwise

**Nuisance, Waste** Grantor shall not cause conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property Without limiting the generality of the foregoing, Grantor will not remove or grant to any other party the right to remove any timber minerals (including oil and gas) coal clay scoria soil gravel or rock products without Lender s prior written consent.

**Removal of Improvements** Grantor shall not demolish or remove any Improvements from the Real Property without Lender s prior written consent As a condition to the removal of any Improvements Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value

**Lender s Right to Enter** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender

**Compliance with Governmental Requirements** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property Grantor may contest in good faith any such law ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized Lender may require Grantor to post adequate security or a surety bond reasonably satisfactory to Lender to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property

**DUE ON SALE CONSENT BY LENDER** Lender may at Lender s option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer without Lender s prior written consent, of all or any part of the Real Property or any interest in the Real Property A sale or transfer means the conveyance of Real Property or any right, title or interest in the Real Property whether legal beneficial or equitable whether voluntary or involuntary whether by outright sale deed installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years lease-option contract, or by sale assignment or transfer of any beneficial interest in or to any land trust holding title to the Real Property or by any other method of conveyance of an interest in the Real Property However this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law

**TAXES AND LIENS** The following provisions relating to the taxes and liens on the Property are part of this Mortgage

**Payment** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes special taxes, assessments, water charges and sewer service charges levied against or on account of the Property and shall pay when due all claims for work done on or for services rendered or material furnished to the Property Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay so long as Lender's interest in the Property is not jeopardized If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or if a lien is filed within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings

**Evidence of Payment** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property

**Notice of Construction** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished or any materials are supplied to the Property if any mechanic s lien, materialmen s lien, or other lien could be asserted on account of the work services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE** The following provisions relating to insuring the Property are a part of this Mortgage

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause and with a standard mortgagee clause in favor of Lender Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area Grantor agrees to obtain and maintain Federal Flood Insurance, if available for the full unpaid principal balance of the loan and any prior liens on the property securing the loan up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender and to maintain such insurance for the term of the loan

**Application of Proceeds** Grantor shall promptly notify Lender of any loss or damage to the Property Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty Whether or not Lender's security is impaired Lender may at Lender s election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of

any lien affecting the Property or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement, or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Property also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage.

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation. The existing obligation has a current principal balance of approximately $███████. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such Indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage.

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage.

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage.

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

CHASE 02612

| | MORTGAGE | Page 4 |
|---|---|---|
| Loan No ████0666 | (Continued) | |

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Address.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage.

**Further Assurances.** At any time and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Mortgage if any of the following happen.

(A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition.

(B) Grantor does not meet the repayment terms of the Credit Agreement.

(3) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law) when deposited with a nationally recognized overnight courier or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to

CHASE  02613

| | MORTGAGE | Page 5 |
|---|---|---|
| Loan No ████0666 | (Continued) | |

any Grantor is deemed to be notice given to all Grantors  It will be Grantor's responsibility to tell the others of the notice from Lender  Notwithstanding the foregoing  the address for notice for Lender is  JPMorgan Chase Bank, N.A  P.O  Box 901008  Fort Worth  TX  76101 2008

**IDENTITY OF LENDER**  Lender is JPMorgan Chase Bank, N.A  a national banking association organized and existing under the laws of the United States of America  with its main offices located in Columbus  Ohio

**NON-WAIVER**  A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party s right otherwise to demand strict compliance with that provision or any other provision

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION**  It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property

**DUE ON SALE  CONSENT BY LENDER**  Lender may  at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer  without Lender's prior written consent, of all or any part of the Real Property  or any interest in the Real Property  A  sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property  whether legal, beneficial or equitable, whether voluntary or involuntary  whether by outright sale  deed, installment sale contract, land contract  contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property  or by any other method of conveyance of an interest in the Real Property  However  this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law

**MISCELLANEOUS PROVISIONS**  The following miscellaneous provisions are a part of this Mortgage

**Amendments**  What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage  To be effective  any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment

**Caption Headings**  Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage

**Governing Law**  This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Florida except for matters related to  (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to  statutes, regulations  interpretations  and opinions) and the laws of the State of Ohio, and (2) the validity and enforcement of Lender s security interest in the Property  which will be governed by the laws of the State where the Property is located  However  if there ever is a question about whether any provision of the agreement is valid or enforceable  the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable  The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio

**No Waiver by Lender**  Grantor understands Lender will not give up any of Lender s rights under this Mortgage unless Lender does so in writing  The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right  If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage  Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender s consent again if the situation happens again  Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor s future requests  Grantor waives presentment, demand for payment, protest, and notice of dishonor

**Severability**  If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced  Therefore  a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable

**Merger**  There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity  without the written consent of Lender

**Successors and Assigns**  Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns  If ownership of the Property becomes vested in a person other than Grantor  Lender  without notice to Grantor  may deal with Grantor s successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness

**Time is of the Essence**  Time is of the essence in the performance of this Mortgage

**DEFINITIONS**  The following words shall have the following meanings when used in this Mortgage

**Borrower**  The word  Borrower  means ████ and all other persons and entities signing the Credit Agreement.

**Credit Agreement**  The words  Credit Agreement' mean the credit agreement dated October 7  2005  **in the original principal amount of $**████ from Grantor to Lender  together with all renewals of  extensions of  modifications of  refinancings of  consolidations of  and substitutions for the promissory note or agreement  The final maturity date of the Credit Agreement is ████

**Environmental Laws**  The words  Environmental Laws  mean any and all state  federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without  limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980  as amended  42 U S C  Section 9601  et seq  ( CERCLA )  the Superfund Amendments and Reauthorization Act of 1986  Pub  L  No  99-499 ( SARA )  the Hazardous Materials Transportation Act, 49 U S C  Section 1801  et seq  the Resource Conservation and Recovery Act, 42 U S C  Section 6901  et seq  or other applicable state or federal laws, rules  or regulations adopted pursuant thereto

**Event of Default**  The words  Event of Default' mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage

**Existing Indebtedness**  The words  Existing Indebtedness  mean the indebtedness described in the Existing Liens provision of this Mortgage

**Grantor**  The word  Grantor  means ████

**Hazardous Substances**  The words  Hazardous Substances  mean materials that, because of their quantity  concentration or physical, chemical or infectious characteristics  may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored  disposed of  generated, manufactured, transported or otherwise handled  The words  Hazardous Substances  are used in their very broadest sense and include without  limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental  Laws  The term  Hazardous Substances  also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Improvements**  The word  Improvements  means all existing and future improvements  buildings  structures, mobile homes affixed on the Real Property  facilities, additions, replacements and other construction on the Real Property

**Indebtedness**  The word  Indebtedness  means  all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of  extensions of  modifications of  consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor s obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage  together with interest on

| Loan No ████0666 | **MORTGAGE**<br>(Continued) | Page 6 |
|---|---|---|

such amounts as provided in this Mortgage   In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Revolving Line of Credit paragraph of this Mortgage   However the term Indebtedness is subject to the limitations identified in the Maximum Lien section of this Mortgage

**Lender**   The word   Lender   means JPMorgan Chase Bank, NA, its successors and assigns   The words   successors or assigns   mean any person or company that acquires any interest in the Credit Agreement

**Mortgage**   The word   Mortgage   means this Mortgage between Grantor and Lender

**Personal Property**   The words   Personal Property   mean all equipment, fixtures   and other articles of personal property now or hereafter owned by Grantor   and now or hereafter attached or affixed to the Real Property   together with all accessions, parts, and additions to, all replacements of, and all substitutions for   any of such property   and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property

**Property**   The word   Property   means collectively the Real Property and the Personal Property

**Real Property**   The words   Real Property   mean the real property   interests and rights, as further described in this Mortgage

**Related Documents**   The words   Related Documents   mean all promissory notes, credit agreements, loan agreements   environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds   collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness

**Rents**   The word   Rents   means all present and future rents, revenues, income   issues   royalties, profits and other benefits derived from the Property

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE**   Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement   As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s)   Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements   This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b)

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS

GRANTOR

WITNESSES:

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF *Florida*          )
                                         ) SS
COUNTY OF █████          )

The foregoing instrument was acknowledged before me this   *7th*    day of   *October*    2005
by █████████ who is personally known to me or who has produced *Drivers License* as identification
and did/ did not   take an oath





Notary Public   State of Florida
My Comm. Expires May 19, 2006

---



Prepared ████████████

Record and Return Address
**JPMorgan Chase Bank, N.A.**
**National Home Equity Post Closing KY2-1606**
**P.O. Box 11606**
**Lexington, KY 40576-1606**

Reference
Servicing #        9592

(Reserved for Recording Data)

## VIRGINIA
## HOME EQUITY LINE OF CREDIT DEED OF TRUST
### (Securing Future Advances)
### (This is a Credit Line Deed of Trust)

THIS DEED OF TRUST is made on ___August 25, 2005___ , among the Grantor(s)

The Trustee is ████████████████████████████████("Trustee") whose
address is ██████████████████████████████████ and the
Beneficiary, **JPMorgan Chase Bank, N.A.**
a national banking association whose address is
**1111 Polaris Parkway, Columbus, OH 43240**
or its successors or assignees  Any communication to the Lender should be sent to
**C/O Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113**
In this Deed of Trust, the terms "you," "your" and "yours" refer to the Grantor(s)  The terms "we,"
"us" and "our" refer to   **JPMorgan Chase Bank, N.A.**

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Deed of
Trust ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest
thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at
any time of

(U S $ ████████████████ )  The Agreement provides for a final scheduled installment due and
payable not later than on ████████████████  You agree that this Deed of Trust shall
continue to secure all sums now or hereafter advanced under the terms of the Agreement including,
without limitation, such sums that are advanced by us whether or not at the time the sums are
advanced there is any principal sum outstanding under the Agreement  The parties hereto intend
that this Deed of Trust shall secure unpaid balances, and all other amounts due to us hereunder
and under the Agreement

VALCDT (Rev 10/18/04)                    Page 1 of 8

CHASE  02616

This Deed of Trust secures to us   (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement, (b) the payment of all other sums, with interest, advanced under this Deed of Trust to protect the security of this Deed of Trust, and (c) the performance of your covenants and agreements under this Deed of Trust and the Agreement  For this purpose and in consideration of the debt, you irrevocably grant and convey to the Trustee, in trust, with power of sale, the property located in ██████████████████ County, Virginia and more fully described in EXHIBIT A, which is attached hereto and made a part hereof, which property is more commonly known as ██████████████████████ **VA**████████████ ("Property Address"),

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Deed of Trust  All of the foregoing is referred to in this Deed of Trust as the "Property "

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

**YOU AND WE** covenant and agree as follows

**1.**     **Payment of Principal, Interest and Other Charges.**  You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement

**2.**     **Application of Payments.**   Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement

**3.**     **Prior Mortgages; Charges; Liens.**  You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Deed of Trust, including your covenants to make payments when due  You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any  Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly  You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Deed of Trust

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law

VALCDT                              Page 2 of 8

CHASE  02617

**4.    Hazard Insurance.**  You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance  This insurance shall be maintained in the amounts and for the periods that we require  You may choose any insurer reasonably acceptable to us  Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause  If we require, you shall promptly give us all receipts of paid premiums and renewal notices  If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6  You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein  You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance   You shall promptly notify the insurer and us of any loss  We may make proof of loss if you do not promptly do so

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened  Otherwise, insurance proceeds shall be applied to sums secured by this Deed of Trust, whether or not then due, with any excess paid to you  If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due  The 30-day period will begin when notice is given  Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments  If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property

**5.    Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste  You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Deed of Trust or our security interest  You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Deed of Trust or our security interest  You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence  If this Deed of Trust is on a leasehold, you shall comply with the lease  If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing

**6.    Protection of Our Rights in the Property; Mortgage Insurance.**  If you fail to perform the covenants and agreements contained in this Deed of Trust, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property  Our actions may include paying any sums secured by a lien which has priority over this Deed of Trust or any advance under the

CHASE 02618

Agreement or this Deed of Trust, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Deed of Trust and entering on the Property to make repairs   We do not have to take any action we are permitted to take under this paragraph   Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Deed of Trust These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request   If we required mortgage insurance as a condition of making the loan secured by this Deed of Trust, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates

       **7.    Inspection.**  We may enter and inspect the Property at any reasonable time and upon reasonable notice

       **8.    Condemnation.**  The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us   If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due   Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments

       **9.    You Are Not Released; Forbearance by Us Not a Waiver**  Extension of time for payment or modification of amortization of the sums secured by this Deed of Trust granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest   We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by you or your successors in interest   Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy

       **10.    Successors and Assigns Bound, Joint and Several Liability; Co-signers.**  The covenants and agreements of this Deed of Trust shall bind and benefit your successors and permitted assigns  Your covenants and agreements shall be joint and several  Anyone who co-signs this Deed of Trust but does not execute the Agreement  (a) is co-signing this Deed of Trust only to mortgage, grant and convey such person's interest in the Property, (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Deed of Trust, and (c) agrees that we and anyone else who signs this Deed of Trust may agree to extend, modify, forbear or make any accommodations regarding the terms of this Deed of Trust or the Agreement without such person's consent

       **11.    Loan Charges.**  If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from you which exceed permitted limits will be refunded to you

We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you   If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement

**VALCDT**                             Page 4 of 8

CHASE 02619

**12.    Notices**  Unless otherwise required by law, any notice to you provided for in this Deed of Trust shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us  Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you  Any notice provided for in this Deed of Trust shall be deemed to have been given to you or us when given as provided in this paragraph

**13.  Governing Law; Severability.**  The extension of credit secured by this Deed of Trust is governed by federal law, which for the purposes of 12 USC ° 85 incorporates Ohio law  However, the interpretation and enforcement of this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law  In the event that any provision or clause of this Deed of Trust or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Agreement which can be given effect without the conflicting provision  To this end the provisions of this Deed of Trust and the Agreement are declared to be severable

**14.    Transfer of the Property.**  If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust  However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust

**15.    Sale of Agreement; Change of Loan Servicer.**  The Agreement or a partial interest in the Agreement (together with this Deed of Trust) may be sold one or more times without prior notice to you  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Deed of Trust  There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement  If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made  The notice will also contain any information required by applicable law

**16.    Hazardous Substances.**  You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property  You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law  The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property  You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge  If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law  As used in this Deed of Trust, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials  As used in this Deed of Trust, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

CHASE  02620

17.   **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Deed of Trust is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under Section 14, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense you may have to acceleration and sale. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. We shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount you owe for principal and interest and costs of title evidence

If we invoke the power of sale, we or the Trustee shall give you (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. The Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. The Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. The Trustee, without demand on you, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order the Trustee determines The Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. We or our designee may purchase the Property at any sale

The Trustee shall deliver to the purchaser a deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. The Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5% of the gross sale price and reasonable attorneys' fees (as set forth above), (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Deed of Trust; and (d) any excess to the person or persons legally entitled to it. The Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

18.   **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Deed of Trust under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Deed of Trust

19.   **Release.** Upon your request and payment of all sums secured by this Deed of Trust, we shall release this Deed of Trust   You will be responsible for all costs of recording such release

VALCDT                                    Page 6 of 6

CHASE  02621

**20. Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Deed of Trust upon full repayment of all sums secured thereby

**21. Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Deed of Trust or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time

**22. Homestead Exemption.** You waive the benefit of your homestead exemption as to the obligations secured by this Deed of Trust

**23. Name and Address of Noteholder.** The noteholder secured by this Deed of Trust is Chase Manhattan Bank USA, N A Communications directed to Chase Manhattan Bank USA, N A shall be given by first class mail to the address stated above on the first page of this Deed of Trust

**24. Substitute Trustee.** We, at our option, may from time to time remove the Trustee and appoint a successor trustee to any Trustee appointed hereunder Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law

**25. Riders to this Deed of Trust.** If one or more riders are executed by you and recorded together with this Deed of Trust, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were part of this Deed of Trust

☐ Condominium Rider      ☐ 1-4 Family Rider

☐ Planned Unit Development Rider      ☐ Other(s) _____

VALCDT            Page 7 of 8

CHASE 02622

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

**BY SIGNING BELOW,** You accept and agree to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by you and recorded with it

_____ (Seal)

_____     _____ (Seal)

_____     _____ (Seal)

_____     _____ (Seal)

_____     _____ (Seal)

STATE OF VIRGINIA

CITY/COUNTY OF _____ ss·

The foregoing instrument was acknowledged before me this 25 day of August 2006 _____, by _____

My Commission expires

VALCDT

CHASE  02623



Prepared By:

Record and Return Address:
**JPMorgan Chase Bank, N.A.**
**National Home Equity Post Closing KY2-1606**
**P.O. Box 11606**
**Lexington, KY 40576-1606**

Reference #
Servicing #            6184

## NEW JERSEY
## OPEN-END MORTGAGE

THIS MORTGAGE is given on     August 9, 2006     . The mortgagor is

This Mortgage is given to     JPMorgan Chase Bank, N.A.
a New York state chartered bank whose address is
1111 Polaris Parkway, Columbus, OH 43240
("Lender") or its successors or assignees. Any communication to the Lender should be sent to
C/O Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113.
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us"
and "our" refer to the Lender.

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage
("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of
_____ Dollars
(U.S. $                           . The Agreement provides for a final scheduled installment due and
payable not later than on                                    . You agree that this Mortgage shall
continue to secure all sums now or hereafter advanced under the terms of the Agreement including,
without limitation, such sums that are advanced by us whether or not at the time the sums are
advanced there is any principal sum outstanding under the Agreement. The parties hereto intend
that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and
under the Agreement. This Mortgage and the Agreement secured thereby are subject to
modification (including changes in the interest rate, the due date, and other terms and conditions)
as defined in New Jersey Statutes Annotated §§ 46:9-8.1 to 46:9-8.4; and upon such modification,
shall have the benefit of the lien priority provisions of that law.

For this purpose, you hereby mortgage, grant and convey to us and our successors and
assigns the property located in                              County, New Jersey, and
more fully described in EXHIBIT A, which is attached hereto and made a part hereof, which
property is more commonly known as
_____ NJ                      ("Property Address");

NJLCMT (Rev. 09/14/04)                          Page 1 of 8

Station: View13 - 06/11/2007  8:31:23 AM

CHASE  02624

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1. **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due under the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 will be applied by us as permitted under the Agreement.

3. **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust, or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

We specifically reserve to ourself and our successors and assigns the unilateral right to require that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

4. **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices.

If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions of Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance.

NJLCMT                                      Page 2 of 8

CHASE 02625

You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5.    **Preservation and Maintenance of Property; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

6.    **Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

7.    **Inspection.** We may make entries in and upon the Property to inspect same at any reasonable time and upon reasonable notice.

8.    **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

NJLCMT                              Page 3 of 8

CHASE  02626

**9. You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

**11. Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12. Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you.

**13. Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC ° 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**14. Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**15. Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

NJ1LCMT

Page 4 of 8

CHASE 02627

**16.   Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Mortgage, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Mortgage, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**17.   Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under Section 14 unless applicable law provides otherwise) we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we may, at our option, require immediate payment in full of all sums secured by this Mortgage without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees as permitted by applicable law (which fees shall be allowed and paid as part of the decree of judgment), and costs of title evidence.

**18.   Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**19.   Release.** Upon your request and payment of all sums secured by this Mortgage, we will cancel this Mortgage. If we are requested to record the release of this Mortgage, you will pay all costs of recordation, if any.

NJLCMT                                      Page 5 of 8

CHASE 02628

**20.    Additional Charges.**   You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations.  Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

**21.    Waiver.**  No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision of covenant at any other time.

**22.    No Claim of Credit for Taxes.**  You will not make deduction from or claim credit on the principal or interest secured by this Mortgage by reason of any governmental taxes, assessments or charges.  You will not claim any deduction from the taxable value of the Property by reason of this Mortgage.

**23.    Riders to this Mortgage.**  If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were a part of this Mortgage.  [Check applicable box(es)]

☐  Condominium Rider                    ☐  1-4 Family Rider

☐  Planned Unit Development Rider        ☐  Other(s) _____

NJLCMT                                Page 6 of 8

Station: View13 - 06/11/2007  8:31:23 AM

CHASE  02629

**BY SIGNING BELOW,** You accept and agree to the terms and covenants contained in this Mortgage and in any rider(s) executed by you and recorded with it.

Signed, sealed and delivered in the presence of:

Witness:

_____                          _____ (Seal)

_____                          _____ (Seal)

_____                          _____ (Seal)

_____                          _____ (Seal)

NJLCMT                                    Page 7 of 8

Station: View13 - 06/11/2007  8:31:23 AM

## ACKNOWLEDGEMENTS

STATE OF NEW JERSEY            )

COUNTY OF ▮▮▮▮▮▮▮              )            to wit:

On the   9th   day of   August   , before me, ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ , a Notary Public of the State and County aforesaid personally
appeared ▮▮▮▮▮▮▮ , who I am satisfied is/are the
Persons(s) named in and who executed the within Instrument; and he/she/they signed, sealed and
delivered the same as his/her/their act and deed for the uses and purposes therein expressed.

My Commission expires: _____   Notary Public - New Jersey

My Commission Expires June 11, 2000

NJLCMT                            Page 5 of 5

Station: View13 - 06/11/2007  8:31:23 AM



Prepared

Record and Return Address:
**Chase Manhattan Bank USA, N.A.**
**c/o Chase Manhattan Mortgage Corporation**
**1500 N. 19th St.**
**Monroe, LA  71201**                                         Reference▮▮▮▮▮▮
**Attn: Document Control 6th FL. - HE**                       Servicing #▮▮▮▮6512

—————————— Space above this line for recording data ——————————

## FLORIDA
## HOME EQUITY LINE OF CREDIT MORTGAGE
### (Securing Future Advances)

      THIS MORTGAGE is given ____ **September 2, 2004** ▮▮▮▮▮▮▮▮▮▮. The mortgagor is

whose mailing address is
▮▮▮▮▮▮ **FL** ▮▮▮▮
This Mortgage is given to **Chase Manhattan Bank USA, N.A.**
a national banking association whose address is
**200 White Clay Center Drive, Route 273, Newark, DE  19711**
or its successors or its assignees.  Any communication to the Lender should be sent to
**C/O Chase Manhattan Mortgage Corporation, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113.**
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and
"our" refer to **Chase Manhattan Bank USA, N.A.** ▮ .

      Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage
("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**Dollars**
(U.S. $▮▮▮▮▮▮▮). The Agreement provides for a final scheduled installment due and payable not
later than on ▮▮▮▮▮▮▮▮. You agree that this Mortgage shall continue to secure all sums

FLLCMT (Rev. 09/03/03)                    Page 1 of 8

CHASE  02632



now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the property located in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ County, Florida, and more fully described in <u>EXHIBIT A</u>, which is attached hereto and made a part hereof, which property is more commonly known as ▮▮▮▮▮▮▮▮▮▮▮▮FL▮▮▮▮ ("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1.    **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.    **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.    **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

FLLCMT                              Page 2 of 8

CHASE 02633



We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

4.      **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5.      **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the

FLLCMT                                    Page 3 of 8



loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

**6. Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7. Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8. Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9. You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**10. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is

FLLCMT                                                    Page 4 of 8

CHASE 02635



obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

**11.    Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.    Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

**13.    Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC § 85 incorporates Delaware law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**14.    Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**15.    Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**16.    Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous

FLLCMT                              Page 5 of 8

CHASE 02636



Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation

**17. Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.

**18. Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**19. Release.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage. You will be responsible for all costs of recording such release.

**20. Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

**21. Documentary Stamp Taxes and Intangible Taxes.** You agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement. You shall indemnify and hold us harmless from and against any and all loss, liability,

FLLCMT                                    Page 6 of 8

CHASE 02637



claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

    **22.   Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

    **23.   Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.



    **IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above written.

Witnesses:                         Mortgagor(s):



FLLCMT                                Page 7 of 8



## ACKNOWLEDGMENTS

STATE OF FLORIDA, █████████ County, ss:

The foregoing instrument was acknowledged before me, on this _9th_ day of _September_,
_2004_ by ███████████████████, who is personally known to me (yes/no) or
who provided ___FT. OK___ as identification.

My Commission expires:

NEW YORK

STATE OF FLORIDA, █████████ County, ss: █████████

The foregoing instrument was acknowledged before me, on this _3_ day of _September_,
_____ by ██████████████████, who is personally known to me (yes/no) or
who provided _____ as identification.

Notary Public, State of New York

My Commission expires: _06-07-08_          Commission Expires _06-07-06_

This instrument has been prepared by: _____, whose post office
address is _____

CHASE 02639



Prepared

Record and Return Address:
Chase Manhattan Bank USA, N.A.
c/o Chase Manhattan Mortgage Corporation
1500 N. 19th St.
Monroe, LA  71201
Attn: Document Control 6th FL. - HE

Reference ▮▮▮▮▮▮▮
Servicing # ▮▮▮▮3705

―――――― Space above this line for recording data ――――――

# FLORIDA
## HOME EQUITY LINE OF CREDIT MORTGAGE
### (Securing Future Advances)

THIS MORTGAGE is given _____ **March 25, 2004** _____ . The mortgagor is

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

whose mailing address is

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **FL** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This Mortgage is given to **Chase Manhattan Bank USA, N.A.**
a national banking association whose address is
**200 White Clay Center Drive Route 273, Newark, DE   19711**
or its successors or its assignees.  Any communication to the Lender should be sent to
**c/o Chase Manhattan Mortgage Corporation, 250 West Huron Road, P. O. Box 93764, Cleveland, OH** 44113
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and
"our" refer to **Chase Manhattan Bank USA, N.A.**   .

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage
("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Dollars**
(U.S. $ ▮▮▮▮▮▮▮▮▮ ). The Agreement provides for a final scheduled installment due and payable not
later than on ▮▮▮▮▮▮▮▮▮▮▮▮▮ You agree that this Mortgage shall continue to secure all sums

FLLCMT (Rev. 07/30/03)                              Page 1 of 8

CHASE  02640

now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the property located in ████████████████████████ County, Florida, and more fully described in <u>EXHIBIT A</u>, which is attached hereto and made a part hereof, which property is more commonly known as █████████████████████ FL ████████████ ("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1.      **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.      **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.      **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.



CHASE  02641

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

    **4.**    **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

    **5.**    **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the

**FLLCMT**                                           Page 3 of 8



loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

6.      **Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

7.      **Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

8.      **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

9.      **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

10.     **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement:  (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is

**FLLCMT**                              Page 4 of 8

CHASE 02643

obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

**11.   Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.   Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

**13.   Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC § 85 incorporates Delaware law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

**14.   Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

**15.   Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

**16.   Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous



CHASE 02644

Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation

**17.   Acceleration; Remedies. You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.**

**18.   Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

**19.   Release.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage. You will be responsible for all costs of recording such release.

**20.   Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations.  Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

**21.   Documentary Stamp Taxes and Intangible Taxes.** You agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.  You shall indemnify and hold us harmless from and against any and all loss, liability,

CHASE 02645

claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

     **22.   Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

     **23.   Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider         ☐ 1-4 Family Rider

☐ Planned Unit Development Rider      ☐ Other(s) _____

     **IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above written.

Witnesses:           Mortgagor(s):

_____      _____(Seal)
                                          Print

_____      _____(Seal)
                                          Print

**FLLCMT**                        Page 7 of 8

CHASE 02646

**ACKNOWLEDGMENTS**

STATE OF FLORIDA, ███████████ County, ss:

The foregoing instrument was acknowledged before me, on this 25th day of March, 2004 by ███████████, who is personally known to me (yes/no) or who provided _FL Driver License_ as identification.

EXPIRES: January 20, 2007

My Commission expires: _____

STATE OF FLORIDA, ███████████ County, ss:

The foregoing instrument was acknowledged before me, on this 25 day of March, 2004 by ███████████, who is personally known to me (yes/no) or who provided _FL Driver License_ as identification.

EXPIRES: January 20, 2007

My Commission expires: _____

This instrument has been prepared by: _____, whose post office address is _____

FLLCMT                          Page 8 of 8

CHASE  02647

This instrument was prepared by ██████████████████████

504 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034

WHEN RECORDED, MAIL TO:
CHASE HOME FINANCE LLC
10790 Rancho Bernardo Rd.
San Diego, CA  92127
Attn: Doc Control

——————— State of New Jersey ———————        ——— Space Above This Line For Recording Data ———

## MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ..April 25th, 2005.................. and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR: ████████████████████████████████████████

   ☐ If checked, refer to the attached Addendum incorporated in this Security Instrument, for additional Mortgagors, their signatures and acknowledgments.

   LENDER:     CHASE BANK USA, N.A.              DIRECT CORRESPONDENCE TO:
               200 White Clay Center Drive      CHASE HOME FINANCE LLC
               Newark, DE  19711                10790 Rancho Bernardo Rd.
                                                San Diego, CA  92127

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which are acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

   ████████████████████████████████████████████████████████

   The property is located in ████████████████████ at ████████████
   ████████████████████████ New Jersey ████████████
   (Address)                        (City)                    (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ████████████████████████ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

      The Home Equity Line of Credit Agreement and Promissory Note
      dated April 25th, 2005 due and payable, if not paid earlier,
      on April 25th, 2035.

NEW JERSEY - HOME EQUITY LINE OF CREDIT MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NJ  8/26/98
VMP -C465(NJ) (9902)                    VMP MORTGAGE FORMS - (800)521-7291

CHASE 02648

B. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the promises to perform contained in this section constitute mortgage covenants and are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches (fails to perform) any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor has or will have full lawful ownership and possession of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NJ  8/28/98

 -C465(NJ) (9902)



8.  **DEFAULT.** Mortgagor will be in default if any of the following occur:

Fraud. Mortgagor engages in fraud or material misrepresentation in connection with the Secured Debt.

Payments. Any party obligated on the Secured Debt fails to make a payment when due.

Property. Any action or inaction occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

Executive Officers. Mortgagor is an executive officer of Lender or an affiliate and Mortgagor becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9.  **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

Accelerate the Secured Debt means that, at the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

12. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

13. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument. This means that any times stated in this Security Instrument must be strictly complied with and that failure to comply will constitute a material breach of this Security Instrument.

14. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

15. **WAIVER OF CLAIM OF CREDIT FOR TAXES.** Mortgagor will not make or claim credit on or deduction from the principal or interest on the Secured Debt by reason of any municipal or governmental taxes, assessments or charges assessed upon the Property, nor claim any deduction from the taxable value of the Property by reason of this Security Agreement.

16. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

17. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NJ 6/26/98
VMP® -C465(NJ) (9902)

CHASE 02650

**18.   RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**19.**   ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Signed, sealed and delivered in the presence of:

........................................................................   ............................................................................
                                                                        (Witness)

**ACKNOWLEDGMENT:**
(Individual)   STATE OF ...New York......... , COUNTY OF ▮▮▮▮▮▮▮▮ }ss.
On this ....05.... day of ...April... 2002... before me personally appeared
..........................................................................................................................
who, I am satisfied, ...W.m. Isbell.............. the maker(s) of the instrument, and acknowledged that the instrument was
executed as the maker's own act.
My commission expires:

(Seal)

NOTARY PUBLIC, STATE OF NEW YORK

COMMISSION EXPIRES SEPT. 02, 2007

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NJ  6/28/96                    *(page 4 of 4)*

-C465(NJ)  (9902)

**WHEN RECORDED MAIL TO:**
TransUnion Settlement Solutions
5300 Brandywine Parkway
Suite 100
Wilmington, DE 19803

0928

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# MORGAGE

**THIS MORTGAGE** dated March 6, 2003, is made and executed between ▆▆▆▆▆▆ (referred to below as "Grantor") and Bank One, NA , whose address is 100 East Broad Street, Columbus, OH 43271 (referred to below as "Lender").

**GRANT OF MORTGAGE. For valuable consideration, Grantor** mortgages, grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in** ▆▆▆▆ **County, State of Alabama:**



The Real Property or its address is commonly known as ▆▆▆▆▆▆▆▆▆ AL ▆▆. The Real Property tax identification number is ▆▆▆▆▆▆

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified

CHASE 02652

Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Alabama law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials.  Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.**  Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender.  Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.  If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.**  If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B)  to provide any required insurance on the Property, or  (C)  to make repairs to the Property then Lender maydo so.  If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests.  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Property also will secure payment of these amounts.  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default.  Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.**  Grantor warrants that:  (a)  Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b)  Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.**  All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

CHASE  02653

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or Grantor fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

CHASE   02654

**MORTGAGE**
(Continued)

Loan No: [           ]0928

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender will be authorized to take possession of the Property and, with or without taking such possession, after giving notice of the time, place and terms of sale, together with a description of the Property to be sold, by publication once a week for three (3) successive weeks in some newspaper published in the county or counties in which the Real Property to be sold is located, to sell the Property (or such part or parts thereof as Lender may from time to time elect to sell) in front of the front or main door of the courthouse of the county in which the Property to be sold, or a substantial and material part thereof, is located, at public outcry, to the highest bidder for cash. If there is Real Property to be sold under this Mortgage in more than one county, publication shall be made in all counties where the Real Property to be sold is located. If no newspaper is published in any county in which any Real Property to be sold is located, the notice shall be published in a newspaper published in an adjoining county for three (3) successive weeks. The sale shall be held between the hours of 11:00 a.m. and 4:00 p.m. on the day designated for the exercise of the power of sale under this Mortgage. Lender may bid at any sale had under the terms of this Mortgage and may purchase the Property if the highest bidder therefore. Grantor hereby waives any and all rights to have the Property marshalled. In exercising Lender's rights and remedies, Lender will be free to sell all or any part of the Property together or separately, in one sale or by separate sales.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender. Notwithstanding the foregoing, the address for notice for Lender is: Bank One, P.O. Box 901008, Fort Worth, TX 76101-2008.

**IDENTITY OF LENDER.** Lender is Bank One, N.A., a national banking association with its main offices located in Columbus, Ohio.

**ADDITION TO MAINTENANCE OF INSURANCE.** If Grantor does not exercise the option to provide required insurance, Lender may but is not required to purchase the required insurance and Grantor will be responsible to pay the premium for that insurance. Lender may, for reasonable cause, decline the insurance that Grantor has provided.

**NON-WAIVER.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION.** It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Alabama, except for matters related to interest and the exportation of interest, which matters will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and laws of the State of Ohio. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other

**MORTGAGE**
(Continued)

than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Alabama as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means ███████████ and all other persons and entities signing the Note.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means ███████████

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Bank One, NA , its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 6, 2003, **in the original principal amount of $**████████ from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is ████████

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR: 

This Mortgage prepared by:

Name: ███████████
Address: 1515 W 14TH ST, BLDG C
City, State, ZIP: TEMPE, AZ 85281

## MORTGAGE
**(Continued)**

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Alabama_ )
) SS
COUNTY OF ████████████ )

I, the undersigned authority, a Notary Public in and for said county in said state, hereby certify that ████████ whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said Mortgage, he or she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _6th_ day of ████ ████

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Apr 1, 2005

My commission expires ████████████

LASER PRO Lending, Ver. 5.19.40.06 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - AL/GH  H:\CFI\LPL\LASER\RPMDV\FALPL\G03 FC  TR-83390938  PR EQVNDEAL



CHASE  02657

1182

DEED OF TRUST / MORTGAGE

**WHEN RECORDED MAIL TO:**
JPMorgan Chase Bank, N.A.
Retail Loan Servicing KY2-1606
P.O. Box 11606
Lexington, KY 40576-1606

This Mortgage prepared by:

Name: ███████████
Company: JPMorgan Chase Bank, N.A.
Address: 20 S CLINTON AVE, ROCHESTER, NY 14604

# MORTGAGE

## FOR USE WITH SECURED REVOLVING CREDIT AGREEMENT

**MAXIMUM LIEN. The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $**████████ **plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.**

**THIS MORTGAGE dated January 24, 2007, is made and executed between** ███████████████████████████ **████████████████████████████ (referred to below as "Grantor") and JPMorgan Chase Bank, NA, whose address is 1111 Polaris Parkway, Columbus, OH 43240 (referred to below as "Lender").**

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in** █████████████ **County, State of Florida:**

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

**The Real Property or its address is commonly known as** ████████████████████████████ FL ███████████. **The Real Property tax identification number is** █████████████.

**REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Mortgage secures a revolving line of credit under which, upon request by Borrower, Lender, within twenty (20) years from the date of this Mortgage, may make future advances to Borrower. Such future advances, together with interest thereon, are secured by this Mortgage. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Mortgage and any intermediate balance.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT WITH THE CREDIT LIMIT OF $**████ **THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:


**MORTGAGE**
(Continued)

Loan No: ▮▮▮▮1182

Page 2

**Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give

CHASE  02659

such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Property also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

CHASE  02660



**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Mortgage if any of the following happen:

(A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Borrower's or Grantor's income, assets, liabilities, or any other aspects of Borrower's or Grantor's financial condition.

(B) Borrower does not meet the repayment terms of the Credit Agreement.

(3) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender. Notwithstanding the foregoing, the address for notice for Lender is: JPMorgan Chase Bank, N.A., P.O. Box 901008, Fort Worth, TX 76101-2008.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar

**MORTGAGE**
(Continued)

Page 5

Loan No: 1182

law for the establishment of condominiums or cooperative ownership of the Real Property.

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender will have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Compliance with Regulations of Association.** Grantor shall perform all of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, Grantor shall perform all of the obligations imposed on Grantor by the lease of the Real Property from its owner.

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**NON-WAIVER.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION.** It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of New York except for matters related to: (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and the laws of the State of Ohio; and (2) the validity and enforcement of Lender's security interest in the Property, which will be governed by the laws of the State where the Property is located. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means ███████████ and all other persons and entities signing the Credit Agreement.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated January 24, 2007, **in the original principal amount of $**███████ from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Credit Agreement is ███████████

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means ███████████

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words

"Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. **In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Revolving Line of Credit paragraph of this Mortgage. However, the term "Indebtedness" is subject to the limitations identified in the Maximum Lien section of this Mortgage.**

**Lender.** The word "Lender" means JPMorgan Chase Bank, NA, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

GRANTOR:



---

## INDIVIDUAL ACKNOWLEDGMENT



STATE OF ____NY____ )
                                        ) SS
COUNTY OF ████ )

The foregoing instrument was acknowledged before me this ___24___ day of ___Jan___, 20__7__ by ████ who are personally know ████ ████ ████████ as identification and did / did ████

NOTARY PUBLIC, STATE OF NEW YORK
MY COMMISSION EXPIRES 07-31-2010

(Serial Number, if any)

LASER PRO Lending, Ver. 5.16.10.04  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - FL/XX/XX  F:\cfi\lpwin\cfi\LPL\G03.FC  TR-59501192  PR-IOHNEEYL

CHASE  02663



Prepared By:

Record & Return:
*Progressive Closing & Escrow Company, Inc.*
50 Vantage Point Drive, Suite 3
Rochester, NY  14624



Reference #
Servicing #           6549

## TEXAS HOME EQUITY OPEN-END DEED OF TRUST
### (HOMESTEAD)
### (Securing Future Advances)

**THIS DEED OF TRUST SECURES AN EXTENSION OF CREDIT OF THE TYPE DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION**

## NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**THIS DEED OF TRUST** is made on **March 26, 2004**                                      . The trustor is

whose address is
The trustee is                                                        ("Trustee"), whose address is
                                                                . The beneficiary is
**Chase Manhattan Bank USA, N.A.**                                                whose address is
**200 White Clay Center Drive Route 273, Newark, DE   19711**
("Lender") or its successors or assingees.  Any notices and correspondence to the Lender pursuant to Section 12
should be addressed
c/o Chase Manhattan Mortgage Corporation, 250 West Huron Road, P. O. Box 93764, Cleveland, OH  44113
In this Deed of Trust, the terms "you," "your" and "yours" refer to the trustor(s).  The terms "we," "us" and "our" refer to
the Lender.

TXLCDTH (Rev. 12/17/03)                         Page 1 of 9

CHASE  02664

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Deed of Trust ("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of ██████████████████████████████████████

(U.S. $ ████████████████████ ).  The Agreement provides for a final scheduled installment due and payable not later than on ███████████████████ .  You agree that this Deed of Trust shall continue to secure all sums now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement.  The parties hereto intend that this Deed of Trust shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Deed of Trust secures to us:  (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Deed of Trust to protect the security of this Deed of Trust; and (c) the performance of your covenants and agreements under this Deed of Trust and the Agreement.  For this purpose and  in consideration of the debt, you irrevocably grant and convey to the Trustee and Trustee's successors and assigns, in trust, with power of sale, the property located in ███████████████████████████████████████████ County, Texas, and more fully described in Exhibit A, which is attached hereto and made a part hereof, which property is more commonly known as:

████████████████████████████████ TX█ ██████████████████████████████████ ("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Deed of Trust.  All of the foregoing is referred to in this Deed of Trust as the "Property."  However, the "Property" does not include any property which cannot legally be secured by this lien pursuant to Texas Constitution Art. 16, Section 50(a)(6)(H).

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

1.   **Payment of Principal, Interest and Other Charges.**  You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.   **Application of Payments.**  Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.   **Prior Deed of Trusts; Charges; Liens.**  You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Deed of Trust, including your covenants to make payments when due.  You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust or any advance under this Deed of Trust, and leasehold payments or ground rents, if any.  Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this section and receipts evidencing any such payments you make directly.  You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Deed of Trust or any advance under this Deed of Trust.

TXLCDTH                                    Page 2 of 9

CHASE 02665

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law. Unless this Deed of Trust ceases to be subject to Texas Constitution Article 16, Section 50(a)(6), as described in Section 24(e), the funds paid under this paragraph will not be security for the Agreement and will be used by us for the purpose for which paid.

    **4.  Hazard Insurance. IF WE NOTIFY YOU THAT YOU ARE REQUIRED TO DO SO, YOU SHALL KEEP THE PROPERTY INSURED AGAINST LOSS** by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. **IF INSURANCE IS REQUIRED, YOU MAY FURNISH THE INSURANCE THROUGH EXISTING POLICIES YOU OWN OR CONTROL OR YOU MAY BUY EQUIVALENT INSURANCE COVERAGE THROUGH ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.** If you maintain insurance coverage, whether or not we require it, insurance policies and renewals shall be acceptable to us and shall include a standard mortgagee clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Deed of Trust, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

    **5.  Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Deed of Trust or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Deed of Trust or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property , and whether it is your homestead or principal residence. If this Deed of Trust is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

TXLCDTH                                           Page 3 of 9

CHASE 02666

**6.    Protection of Our Rights in the Property.** If you fail to perform the covenants and agreements contained in this Deed of Trust, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Deed of Trust or any advance under the Agreement or this Deed of Trust, appearing in court, paying reasonable attorneys' fees, paying any sums which you are required to pay under this Deed of Trust and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this section. Any amounts we pay under this section shall become additional debts you owe us and shall be secured by this Deed of Trust. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request.

**7.    Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8.    Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9.    You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Deed of Trust granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

**10.    Successors and Assigns Bound; Joint and Several Liability; Additional Signers.** The covenants and agreements of this Deed of Trust shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who signs this Deed of Trust but does not execute the Agreement: (a) is signing this Deed of Trust only to mortgage, grant and convey such person's interest in the Property or to comply with requirements of Texas law; (b) is not personally obligated to pay the Agreement or sums secured by this Deed of Trust; and (c) agrees that we and anyone else who signs this Deed of Trust may agree to extend, modify, forbear or make any accommodations regarding the terms of this Deed of Trust or the Agreement without such person's consent.

**11.    Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.    Notices.** Unless otherwise required by law, any notice to you provided for in this Deed of Trust shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Deed of Trust shall be deemed to have been given to you or us when given as provided in this section. However, if you are giving us a notice pursuant to Section 24(d), the notice is not effective until actually received by us.

TXLCDTH                                Page 4 of 9

CHASE  02667

**13.    Governing Law; Severability.**  The extension of credit secured by this Deed of Trust is governed by federal and Texas law.  If any provision or clause of this Deed of Trust or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Agreement which can be given effect without the conflicting provision.  To this end the provisions of this Deed of Trust and the Agreement are declared to be severable.

**14.    Transfer of the Property.**  If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust.  However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Deed of Trust.

**15.    Sale of Agreement; Change of Loan Servicer.**  The Agreement or a partial interest in the Agreement (together with this Deed of Trust) may be sold one or more times without prior notice to you.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Deed of Trust.  There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any information required by applicable law.

**16.    Hazardous Substances.**  You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.  You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge.  If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you shall promptly take all necessary remedial actions in accordance with Environmental Law.  As used in this Deed of Trust, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this Deed of Trust, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**17.    Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Deed of Trust is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property; or (4) you are in default under Section 13 of the Agreement.  If a default occurs, we will give you notice specifying:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 20 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property in compliance with requirements of the Texas Constitution governing foreclosure of home equity extensions of credit. We waive demand, presentment, notice of intention to accelerate (that is, to require immediate payment in full of all sums secured by this Deed of Trust), notice of acceleration and all other notices, except as otherwise provided in this Section 17. If the default is not cured on or before the date specified in the notice, we may, at our option, require immediate payment in full of all sums secured by this Deed of Trust without further demand and may foreclose this Deed of Trust by judicial proceeding or, after securing a judicial order as required by the Texas Constitution, direct the Trustee to exercise the power of sale under this Deed of Trust. We will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, attorney's fees assessed by a court and costs of title evidence.

CHASE 02668

If we invoke the power of sale, we or Trustee must give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. We must mail a copy of the notice of sale to you in the manner prescribed by applicable law. Sale shall be made at public auction between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. You authorize Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. We or our designee may purchase the Property at any sale for credit against the secured indebtedness.

Trustee shall deliver to the purchaser a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from you. You covenant and agree to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 17, you or any person holding possession of the Property through you shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, you or such person will be a tenant at sufferance and may be removed by writ of possession.

18.    **Release.** Within a reasonable time after payment of all sums secured by this Deed of Trust, we shall release this Deed of Trust without charge to you. You shall pay any recordation costs. **IF YOU ACCEPT A RELEASE OF THIS DEED OF TRUST, YOU WILL WAIVE ALL FORFEITURE RIGHTS UNDER TEXAS CONSTITUTION ART. 16, SECTION 50(a)(6) WITH RESPECT TO THE EXTENSION OF CREDIT SECURED BY THIS DEED OF TRUST.**

19.    **Substitute Trustee.** We may, at our option and with or without cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder without necessity of any formality other than our written designation. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

20.    **Time of Essence.** Time is of the essence in each covenant of this Deed of Trust.

21.    **Mailing Addresses.** Your mailing address is the Property Address. Trustee's mailing address is the address stated on page 1 of this Deed of Trust.

22.    **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Deed of Trust under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Deed of Trust.

23.    **Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Deed of Trust or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

24.    **Provisions Related to Texas Constitution Art. 16, Section 50.**
(a) Limitation by Texas Constitution. The parties intend to comply fully with all requirements of the Texas Constitution. Therefore, if any provision of the Agreement or this Deed of Trust is finally determined to violate the terms of Texas Const. Art. 16, Section 50(a)(6), 50(e)-(i), or 50(t), that provision will be automatically deemed modified or stricken so that the Agreement and this Deed of Trust comply with the Texas Constitution. Furthermore, if it is finally determined that any provision that was not included in the Agreement or this Deed of Trust must have been included in order to comply with the terms of Texas Const. Art. 16, Section 50(a)(6), 50(e)-(i), or 50(t), that provision will be automatically deemed to be included so that the Agreement and this Deed of Trust comply with the Texas Constitution.

TXLCDTH                                    Page 6 of 9

CHASE ·02669

**(b) Nonrecourse.** Notwithstanding any provision of this Deed of Trust to the contrary, if the open-end extension of credit secured by this Deed of Trust (the "Line") is made while Texas Const. Art. 16, Section 50(a)(6) is in effect, the obligations under this Deed of Trust are made without recourse to other assets of any owner of the Property, unless the owner or owner's spouse obtained the extension of credit by actual fraud. If the Line is made at a time when Texas Const. Art. 16, Section 50(a)(6) is not in effect due to the terms of Texas Const. Art. 16, Section 50(j), then the obligations under this Deed of Trust are made with full recourse to all parties. **If you or any person or entity acting on your direction or with your knowledge or consent gives us any information that is materially false, misleading, or inaccurate in connection with the loan application process or the documents executed in connection with the Line, that act constitutes actual fraud under this paragraph.**

**(c) Certain Disclosures.** You and we agree as follows: (1) You have not been required to apply the proceeds of the Line to repay another debt except a debt secured by the Property or debt owed to another lender. (2) You have not assigned wages as security for the Line. (3) You may rescind the Line within 3 days after closing. (4) You have not signed any instrument in which blanks were left to be filled in. (5) You have not signed a confession of judgment or power of attorney to the lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding. (6) We have, at the time of closing, provided you a copy of all of the documents signed by you related to the Line.

**(d) Forfeiture of Principal and Interest.** We shall forfeit all principal and interest of the Line if we fail to comply with our obligations under the Line within 60 days after we receive written notice of our failure to comply, unless we remedy that failure as provided in Texas Constitution Art. 16, Section 50(a)(6)(Q)(x).

**(e) In Case of Inapplicability of Art. 16, Section 50.** If for any reason the Property at any time is not your homestead, then the lien of this Deed of Trust will continue to be effective for all purposes, but the requirements of Art. 16, Section 50(a)(6) will cease to apply to the Agreement or this Deed of Trust. In that case, paragraphs (a) through (d) of this Section and the final sentence of Section 3 of this Deed of Trust will be deemed stricken from this Deed of Trust, together with any other provision of this Deed of Trust or any other document related to the Agreement which relates specifically to complying with the requirements of Texas Constitution Art. 16, Section 50(a)(6), 50(e)-(j), or 50(t).

**25.    Riders to this Deed of Trust.** If one or more riders are executed by you and recorded together with this Deed of Trust, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust. [Check applicable box(es)]

☐ Condominium Rider                    ☐ 1-4 Family Rider

☐ Planned Unit Development Rider        ☐ Other(s) _____

CHASE 02670

BY SIGNING BELOW, You accept and agree to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by you and recorded with it.

Name: _____

Name: _____

STATE OF TEXAS )
                          ) ss:
COUNTY OF ████████ )

The foregoing instrument was acknowledged before me on this _26th_ day of _March, 2004_
by ████████████████████████████



Notary Public
State of Texas
My Comm. Exp: 2-27-2007

TXLCDTH                          Page 8 of 9

CHASE 02671

Recording requested by and
when recorded return to:
FIRST AMERICAN LENDERS ADVANTAGE
1100 SUPERIOR AVENUE SUITE 200
CLEVELAND, OH 44114
ATTN: FACT DEPARTMENT

**◫ Washington Mutual**

**WaMu Equity Plus™**
**DEED OF TRUST**

Loan Number: ███3997

Prepared By:

8880 Freedom Crossing trail
Jacksonville Fl 32256

**THIS IS A CREDIT LINE DEED OF TRUST**

THIS DEED OF TRUST is between:

whose address is: ███████████████ VA ████████████
("Grantor"); ███████████████████ ,the address of which is: ███
("Trustee"); and
WASHINGTON MUTUAL BANK, A FEDERAL ASSOCIATION, WHICH IS ORGANIZED AND
EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND WHOSE
ADDRESS IS 2273 N GREEN VALLEY PARKWAY, SUITE #14, HENDERSON, NV 89014
("BENEFICIARY") AND ITS SUCCESSORS OR ASSIGNS.

    1.  **Granting Clause.**  For the benefit of Beneficiary, Grantor hereby grants, bargains,
sells, and conveys to Trustee in trust, with power of sale, the real property in
███████████████ County, Virginia, described below, and all rights and interest in
it Grantor ever gets:

Tax Parcel Number: ███████████████                    together with all

3 0 7 5 0 (06/27/07) w8.3

CHASE 02672



3997

insurance proceeds and condemnation proceeds related to it; income, rents and profits from it; all plumbing, lighting, air conditioning and heating apparatus and equipment and other improvements; and all fencing, blinds, drapes, floor coverings, built-in appliances, and other fixtures, at any time installed on or in or used in connection with such real property.

All of the property described above will be called the "Property." If any of the Property is personal property, this Deed of Trust is also a Security Agreement which grants Beneficiary, as secured party, a security interest in all such property. Despite any other provision of this Deed of Trust, however, Beneficiary is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such security interest would be prohibited by applicable law. As used herein "State" shall refer to the Commonwealth of Virginia.

2. **Obligation Secured.** This Deed of Trust is given to secure performance of each promise of Grantor contained herein and in a _____WaMu Equity Plus(TM)_____ Agreement and Disclosure with Beneficiary of even date herewith with a maximum credit limit of ███████████, which is the maximum aggregate amount of principal to be secured at any one time, (the "Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Grantor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Grantor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Grantor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, all amounts due under the Credit Agreement are due and payable in full thirty (30) years from the date of this Deed of Trust (the "Maturity Date"). All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt."

3. **Representations of Grantor.** Grantor represents that:
   (a) Grantor is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and
   (b) The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4. **Promises of Grantor.** Grantor promises:
   (a) To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;
   (b) To allow representatives of Beneficiary to inspect the Property at any

3 0 7 5 0 (06/27/07) w8.3                                    Page 2 of 7

CHASE 02673



3997

reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;

(c)   To pay on time all lawful taxes and assessments on the Property;

(d)   To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;

(e)   To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security;

(f)   To keep the improvements on the Property insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Subject to the rights of the holder of any lien described in 3(a), Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy shall be applied to the repair of such improvements, unless doing so would impair Beneficiary's security, in which event such proceeds may be applied upon any indebtedness hereby secured. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Grantor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

(g)   To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Grantor's name and to execute all documents necessary to transfer title if there is a default; and

(h)   To advise Beneficiary immediately in writing of any change in Grantor's name, address or employment.

5.   **Sale, Transfer or Further Encumbrance of Property.**  Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Grantor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

6.   **Curing of Defaults.**  If Grantor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Grantor's failure to comply. Repayment to Beneficiary's of all the money spent by Beneficiary on behalf of Grantor shall be secured by this Deed of Trust; at Beneficiary's option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Beneficiary from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Grantor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

3 0 7 5 0 (06/27/07) w8.3

Page 3 of 7

CHASE 02674



3997

**7. Remedies For Default.**

(a) Prompt performance under this Deed of Trust is essential. If Grantor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, or if Grantor fails to comply with any other term, condition, obligation or covenant contained in the Credit Agreement or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Grantor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Grantor shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Beneficiary may then or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary debts and obligations secured by this Deed of Trust, and any liens of record inferior to this Deed of trust may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Grantor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the proceeds of the sale as follows: (i) to discharge the expenses of executing the trust, including a reasonable commission to the trustee; (ii) to discharge all taxes, levies, and assessments, with costs and interest if these costs have priority over the lien of this Deed of Trust, including the due pro rata thereof for the current year; (iii) to discharge in the order of their priority, if any, the remaining Trust under which sale is made, with lawful interest; and (iv) the residue of the proceeds shall be     paid to Grantor or Grantor's assigns.

(b) Trustee shall deliver to the purchaser Trustee's deed conveying the Property special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

(c) To the extent permitted by law the power of sale conferred by this Deed of Trust is not an exclusive remedy. In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of Virginia.

(d) By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

**8. Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such

3 0 7 5 0 (06/27/07) w8.3

Page 4 of 7

CHASE 02675



3997

portion as may be necessary to fully satisfy the Debt, shall, except as required by applicable law, be paid to the Debt.

9. **Fees and Costs**. Grantor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

10. **Reconveyance**. Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby and Beneficiary and Trustee shall be entitled to charge Grantor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law. If Grantor's Credit Line is canceled or terminated, subject to applicable law, Beneficiary may delay the cancellation or reconveyance of Grantor's security instrument for a reasonable period of time to enable Beneficiary to post to Grantor's Credit Line Account any advances that Grantor has received.

11. **Trustee; Successor Trustee.** Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Grantor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee

12. **Savings clause.** If a law, which applies to this Deed of Trust or the Credit Agreement and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the interest or other loan charges collected or to be collected in connection with this Deed of Trust or the Credit Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Grantor which exceeded permitted limits will be refunded to Grantor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

13. **Miscellaneous.** This Deed of Trust shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the Credit Agreement secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law and, to the extent federal law doesn't apply, the laws of the

3 0 7 5 0 (06/27/07) w8.3                                                    Page 5 of 7

CHASE 02676



3997

state of Virginia. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in     full force and effect.

   **14. Beneficiary and Similar Statements.** Beneficiary may collect a fee in the maximum amount allowed by law, for furnishing any beneficiary statement, payoff demand statement or similar statement.

   **15. Credit Line Deed of Trust.** This is a Credit Line Deed of Trust within the meaning of Section 55.58.2 of the Code of Virginia, as amended. For purposes of such section, the name of the noteholder secured by this Deed of Trust is ___WASHINGTON MUTUAL BANK___, and the address at which communications may be mailed or delivered to the noteholder is ___CONSUMER LENDING -- BR2CLFL PO BOX 6868 LAKE WORTH, FL 33466___.

   **16. Request for Notice of Default and Foreclosure Under Prior Deed of Trust.** Grantor and Beneficiary hereby request the holder of any other mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust, to give notice to Beneficiary, at Beneficiary's address set forth on page one of this Deed of Trust, of any default under any superior encumbrance and of any sale or other foreclosure action.

   **17. Riders.** If one or more riders are executed by Grantor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]



**NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

3 0 7 5 0 (06/27/07) w8.3                                              Page 6 of 7

CHASE 02677



3997

By signing below, Grantor accepts and agrees to the provisions of this Deed of Trust, and of any rider(s) executed by Grantor concurrently therewith.

DATED at _____ *VA* _____ this *7th* day of *September* , *2007* .

COMMONWEALTH OF VIRGINIA                              )
                                                      ) SS
COUNTY OF _____                    )

The foregoing instrument was acknowledged before me this *Sept 7* , *2007* by:
_____ and
_____ and
_____ and
_____ and
_____ and
_____ and
_____ and

My Commission Expires: *2-28-2009*

3 0 7 5 0 (06/27/07) w8.3                              Page 7 of 7

Notary Public
Commonwealth of Virginia

My Commission Expires Feb 28, 2009

CHASE_02678