1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6

7 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9 SHEILA I. HOFSTETTER and ROGER
MODERSBACH, individually, as
10 representatives of the classes, and on behalf
of the general public,

11

12 Plaintiffs,

13 v.

14 CHASE HOME FINANCE, LLC,
JPMORGAN CHASE BANK, N.A., and
15 DOES 1 through 50, inclusive,

16 Defendants.

_____/

17

No. C 10-01313 WHA

**ORDER PARTIALLY
GRANTING MOTION FOR
CLASS CERTIFICATION**

18 **INTRODUCTION**

19 In this action involving lender-imposed flood-insurance requirements for property

20 securing home-equity lines of credit, plaintiffs move to certify two classes and one subclass of

21 plaintiffs. This order certifies three limited plaintiff classes, appoints the two named plaintiffs as

22 class representatives, and appoints plaintiffs' counsel of record as class counsel.

23 **STATEMENT**

24 This proposed class action consists of two legal claims for relief — one under federal law

25 and one under state law. Previous orders outline the factual and legal underpinnings of the action

26 (Dkt. Nos. 51, 110). The contours of the case, however, have continued to develop. The instant

27 order is based on the second amended complaint and the submissions filed on this motion. This

28 order follows full briefing and a hearing on the motion.

United States District Court

For the Northern District of California

### 1.   THE NATIONAL FLOOD INSURANCE ACT.

The National Flood Insurance Act of 1968 is central to this action (*see* Dkt. No. 51).  The NFIA provides that if a loan is secured by a building located in a Special Flood Hazard Area (as identified by the Federal Emergency Management Agency), then a minimum amount of flood insurance must be maintained on the building.

During the events underlying this dispute, the minimum flood-insurance coverage required under the NFIA was the lesser of "the outstanding principal balance of the loan" or "the maximum limit of coverage made available under the Act."  42 U.S.C. 4012a(b)(1).  The maximum limit of coverage made available under the Act for a single family dwelling was $250,000.  42 U.S.C. 4013(b)(2).  The meaning of the first NFIA prong in the context of a home-equity line of credit was settled in a previous order.  In this context, "the outstanding principal balance of the loan" translates to the total amount of credit actually being extended at a given time, *i.e.*, the maximum "limit" on the line of credit (Dkt. No. 51 at 13).

For the first time, defendants now raise a further twist on the "outstanding principal balance of the loan" prong.  In situations where the home-equity line of credit is a junior lien on the property — for example, because a first mortgage was taken out before the credit line was opened — this prong refers to "the combined total outstanding principal balance of the first and second loan," according to defendants.  *See* Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood Insurance, 74 Fed. Reg. 35,914, 35,940 (July 21, 2009).  Significantly, however, the challenged practices did *not* take senior liens into account when determining the amount of flood-insurance coverage to require borrowers to carry.

### 2.   DEFENDANTS' FLOOD INSURANCE POLICIES.

As a general matter, defendant JPMorgan Chase Bank, N.A. originates loans and acquires loan assets from other banking entities.  Such loans include mortgage loans, home-equity loans, and home-equity lines of credit, each of which is secured by a deed of trust on the borrower's home.  Defendant Chase Home Finance, LLC services these loans.  Both defendants — Chase Bank and Chase Home Finance — are federally regulated entities subject to the requirements of the National Flood Insurance Act (Dkt. No. 110 at 2).

**United States District Court**
For the Northern District of California

2

Defendants' internal policies regarding flood-insurance coverage requirements for mortgage loans, home-equity loans, and home-equity lines of credit are similar but not identical. As to home-equity lines of credit, defendants' flood-insurance policy has changed over time. The most significant change for purposes of this action took place in December 2009. Before that date, defendants required home-equity credit-line borrows to maintain flood insurance on their homes with a coverage amount equal to the lesser of the following: (1) the maximum amount of insurance coverage available through the National Flood Insurance Program ($250,000); (2) 100% of the full replacement cost value of the home securing the credit line; or (3) the maximum limit on the credit line. After that date, the third option was eliminated, meaning that home-equity credit-line borrowers were required to maintain flood-insurance coverage of either $250,000 or, if less, the full value of their homes, *regardless of the limits on their credit lines* (Br. 7–10; Opp. 5–7).

Both before and after the December 2009 policy change, defendants notified home-equity credit-line borrowers of the amount of flood-insurance coverage defendants required them to carry, and gave borrowers an opportunity to obtain the required insurance from independent brokers. If a borrower failed to do so, defendants force-placed insurance on the borrower's home through an affiliated company and added the premium to the borrower's unpaid principal balance. Before force-placing insurance, Chase Home Finance warned borrowers that the cost of force-placed insurance was likely to be much higher than the cost of insurance borrowers could obtain on their own. After force-placing insurance, Chase Home Finance informed borrowers that its affiliate had been paid a commission in connection with the transaction (Sec. Amd. Compl.; Br. 11–13; Opp. 7).

### 3. NAMED PLAINTIFFS.

Plaintiffs propose that each class and subclass be represented by both named plaintiffs: Sheila I. Hofstetter, who initiated this action in March 2010, and Roger Modersbach, who was added in the second amended complaint (Dkt. No. 112). Hofstetter and Modersbach experienced similar treatment by defendants, but there were important factual differences in their financial circumstances.

United States District Court
For the Northern District of California

3

**United States District Court**
For the Northern District of California

**A.      Sheila I. Hofstetter.**

In June 2006, Hofstetter and her husband obtained a home-equity line of credit from Chase Bank. The credit line had a maximum limit of $175,000, and it was secured by a deed of trust on their home. The only draw the Hofstetters ever made on this credit line was an initial disbursement of $25,000 at the time they opened it;  this draw was repaid within six months. In August 2008, Hofstetter received a letter stating that future draws against the credit line were "suspended." The account statements following this letter indicated that the credit available on the line was zero. At that point, Hofstetter was a "zero/zero" borrower, a term in use in this litigation, meaning that her account had no unpaid balance and no available credit.

In August 2009, Chase Home Finance sent Hofstetter a "Notice of Special Flood Hazard" indicating, for the first time, that her home was located in a Special Flood Hazard Area. This letter stated that "Federal law requires" that flood insurance be purchased and maintained for the property, and that if Hofstetter failed to do so, insurance would be force-placed on her home. The letter indicated that the required amount of coverage was equal to the lesser of the following: (1) the maximum amount of insurance coverage available through the National Flood Insurance Program ($250,000); (2) 100% of the full replacement cost value of the home securing the credit line; or (3) the maximum limit on the credit line, which was zero, although the letter did not so state (Hofstetter Exh. 4). In September 2009, Chase Home Finance sent Hofstetter another warning letter. This second letter stated that flood insurance was required by the terms of her mortgage and specified the same three-prong standard for determining the required amount of coverage.

In October 2009, Chase Home Finance sent Hofstetter a letter stating that a flood-insurance policy with a coverage amount of $175,000 had been force-placed on her home. The insurance was purchased from American Security Insurance Company, and the premium for the insurance ($1,575) was added to Hofstetter's credit-line balance. ASIC — which is affiliated with defendants — was paid a commission in connection with the transaction. This third letter also specified the same three-prong standard for determining the required amount of coverage. Hofstetter contacted defendants repeatedly to challenge the force-placed insurance, but her efforts

4

United States District Court

For the Northern District of California

were unavailing.  In September 2010, defendants renewed the force-placed policy with an increased coverage amount of $250,000.  Hofstetter has not paid the premiums for her force-placed flood insurance, but she has made interest payments in order to avoid adverse consequences to her credit rating (Sec. Amd. Compl. ¶¶ 12–25; Br. 3–4; Opp. 7–8).

In April 2005 — before she opened the home-equity line of credit with defendants — Hofstetter obtained a $705,000 first mortgage on her home from a different lender.  As of January 2011, the unpaid principal balance on that first mortgage was still nearly $705,000 (LeMar Exh. 27).  Defendants admit, however, that they did not know the first mortgage existed at the time they force-placed flood insurance on Hofstetter's home (Opp. 1).  No claim is made that the Hofstetters concealed their first mortgage;  it simply was not important to defendants.

The parties disagree as to whether Hofstetter's home was even located in a Special Flood Hazard Area.  Defendants produced documents and a map to support their claim that Hofstetter's property was located in a flood zone in 2009, but plaintiffs read these documents differently (LeMar Exh. 22).  According to plaintiffs, only a portion of Hofstetter's real estate was included in a flood zone, and the *building* on her property was not within the flood zone (Reply Br. 11).

**B.      Roger Modersbach.**

In December 2004, Modersbach and his wife obtained a home-equity line of credit from Chase Bank.  The credit line had a maximum limit of $100,000, and it was secured by a deed of trust on their home.  The only draw the Modersbachs ever made on this credit line was an initial disbursement of $50,000 at the time they opened the line.  Unlike Hofstetter, however, Modersbach never became a zero/zero borrower.  The credit limit on his line remains $100,000, and his unpaid principal balance is now about $37,000.

In August 2009, Chase Home Finance sent Modersbach a letter identical to the one Hofstetter received that month.  In September and October, Chase Home Finance sent Modersbach follow-up letters that were substantially similar to the ones Hofstetter received those months.  All three letters indicated that the amount of flood-insurance coverage Modersbach was required to maintain on his home was equal to the lesser of the following:  (1) the maximum amount of insurance coverage available through the National Flood Insurance Program

United States District Court

For the Northern District of California

1  ($250,000); (2) 100% of the full replacement cost value of the home securing the credit line; or

2  (3) the maximum limit on the credit line.

3      In October 2009, defendants force-placed flood insurance on Modersbach's property with

4  a coverage amount of $100,000 and charged Modersbach $900 for the premium.  Modersbach

5  then obtained $100,000 worth of flood-insurance coverage from an independent broker and paid

6  only $503 for the premium.  After Modersbach provided defendants proof of his independent

7  insurance, they cancelled the force-placed policy and refunded the premium they had charged him

8  for it.

9      In May 2010, while Modersbach's $100,000 flood insurance policy remained in effect,

10  Chase Home Finance sent Modersbach a new letter stating that his flood-insurance coverage was

11  inadequate.  This letter stated that Modersbach's coverage must be increased by $150,000, which

12  would raise his coverage level from $100,000 to $250,000.  The letter indicated that the amount

13  of flood-insurance coverage Modersbach was required to maintain was equal to the lesser of the

14  following:  (1) the maximum amount of insurance coverage available through the National Flood

15  Insurance Program ($250,000); or (2) 100% of the full replacement cost value of the home

16  securing the credit line.  *Notably, the third option that had been included in previous letters (the*

17  *maximum limit on the credit line) was absent from the list.*  Modersbach contacted defendants

18  repeatedly to challenge this increase in his required amount of flood-insurance coverage but his

19  efforts were unavailing.

20      In June and July 2010, Chase Home Finance sent Modersbach letters stating that

21  defendants had force-placed an additional $150,000 worth of flood-insurance coverage on his

22  home and charged him $1,350 for the premium.  Modersbach then increased the coverage on his

23  existing independent flood insurance policy from $100,000 to $250,000;  the increase in his

24  premium for this policy was $581.  Again, after Modersbach provided proof of his independent

25  insurance, defendants cancelled the force-placed policy and refunded the premium they had

26  charged him for it (Sec. Amd. Compl. ¶¶ 26–46; Br. 4–6; Opp. 8–9).

27      At the time when Modersbach opened his home-equity line of credit with defendants, he

28  already had a first mortgage on his home with a different lender.  The unpaid principal balance on

United States District Court
For the Northern District of California

1    Modersbach's first mortgage was $550,000 at that time, but the first mortgage was paid off in full

2    immediately after Modersbach opened the home-equity credit line in December 2004 — nearly

3    five years before defendants force-placed any flood insurance on the property (LeMar

4    Exh. 32–33). The replacement cost value of Modersbach's home currently is estimated

5    at $696,700 (LeMar Exh. 36). Modersbach does not dispute that FEMA re-zoned his property to

6    be in a Special Flood Hazard Area in May 2009.

7    **4.    CLAIMS FOR RELIEF AND PROPOSED CLASSES.**

8    The second amended complaint pleads two claims for relief and proposes one class for

9    each claim. Plaintiffs now move for certification of both proposed classes, plus a subclass.

10   *First*, plaintiffs bring a claim for violation of the federal Truth In Lending Act,

11   15 U.S.C. 1601. This claim focuses on the December 2009 change in defendants' policy

12   regarding the minimum amount of flood-insurance coverage defendants required borrowers to

13   maintain on the buildings securing their home-equity lines of credit. Plaintiffs allege that this

14   policy change constituted an adverse change in the terms of the credit agreements themselves

15   without the borrowers' consent, in violation of TILA. Plaintiffs further allege that defendants

16   also violated TILA by making misrepresentations and providing inadequate disclosures and

17   notice regarding their flood-insurance requirements (Sec. Amd. Compl. ¶¶ 64–77).

18   Plaintiffs seek certification of the following nationwide class to pursue their claim under

19   the Truth in Lending Act:

20          all persons who originated a home equity line of credit with
             JPMorgan Chase Bank, N.A. ("JPM") prior to December 23, 2009
21          that was secured by residential property in the United States, and
             were required by JPM or its agents or affiliates to purchase or
22          maintain flood insurance on their property on or after
             December 23, 2009
23

24   (Br. i; Reply Br. 2 n.4). This proposed class definition is a narrowed version plaintiffs' earlier

25   language proposing a TILA class that would have included home-equity *loan* borrowers in

     addition to the home-equity *line-of-credit* borrowers (Sec. Amd. Compl. ¶ 53; Br. i.). This order
26
     also notes that the proposed TILA class definition is limited to home-equity credit lines that were
27
     originated by Chase Bank and does not include any home-equity credit lines that Chase Bank may
28
     have acquired from other lenders. The critical date of December 23, 2009, refers to the policy

7

change discussed above;  this date falls well within the one-year statute of limitations that applies to the TILA claim.

*Second*, plaintiffs bring a claim for violation of Section 17200 of California's Unfair Business Practices Act.  This claim focuses on the alleged excessiveness of defendants' policies regarding the minimum amount of flood-insurance coverage defendants required borrowers to maintain on the buildings securing their loans and lines of credit.  Plaintiffs claim that these policies were unfair and unlawful;  their argument is tethered to the regulatory principle that "lenders should avoid creating situations where a building is over-insured."  Loans, 74 Fed. Reg. at 35,918.  Plaintiffs also attack the alleged misrepresentations, inadequate disclosures and notice, and self-dealing with which defendants implemented their flood-insurance policies, citing the statutory principle that consumers should receive "meaningful disclosure of credit terms" (Sec. Amd. Compl. ¶¶ 78–86).  15 U.S.C. 1601(a).

Plaintiffs also seek certification of the following California class to pursue their claim under Section 17200:

> all persons who have or had any loan or line of credit with Defendants JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC (collectively, "Chase") secured by their residential property in the State of California, and were required by Chase to purchase or maintain flood insurance on their property within four years prior to this action's filing date through the date of final disposition of this action

(Br. i).  Plaintiffs also propose a "Force-Placed Subclass" of borrowers within this California class who had flood insurance force-placed upon them by defendants (*ibid.*).  Although geographically narrower, plaintiffs' second proposed class definition contains significantly broader language than the first.  This proposed definition is not limited to home-equity lines of credit;  it also encompasses home-equity loans, mortgage loans, and any other loan or line of credit secured by the borrower's home.  This proposed definition also is not limited to debt originated by Chase Bank;  it includes loans and lines of credit that Chase Bank may have acquired from other banking entities after origination.  The four-year cut-off date mirrors the four-year statute of limitations that applies to the Section 17200 claim.  CAL. BUS. & PROF.

United States District Court

For the Northern District of California

8

CODE § 17208.  Because this action was filed on March 29, 2010, the critical accrual date is March 29, 2006.

**ANALYSIS**

In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  In adjudicating a motion for class certification, the allegations in the complaint are accepted as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. *See Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  Although the likelihood of prevailing on the merits may not be investigated, evidence relating to the merits may be considered if it also relates to the requirements of Rule 23.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

Rule 23 requires a court granting class certification to find (1) numerosity of the class; (2) commonality of legal or factual questions; (3) typicality of the named plaintiffs' claims and defenses; and (4) adequacy of the named plaintiffs to protect the interests of the class.  Plaintiffs in this action seek certification of the proposed classes under both Rule 23(b)(2) and Rule 23(b)(3).  Certification under Rule 23(b)(2) requires the additional finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Certification under Rule 23(b)(3) requires the additional findings "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The two proposed classes will be considered in turn.

*United States District Court*
For the Northern District of California

9

**1.**     **EVIDENTIARY CONCERNS.**

As explained in the supplemental order and at multiple hearings, evidence must be timely disclosed and produced during discovery (Dkt. No. 3).  The preclusive effect of FRCP 37 will be strictly enforced in this action, and the parties will not be allowed to reap the strategic benefit of stonewalling against reasonable discovery requests.  This rule warrants emphasis in light of two issues defendants raise repeatedly in their opposition to the instant motion:  (1) the effect of borrowers' pre-existing senior liens (*e.g.*, first mortgages); and (2) variation in the language of the deeds of trust underlying the home-equity agreements borrowers had with defendants.  Evidence relating to these subjects is likely to be precluded at trial, at least in part if not entirely.

Regarding senior liens, the class certification record shows that defendants's challenged practices were applied uniformly without inquiry into the possible existence of first mortgages, much less consideration for whether such firsts were adequately insured.  For example, defendants admitted in response to plaintiffs' first set of requests for admissions that the force-placed flood insurance policies in question did not name any other lender as an insured or beneficiary (Richter Exh. 11 at 7 r.18).  Defendants also have taken the position that "[d]iscovery relating to flood insurance requirements for first mortgage loans is outside the scope of permissible discovery" (Dkt. No. 52 at 1).

Regarding the underlying deeds of trust, defendants appear to have stonewalled against discovery and then altered course only in time to oppose the instant motion.  Defendants have refused to provide deposition testimony regarding the deeds of trust (Richter Exh. 1 at 23–25) and repeatedly have characterized the deeds of trust as "irrelevant to the claims and defenses of any party" (*e.g.*, Lemar Exh. 3 at 13:19).  Moreover, defendants did not produce any deeds of trust for borrowers other than the named plaintiffs until January 24, 2011 — a mere ten days before the deadline for plaintiffs to file their motion for class certification — and did not supplement their Rule 26 disclosures to identify such deeds of trust until February 21, 2011 — four days *after* plaintiffs filed their motion (Dkt. No. 176 ¶¶ 7, 30, 43; Dkt. No. 40).  This kind of discovery flim flam will not be tolerated.

United States District Court

For the Northern District of California

### 2.   PROPOSED NATIONAL TRUTH IN LENDING ACT CLASS.

As previously explained, plaintiffs seek certification of the following nationwide class to pursue the federal TILA claim:

> all persons who originated a home equity line of credit with JPMorgan Chase Bank, N.A. ("JPM") prior to December 23, 2009 that was secured by residential property in the United States, and were required by JPM or its agents or affiliates to purchase or maintain flood insurance on their property on or after December 23, 2009

(Br. i; Reply Br. 2 n.4).  Defendants challenge the proposed national TILA class as overbroad in two respects.[1]  *First*, defendants note that the proposed definition for this class does not take into account the amount of any first-mortgage liens to which Chase Bank's home-equity lines of credit were subordinate (Opp. 19–21).  This is not a problem.  Because the TILA claim focuses on the alleged December 2009 change in the terms of *plaintiffs' credit lines with Chase Bank*, the existence and terms of a senior mortgage are not relevant to the analysis of the claim.  Moreover, defendants may not now justify their challenged acts by relying on more senior mortgages that they neither knew of nor considered at the time of those acts.

*Second*, defendants note that the proposed TILA class definition disregards whether the policy change actually impacted the amount of flood-insurance coverage defendants required a particular borrower to maintain (*ibid.*).  This aspect of the definition is more concerning.  Plaintiffs counter that their TILA claim challenges *the policy change itself*, and that the *impact* of that policy change on the amount of flood-insurance coverage defendants required a particular borrower to carry would become relevant only in assessing that borrower's damages.  Plaintiffs also argue that borrowers whose required amounts of flood-insurance coverage have not yet been impacted by the policy change might be impacted in the future, and that such borrowers "are entitled to injunctive and declaratory relief regardless of whether they have suffered an immediate effect" (Reply Br. 8–9).  For example, a borrower with a $250,000 line of credit whose limit is decreased or suspended in the future might fall into that category.

---

[1]Defendants also criticized the breadth of this proposed class for a third reason that is now moot because plaintiffs agreed to remove home-equity loans from the proposed class definition.

1    This order finds that the solution to this difficulty will be to divide the class of TILA

2    claimants into two overlapping groups. Only those borrowers who have been financially

3    impacted by the December 2009 policy change will be allowed to seek damages, whereas all

4    borrowers whose credit agreement terms allegedly were changed may seek injunctive and

5    declaratory relief. From defendants' records, we will be able to ascertain which class members

6    had a line of credit less than the amount of insurance coverage demanded by defendants.

7                              **A.    Numerosity.**

8    The numerosity requirement of Rule 23(a)(1) is satisfied when "joinder of all members is

9    impracticable." The numerosity requirement is not tied to any fixed numerical threshold, but

10   courts generally find the numerosity requirement satisfied when a class includes at least forty

11   members. *Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010). Plaintiffs allege that

12   "thousands" of individuals satisfy the definition of each proposed class (Sec. Amd. Compl. ¶ 55).

13   Defendants do not challenge numerosity. This order finds that the proposed TILA class, even as

14   divided, would satisfy the numerosity requirement.

15                             **B.    Commonality.**

16   A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or

17   fact common to the class." Rule 23(a)(2) does not require each member in a class to have

18   identical factual and legal issues surrounding their claim. "The existence of shared legal issues

19   with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2).

20   *Hanlon*, 150 F.3d at 1019. Plaintiffs allege a variety of legal and factual questions common to the

21   class, such as whether defendants violated the Truth In Lending Act by implementing their

22   December 2009 policy change regarding the amount of flood-insurance coverage they required

23   borrowers to carry (Sec. Amd. Compl. ¶ 59). Defendants do not challenge commonality. This

24   order finds that the proposed TILA class, particularly as divided, would satisfy the

25   commonality requirement.

26                             **C.    Adequacy.**

27   The adequacy requirement of Rule 23(a)(4) permits certification only if "the

28   representative parties will fairly and adequately protect the interests of the class." This factor has

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   two requirements:  (1) that the proposed representative plaintiffs and their counsel do not have

2   any conflicts of interest with the proposed class; and (2) that the named plaintiffs and their

3   counsel will prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at l020.  "A

4   class representative must be part of the class and possess the same interest and suffer the same

5   injury as the class members."  *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403

6   (1977) (internal quotations omitted).

7         This order finds that both Sheila I. Hofstetter and Roger Modersbach would be adequate

8   representatives of the TILA classes under consideration.  They both received letters from Chase

9   Home Finance implementing the December 2009 policy change, they both suffered negative

10  financial impacts from that change, and they do not have any apparent conflicts of interest with

11  the proposed class.  Defendants do not challenge Modersbach's adequacy as a class

12  representative, but they do challenge Hofstetter.  Defendants argue that Hofstetter does not

13  qualify as a member of the proposed TILA class because she does not claim she was required to

14  purchase more flood insurance after the December 2009 policy change, or that the amount of

15  insurance coverage she was required to maintain had anything to do with the December 2009

16  policy change (Opp. 23–24).  This argument fails for several reasons, two of which deserve

17  mention.  *First*, such allegations are not a prerequisite for class membership.  As someone who

18  opened a home-equity line of credit with Chase Bank before December 2009 and was required by

19  Chase Home Finance to maintain flood insurance after that date with a coverage amount greater

20  than her credit limit, Hofstetter comes within the definition of the proposed class.  *Second*,

21  defendants' argument distorts the facts.  Defendants admit that they required Hofstetter to

22  maintain more flood insurance after the December 2009 policy change — they increased the

23  coverage amount of her force-placed insurance policy from $175,000 in October 2009 to

24  $250,000 in September 2010 (Opp. 8).

25        This order also finds that plaintiffs' counsel of record would be adequate class counsel for

26  the TILA classes under consideration.  Plaintiffs' counsel are experienced class-action counsel.

27  Defendants do not challenge the adequacy of plaintiffs' counsel to serve as class counsel.

28

13

United States District Court

For the Northern District of California

### D.      Typicality.

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Both Hofstetter and Modersbach would satisfy the typicality requirement as representatives of the proposed TILA classes under consideration. Their claims likely differ from those of other class members only as to damages and other immaterial factual details. Defendants do not challenge the typicality of the named plaintiffs' claims with any arguments that have not already been addressed with respect to the adequacy requirement.

### E.      Rule 23(b)(2) Generally Applicable Act.

Certification under Rule 23(b)(2) is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The December 2009 policy change targeted by the TILA claim is exactly such an act. Accordingly, certification of the TILA class seeking injunctive and declaratory relief would be appropriate under Rule 23(b)(2).

Defendants argue that the proposed TILA class may not be certified under Rule 23(b)(2) "because injunctive relief is not an available remedy" for TILA claims (Opp. 24). Defendants cite a TILA provision that addresses the calculation of civil damages and out-of-circuit authority inferring from the cited provision that *only* money damages are available under the Act. This showing is not persuasive. The cited TILA provision does not address equitable remedies, much less preclude them. 15 U.S.C. 1640(a). The Eleventh Circuit's reasoning that "because we do not expect Congress to 'expressly preclude' remedies, we do not read TILA to confer upon private litigants an implied right to an injunction or other equitable relief such as restitution or disgorgement" is not binding in this action. *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008). Moreover, the Ninth Circuit has made no such finding, and certification of TILA class actions under Rule 23(b)(2) is fairly commonplace. *See* NEWBERG ON CLASS ACTIONS

14

§ 21:9 TILA Actions as Rule 23(b)(2) Classes (Nov. 2010).  This order declines to hold that injunctive relief is not available to remedy successful TILA claims.

### F.        Rule 23(b)(3) Predominance and Superiority.

Certification under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The predominance and superiority requirements of Rule 23(b)(3) "focus[] on the relationship between the common and individual issues" and "test[] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.  With respect to the TILA class seeking damages, plaintiffs have carried their burden of showing that common questions would predominate the analysis of their TILA claim, and that the class action mechanism is preferable for adjudicating their claims — most of which are too small to justify bringing individual suits.

Defendants argue that individual questions would predominate over the common ones, but defendants' reasoning on this point is not persuasive.  *First*, defendants emphasize that in order to determine whether the December 2009 policy change adversely altered the terms of a borrower's credit agreement, a trier of fact must consider the language of the agreement the borrower originally signed when opening his or her credit line (Opp. 21–22).  Even assuming defendants will be allowed to rely on evidence of variation among the underlying deeds at trial, this issue would not frustrate class proof.  Defendants have produced a relatively small random sample of these agreements, and they are not all identical forms.  The variations among these agreements, however, are manageable, can be kept straight, and will not overwhelm the main themes of the case.  After Chase produces all credit agreements for all class members, counsel could review the relevant language and divide the agreements into several corresponding categories, just as defendants did in their own brief (*id.* at 16).  The jury then would be presented with representative language from each group of credit agreements, not the overwhelming volume of individual agreements themselves.  Moreover, *none* of the credit agreements produced thus far contain language that matches defendants' post-December 2009 policy, and none of them contain

1    "triggering event" language which would have allowed a later change to the agreement terms

2    (Reply Br. 7–8).  Individualized issues regarding underlying deeds of trust are not likely to

3    predominate at trial.

4           *Second*, defendants argue that borrowers' senior liens, such as pre-existing first mortgages

5    on their homes, would require heavy-duty individual inquiry.  Evidence of first mortgages most

6    likely will be barred at trial, but even if defendants are able to justify introducing it, such evidence

7    will not frustrate class proof.  As previously explained, senior liens are irrelevant to the TILA

8    claim analysis, which will focus only on alleged changes to the *terms* of borrowers' home-equity

9    credit-line agreements *with defendants*.  Defendants nonetheless proffer the defense that their

10   December 2009 policy change was made in order to comply with the NFIA.  Specifically,

11   defendants assert that the policy change was prompted by an interagency guidance document

12   issued in July 2009, which supposedly "clarified, among other things, the amount of flood

13   insurance coverage a lender must require when it is a junior lien holder" (Opp. 3–4, 6).

14          Defendants point to the following question-and-answer pair in the July 2009

15   guidance document:

16              36.  When a lender makes, increases, extends or renews a second
                mortgage secured by a building or mobile home located in an

17              SFHA, how much flood insurance must the lender require?

18              Answer:  The lender must ensure that adequate flood insurance is
                in place or require that additional flood insurance coverage be

19              added to the flood insurance policy in the amount of the lesser of
                either *the combined total outstanding principal balance of the first*

20              *and second loan*, the maximum amount available under the Act
                (currently $250,000 for a residential building and $500,000 for a

21              nonresidential building), or the insurable value of the building or
                mobile home. . . . Given the provisions of NFIP policies, *a lender*

22              *cannot comply with the Act and Regulation by requiring the*
                *purchase of an NFIP flood insurance policy only in the amount of*

23              *the outstanding principal balance of the second mortgage without*
                *regard to the amount of flood insurance coverage on a*

24              *first mortgage*.

25

26

27

28

**United States District Court**
For the Northern District of California

1   Loans, 74 Fed. Reg. at 35,940 (emphasis added).[2]  Defendants, however, have produced no

2   emails, memoranda, or other documentary evidence supporting the theory that the July 2009

3   interagency guidance document triggered their December 2009 policy change.  Furthermore, the

4   July 2009 question and answer merely repeated policies that had been propounded years earlier.

5   The 1997 version of this interagency guidance document included a question-and-answer pair

6   similar to the 2009 one plaintiffs cite, and a 1999 compliance handbook — which Chase itself

7   produced earlier in this action — also contained similar guidance (Dkt. No. 45-2 at 6).  *See* Loans

8   in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood

9   Insurance, 62 Fed. Reg. 39,523, 39,528 Q.5 (July 23, 1997).  Defendants' argument that the

10  July 2009 interagency guidance document was a sudden wake-up call is not persuasive.

11  Individualized issues regarding first mortgages are not likely to predominate at trial.

12     **G.**  **Ascertainability.**

13    In addition to the explicit requirements of Rule 23, an implied prerequisite to class

14  certification is that the class must be sufficiently definite.  *See, e.g.*, *Dietz v. Comcast Corp.*,

15  No. C 06-06352 (WHA), 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007) (Alsup, J.).  The

16  TILA class easily satisfies this requirement.  All the parameters for membership in this class are

17  objective criteria, and defendants' business records should be sufficient to determine the class

18  membership status of any given individual.

19         *    *    *

20    The following class is **CERTIFIED** under Rule 23(b)(2) to pursue *injunctive and*

21  *declaratory relief only* as to the claim that defendants adversely changed the terms of their credit

22  agreements and implemented that change in violation of the federal Truth in Lending Act:

23

24  ──────────────────

25    [2]The answer to Question 36 also includes several paragraphs of additional guidance, including the
points that "[a] junior lienholder should work with the senior lienholder, the borrower, or with both of these
26  parties, to determine how much flood insurance is needed to cover improved real estate collateral" and that "[i]n
the limited situation where a junior lienholder or its servicer is unable to obtain the necessary information about
27  the amount of flood insurance in place on the outstanding balance of a senior lien (for example, in the context of
a loan renewal), the lender may presume that the amount of insurance coverage relating to the senior lien in
28  place at the time the junior lien was first established (provided that the amount of flood insurance relating to the
senior lien was adequate at the time) continues to be sufficient." *Id.* at 35940–41.

United States District Court

For the Northern District of California

> all persons who originated a home-equity line of credit with JPMorgan Chase Bank, N.A. before December 23, 2009 that was secured by residential property in the United States, that was not closed before this action commenced on March 29, 2010, and whose signed credit agreement did not require that the property be covered by an amount of flood insurance equal to the lesser of the full replacement cost value of the property or the maximum amount of insurance available through the National Flood Insurance Program.

The following class is CERTIFIED under Rule 23(b)(3) to pursue *damages only* as to the claim that defendants adversely changed the terms of their credit agreements and implemented that change in violation of the federal Truth in Lending Act:

> all persons who originated a home-equity line of credit with JPMorgan Chase Bank, N.A. before December 23, 2009 that was secured by residential property in the United States, and were required by Chase Bank or its agents or affiliates to purchase or maintain flood insurance on the property with a coverage amount larger than the maximum limit on the line of credit, on or after December 23, 2009.

### 3. PROPOSED CALIFORNIA UNFAIR BUSINESS PRACTICES ACT (SECTION 17200) CLASS.

As previously explained, plaintiffs seek certification of the following California class to pursue the California Section 17200 claim:

> all persons who have or had any loan or line of credit with Defendants JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC (collectively, "Chase") secured by their residential property in the State of California, and were required by Chase to purchase or maintain flood insurance on their property within four years prior to this action's filing date through the date of final disposition of this action

(Br. i). Defendants challenge this proposed class definition as overbroad in several respects (Opp. 10–11). Plaintiffs seek to justify its sweeping language by emphasizing the underlying broad concept of unfairness (Reply Br. 14). Having considered both parties' arguments, this order finds that the proposed California Section 17200 class must be narrowed as follows. *First*, this class will be limited to borrowers with a home-equity line of credit. Both named plaintiffs base their complaints on home-equity lines of credit. Other types of "loan . . . secured by . . . residential property," such as home-equity loans and mortgage loans, are beyond the scope of this action. *Second*, this class will include all borrowers to whom the challenged policy has been applied, regardless of whether they have yet suffered any financial impact, but the class will be

18

allowed to seek only declaratory and injunctive relief in the first instance. If the class succeeds on that account, then the subset of class members who were required to carry an amount of flood-insurance coverage greater than the maximum limits on their lines of credit may be allowed to seek restitution as well (but not double recovery if also a member of the TILA 23(b)(3) class). Unlike the TILA class, however, this class need not be restricted to borrowers whose lines of credit were *originated* by Chase Bank.

### A.    Numerosity.

As with the proposed TILA class, plaintiffs allege that "thousands" of individuals satisfy the class definition, and defendants do not challenge numerosity. This order finds that the proposed Section 17200 class, even as narrowed and divided, would satisfy the numerosity requirement of Rule 23(a)(1).

### B.    Commonality.

As with the proposed TILA class, plaintiffs allege a variety of legal and factual questions common to the Section 17200 class — for example, whether defendants' alleged conduct with respect to imposing flood-insurance requirements on borrowers was unfair (Sec. Amd. Compl. ¶ 59). Again, defendants do not challenge commonality. This order finds that the proposed class, particularly as narrowed and divided, would satisfy the commonality requirement of Rule 23(a)(2).

### C.    Adequacy.

This order finds that both Sheila I. Hofstetter and Roger Modersbach would be adequate representatives of the Section 17200 classes under consideration pursuant to Rule 23(a)(4). They both allegedly received notices applying the challenged policy to their accounts, and they both were required to carry an amount of flood-insurance coverage greater than the maximum limits on their credit lines. Defendants challenge both Hofstetter and Modersbach as inadequate class representatives, but their challenges are unpersuasive.

As to Hofstetter, defendants argue that because Hofstetter had a pre-existing first-mortgage loan secured by her home, her claims are subject to a "senior lien defense," and the effort Hofstetter will dedicate to litigating that defense creates a conflict between her goals and

19

those of the class (Opp. 12–13). Even if her first mortgage differentiates Hofstetter from most other class members (a proposition defendants reject throughout their opposition brief), this factual difference would not create a conflict of *interest*. Furthermore, defendants admit that they were unaware of Hofstetter's first mortgage at all times relevant to this action and placed no importance on whether or not a first mortgage even existed (Opp. 1, 12). Defendants may not raise her first mortgage for the first time now as a shield to justify their prior actions.

As to Modersbach, defendants argue that because the premiums for his force-placed insurance were refunded, he lacks standing to demand restitution (Opp. 17–18). Defendants miss the point. The only reason those premiums were refunded is because defendants succeeded in inducing Modersbach to purchase allegedly excessive amounts of flood-insurance coverage from an independent broker. Restitution under Section 17200 is not barred simply because the payment a victim was pressured into making went to a third party. *Tryok v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1338 (2009).

This order also finds that plaintiffs' counsel of record would be adequate class counsel for the Section 17200 classes under consideration. As noted, plaintiffs' counsel are experienced class-action litigators who have provided adequate representation to plaintiffs thus far. Defendants do not challenge the adequacy of plaintiffs' counsel to serve as class counsel.

### D.   Typicality.

Both Hofstetter and Modersbach would satisfy the typicality requirement of Rule 23(a)(3) as representatives of the Section 17200 classes under consideration. Their claims likely differ from those of other class members only as to restitution amount and other immaterial factual details. Defendants do not challenge the typicality of the named plaintiffs' claims with any arguments that have not already been addressed with respect to the adequacy requirement.

### E.   Rule 23(b)(2) Generally Applicable Act.

Because the challenged policy of requiring an allegedly excessive amount of flood insurance was applied generally to all borrowers with home-equity lines of credit, certification of the Section 17200 class seeking injunctive and declaratory relief would be appropriate under Rule 23(b)(2). Defendants argue that the proposed Section 17200 class lacks the requisite

20

United States District Court

For the Northern District of California

"cohesiveness" for certification under Rule 23(b)(2).  Defendants, however, cite no binding authority for a cohesiveness requirement under this subsection of Rule 23(b).  In any event, the ways in which this order narrowed the proposed class definition produced a cohesive group.

### F.    Rule 23(b)(3) Predominance and Superiority.

The equitable remedy of restitution is different from the legal remedy of damages, but he concepts are akin.  In view of the possibility that the Section 17200 class might obtain restitution that overwhelms any declaratory or injunctive relief they secure as a Rule 23(b)(2) class, this order considers certification of that class pursuant to Rule 23(b)(3) as well.

With respect to the members of the Section 17200 class seeking restitution, plaintiffs have carried their burden of showing that common questions would predominate the analysis, and that the class action mechanism is preferable for adjudicating their claims — most of which are of too little value to justify bringing individual suits.  The alleged unfairness and unlawfulness of defendants' challenged practices stems from requiring borrowers to carry an amount of flood-insurance coverage larger than the maximum limits on their home-equity lines of credit.  The comparison between a borrower's credit limit and the amount of flood-insurance coverage the borrower was required to carry is a matter of mathematical computation to be performed on defendants' records.

Defendants protest that individuals issues will predominate the analysis, citing potential complications from variation among the terms of borrowers' credit agreements and the existence of any senior liens on the homes securing the credit lines (Opp. 13–17).  Defendants' arguments with respect to the underlying credit agreements and senior liens were rejected by this order in the context of the TILA claim;  defendants do not raise any new issues that need be addressed separately with respect to this claim.

### G.    Ascertainability.

The Section 17200 class also satisfies Rule 23's implicit ascertainability requirement.  As with the TILA class, all the parameters for membership in this class are objective criteria, and defendants' business records should be sufficient to determine the class membership status of any given individual.

*          *          *

The following class is **CERTIFIED** under both Rule 23(b)(2) and Rule 23(b)(3) to pursue *injunctive and declaratory relief* as to the claim that defendants unfairly and unlawfully required them to maintain excessive amounts of flood-insurance coverage on the property securing their credit lines, in violation of California's Unfair Business Practices Act (Section 17200 *et seq.* of the California Code of Business and Professions):

> all persons who have or had a home-equity line of credit with JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured by their residential property in the State of California, that was not closed before this action commenced on March 29, 2010, and who were informed by Chase Bank or Chase Home Finance that the property must be covered by an amount of flood insurance equal to the lesser of the full replacement cost value of the property or the maximum amount of insurance available through the National Flood Insurance Program, between March 29, 2006, and the date of final disposition of this action.

Injunctive relief is a prerequisite for restitution. If this class succeeds on its claim for injunctive relief, then class members may be allowed to seek restitution as well. Specifically, claims for restitution would be entertained from individuals who are within the above class definition and also were required by Chase Bank or Chase Home Finance to purchase or maintain flood insurance on the property with a coverage amount larger than the maximum limit on the line of credit, between March 29, 2006, and the date of final disposition of this action.

**4.    PROPOSED FORCE-PLACED SUBCLASS.**

Plaintiffs also propose a "force-placed subclass" of borrowers within their proposed California Section 17200 class "who had flood insurance force-placed upon them" by defendants (Br. i). While the general California Section 17200 class was designed to challenge the excessive *amount* of flood-insurance coverage borrowers allegedly were forced to carry, this proposed subclass would focus on the nefarious *means* by which defendants allegedly imposed their requirements — for example, by charging inflated premiums and by generating commission income through self-dealing.

Because this order did not adopt plaintiffs' proposed definition for a general Section 17200 class, an independent additional class — instead of a subclass — will now be considered with respect to the force-placement issues. The parties do not address the proposed

1   force-placed subclass at length.  Because it was proposed as a subclass, the parties only note that

2   the arguments they advanced with respect to the broader proposed California Section 17200 class

3   generally apply to the proposed subclass as well.  For many of the same reasons already discussed

4   with respect to the first Section 17200 class, this order finds that a separate class of borrowers

5   who had flood insurance force-placed on the buildings securing their home-equity lines of credit

6   would satisfy the numerosity and commonality requirements of Rule 23(a), as well as the implied

7   ascertainability requirement.  Hofstetter and Modersbach would be adequate representatives of

8   such a class, and their claims are typical of the class, as defendants force-placed flood insurance

9   on both their homes.  This order also finds that plaintiffs' counsel of record would adequately

10  represent such a class.  An additional Section 17200 class focused on force-placement therefore

11  would satisfy all four requirements of Rule 23(a).

12          As was the case with the first Section 17200 class, certification of this additional class

13  would be appropriate under both Rule 23(b)(2) and Rule 23(b)(3).  The force-placement of flood

14  insurance was adopted as a general policy that defendants applied indiscriminately to home-

15  equity borrowers.  Restitution of the allegedly inflated premiums borrowers were charged for

16  force-placed insurance may become a primary component of the remedy for this claim, and it is

17  apparent that the predominance and superiority requirements of Rule 23(b)(3) are satisfied.  The

18  alleged self-dealing can be litigated without reference to factual differences among individual

19  borrowers, and the force-placed premiums can be mathematically compared to their

20  corresponding coverage values without considering individual borrowers' other financial or

21  contractual circumstances.  Additionally, the class action mechanism is a superior method for

22  resolving these claims, because the cost of litigation likely would not be justified without

23  aggregating them together.  *See Hanlon*, 150 F.3d at 1023.

24                          *                *                *

25          The following class is **CERTIFIED** under both Rule 23(b)(2) and Rule 23(b)(3) to pursue

26  the claim that defendants improperly force-placed flood insurance on the property securing their

27  credit lines in violation of California's Unfair Business Practices Act:

28

United States District Court

For the Northern District of California

1
2
3

> all persons who have or had a home-equity line of credit with
> JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC
> secured by their residential property in the State of California, and
> had flood insurance force-placed upon the property by Chase Bank
> or Chase Home Finance, between March 29, 2006, and the date of
> final disposition of this action.

4
5
6
7

As with the other Section 17200 class, this class initially may pursue only injunctive and

declaratory relief.  If the class succeeds on that account, then class members may be authorized to

attempt to show entitlement to restitution as well.

**CONCLUSION**

8
9

For all of the above-stated reasons, plaintiffs' motion for class certification is **GRANTED**

**IN PART AND DENIED IN PART**.

10
11
12
13

The following class is **CERTIFIED** under Rule 23(b)(2) to pursue *injunctive and*

*declaratory relief only* as to the claim that defendants adversely changed the terms of their credit

agreements and implemented that change in violation of the federal Truth in Lending Act:

14
15
16
17
18

> all persons who originated a home-equity line of credit with
> JPMorgan Chase Bank, N.A. before December 23, 2009 that was
> secured by residential property in the United States, that was not
> closed before this action commenced on March 29, 2010, and
> whose signed credit agreement did not require that the property be
> covered by an amount of flood insurance equal to the lesser of the
> full replacement cost value of the property or the maximum
> amount of insurance available through the National Flood
> Insurance Program.

19
20
21

The following class is **CERTIFIED** under Rule 23(b)(3) to pursue *damages only* as to the

claim that defendants adversely changed the terms of their credit agreements and implemented

that change in violation of the federal Truth in Lending Act:

22
23
24
25

> all persons who originated a home-equity line of credit with
> JPMorgan Chase Bank, N.A. before December 23, 2009 that was
> secured by residential property in the United States, and were
> required by Chase Bank or its agents or affiliates to purchase or
> maintain flood insurance on the property with a coverage amount
> larger than the maximum limit on the line of credit, on or after
> December 23, 2009.

26
27
28

The following class is **CERTIFIED** under both Rule 23(b)(2) and Rule 23(b)(3) to pursue

*injunctive and declaratory relief* as to the claim that defendants unfairly and unlawfully required

them to maintain excessive amounts of flood-insurance coverage on the property securing their

credit lines, in violation of California's Unfair Business Practices Act (Section 17200 *et seq.* of the California Code of Business and Professions):

> all persons who have or had a home-equity line of credit with JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured by their residential property in the State of California, that was not closed before this action commenced on March 29, 2010, and who were informed by Chase Bank or Chase Home Finance that the property must be covered by an amount of flood insurance equal to the lesser of the full replacement cost value of the property or the maximum amount of insurance available through the National Flood Insurance Program, between March 29, 2006, and the date of final disposition of this action.

If this class succeeds on its claim, then class members may be allowed to seek restitution as well. Specifically, claims for restitution would be entertained from individuals who are within the above class definition and also were required by Chase Bank or Chase Home Finance to purchase or maintain flood insurance on the property with a coverage amount larger than the maximum limit on the line of credit, between March 29, 2006, and the date of final disposition of this action.

The following class is **CERTIFIED** under both Rule 23(b)(2) and Rule 23(b)(3) to pursue the claim that defendants improperly force-placed flood insurance on the property securing their credit lines in violation of California's Unfair Business Practices Act:

> all persons who have or had a home-equity line of credit with JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured by their residential property in the State of California, and had flood insurance force-placed upon the property by Chase Bank or Chase Home Finance, between March 29, 2006, and the date of final disposition of this action.

As with the other Section 17200 class, this class initially may pursue only injunctive and declaratory relief. If the class succeeds on that account, then class members may be authorized to attempt to show entitlement to restitution as well.

These class definitions shall apply for all purposes, including settlement. Sheila I. Hofstetter and Roger Modersbach are **APPOINTED** as class representatives of all plaintiff classes. Plaintiffs' counsel of record (Matthew C. Helland, James Harvey Kaster, Kai Richter, Paul J. Lukas, and Rebekah Lynn Bailey of the law firm Nichols Kaster LLP) are **APPOINTED** as class counsel for all plaintiff classes.

United States District Court
For the Northern District of California

25

Counsel shall submit an agreed-on form of class notice and plan of dissemination by **NOON ON APRIL 22, 2011**.  The parties will need to work together to generate a class list for each of the certified classes, to be used in disseminating class notice, and to be used to ascertain the composition of the classes.

**IT IS SO ORDERED.**

Dated:  March 31, 2011.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

26