# Exhibit 1

Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Paul J. Lukas, MN State Bar No. 22084X
Lukas@nka.com
(admitted **pro hac vice**)
E. Michelle Drake, MN State Bar No. 0387366
Drake@nka.com
(admitted **pro hac vice**)
Kai Richter, MN State Bar No. 0296545
KRichter@nka.com
(admitted **pro hac vice**)
Rebekah L. Bailey, CA State Bar No. 258551
Bailey@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

Attorneys for Plaintiffs and the Classes

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sheila I. Hofstetter and Roger Modersbach, individually, as representatives of the classes, and on behalf of the general public, | Case No. CV-10-1313 WHA |
| Plaintiffs, | |
| vs. | |
| Chase Home Finance, LLC, JP Morgan Chase Bank, N.A. , and DOES 1- 50, inclusive, | **SETTLEMENT AGREEMENT AND RELEASE** |
| Defendants. | |

1

### SETTLEMENT AGREEMENT

2    1.    This Settlement Agreement is entered into by Plaintiffs Sheila I. Hofstetter and

3  Roger Modersbach, individually and on behalf of all Class Members, and Defendant JPMorgan

4  Chase Bank, N.A, for itself and as successor by merger to Chase Home Finance, LLC, subject to

5  the approval of the Court.

6

### DEFINITIONS

7    2.    As used in this Settlement Agreement, the following terms shall have the

8  following meanings:

9        2.1.    "Action" shall mean the above-captioned lawsuit.

10        2.2.    "Applicable Commission Percentage" shall mean 14% for WAMU

11  Borrowers and 20% for Heritage Chase Borrowers.

12        2.3.    "Applicable Premium Rate" shall mean as follows for the following groups

13  of Class Members:

14            a.    For Class Members with Lender-Placed Flood Insurance for whom

15                Premium Data is available, "Applicable Premium Rate" shall mean

16                the Total Premium Amount divided by the Total Coverage Amount;

17            b.    For all other Class Members, Applicable Premium Rate shall mean:

18                i.    .0090 for Zone A Class Members with Lender-

19                    Placed Flood Insurance;

20                ii.    .0300 for Zone V Class Members with Lender-

21                    Placed Flood Insurance; and

22                iii.    The Average Premium Rate for Class Members with

23                    Private Flood Insurance.

24        2.4.    "Available Credit" shall mean the maximum amount of funds that a Class

25  Member may borrow in connection with an active HELOC account, or if the account is

26  suspended, the Class Member's outstanding principal balance.

27        2.5.    "Average Premium Rate" shall mean as follows:

28            a.    For Zone A Class Members, "Average Premium Rate" shall mean

-2-

the Total Premium Amount for all Zone A Class Members for whom Premium Data is available concerning Private Flood Insurance, divided by the Total Coverage Amount associated with such premiums.

    b.    For Zone V Class Members, "Average Premium Rate" shall mean the Total Premium Amount for all Zone V Class Members for whom Premium Data is available concerning Private Flood Insurance, divided by the Total Coverage Amount associated with such premiums.

2.6.    "California Class Member" shall mean a Class Member in Class 3 and/or Class 4.

2.7.    "California Class Period" shall mean the period from March 29, 2006 until the Effective Date of this Settlement Agreement.

2.8.    "California Damages Period" shall mean the period from March 29, 2006 until April 14, 2011.

2.9.    "Certified Classes" shall mean the classes certified by the Court in its Class Certification Order.

2.10.    "Chase" shall mean Chase Home Finance, LLC and/or JPMorgan Chase Bank, N.A.

2.11.    "Claims Administrator" shall mean Analytics, Inc.

2.12.    "Class 1" shall mean the following class certified by the Court in its Class Certification Order:

> All persons who originated a home-equity line of credit with JPMorgan Chase Bank, N.A. before December 23, 2009 that was secured by residential property in the United States, that was not closed before this action commenced on March 29, 2010, and whose signed credit agreement did not require that the property be covered by an amount of flood insurance equal to the lesser of the full replacement cost value of the property or the maximum amount of insurance available through the National Flood Insurance Program.

-3-

SETTLEMENT AGREEMENT AND RELEASE

1        2.13.   "Class 2" shall mean the following class certified by the Court in its Class

2   Certification Order:

3             All persons who originated a home-equity line of credit with
4             JPMorgan Chase Bank, N.A. before December 23, 2009 that was
              secured by residential property in the United States, and were
5             required by Chase Bank or its agents or affiliates to purchase or
              maintain flood insurance on the property with a coverage amount
6             larger than the maximum limit on the line of credit, on or after
              December 23, 2009.
7

8        2.14.   "Class 3" shall mean the following class certified by the Court in its Class

9   Certification Order:

10            All persons who have or had a home-equity line of credit with
              JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured
11            by their residential property in the State of California, that was not
              closed before this action commenced on March 29, 2010, and who
12            were informed by Chase Bank or Chase Home Finance that the
              property must be covered by an amount of flood insurance equal to
13            the lesser of the full replacement cost value of the property or the
              maximum amount of insurance available through the National
14            Flood Insurance Program, between March 29, 2006, and the date of
              final disposition of this action.
15

16       2.15.   "Class 4" shall mean the following class certified by the Court in its Class

17  Certification Order:

18            All persons who have or had a home-equity line of credit with
              JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured
19            by their residential property in the State of California, and had flood
              insurance force-placed upon the property by Chase Bank or Chase
20            Home Finance, between March 29, 2006, and the date of final
              disposition of this action.
21

22       2.16.   "Class Certification Order" shall mean the Court's March 31, 2011 Order

23  Partially Granting Motion for Class Certification.

24       2.17.   "Class Certification Notice" shall refer to the notice that was approved by

25  the Court on May, 3, 2011 (ECF No. 183) and mailed the week of May 16-20, 2011.

26       2.18.   "Class Counsel" shall mean Nichols Kaster, PLLP.

27       2.19.   "Class Data" shall mean the data and information produced by Chase in

28  this Action relating to Class Members and their HELOCs with Chase, which runs through April

-4-

14, 2011.

2.20.   "Class Funds" shall mean the funds in the Settlement Fund that are available for distribution to Participating Damages Class Members, after the payment(s) specified by Paragraphs 6.1 and 6.2.

2.21.   "Class Member" shall mean a member of one or more the Certified Classes who did not exclude himself or herself from the Certified Classes in response to the Class Certification Notice.

2.22.   "Commission Period" shall mean the period from March 29, 2006 through December 31, 2009.

2.23.   "Effective Date" shall mean seven (7) days after Judgment has become final as provided in paragraph 11.1.

2.24.   "Eligible Damages Class Members" shall mean Participating Damages Class Members who have Settlement Damages pursuant to Paragraph 5.3 of this Settlement Agreement, based on the Class Data.

2.25.   "Excess Coverage" or "Excess Coverage Amount" shall mean the amount of any Flood Insurance Coverage in excess of a Class Member's Available Credit, but shall not include any amounts that Class Members in Class 2 voluntarily maintained prior to receiving a Flood Insurance Notice from Chase.  For purposes of this definition, all Lender-Placed Flood Insurance in excess of a Class Member's Available Credit shall be deemed to be excess insurance, since Chase's policy was not to purchase Lender-Placed Flood Insurance in those instances where HELOC customers voluntarily carried flood insurance in the amount sought by Chase.

2.26.   "Excess Coverage Premiums" shall mean premiums for Excess Coverage.

2.27.   "Fee Based Account" shall mean any HELOC account designated as such by Chase in the Class Data.

2.28.   "Final Approval Hearing" shall be the hearing held by the Court in connection with the Parties' Final Approval Motion.

2.29.   "Final Approval Motion" shall mean the Parties' joint motion seeking final

-5-

1   approval of this Settlement Agreement.

2         2.30.  "Flood Insurance Coverage" shall mean the sum of all flood insurance on a

3   Class Member's Secured Property.  For example, a Class Member with $100,000 worth of Private

4   Flood Insurance and $150,000 worth of Lender Placed Flood Insurance on his or her Secured

5   Property would have $250,000 worth of Flood Insurance Coverage.

6         2.31.  "Flood Insurance Notice" shall mean a letter to a Class Member requesting

7   that the Class Member obtain flood insurance for Secured Property.

8         2.32  "Fund" or "Settlement Fund" shall mean the total sum of $9,625,000 to be

9   paid by Chase in connection with the Settlement.

10        2.33.  "HELOC" shall mean home equity line of credit.

11        2.34.  "Heritage Chase Borrowers" shall mean all Class Members except WAMU

12  Borrowers.

13        2.35.  "Lender-Placed Flood Insurance" shall mean any flood insurance

14  purchased for a Class Member by Chase.

15        2.36.  "Minimum Flood Insurance Coverage Amount" shall mean the minimum

16  amount of flood insurance coverage required by federal law for HELOC borrowers, which is

17  currently *the lesser* of the following amounts:

18            a.  The maximum amount of flood insurance coverage available through

19               the National Flood Insurance Program (currently 250,000);

20            b.  100% of the full replacement cost value of the dwelling and insurable

21               improvements; or

22            c.  The customer's credit line amount plus the amount of any senior lien(s)

23               secured by the property.

24        2.37.  "Named Plaintiffs" shall mean Sheila I. Hofstetter and Roger Modersbach.

25        2.38.  "Nationwide Class Member" shall mean a Class Member in Class 1 and/or

26  Class 2.

27        2.39.  "Nationwide Class Period" shall mean the period from March 29, 2009

28  until the Effective Date of this Settlement Agreement.

2.40.   "Nationwide Damages Period" shall mean the period from December 23, 2009 until April 14, 2011.

2.41.   "Premium Data" shall mean data or information relating to flood insurance premiums.

2.42.   "Released Parties" shall mean JPMorgan Chase & Co., and JPMorgan Chase Bank, N.A., (for itself and as successor by merger to Chase Home Finance LLC), and Chase Insurance Agency, Inc., and each and all of their respective past, present, and future parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each and all of their respective executors, successors, assigns, and legal representatives.

2.43.   "Relevant Damages Period" shall mean the California Damages Period for California Class Members and the Nationwide Damages Period for Nationwide Class Members in Class 2.

2.44.   "Relevant Injunction Period" shall mean the California Class Period for California Class Members and the Nationwide Class Period for Nationwide Class Members.

2.45.   "Participating Class Member" shall mean a Class Member who did not timely opt out of this Settlement Agreement within the Settlement Notice Period.

2.46.   "Participating Damages Class Members" shall mean all Participating Class Members in Class 2, Class 3, and/or Class 4.

2.47.   "Participating Injunction Class Members" shall mean all Participating Class Members in Class 1, Class 3, and/or Class 4.

2.48.   "Parties" shall mean the Named Plaintiffs (on behalf of themselves and all Class Members who do not become Settlement Opt Outs) and Chase.

2.49.   "Payment Notice" shall mean the payment notice in the form attached hereto as Exhibit B, or as otherwise approved by the Court.

2.50.   "Plaintiffs' Damages Expert" shall refer to Arthur Olsen.

-7-

2.51.   "Preliminary Approval Date" shall mean the date of the Preliminary Approval Order.

2.52.   "Preliminary Approval Motion" shall mean the Parties' joint motion seeking preliminary approval of this Settlement Agreement.

2.53.   "Preliminary Approval Order" shall mean the Court's Order preliminarily approving this Settlement Agreement.

2.54.   "Private Flood Insurance" shall mean flood insurance purchased by a Class Member (i.e., non-Lender Placed Flood Insurance).

2.55.   "Second Lien Borrowers" shall mean Class Members whose Secured Property was subject to a Senior Lien at the time they incurred Excess Coverage Premiums, based on the Class Data.

2.56.   "Secured Property" shall mean the property securing the Class Member's HELOC with Chase.

2.57.   "Senior Lien" shall mean any senior or first-priority mortgage loan or line of credit secured by a Class Member's Property.  This term shall include both Senior Liens held by Chase and Senior Liens held by other lenders.

2.58.   "Settlement Agreement" shall mean this Settlement Agreement and Release.

2.59.   "Settlement Fund" shall mean the escrow account established pursuant to Paragraph 5.1 of this Settlement Agreement.

2.60.   "Settlement Notice" shall mean the notice of settlement in the form attached hereto as Exhibit A, or as otherwise approved by the Court.

2.61.   "Settlement Notice Date" shall mean the date that Settlement Notices are required to be mailed pursuant to Paragraph 9.1.

2.62.   "Settlement Opt Out Deadline" shall mean 45 days from the Settlement Notice Date.

2.63.   "Settlement Opt Out Form" shall mean the form that shall be included with the Settlement Notice for the purpose of allowing Class Members to exclude themselves from the

-8-

1    Settlement Agreement.

2          2.64.   "Settlement Opt Outs" shall mean Class Members who completed and

3    signed a Settlement Opt Out Form, and sent such form to the Claims Administrator by the

4    Settlement Opt Out Deadline.

5          2.65.   "Settlement Payment" shall mean the payment that Participating Damages

6    Class Members are entitled to receive under Paragraph 5.5 of this Settlement Agreement.

7          2.66.   "Total Coverage Amount" shall mean the face value of a flood insurance

8    policy.

9          2.67.   "Total Premium Amount" shall mean the premium cost for the Total

10   Coverage Amount.

11         2.68.   "WAMU Borrowers" shall mean Class Members whose HELOC was

12   originated by Washington Mutual and acquired by Chase.

13         2.69.   "Zero Zero Borrower" shall mean a Class Member with no outstanding

14   principal balance and no available credit at the time Chase required the Class Member to obtain

15   flood insurance.

## RECITALS

17   3.1.    Plaintiff Sheila Hofstetter filed this Action on March 29, 2010 on behalf of herself

18   and other similarly situated customers of Chase.  After this Action was filed, the Court issued an

19   Order on October 29, 2010 (ECF No. 110) allowing Plaintiff Roger Modersbach to join the

20   Action as a second named plaintiff.

21   3.2.    Plaintiffs' Second Amended Complaint asserts claims against Chase under the

22   Truth in Lending Act ("TILA"), 15 U.S.C. 1601 *et seq.*, and the California Unfair Business

23   Practices Act ("CUBPA"), Cal. Bus. & Prof. Code § 17200 *et seq.*  Among other things, Plaintiffs

24   allege that Chase unlawfully requires HELOC customers to carry excessive flood insurance for

25   their property, and that it unfairly profits from "force-placing" flood insurance policies on

26   customers who do not meet its requirements.

27   3.3.    Chase denies these allegations and asserts that its flood insurance procedures for

28   HELOC borrowers are not in violation of the TILA, the CUBPA, or are unlawful or improper in

-9-

any other manner.  By entering into this Settlement Agreement, Chase does not admit any wrongdoing, and this Settlement Agreement shall not constitute an admission of liability by Chase.

3.4.    On March 31, 2011, the Court issued a Class Certification Order (ECF No. 178) allowing the above-referenced lawsuit to proceed as a class action on behalf of four Certified Classes of Chase HELOC customers.

3.5.    Following the Court's Class Certification Order, Chase provided Plaintiffs with a list of customers in each of the Certified Classes, as well as Class Data relating to such customers. This Class Data included information regarding, *inter alia*, customers' HELOCs with Chase; their Available Credit and outstanding principal balance; the date(s) that they were sent a Flood Insurance Notice by Chase; the amount of any Private Flood Insurance they purchased after receiving a Flood Insurance Notice and the level of flood insurance they maintained before Chase sent them a Flood Insurance Notice; the amount of any Lender Placed Flood Insurance and associated premiums; and their flood zone status (A or V).  Each of the Parties have retained experts to evaluate this Class Data and have considered and analyzed this data prior to entering into this Settlement Agreement.

3.6.    On May 3, 2011, the Parties attended a settlement conference before The Honorable Magistrate Judge Joseph C. Spero.  Following this settlement conference, the Parties continued their negotiations, and then attended a second settlement conference before Magistrate Judge Spero on June 23, 2011.  During this second settlement conference, the Parties agreed to settle this Action, and reported this development to the Court on the same day.

3.7.    At all times, the Parties have negotiated at arm's length.  Based on their review of the Class Data, their investigation of the relevant facts, their analysis of the claims and defenses in this action, and the Court's legal rulings to date, Plaintiffs and Class Counsel believe that this Settlement Agreement constitutes a fair and appropriate resolution of this Action.

## INJUNCTIVE RELIEF

4.1.    <u>Scope</u>.  The injunctive relief provisions set forth in this Section of the Settlement Agreement shall apply to all Participating Injunction Class Members.

-10-

4.2.   <u>Coverage Requirement</u>.  Chase shall not require flood insurance in excess of the Minimum Flood Insurance Coverage Amount after the Effective Date, or November 30, 2011, whichever is later.

4.3.   <u>Notice of Coverage Requirement</u>.  Chase shall advise all Participating Injunction Class Members with active or suspended accounts, by letter, within 10 days of the Effective Date or November 30, 2011, whichever is later, that such Participating Injunction Class Members are not required to maintain Flood Insurance Coverage in excess of the Minimum Coverage Amount, and shall inform the Participating Injunction Class Member of his or her right to cancel any Private Flood Insurance which exceeds that amount.

4.4.   <u>No Commissions</u>.   Chase and its affiliates shall not accept commissions on Lender-Placed Flood Insurance for HELOCs.

4.5.   <u>Credits for Fee Based Accounts</u>.  For all Participating Injunction Class Members with active Fee Based Accounts that show unpaid premiums for Lender-Placed Flood Insurance purchased during the Relevant Injunction Period in excess of the Minimum Flood Insurance Coverage Amount, Chase shall provide an account credit to such Class Member for the portion of flood insurance premium associated with coverage in excess of the Minimum Flood Insurance Coverage Amount.  Chase shall provide such account credit to the Participating Injunction Class Member within 60 days of the Effective Date of this Settlement Agreement.

4.6.   <u>Credits for Zero Zero Borrowers</u>.  For all Participating Injunction Class Members who were charged premiums for Lender-Placed Flood Insurance purchased during the Relevant Injunction Period, and who were Zero Zero Borrowers at the time such Lender Placed Flood Insurance was purchased, Chase shall provide an account credit to such Class Member equal to the total amount of all premium charges for such Lender-Placed Flood Insurance plus any interest or fees associated with such premium charges, provided the Class Member's account is active and the Class Member did not file an insurance claim on the Lender-Placed Flood Insurance policy.  Chase shall provide such account credit to the Participating Injunction Class Member within 90 days of the Effective Date of this Settlement Agreement.

1    4.7.    Prior to issuing the credits required by Paragraphs 4.5 and 4.6 above, Chase shall

2    confer with Class Counsel and Plaintiffs' Damages expert to ensure that such credits are accurate

3    and complete.  Within thirty (30) days after all such credits have been issued, Chase shall supply

4    Class Counsel with a spreadsheet confirming which Injunction Class Members received these

5    credits and the amount of such credits.

6                                    **MONETARY RELIEF**

7    5.1.    Establishment of Settlement Fund.  Within five (5) days of the Effective Date,

8    Chase shall tender $9,625,000 to the Claims Administrator, which shall be deposited by the

9    Claims Administrator into an interest-bearing escrow account with a federally-chartered national

10   bank other than Chase, and shall be distributed as set forth in this Settlement Agreement.  The

11   monetary relief to the Class Members, Class Counsel's attorneys' fees, all costs and expenses

12   (including expert witness fees, costs of settlement administration, and litigation costs), and any

13   additional payments to the Named Plaintiffs shall be paid from the Fund.  Chase's total monetary

14   obligation to settle this action is limited to (1) payment of $9,625,000 to the Settlement Fund; and

15   (2) the account credits provided by paragraphs 4.5 and 4.6.

16   5.2.    Payment to Class Members.  Within fourteen (14) days of the Effective Date, the

17   Claims Administrator shall distribute the Class Funds in the Settlement Fund to Eligible Damages

18   Class Members in accordance with Allocation Plan set forth in Paragraph 5.3 below.  Each

19   Participating Damages Class Member's share of the distribution shall constitute his or her

20   Settlement Payment.

21   5.3.    Allocation Plan.  The Class Funds shall be distributed to Participating Damages

22   Class Members on a *pro rata* basis in proportion to their Settlement Damages.[1]  For purposes of

23   this Settlement Agreement, the Settlement Damages for Participating Damages Class members

24   shall be the sum of their Commission Damages and their Excess Insurance Damages.

25

26   [1] For example, if $6,500,000 remains in the Settlement Fund as Class Funds following
     payment(s) specified by Paragraphs 6.1 and6.2, and the total Settlement Damages for all
27   Participating Damages Class Members is $10,000,000, each Participating Damages Class
     Member shall receive a distribution from the Settlement Fund equal to 65% of his or her
28   Settlement Damages.

-12-

1            a.      <u>Commission Damages</u>. Participating Damages Class Members in Class 4

2    who incurred premium charges for Lender-Placed Food Insurance purchased during the

3    Commission Period shall have Commission Damages equal to the Applicable Commission

4    Percentage times the premium charges for such Lender-Placed Flood Insurance. However, to

5    avoid double-counting of damages, Commission Damages shall exclude commissions on any

6    Excess Coverage Amounts.

7            b.      <u>Excess Insurance Damages</u>. Participating Damages Class members who

8    incurred Excess Coverage Premiums for flood insurance purchased during the Relevant Damages

9    Period shall have Excess Insurance Damages equal to the Excess Coverage Amount times the

10   Applicable Premium Rate, subject to the following discounts (which shall be cumulative):

11           i.      WAMU Borrowers shall have their Excess Insurance Damages

12                     discounted by 50% (to reflect the fact that the deeds of trust and

13                     mortgages for WAMU Borrowers typically required flood

14                     insurance coverage equal to replacement cost value);

15           ii.     Second Lien Borrowers shall have their Excess Insurance Damages

16                     discounted by 50% (to reflect Chase's defense that federal law

17                     requires second lienholders to obtain flood insurance in an amount

18                     equal to the sum of all liens on a borrower's property if it is located

19                     in a Special Flood Hazard Area); and

20           iii.    Notwithstanding (i) and (ii) above, these discounts shall not apply

21                     to Zero Zero Borrowers with closed accounts who incurred

22                     premiums for Lender-Placed Flood Insurance (to reflect the fact

23                     that Zero Zero Borrowers had no ability to draw any money on their

24                     line of credit from Chase and the Court concluded that Chase had

25                     no right to make any demand of them regarding flood insurance).

26      5.4.    <u>Calculation</u>. Plaintiffs' Damages Expert shall be responsible for calculating each

27   Participating Damages Class Member's Settlement Damages and *pro rata* Settlement Payment,

28   based on the Class Data. Plaintiff's Damages Expert shall complete his initial calculation by the

date of the Preliminary Approval Motion, which shall be based on the Class Data for all Class Members. Plaintiffs' Damages Expert shall complete his final calculation by the date of the Final Approval Motion, which shall take account of Settlement Opt Outs and shall be based on the Class Data for the Participating Class Members only.   Plaintiffs shall share the completed damages calculations with Chase and shall submit the final damages calculation with their Final Approval Motion.

5.5.   <u>Distribution of Settlement Payments</u>.  Class Funds shall be distributed to Eligible Damages Class Members in the form of a check, accompanied by a Payment Notice, and sent via first class mail.  For purposes of this mailing, the Claims Administrator shall use the addresses that were used to send the Settlement Notice, subject to appropriate updating by the Claims Administrator prior to mailing.  Appropriate updating shall include the following:

      a.   The Claims Administrator will check each address against the United States Post Office National Change of Address Database;

      b.   The Claims Administrator will conduct reasonable research to locate valid address information for Class Members whose Settlement Notices previously were returned as undeliverable;

      c.   The Claims Administrator shall update addresses based on forwarding information received from the United States Post Office; and

      d.   The Claims Administrator will update addresses based on any requests to do so received from Class Members.

5.6.   <u>Re-Mailing of Returned Settlement Payments</u>.  Any Settlement Payments that are returned as non-deliverable with a forwarding address shall promptly be re-mailed by the Claims Administrator to such forwarding address.   To the extent that any Settlement Payments are returned as non-deliverable without a forwarding address, the Claims Administrator shall conduct reasonable research to locate valid address information for the intended recipients of such Settlement Payments, and shall promptly re-mail the Settlement Payment, as applicable, to any Participating Class Members for whom new address information is identified

5.7.   <u>Period to Accept Payment & Handling of Unclaimed Funds</u>.  Eligible Damages

-14-

1   Class Members shall have 120 days from the date of their Payment Notice to cash the check

2   accompanying the Payment Notice.  All unclaimed monies in the Settlement Fund after that time

3   shall be paid to the National Consumer Law Center.  No unclaimed funds will revert to Chase.

4   ## ATTORNEYS' FEES AND PAYMENT TO NAMED PLAINTIFFS

5        6.1.    Attorneys' Fees and Costs and Expenses.    Upon filing the Preliminary Approval

6   Motion, Class Counsel also will file a separate Motion for Attorneys' Fees and Costs and

7   Expenses to be paid from the Fund in accordance with Fed. R. Civ. P. 23(h).  Plaintiffs' Motion

8   for Attorneys' Fees and Costs and Expenses under Fed. R. Civ. P. 23(h) is to be considered

9   separately by the Court from its consideration of the fairness and adequacy of the Settlement.

10  Any separate order with respect to Plaintiffs' Motion for Attorneys' Fees and Costs and Expenses

11  shall not affect or delay the approval of this Settlement or the finality of the Judgment.  Within

12  five (5) days of the Effective Date, the Claims Administrator shall deduct from the Settlement

13  Fund and pay to Class Counsel the amount of attorneys' fees, costs, and expenses awarded to

14  Class Counsel by the Court.

15       6.2    Payment to Named Plaintiffs.  Upon filing their request for costs and attorneys'

16  fees, Plaintiffs Sheila Hofstetter and Roger Modersbach may file a separate motion with the Court

17  seeking reimbursement for the time and effort that they have personally invested in the

18  prosecution of this Action.  Any such request for reimbursement shall be limited, and the

19  enforceability of this Settlement Agreement shall not be contingent on whether (or how much)

20  reimbursement is awarded by the Court.  To the extent that the Court makes a reimbursement

21  award to the named Plaintiffs, such reimbursement award will be paid to the named Plaintiffs

22  from the Settlement Fund at the same time that Plaintiffs' attorneys' fees and costs are paid

23  pursuant to Paragraph 6.1.

24  ## CLAIMS ADMINISTRATOR

25       7.1.    The Claims Administrator shall be Analytics, Inc., 1870 Lake Drive East,

26  Chanhassen, MN 55317. All costs and fees of settlement administration shall be paid from the

27  Settlement Fund.

28

-15-

## **PRELIMINARY APPROVAL**

8.1    On July 28, 2011, Class Counsel shall submit this Settlement Agreement to the Court for review, and shall file a joint Preliminary Approval Motion requesting the Court for an Order:

a.    Preliminarily approving this Settlement Agreement for purposes of issuing notice to the Settlement Class;

b.    Approving the retention of the Claims Administrator;

c.    Approving the Settlement Notice and notice methodology described in paragraphs 8.1 and 8.2; and

d.    Scheduling a Final Approval Hearing to be held no sooner than 90 days following entry of the Preliminary Approval Order (or on such date as the Court may direct), to consider the Settlement's fairness, reasonableness and adequacy and to consider the Plaintiffs' Motion for Attorneys' Fees and Costs.

## **NOTICE OF SETTLEMENT**

9.1.    Mailing of Settlement Notice.  Within eight (8) days of the Preliminary Approval Date, the Claims Administrator shall send the Settlement Notice to each Class Member via first class mail.  For purposes of this mailing, the Claims Administrator shall use the addresses that were used to send the Class Certification Notice, subject to appropriate updating by the Claims Administrator prior to mailing.  Appropriate updating shall include the following:

a.    The Claims Administrator will check each address against the United States Post Office National Change of Address Database;

b.    The Claims Administrator will conduct reasonable research to locate valid address information for Class Members whose Class Certification Notices previously were returned as undeliverable;

c.    The Claims Administrator shall update addresses based on forwarding information received from the United States Post Office; and

d.    The Claims Administrator will update addresses based on any requests to do so received from Class Members.

-16-

9.2.   Re-Mailing of Returned Settlement Notices.   Any Settlement Notices that are returned as non-deliverable with a forwarding address shall promptly be re-mailed by the Claims Administrator to such forwarding address.   To the extent that any Settlement Notices are returned as non-deliverable without a forwarding address, the Claims Administrator shall conduct reasonable research to locate valid address information for the intended recipients of such Settlement Notices, and shall promptly re-mail the Settlement Notice, as applicable, to any Class Members for whom new address information is identified.

9.3   Website Notice.   Within 8 days of the Court's Preliminary Approval Order, Class Counsel shall supplement the Official Case Website, www.chasefloodinsurancelitigation.com, by including the following additional information on the website:

     A.   The Settlement Agreement

     B.   The Court's Preliminary Approval Order;

     C.   The Settlement Notice

     D.   The Preliminary Approval Motion, and Memorandum of Points and Authorities

     E.   The Motions referenced in Paragraphs 6.1 and 6.2, and Memorada of Points and Authorities.

9.4.   Confirmation of Settlement Notice Mailing.   No later than ten (10) calendar days after the Settlement Notice Date, the Claims Administrator shall serve on counsel for all Parties a declaration stating that the required Settlement Notice was mailed as provided by Paragraph 8.1, and Class Counsel shall file such declaration with the Court.

9.5   CAFA Notice.   Chase shall serve the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715 within 10 days of the filing of the Preliminary Approval Motion. Chase shall bear the cost of this CAFA notice.

9.6.   Confirmation of Payment Notice Mailing.   No later than thirty (30) days after Payment Notices are issued to Participating Damages Class Members, the Claims Administrator shall provide an accounting to the Parties, and shall provide an updated accounting to the Parties after the period for cashing Settlement Payment checks has expired.

-17-

**OPT-OUTS AND OBJECTIONS**

10.1.   <u>Opting Out of the Settlement</u>:   Any Class Members who wish to exclude themselves from the Settlement Agreement must mail the Claims Administrator a signed Settlement Opt Out Form, postmarked no later than the Settlement Opt Out Deadline.  The Claims Administrator shall timely provide the Parties with copies of all completed Settlement Opt Out Forms, and Plaintiffs shall file a roster of Settlement Opt Outs (and a separate roster of the Participating Class Members) with the Court within seven (7) days of the Settlement Opt Out Deadline.  If the Settlement Opt-Outs equal or exceed 750 Class Members, then Chase, in its sole discretion, may, at any time prior to three (3) business days before Final Approval Hearing, notify Plaintiffs' counsel that it believes the Settlement cannot achieve its purpose.  In that event, this Settlement Agreement shall become null and void; the Action may continue; and the Parties shall jointly move that any and all orders entered pursuant to this Settlement Agreement be vacated.

10.2.   <u>Objections to Settlement</u>:   Any Class Members who wish to object to the Settlement Agreement must mail the Claims Administrator their written objection and/or request to appear at the Final Approval Hearing to verbally object, postmarked no later than the Settlement Opt Out Deadline.  The Claims Administrator shall provide the Parties with copies of all such objections, and Plaintiffs shall file such objections with the Court within seven (7) days of the Settlement Opt Out Deadline.

**FINAL APPROVAL AND JUDGMENT ORDER**

11.1   <u>Final Approval Motion</u>. At least fourteen (14) calendar days prior to Final Approval Hearing:

a.      The Parties shall file a joint motion requesting that the Court grant final approval of the Settlement Agreement, with Class Counsel filing a memorandum of points and authorities in support of the motion; and

b.      Class Counsel shall file a memorandum addressing any timely submitted Objections to the Settlement.

-18-

11.2   <u>Matters to Be Considered at Final Approval Hearing</u>.   At the Final Approval Hearing, the Court will consider and determine, *inter alia*, whether the provisions of this Settlement Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, whether the motions pursuant to Paragraphs 6.1 and 6.2 should be approved, and whether a Judgment finally approving the Settlement should be entered.

11.3   This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Settlement Agreement and:

(a)   Finds that the Settlement Notice provided in this action satisfies the requirements of due process and Fed. R. Civ. P. 23(e)(1);

(b)   Finds that the Settlement Agreement is fair, reasonable and adequate to the Class, that each member of the Class (except those who submit a timely and valid request for exclusion from the Class) shall be bound by this Settlement Agreement, including the release and covenant not to sue in Paragraph 15.1;

(c)   Dismisses on the merits and with prejudice all claims asserted in the Action against Chase,

(d)   Permanently enjoins each and every Class Member (excluding those Class Members that submit a timely and valid request for exclusion) from bringing, joining, or continuing to prosecute against Chase any action involving the Released Claims; and

(e)   Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

## FINAL JUDGMENT

12.1   The Judgment entered at the Final Approval Hearing shall be deemed final:

-19-

(a)     Thirty (30) days after entry of the Final Judgment approving the Settlement if no document is filed within that time seeking appeal, review or rehearing of the Judgment; or

(b)     If any such document is filed, then fourteen (14) days after the date upon which all appellate and/or other proceedings resulting from such document have been finally terminated in such a manner as to permit the Judgment to take effect in substantially the form described in paragraph 10.4.

## TERMINATION OF AGREEMENT

13.1     The Named Plaintiffs, on behalf of the Participating Class Members, by Class Counsel, and the Defendants, by their counsel, shall each have the right to unilaterally terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") to all other Parties hereto within forty-five (45) calendar days of:  (1) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (2) the Court's refusal to grant final approval of this Agreement in any material respect; (3) the Court's refusal to enter Judgment in the Lawsuit in any material respect; or (4) the date upon which the Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court.

## NO ADMISSION OF LIABILITY

14.1     Chase denies any liability or wrongdoing of any kind associated with the alleged claims in the Second Amended Complaint Action.  Chase has denied and continues to deny each and every material factual allegation and alleged claim asserted in the Action.  Nothing herein shall constitute an admission by Chase of wrongdoing or liability or of the truth of any factual allegations in the Action.  Nothing herein shall constitute an admission by Chase that the Action is properly brought on a class or representative basis other than for settlement purposes.  To this end, the settlement of the Action, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement:  (i) are not,

-20-

shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Chase or of the truth of any of the factual allegations in the Action; (ii) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or omission on the part of Chase in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; and (iii) are not, shall not be deemed to be, and may not be used as, an admission of the appropriateness of these or similar claims for class certification. Nonetheless, Chase has concluded that further litigation would be protracted and expensive, and would also divert management and employee time.  Chase has taken into account the uncertainty and risks inherent in litigation.  Chase has therefore concluded that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

14.2    Pursuant to Federal Rules of Evidence 408 and California Evidence Code Sections 1119 and 1152, this Settlement Agreement and any related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding against Chase, except as necessary to approve, interpret or enforce this Stipulation.

## RELEASE OF CLAIMS

15.1.    <u>Class Release</u> .  Each Participating Class Member and his or her assigns, heirs, successors and personal representatives hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims (as defined below) that exist in their favor through the date of this Settlement Agreement.  The Participating Class Members further agree that they will not institute any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body, arising from or reasonably attributable to the Released Claims.

-21-

1    "Released Claims" means claims or causes of action that are based on or reasonably relate

2    to the alleged claims in the Second Amended Complaint, including claims that Chase improperly

3    required Plaintiffs to purchase and/or maintain flood insurance not required by law, or in amounts

4    greater than required by law or necessary to secure the sums borrowed or the amount of credit

5    available; that Chase misrepresented federal flood insurance requirements at the time such

6    insurance was demanded and/or force placed; that Chase failed to adequately disclose flood

7    insurance requirements in the relevant loan and mortgage documents; that Chase improperly

8    charged the terms of their customers' credit plans without proper notice or authorization; that

9    Chase purchased force placed flood insurance coverage through and/or from related entities in

10   bad faith at inflated premiums; that Chase accepted commissions on force placed insurance; that

11   Chase force placed flood insurance in amounts greater than necessary to secure the amount of

12   funds borrowed and/or credit available; or that Chase engaged in any other similar practices in

13   violation of California Business & Professions Code Sections 17200, *et seq.* or the Truth in

14   Lending Act, 15 U.S.C. § 1601, *et seq.*; and any related claims for premiums, penalties, interest,

15   punitive damages, costs, attorneys' fees, restitution, injunctive relief, declaratory relief, or

16   accounting based on or related to the alleged claims in the Second Amended Complaint.

17       The Participating Class Members acknowledge that all rights under California Civil Code

18   Section 1542 are hereby waived by them with respect to the Released Claims that they may have

19   against the Released Parties.  Section 1542 provides:

20       A general release does not extend to claims which the creditor does not know or
21       suspect to exist in his or her favor at the time of executing the release, which if
         known by him or her must have materially affected his or her settlement with the
22       debtor.

23       As such, the Participating Class Members understand and agree that they are providing the

24   Released parties with a full and complete release with respect to the Released Claims.

25       15.2.   <u>Limitation on Class Releases</u>.  The foregoing class releases set forth in Paragraph

26   15.1 above shall not apply to Participating Class Members whose Settlement Notices were

27   returned as non-deliverable.

28       153.   <u>Individual Releases</u>.  Plaintiffs Sheila Hofstetter and Roger Modersbach shall

release all presently-existing claims they have against Chase relating to flood insurance or their HELOCs with Chase, including but not limited to their claims under the TILA and the CUBPA.

15.4. <u>No Additional Costs or Fees</u>.   Subject to Paragraph 6.1 of this Settlement Agreement, the Parties shall bear their own respective attorneys' fees and costs, and neither Party shall seek additional attorneys' fees or costs beyond the amounts authorized by Paragraph 6.1 and approved by the Court.

## **MISCELLANEOUS**

16.1. <u>Acknowledgment</u>. Each of the Parties acknowledges and represents such Party (a) has fully and carefully read this Settlement Agreement prior to execution; (b) has been fully apprised by counsel of the legal effect and meaning of the terms of this Settlement Agreement; (c) has had the opportunity to undertake whatever investigation or inquiry is necessary or appropriate in connection with this Settlement Agreement and the Action; (d) has been afforded the opportunity to negotiate any and all terms of this Settlement Agreement; and (e) is executing this Settlement Agreement voluntarily and free from any undue influence, coercion, or duress of any kind.

16.2 <u>Press Release</u>.  The Parties and their counsel agree that they will not issue any press releases concerning this Stipulation or the resolution of the Action.

16.3. <u>Counterparts</u>.  This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same Agreement. This Agreement may be executed by signature delivered by facsimile or PDF, and need not be the original "ink" signature.  A complete set of executed counterparts shall be filed with the Court.

16.4. <u>Authority</u>. Each person executing this Settlement Agreement on behalf of any of the Parties hereto represents that such person has the authority to so execute this Agreement.

16.5. <u>Entire Agreement</u>.  This Settlement Agreement and the exhibits hereto constitute the entire fully-integrated agreement among the Parties.  No representations, warranties or inducements of any kind have been made by either Party relating to this Settlement Agreement, other than as set forth herein.

-23-

16.6.   <u>Headings and Captions</u>.   The headings and captions inserted in this Settlement Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Settlement Agreement, or any term of this Settlement Agreement.

16.7.   <u>No Oral Modifications</u>.   This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the Parties or their successors-in-interest.   No oral amendment or modification shall be permitted or effective.

16.8.   <u>Notices</u>.

All notices to the Parties or counsel required by the Agreement shall be made in writing and communicated by facsimile and email to the following:

If to Plaintiffs or Class Counsel:

Kai Richter
KRichter@nka.com
Nichols Kaster, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Facsimile:  612-338-4878

If to Defendants or Defendants' Counsel:

LeAnn Pedersen Pope
lpope@burkelaw.com
330 North Wabash Avenue
22nd Floor
Chicago, IL 60611
Facsimile:  312-840-7900

16.9.   <u>Future Changes in Laws or Regulations</u>.   To the extent that Congress, the Federal Emergency Management Agency ("FEMA"), the Office of the Comptroller of Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB") or any other federal regulatory agency promulgates any law or regulation that would govern any conduct affected by the Settlement, and such law or regulation is in conflict with this Settlement Agreement, such law or regulatory provisions shall control.   The Parties state that they are presently unaware of any such conflict.

Redacted

16.10. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of California.

16.11. <u>Jurisdiction</u>.   The Court shall retain jurisdiction to enforce this Settlement Agreement.  The Parties consent to jurisdiction for this purpose.

Sheila Hofstetter

JPMorgan Chase Bank, N.A., for itself and as successor-by-merger to Chase Home Finance, LLC

*Shiela Hofstetter*

Date: 7/28/11

By:_____

Title_____

Roger Modersbach

Date:_____

Date:_____

**APPROVED AS TO FORM AND CONTENT:**

NICHOLS KASTER, PLLP

By:_____
    Kai Richter

Counsel for Plaintiffs and the Classes

BURKE, WARREN, MACKAY & SERRITELLA, P.C.

By:_____
    LeAnn Pedersen Pope

Counsel for Defendants

-25-

Redacted

1       16.10. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of

2  California.

3       16.11. <u>Jurisdiction</u>.   The Court shall retain jurisdiction to enforce this Settlement

4  Agreement.  The Parties consent to jurisdiction for this purpose.

5

6

7  Sheila Hofstetter

                                      JPMorgan Chase Bank, N.A., for itself and

8                                        as successor-by-merger to Chase Home

                                      Finance, LLC

9                                    By:_____

10  Date:_____

                                      Title_____

11  Roger Modersbach

                                      Date:_____

12

13  _____

14  Date: July 28, 2011

15

16  **APPROVED AS TO FORM AND CONTENT:**

17  NICHOLS KASTER, PLLP

                                      BURKE, WARREN, MACKAY &

18                                        SERRITELLA, P.C.

19  By:_____     By:_____

20       Kai Richter                         LeAnn Pedersen Pope

21  Counsel for Plaintiffs and the Classes      Counsel for Defendants

22

23

24

25

26

27

28

                                      -25-

1    16.10. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of

2    California.

3    16.11. <u>Jurisdiction</u>.  The Court shall retain jurisdiction to enforce this Settlement

4    Agreement.  The Parties consent to jurisdiction for this purpose.

5

6

7    Sheila Hofstetter                          JPMorgan Chase Bank, N.A., for itself and
                                                as successor-by-merger to Chase Home
8                                               Finance, LLC

9    _____               By: _____
     Date:
10                                              Title _SENIOR VICE PRESIDENT - SERVICING_

11   Roger Modersbach                           Date: _7/28/2011_

12

13   _____
     Date:
14

15

16   **APPROVED AS TO FORM AND CONTENT:**

17   NICHOLS KASTER, PLLP                       BURKE, WARREN, MACKAY &
                                                SERRITELLA, P.C.
18

19   By:_____            By:_____
          Kai Richter                                LeAnn Pedersen Pope
20

21   Counsel for Plaintiffs and the Classes     Counsel for Defendants

22

23

24

25

26

27

28

-25-

SETTLEMENT AGREEMENT AND RELEASE

1    16.10. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of

2  California.

3    16.11. <u>Jurisdiction</u>.   The Court shall retain jurisdiction to enforce this Settlement

4  Agreement.  The Parties consent to jurisdiction for this purpose.

5

6

7  Sheila Hofstetter                                      JPMorgan Chase Bank, N.A., for itself and
                                                          as successor-by-merger to Chase Home
8                                                          Finance, LLC

9  _____                        By:_____

10 Date:                                                  Title_____

11 Roger Modersbach                                       Date:_____

12

13 _____

14 Date:

15

16 **APPROVED AS TO FORM AND CONTENT:**

17 NICHOLS KASTER, PLLP                                   BURKE, WARREN, MACKAY &
                                                          SERRITELLA, P.C.
18

19 By:_____                       By: _____
        Kai Richter                                            LeAnn Pedersen Pope
20

21 Counsel for Plaintiffs and the Classes                 Counsel for Defendants

22

23

24

25

26

27

28

-25-

SETTLEMENT AGREEMENT AND RELEASE

16.10. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of California.

16.11. <u>Jurisdiction</u>.   The Court shall retain jurisdiction to enforce this Settlement Agreement.  The Parties consent to jurisdiction for this purpose.


Sheila Hofstetter

JPMorgan Chase Bank, N.A., for itself and as successor-by-merger to Chase Home Finance, LLC

By:_____

_____
Date:

Title_____

Roger Modersbach

Date:_____

_____
Date:


**APPROVED AS TO FORM AND CONTENT:**

NICHOLS KASTER, PLLP

BURKE, WARREN, MACKAY & SERRITELLA, P.C.

By:_____
    Kai Richter

By:_____
      LeAnn Pedersen Pope

Counsel for Plaintiffs and the Classes

Counsel for Defendants

-25-

# Exhibit A

# OFFICIAL NOTICE OF PROPOSED CLASS ACTION
# SETTLEMENT AND FAIRNESS HEARING

### *Hofstetter and Modersbach v. Chase Home Finance and JPMorgan Chase Bank* (10-1313 WHA)

This is an important notice from the United States District Court for the Northern District of California regarding a proposed class action settlement and upcoming hearing in the above-referenced class action lawsuit that may affect your rights.

### Background

This class action lawsuit alleges that Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC (collectively, "Chase") require customers with home equity lines of credit to carry excessive amounts of flood insurance for their property (if their property is located in a Special Flood Hazard Area), and receive improper financial incentives in connection with lender-placed flood insurance (also known as "force-placed" flood insurance). Chase denies that it has done anything unlawful, but has agreed to enter into a settlement agreement to resolve these allegations.

### Classes Certified By The Court

On March 31, 2011, this Court certified four different classes of Chase home equity line customers in this class action, as set forth below. Some persons belong to more than one class. This notice is being sent to you because you have been identified as a class member in this lawsuit, and did not exclude yourself from the class in response to the previous notice that was sent to class members regarding this lawsuit.

1.  The Court certified the following nationwide class to seek (a) a declaration that Chase violated a federal law by changing credit-agreement terms, and (b) an injunction to prevent Chase from violating that law again:

> All persons who originated a home-equity line of credit with JPMorgan Chase Bank, N.A. before December 23, 2009 that was secured by residential property in the United States, that was not closed before this action commenced on March 29, 2010, and whose signed credit agreement did not require that the property be covered by an amount of flood insurance equal to the lesser of the full replacement cost value of the property or the maximum amount of insurance available through the National Flood Insurance Program.

2.  The Court certified the following nationwide class to seek money damages from Chase based on the claim that Chase violated a federal law by changing credit-agreement terms:

> All persons who originated a home-equity line of credit with JPMorgan Chase Bank, N.A. before December 23, 2009 that was secured by residential property in the United States, and were required by Chase Bank or its agents or affiliates to purchase or maintain flood insurance on the property with a coverage amount larger than the maximum limit on the line of credit, on or after December 23, 2009.

3.  The Court certified the following California class to seek (a) a declaration that Chase violated a California law by requiring home-equity-line customers to buy too much flood insurance, (b) an injunction to prevent Chase from violating that law again, and (c) monetary restitution if the class succeeded on its claim:

All persons who have or had a home-equity line of credit with JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured by their residential property in the State of California, that was not closed before this action commenced on March 29, 2010, and who were informed by Chase Bank or Chase Home Finance that the property must be covered by an amount of flood insurance equal to the lesser of the full replacement cost value of the property or the maximum amount of insurance available through the National Flood Insurance Program, between March 29, 2006, and the date of final disposition of this action.

4. The Court certified the following California class to seek (a) a declaration that Chase violated a California law by receiving improper financial gains in connection with force-placing flood insurance on its home-equity-line customers, (b) an injunction to prevent Chase from violating that law again, and (c) monetary restitution if the class succeeded on its claim:

All persons who have or had a home-equity line of credit with JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured by their residential property in the State of California, and had flood insurance force-placed upon the property by Chase Bank or Chase Home Finance, between March 29, 2006, and the date of final disposition of this action.

## Summary of Proposed Settlement Terms

After the Court certified these four classes of Chase home equity customers, the parties reached a settlement agreement, which was preliminarily approved by the Court on [PRELIMINARY APPROVAL DATE]. Under the terms of this proposed settlement agreement, certain class members are entitled to injunctive and/or declaratory relief, as follows:

1. Injunctive Relief

The proposed settlement agreement provides for the following injunctive relief to members of Class 1, Class 3, and/or Class 4 ("Injunction Class Members"):

    a. Chase will not require flood insurance in excess of the <u>lesser</u> of the following amounts (the "Minimum Amount Required"):
        i. The amount of flood insurance coverage available through the National Flood Insurance Program (currently 250,000);
        ii. 100% of the full replacement cost value of the dwelling and insurable improvements; or
        iii. The customer's credit line amount plus the amount of any senior lien(s) secured by the property.
    b. Chase will inform all Injunction Class Members with active home equity credit lines that they are not required to maintain flood insurance in excess of the lesser of these amounts.
    c. Chase will not accept commissions in connection with lender-placed flood insurance.
    d. Chase will provide account credits to certain Injunction Class Members who were charged premiums for lender-placed flood insurance that was purchased by Chase during the "Relevant Injunction Period" (defined as on or after March 29, 2009 for persons in Class 1, or on or after March 29, 2006 for persons in Class 3 or Class 4).
        i. For Injunction Class Members who had no outstanding principal balance or available credit at the time such lender-placed flood insurance was purchased, Chase will provide an account credit equal to the total amount of all premium charges for such lender-placed flood insurance, plus any interest or fees associated with such premium charges, to the extent that the class member's account remains active and the class member did not file an insurance claim on the lender-placed flood insurance policy.

ii. For Injunction Class Members with active "fee based" accounts that show unpaid premiums for lender-placed flood insurance purchased during the Relevant Injunction Period in excess of the Minimum Amount Required, Chase will provide an account credit in the amount of the premium for such excess coverage.

## 2. Cash Payments

The proposed settlement agreement also provides for cash payments to certain members of Class 2, Class 3, and/or Class 4 ("Damages Class Members"). Under the terms of the proposed settlement, Chase will pay $9,625,000 into a settlement fund, for distribution to Damages Class Members after deduction of any costs, attorneys' fees, or class representative compensation awarded by the Court. Damages Class Members will be entitled to a *pro rata* share of these funds in proportion to their "Commission Damages" and "Excess Insurance Damages," defined as follows:

a. Commission Damages. Damages Class Members in Class 4 who incurred premium charges for lender-placed food insurance purchased between March 29, 2006 and December 31, 2009 shall have Commission Damages equal to the amount of commissions that were paid to Chase's affiliate insurance agency on the lender-placed policy (either 14% or 20% of the policy amount), excluding any commissions paid for "Excess Insurance" as described below.

b. Excess Insurance Damages. Damages Class Members in Class 2, Class 3, and/or Class 4 shall have Excess Insurance Damages equal to the amount of any Excess Insurance times their Applicable Premium Rate times any Applicable Discount Rate, as follows:

i. Excess Insurance. Damages Class Members shall be regarded as having Excess Insurance to the extent that:
   ▪ they maintained flood insurance coverage in excess of their principal balance and available credit after receiving a letter from Chase demanding such coverage; *and*
   ▪ such coverage was purchased during the "Relevant Damages Period" (defined as between December 23, 2009 and April 14, 2011 for Damages Class Members in Class 2, and between March 29, 2006 and April 14, 2011 for Damages Class Members in Class 3 or Class 4); *and*
   ▪ if they are a member of Class 2, they did not voluntarily carry such coverage prior to receiving a demand letter from Chase.

ii. Applicable Premium Rate. Under the Proposed Settlement Agreement, the Applicable Premium rate shall be as follows:
   • For Damages Class Members with lender-placed flood insurance, the Applicable Premium Rate shall be the total premium amount divided by the total coverage amount (if the total premium amount is available from Chase's records), or .0090 for class members in flood zone A and .0300 for class members in flood zone V (if the total premium amount is *not* available from Chase's records); and
   • For Damages Class Members who purchased their own flood insurance to meet Chase's coverage requirements, the Applicable Premium Rate shall be the average rate charged for such insurance, based on Chase's records.

   iii.  <u>Applicable Discount Rate</u>.  Excess Insurance Damages shall be discounted for certain Damages Class Members, as follows:

- Damages Class Members who originated their home equity line of credit with Washington Mutual shall have their Excess Insurance Damages Discounted by 50%; and
- Damages Class Members who had a senior mortgage loan or lien on their property shall have their Excess Insurance Damages Discounted by 50%.

These discounts shall be cumulative.  However, these discounts shall not apply to Damages Class Members who had no outstanding principal balance and no available credit upon the purchase of Excess Insurance, if their accounts are now closed.

3. <u>Payment to Class Counsel and Class Representatives</u>.  In connection with this proposed settlement agreement, class counsel (Nichols Kaster, PLLP) has requested attorneys' fees in the amount of ___% of the total settlement fund, plus out-of-pocket costs for litigation expenses and settlement administration in the amount of at least $_____.  In addition, the named plaintiff class representatives (Sheila I. Hofstetter and Roger Modersbach) have requested reimbursement for the time they have spent prosecuting this action in the amount of $_____ each.  At the present time, the Court has not yet decided whether to award some or all of the requested amounts.  However, to the extent that any amounts are awarded for attorneys' fees and costs, these amounts will be deducted from the settlement fund before distribution to class members.

4. <u>Releases of Claims Against Chase</u>.  Under the proposed Settlement Agreement, participating class members will give up certain claims against Chase, in return for the relief set forth in the Settlement Agreement.  The release provision of the Settlement Agreement provides, in full, as follows:

Each Participating Class Member and his or her assigns, heirs, successors and personal representatives hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims (as defined below) that exist in their favor through the date of this Settlement Agreement.  The Participating Class Members further agree that they will not institute any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body, arising from or reasonably attributable to the Released Claims.

"Released Claims" means claims or causes of action that are based on or reasonably relate to the alleged claims in the Second Amended Complaint, including claims that Chase improperly required Plaintiffs to purchase and/or maintain flood insurance not required by law, or in amounts greater than required by law or necessary to secure the sums borrowed or the amount of credit available; that Chase misrepresented federal flood insurance requirements at the time such insurance was demanded and/or force placed; that Chase failed to adequately disclose flood insurance requirements in the relevant loan and mortgage documents; that Chase improperly charned the terms of their customers' credit plans without proper notice or authorization; that Chase purchased force placed flood insurance coverage through and/or from related entities in bad faith at inflated premiums; that Chase accepted commissions on force placed insurance; that Chase force placed flood insurance in amounts greater than necessary to

secure the amount of funds borrowed and/or credit available; or that Chase engaged in any other similar practices in violation of California Business & Professions Code Sections 17200, *et seq.* or the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*; and any related claims for premiums, penalties, interest, punitive damages, costs, attorneys' fees, restitution, injunctive relief, declaratory relief, or accounting based on or related to the alleged claims in the Second Amended Complaint.

The Participating Class Members acknowledge that all rights under California Civil Code Section 1542 are hereby waived by them with respect to the Released Claims that they may have against the Released Parties. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

As such, the Participating Class Members understand and agree that they are providing the Released parties with a full and complete release with respect to the Released Claims.

### Your Legal Rights and Options

If you wish to participate in this settlement agreement and receive the benefits to which you are entitled, you do not need to do anything. However, if you do *not* wish to participate in this settlement agreement and do not wish to receive any benefits to which you are entitled, you must complete the enclosed Opt Out Form, sign it, and return it to the Class Administrator at the following address no later than [OPT OUT DEADLINE]:

Analytics, Inc.
Chase Flood Insurance Class Action
P.O. Box 2009
Chanhassen, MN 55317-2009

### Fairness Hearing

On [FINAL APPROVAL HEARING DATE], at _____ [a.m.] [p.m.], in Courtroom 9 on the 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, the Court will hold a fairness hearing to determine whether to grant final approval to the proposed settlement and determine the appropriate amount of compensation to be awarded to class counsel and/or the class representatives out of the settlement fund. If you wish to object to the proposed settlement or the amount of compensation requested by class counsel and/or the class representatives, you must send the class administrator, at the address listed above, a letter setting forth the basis for your objection. If you wish to appear at the fairness hearing, you also should indicate that in your letter.

### How to Obtain Additional Information

**If you have questions about this class action,** you should visit the website www.chasefloodinsurancelitigation.com. On this website, you can find a copy of the proposed Settlement Agreement, Plaintiffs' motion for attorneys' fees, costs and expenses, and reimbursement for the class representatives, and other materials relating to the lawsuit. If the website does not answer all of your questions, then you should contact the class administrator. You may write to the class administrator at the address above, or you may call the class administrator at 1-800-553-3106. Please do not send any questions to the Court.

# REQUEST TO OPT OUT OF CLASS ACTION SETTLEMENT
## *Hofstetter and Modersbach v. Chase Home Finance and JPMorgan Chase Bank* (10-1313 WHA)

YOU SHOULD ONLY FILL OUT THIS FORM IF YOU DO NOT WISH TO PARTICIPATE IN THE PROPOSED SETTLEMENT OF THE ABOVE-REFERENCED CLASS ACTION AND DO NOT WISH TO RECEIVE ANY BENEFITS UNDER THE PROPOSED SETTLEMENT AGREEMENT.  IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU DO NOT NEED TO FILL OUT THIS FORM.

If you wish to exclude yourself from the proposed class action settlement, you must complete, sign and mail this opt out form postmarked on or before [OPT OUT DEADLINE] to the Class Administrator at the address shown below:

Analytics, Inc.
Chase Flood Insurance Class action
P.O. Box 2009
Chanhassen, MN 55317-2009

PLEASE NOTE THAT ANY OPT OUT FORMS THAT ARE NOT TIMELY SUBMITTED WILL NOT BE CONSIDERED.

### REQUEST FOR EXCLUSION

I have received the Notice of Proposed Class Action Settlement and Fairness Hearing in *Hofstetter and Modersbach v. Chase Home Finance and JPMorgan Chase Bank* (10-1313 WHA).  Having read this notice and having considered the terms of the proposed class action settlement, I have elected to exclude myself from participation in the proposed settlement.  I understand that by excluding myself from this settlement, I will forfeit any rights to relief that I have under the proposed settlement agreement, but will keep my right to bring my own claims against Chase (subject to applicable statutes of limitation).


_____
Signature


_____
Name (print)


_____
_____
_____
Mailing Address


_____
Email Address


_____
Telephone Number


_____
Chase home equity line of credit account number

# Exhibit B

[DATE]

<u>Via U.S. Mail</u>
«FirstName» «LastName»
«Address1»
«Address2»
«City», «State»  «Zip»
Chase - <<ID>>

Re:     *Settlement Payment*
        **Hofstetter and Modersbach v. Chase Home Finance and JPMorgan Chase Bank**
        **Case No. 10 CV 1313 WHA**

To the Above-Named Borrower(s):

In connection with the class action settlement in the above-referenced, a settlement check representing your share of the settlement fund is enclosed.  If you have any questions, you may contact our office at [TELEPHONE NUMBER].

Sincerely,

Analytics, Inc.
Class Administrator

▼ REMOVE DOCUMENT ALONG THIS PERFORATION  ▼

| | |
|---|---|
| **Case Name** | **BANK of the WEST** |
| c/o Analytics, Inc. | 90-78 / 1211 |
| P.O. Box 2000 | |
| Chanhassen, MN 55317-2000 | |

CHECK NUMBER
**5001**

DATE OF CHECK
**July 19, 2011**

PAY EXACTLY:     ONE AND XX / 100 DOLLARS

$1.00

Claim # 1111111
ABC1234567890

VOID AFTER 120 DAYS

**PAY** to
the order of:     JOHN Q CLASSMEMBER

AUTHORIZED SIGNATURE

DOCUMENT CONTAINS BLUE PANTOGRAPH & MICROPRINTING, BACK HAS THERMOCHROMIC INK & A WATERMARK, HOLD AT AN ANGLE TO VIEW, VOID IF NOT PRESENT.

⑊000000 500 1⑊   ⑊121100782⑊   000000000⑊

See Reverse Side For Easy Opening Instructions

**Case Name**
c/o Analytics, Inc.
P.O. Box 2000
Chanhassen, MN 55317-2000

SEE OTHER SIDE FOR
OPENING INSTRUCTIONS

Claim Number 1111111

ABC1234567890

JOHN Q CLASSMEMBER
123 MAIN ST
ANYTOWN, ST 12345