1 Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
2 NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
3 San Francisco, CA  94111
Telephone: (415) 277-7235
4 Facsimile: (415) 277-7238

5
James H. Kaster, CA State Bar No. 248949
6 Kaster@nka.com
Paul J. Lukas, MN State Bar No. 22084X
7 Lukas@nka.com
(admitted **pro hac vice**)
8 E. Michelle Drake, MN State Bar No. 0387366
Drake@nka.com
9 (admitted **pro hac vice**)
Kai Richter, MN State Bar No. 296545
10 KRichter@nka.com
(admitted **pro hac vice**)
11 Rebekah L. Bailey, CA State Bar No. 258551
Bailey@nka.com
12 NICHOLS KASTER, PLLP
4600 IDS Center
13 80 South 8th Street
14 Minneapolis, MN  55402
Telephone: (612) 256-3200
15 Facsimile: (612) 215-6870
16

17 Attorneys for Plaintiffs and the Classes

18 **IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**
19

20 Sheila I. Hofstetter and Roger Modersbach,      Case No. CV-10-1313 WHA
individually, as representatives of the classes,
21 and on behalf of the general public,            **JOINT NOTICE OF MOTION AND
MOTION FOR PRELIMINARY**
22                          Plaintiffs,            **APPROVAL OF SUPPLEMENTAL
CLASS ACTION SETTLEMENT AND**
23              vs.                                **NOTICE OF SETTLEMENT, AND
MEMORANDUM OF POINTS AND**
24 Chase Home Finance, LLC,                         **AUTHORITIES**
JP Morgan Chase Bank, N.A. , and DOES 1-
25 50, inclusive,
                          Defendants.             Hearing Date: October 20, 2011 (8:00 a.m.)
26

27

28

---

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SUPPLEMENTAL
CLASS ACTION SETTLEMENT AND NOTICE OF SETTLEMENT, AND MEMORANDUM OF POINTS
AND AUTHORITIES**

1

# NOTICE OF MOTION AND MOTION

2      Please take notice that Plaintiffs' and Defendants' Joint Motion for Preliminary Approval

3  of Supplemental Class Action Settlement and Notice of Settlement will be heard on **October 20,**

4  **2011 at 8:00 a.m.**, in Courtroom 8 on the 19th Floor of the United States Courthouse, 450 Golden

5  Gate Avenue, San Francisco, California, before the Honorable William H. Alsup.

6      Pursuant to Federal Rule of Civil Procedure 23 and this Court's Order dated September

7  15, 2011 [ECF No. 232], Plaintiffs and Defendants jointly move for an order preliminarily

8  approving the class action settlement agreement attached as Exhibit 1 to the Declaration of Kai

9  Richter, and directing that notice of the settlement be issued to class members in the form and

10  manner proposed in the settlement agreement and attachments thereto.  This motion is based on

11  the points and authorities cited in the accompanying memorandum of points and authorities; the

12  contemporaneously-filed declarations of Sheila Hofstetter, Roger Modersbach, Kai Richter, and

13  Arthur Olsen; the arguments of counsel; and all files, records, and proceedings in this matter.

14

15  Dated: October 6, 2011                              NICHOLS KASTER, PLLP

16                                         By:     s/ Kai Richter
                                                   Kai Richter
17

18                                                 NICHOLS KASTER, LLP
                                                   Attorney for Plaintiffs and the Proposed Classes
19

20

21

22

23

24

25

26

27

28

-i-

# MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................2

I.   Earlier Settlement and Inadvertent Omission of Certain Class Members ....................2

II.  Production of Supplemental Class Member Data and Negotiation of Settlement ..........4

III. Settlement Terms ................................................................................................5

    A.  Injunctive Relief ...........................................................................................5

    B.  Compensation to Class Members .................................................................6

       1. Compensation Formula .........................................................................6

         a. Excess Coverage ...........................................................................7

         b. Applicable Premium Rate ..............................................................7

         c. Discount Rate ...............................................................................8

       2. Comparison of "Settlement Damages" and "Best Case" Damages ............9

    C.  Other Terms .................................................................................................9

ARGUMENT .............................................................................................................10

I.   Standard of Review on Motion for Preliminary Approval ...........................................10

II.  The Supplemental Settlement Agreement is Consistent with the Existing Settlement, and Meets the Court's Criteria for Approval ................................................................11

CONCLUSION ...........................................................................................................13

-ii-

# TABLE OF AUTHORITIES

**Federal Rules and Regulations**

Fed. R. Civ. P. 23(e) .......................................................................................................... 1, 10, 13

74 Fed. Reg. 35,914 (July 21, 2009) .................................................................................... 8

**Cases**

*In re Charles Schwab Corp. Secs. Litig.*, No. 08-01510, 2011 WL 1481424

       (Apr. 19, 2011) ...................................................................................... 10, 11, 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).................................. 10

*Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774 (N.D. Cal. June 19, 2007) .............. 10

*Briggs v. United States*, No. 07-05760, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ......... 11, 13

*Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 2221073 (N.D. Cal. Aug. 2, 2007)............... 13

**Secondary Sources**

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995) ........................................................ 10

5 Moore's Federal Practice § 23.83[a] (3d ed. 2002)................................................... 10

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) 10, 11

-iii-

**INTRODUCTION**

Pursuant to Rule 23(e) and this Court's Order dated September 15, 2011 (ECF No. 232), the Parties[1] jointly submit this Motion for Preliminary Approval of Supplemental Class Action Settlement and Notice of Settlement. The Parties have entered into a Supplemental Settlement Agreement ("SSA") in order to provide relief to certain class members ("Supplemental Class Members") who were inadvertently excluded by Chase from the class lists that formed the basis for the earlier class action settlement (ECF No. 224-1) that was preliminarily approved by the Court in August (ECF No. 225). The SSA is consistent with the terms of that earlier settlement,[2] and is a "good deal" for the Supplemental Class Members for the same reasons that the earlier settlement was a good deal for the previously-identified class members. Specifically, Chase has agreed to pay additional monies ($512,423.61) into a supplemental settlement fund, and will provide additional account credits to borrowers, which together will cover 100% of the "settlement damages" of the Supplemental Class Members under the same formula that was used to calculate "settlement damages" for the previously-identified class members. This formula will fairly compensate the Supplemental Class Members, as their "settlement damages" constitute nearly three-fourths of their "best case" damages, according to Plaintiffs' damages expert, Arthur Olsen. Moreover, the Supplemental Class Members will be entitled to the same injunctive relief that has been achieved for the other class members. Finally, the SSA also meets several other criteria previously identified by the Court in its Notice Regarding Factors To Be Evaluated For

---

[1] The term "Parties" refers to Plaintiffs Sheila I. Hofstetter and Roger Moderbach ("Plaintiffs"), on behalf of themselves and the class members they represent, and Defendants Chase Home Finance, LLC and JPMorgan Chase Bank. N.A. ("Defendants" or "Chase").

[2] Like the earlier settlement, the SSA provides that (1) Chase will no longer require Supplemental Class Members to carry flood insurance in excess of federal requirements; (2) Chase and its affiliates will permanently refrain from accepting commissions in connection with force-placed flood insurance for HELOC customers; (3) Chase will pay monies into a supplemental settlement fund, which will be used to pay cash compensation to eligible Supplemental Class Members; and (4) Chase will provide additional account credits to certain Supplemental Class Members.

-1-

Any Proposed Class Settlement (ECF No. 170).[3] Accordingly, the Parties jointly request that the Court issue an order (1) preliminarily approving the SSA, and (2) directing that notice of the settlement be issued to the Supplemental Class Members in the form and manner proposed in the SSA and attachments thereto.

## BACKGROUND

The relevant background relating to the history of the lawsuit and the negotiation and terms of the Parties' earlier settlement is set forth in detail in the Parties' first motion for preliminary approval. *See ECF No. 207 at 2-15.* The Parties expressly re-incorporate that background into their current motion, and provide the Court with the following additional background relating to the SSA.

### I.     Earlier Settlement and Inadvertent Omission of Certain Class Members

On March 31, 2011, the Court certified two nationwide classes of Chase HELOC borrowers in connection with Plaintiffs' claim under the Truth-In-Lending Act ("TILA"), and two California classes of Chase HELOC borrowers in connection with Plaintiffs' claim under the California Unfair Business Practices Act ("CUBPA"). *See ECF No. 178.* Following the Court's class certification ruling, Chase produced a master class list to Plaintiffs, indentifying certain

---

[3] The SSA is consistent with the Court's criteria in the following additional respects:

- The settlement was reached *after* class certification and discovery;
- The settlement was negotiated at arm's length, without any evidence of collusion;
- The release in the SSA is narrowly tailored to the claims asserted in the case (and is identical to the release that was approved by the Court as part of the earlier settlement);
- There is no burdensome claims procedure for class members;
- There is no reversion of settlement funds to Chase;
- The settlement is not conditioned on attorneys' fees or costs, or any payment to the named Plaintiffs;
- The fairness of the settlement is supported by sworn testimony from the class representatives, class counsel, and Plaintiffs' damages expert; and
- The proposed notice program provides for notice of the settlement via first class mail, provides class members a second opportunity to opt-out if they harbor any individual concerns about the settlement, and is otherwise fair and reasonable.

-2-

1  members of each of these classes.  *Declaration of Kai Richter dated October 6, 2011 ("Richter*

2  *Decl."),¶ 5*.  This information was then forwarded to the class administrator, Analytics, Inc.

3  ("Analytics"), which mailed 46,275 class action notices to the persons identified on the master

4  class list, and submitted a class roster to the Court on July 26, 2011 (after the expiration of the

5  opt-out period), identifying the persons who remained in the classes and those persons who chose

6  to opt out.  *See ECF No. 205.*

7      Two days after the class roster was filed, the Parties filed a joint Motion for Preliminary

8  Approval of Class Action Settlement.  *See ECF No. 207.*  However, between the date that the

9  Parties filed their preliminary approval motion and the date of the preliminary approval hearing,

10 Chase reported that it had inadvertently excluded certain members of the TILA classes from the

11 master class list.  *Richter Decl., ¶ 6; see also ECF No. 219.*  In order to address this problem (and

12 certain other issues identified at the preliminary approval hearing), the Court directed the Parties

13 to (1) submit a revised settlement agreement to the Court for approval; and (2) proceed separately

14 with the claims of the Supplemental Class Members, by sending them a separate class action

15 notice.  *ECF No. 220.*

16     The Parties then submitted a revised settlement agreement for the existing class members

17 and a proposed form of notice for the Supplemental Class Members.  *See ECF No. 222-1 & 222-*

18 *2.*  At the Court's request (*see ECF No. 223*), the Parties later submitted a second revised

19 settlement agreement to the Court for its approval on August 18, 2011.[4]  *See ECF No. 224-1.*  The

20 following day, on August 19, 2011, the Court issued an order preliminarily approving the second

21 revised settlement agreement for the existing class members, and also approved the proposed

22 class action notice for the Supplemental Class Members.  *ECF No. 225.*  In its order, the Court

23 indicated that this supplemental class action notice should be mailed by August 31, 2011.  *Id.; see*

24

25 [4] The second revised settlement agreement applies only to the claims of the class members who
   were originally identified by Chase, as the definition of "Class Member" is limited to "a member
26 of one or more the Certified Classes who was sent a Class Certification Notice [the week of May
   16-20, 2011] and did not exclude himself or herself from the Certified Classes in response to the
27 Class Certification Notice."  *ECF No. 224-1 at ¶ 2.21; see also id. at ¶ 2.17.*

28

-3-

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SUPPLEMENTAL
CLASS ACTION SETTLEMENT AND NOTICE OF SETTLEMENT, AND MEMORANDUM OF POINTS
AND AUTHORITIES**

1     *also ECF No. 228.* Consistent with this timetable, Analytics mailed the supplemental class action

2     notice to all of the Supplemental Class Members on that date. *See ECF No. 231, ¶ 2.*

3     **II.     Production of Supplemental Class Member Data and Negotiation of Settlement**

4           Prior to the mailing of the supplemental class action notices, Chase identified each of the

5     Supplemental Class Members who had been inadvertently omitted from the master class list.[5] *See*

6     *Richter Decl., ¶ 7.* In addition, Chase provided Plaintiffs with certain additional data for the

7     Supplemental Class Members in the TILA damages class, in order to facilitate a proper damages

8     calculation for these class members. *Richter Decl., ¶ 8.* This supplemental class data included

9     the same type of information that Chase had produced for the previously-identified class

10    members, including information regarding customers' HELOCs with Chase; their available credit

11    and outstanding principal balance; the date(s) that they were sent a flood insurance notice by

12    Chase; the amount of any private flood insurance they purchased after receiving a flood insurance

13    notice; the level of flood insurance they maintained before Chase sent them a flood insurance

14    notice; the amount of any lender-placed flood insurance and associated premiums; and their flood

15    zone status (A or V). *Id.; see also Richter Decl., Ex. 1 at ¶ 3.8.*

16          Based on this supplemental class member data, Mr. Olsen prepared a supplemental

17    damages analysis for the Supplemental Class Members, using the same methodology that he

18    applied to conduct his earlier damages analysis for the previously-identified class members. *See*

19    *Declaration of Arthur Olsen dated October 6, 2011 ("Olsen Decl."), ¶ 8; Richter Decl., ¶ 9.* As

20    part of his analysis, Mr. Olsen calculated both "best case" damages and "settlement damages" for

21    the Supplemental Class Members. *Olsen Decl., ¶ 7; Richter Decl., ¶ 9.* The Parties then met and

22    conferred with one another, and reached a settlement on September 14, 2011. *Richter Decl., ¶¶*

23

---

24    [5] Specifically, Chase provided Plaintiffs with a list of 3,122 class members in Class 1 (TILA injunctive class) who had been inadvertently excluded from earlier list of class members in Class

25    1 by Chase. *Richter Decl., ¶ 7.* Chase also provided Plaintiffs with a list of 2,179 class members in Class 2 (TILA damages class) who had been inadvertently excluded from earlier list of class

26    members in Class 2 by Chase. *Id.* As one would expect, the supplemental TILA Damages Class

27    almost completely overlaps with the supplemental TILA Injunctive Class. *Id., n.1.*

-4-

28

1   *10-11*.  The terms of this supplemental settlement are modeled after the Parties' earlier settlement,

2   and are designed to provide the same relief for the Supplemental Class Members.  *Id., ¶ 11.*

3   **III.    Settlement Terms**

4       **A.    Injunctive Relief**

5       The SSA contains the same key injunctive terms as the earlier settlement agreement,

6   including (1) new flood insurance coverage requirements for Supplemental Class Members; (2) a

7   ban on commissions in connection with force-placed flood insurance; and (3) account credits to

8   certain borrowers.  *Richter Decl., ¶ 12 & Ex. 1.*

9       *First*, the SSA provides that Chase will not require Supplemental Class Members to

10  maintain flood insurance on their property in excess of the "Minimum Flood Insurance Coverage

11  Amount" required by federal law.  *See Richter Decl., Ex. 1, ¶ 4.2*; *accord, ECF No. 224-1, ¶ 4.2*.

12  Consistent with the terms of the earlier settlement agreement, the SSA defines the Minimum

13  Flood Insurance Coverage Amount as *the lesser* of the following amounts:

14          a.   The maximum amount of flood insurance coverage available through the

15              National Flood Insurance Program (currently 250,000);

16          b.   100% of the full replacement cost value of the dwelling and insurable

17              improvements; or

18          c.   The customer's credit line amount plus the amount of any senior lien(s)

19              secured by the property.

20  *Richter Decl., Ex. 1, ¶ 2.36* (emphasis in original); *accord*, ECF No. 224-1, ¶ 2.36.

21      *Second*, the SSA provides that "Chase and its affiliates shall not accept commissions on

22  Lender-Placed Flood Insurance for HELOCs."  *Richter Decl., Ex. 1, ¶ 4.4.*  This provision is also

23  consistent with the earlier settlement agreement.  *Cf. ECF No. 224-1, ¶ 4.4.*

24      *Finally*, the SSA provides that Chase will provide account credits to eligible "zero-zero"

25  borrowers under the same terms as specified in the earlier settlement agreement (i.e.,

26  Supplemental Class Members with currently active accounts who were a "zero-zero" borrowers at

27

28                                          -5-

the time Chase force-placed flood insurance on their property will receive an account credit equal to the total amount of all premium charges for such force-placed flood insurance, plus any interest or fees associated with such premium charges, provided that they did not file a claim on the force-placed policy). *See Richter Decl., Ex. 1, ¶ 4.5; accord, ECF No. 224-1, ¶ 4.6.* The only difference between the SSA and the earlier settlement agreement with respect to account credits is that the SSA does not provide a separate credit to borrowers with "fee-based" accounts. *Richter Decl., ¶ 12; Cf. ECF No. 224-1, ¶ 4.5.* This is because none of the Supplemental Class Members had fee-based accounts, according to the data provided by Chase. *Richter Decl., ¶ 12; see also Olsen Decl., ¶ 14(b).*

## B.    Compensation to Class Members

Consistent with the earlier settlement agreement, the SSA also provides that Chase shall contribute to a supplemental settlement fund, which will be used to compensate Supplemental Class Members with "Excess Insurance Damages." *Richter Decl., ¶ 13 & Ex. 1.*[6] Under both the SSA and the earlier settlement agreement, the formula for calculating Excess Insurance Damages is essentially the same. *Id.* This formula yields a recovery for the Supplemental Class Members that is nearly three-fourths of their "best case" damages. *See Olsen Decl., ¶13.*

### 1.    Compensation Formula

As described below (and discussed in further detail in Plaintiffs' first motion for preliminary approval), "Excess Insurance Damages" are equal to the amount of any "Excess Coverage," times the "Applicable Premium Rate," times any applicable discount rate. *Richter Decl., ¶ 5.4.*

---

[6] The SSA does not provide for "Commission Damages" to Supplemental Class Members. *Richter Decl., ¶ 13, n.2; Cf. ECF No. 224-1, ¶ 5(a).* This is because only *California* class members are entitled to "Commission Damages" under the earlier settlement agreement, and Chase did not exclude any class members from the California classes. *Richter Decl., ¶ 13, n.2.* As noted *supra* at 3, Chase only excluded class members from the nationwide TILA classes.

-6-

### a. Excess Coverage

For purposes of both the SSA and the earlier settlement agreement, class members in the TILA Damages Class are deemed to have involuntary "Excess Coverage" if: (1) they maintained flood insurance coverage in excess of their principal balance and available credit after receiving a letter from Chase demanding such coverage; (2) such coverage was purchased during the "Relevant Damages Period"[7]; and (3) they did not voluntarily carry such coverage prior to receiving a flood insurance notice from Chase. *Richter Decl. Ex. 1, ¶¶ 2.25, 5.4; accord, ECF 224-1, ¶ 2.25, 5.3(b).* With respect to the third criteria, this involves a comparison of the amount of coverage that the class member purchased before and after receiving a flood insurance notice from Chase. *See Richter Decl. Ex. 1, ¶ 2.25.* However, by definition, all force-placed coverage is deemed to be involuntary. *Id.*

### b. Applicable Premium Rate

For purposes of the SSA and the earlier settlement agreement, the "Applicable Premium Rate" is also the same. For class members with force-placed flood insurance, the Applicable Premium Rate is the total premium amount divided by the total coverage amount (if premium data is available from Chase's records).[8] *Richter Decl., Ex. 1, ¶ 2.3(a); accord ECF No. 224-1, ¶ 2.3(a).* For example, if Chase force-placed a $250,000 flood insurance policy on a borrower at a cost of $2,250, the applicable premium rate would be .0090 ($2,250/$250,000), and then would

---

[7] The "Relevant Damages Period" for the TILA Damages Class begins on December 23, 2009 and ends on April 14, 2011. *See Richter Decl., Ex. 1, ¶¶ 2.40, 2.43; accord, ECF No. 224-1, Ex. 1, ¶¶ 2.40, 2.43.* The start date is consistent with the Court's class definition and the date of Chase's earlier change in its flood insurance requirements for HELOC customers (December 23, 2009). *Richter Decl., ¶ 13, n.3.* The end date was chosen because the class data for the previously-identified class members ran through April 14, 2011, and the Parties wanted to ensure that damages for the Supplemental Class Members were calculated over the same period. *Id.; see also Olsen Decl. ¶ 8 & n.2.*

[8] In the rare instance where force-placed premium data is *not* available from Chase's electronic records, the SSA and the earlier settlement agreement both provide that the Applicable Premium Rate shall be .0090 for class members in flood zone "A" and .0300 for class members in flood zone "V." *Richter Decl., Ex. 1, ¶ 2.3(b)(i)-(ii); accord ECF No. 224-1, ¶ 2.3(b)(i)-(ii).* These are the rates that were typically charged to class members for force-placed coverage in each of these respective flood zones. *See ECF No. 207-1, ¶ 23, n.4.*

-7-

be multiplied times the amount of Excess Coverage to determine Excess Insurance Damages. *Olsen Decl., ¶ 11.* For class members who purchased their own insurance coverage in response to a flood insurance notice from Chase, the Applicable Premium Rate is "the same average premium rate that [was] used to calculate Excess Insurance Damages for Initially-Identified Class Members . . . who purchased Private Flood Insurance, under the terms of the Initial Settlement Agreement." *Richter Decl., Ex. 1, ¶¶ 2.3(b)(iii), 2.5.*[9] As explained in Plaintiffs' first motion for preliminary approval, it is necessary to use an average rate for borrowers who purchased their own flood insurance because Chase only kept premium data for a fraction of borrowers who purchased their own policies. *Olsen Decl., ¶ 10; see also See ECF No. 207 at 12-13.*

### c. Discount Rate

Consistent with the earlier settlement agreement, the SSA provides that Supplemental Class Members who had a mortgage loan or another senior lien on their property with priority over their HELOC with Chase shall have their Excess Insurance Damages Discounted by 50%. *See Richter Decl., Ex. 1, ¶5.4(a)*; *accord*, *ECF No. 224-1, ¶5.3(b)(ii).* This discount is included to reflect Chase's defense that federal law requires second lienholders to obtain flood insurance in an amount equal to the sum of all liens on a borrower's property, if the property is located in a Special Flood Hazard Area. *Id.; see also* 74 Fed. Reg. 35,914, 35,920 (July 21, 2009) ("[A] lender cannot comply with the [National Flood Insurance Act] by requiring the purchase of an NFIP flood insurance policy only in the amount of the outstanding principal balance of the second mortgage without regard to the amount of flood insurance coverage on a first mortgage."). However, under the SSA and the earlier settlement agreement, this discount is not applicable to "zero-zero" borrowers with closed accounts,[10] since zero-zero borrowers had no ability to draw

---

[9] The average premiuim rate for the initially-identified class members was .003290 for class members in flood zone "A" and .010855 for class members in flood zone V. *First Olsen Decl., ¶ 21.* As one would expect, these rates are lower than the comparable rates for force-placed coverage (.0090 and .0300, respectively).

[10] "Zero Zero" Borrowers with open accounts are entitled to account credits rather than cash payments from the supplemental settlement fund. *See supra* at 5-6. These account credits also are not subject to any discounts.

-8-

1   any money on their line of credit from Chase and the Court previously concluded that Chase had

2   no right to make any demand of them regarding flood insurance.  *Richter Decl., Ex. 1, ¶5.4(b);*

3   *accord, ECF No. 224-1, ¶5.3(b)(iii).*

4          The only difference in the formula between the SSA and the earlier settlement agreement

5   is that the SSA does not include a second discount for Washington Mutual ("WAMU")

6   borrowers.  *Richter Decl., ¶ 13; Cf. ECF No. 224-1, ¶5.3(b)(i).*  This is because none of the

7   Supplemental Class Members originated their HELOCs with WAMU.  *Richter Decl., ¶ 13; see*

8   *also Olsen Decl., ¶ 14(g)-(h), (l)-(m).*

9                 **2.   Comparison of "Settlement Damages" and "Best Case" Damages**

10         Applying this formula to the claims of the Supplemental Class Members in the TILA

11  Damages Class, Mr. Olsen determined that they are entitled to $512,423.61 in cash compensation

12  from the supplemental settlement fund.  *Olsen Decl., ¶ 13.*  Accordingly, Chase has agreed to pay

13  this amount into the fund, for distribution to these class members.  *See Richter Decl., Ex. 1, ¶ 5.1.*

14  Mr. Olsen calculates that the "best case" damages for these class members is $697,719.68.  *Olsen*

15  *Decl., ¶ 12.*  Thus, "settlement damages" under the SSA constitute nearly three-fourths of "best

16  case" damages (73.4% of "best case" damages based on the settlement fund alone, and 74.5% of

17  "best case" damages when account credits are also considered).  *Id., ¶ 13.*

18         **C.     Other Terms**

19         The remaining terms of the SSA also parallel the terms of the earlier settlement

20  agreement.  For example, all account credits and cash payments will be made automatically upon

21  final approval of the Settlement Agreement.  No claims process will be required, and there will be

22  no reversion of funds to Chase.  *See Richter Decl., Ex. 1, ¶ 5.8; accord, ECF No. 224-1, ¶ 5.7.*

23  The release in the SSA is also identical to the release in the earlier settlement agreement.  *See*

24  *Richter Decl., Ex. 1, ¶ 15.1; accord, ECF No. 224-1, ¶ 15.1.*  The SSA only releases the TILA

25  and CUBPA claims "that are asserted in the Second Amended Complaint."  *Id.*  Moreover, the

26  release only applies to those class members who receive notice of the settlement and choose not

27

28

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SUPPLEMENTAL
CLASS ACTION SETTLEMENT AND NOTICE OF SETTLEMENT, AND MEMORANDUM OF POINTS
AND AUTHORITIES**

opt out. *Id., ¶ 15.2.* Finally, the notice provisions in the SSA parallel the notice provisions in the earlier settlement agreement. Notice of the settlement will be sent to the Supplemental Class Members via first class mail, they will have an opportunity to opt out of the SSA (just as the other class members had an opportunity to opt out of the earlier settlement), and the content of the notice of settlement is substantially the same. *Richter Decl., Ex. 1, ¶¶ 9.1, 10.1 & Ex. A.*

## ARGUMENT

### I.     Standard of Review on Motion for Preliminary Approval

Under Fed. R. Civ. P. 23(e), court approval is required for any settlement agreement that will bind absent class members. *In re Charles Schwab Corp. Secs. Litig.*, No. 08-01510, 2011 WL 1481424, at *4 (Apr. 19, 2011). This involves a "two-step process." MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995). First, counsel submits the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation. *Id.* Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id.*

The determination of whether a proposed settlement is fair falls within the sound discretion of the district court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, this discretion is exercised somewhat differently, depending on whether preliminary or final approval is being sought. At the preliminary approval stage, the court is not required to answer the ultimate question of whether the settlement is fair, reasonable, and adequate. *See* 5 Moore's Federal Practice § 23.83[a], at 23-336.2 to 23-339 (3d ed. 2002). Rather, the court simply makes an initial determination concerning whether the settlement "appears to fall within the range of possible approval[.]" 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002); *accord, Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at *6 (N.D. Cal. June 19, 2007) ("*Kakani I*") ("threshold of plausibility" standard applies to motions for preliminary settlement approval under Rule 23). In

-10-

the absence of any "obvious deficiencies," preliminary approval should be granted, and notice of the settlement should be directed to the class so that class members may have a chance to be heard. NEWBERG ON CLASS ACTIONS § 11:25, *supra*.

**II.     The Supplemental Settlement Agreement Is Consistent with the Existing Settlement, and Meets the Court's Criteria for Approval**

Here, the SSA is modeled on the earlier settlement agreement that already has been preliminarily approved by the Court.  Accordingly, the SSA also should preliminarily approved, so that notice of the SSA may be directed to the Supplemental Class Members.  Like the earlier settlement agreement, the SSA meets each and every one of the Court's settlement criteria.

*First*, the SSA provides fair compensation to the Supplemental Class Members.  The total "Settlement Damages" that Supplemental Class Members are entitled to receive are nearly three-fourths of their "best case" damages.  *See Olsen Decl., ¶ 13*.  Indeed, a large number of Supplemental Class Members – those who are not subject to a "first lien" discount – are entitled to receive 100% of their "best case" damages.  *Id., ¶¶ 14(a), (d), (e), (i), (j)*.  This is more than sufficient to pass muster for settlement approval.  *See Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *5 (approving recoveries of 35.9% to federal class and 23.4% to California class).

*Second*, "the settlement agreement does not require class members to file claims."  *See Briggs v. U.S.*, No. 07-05760, 2010 WL 1759457, at *4 (N.D. Cal. Apr. 30, 2010) (Alsup, J.).  Class members who are entitled to damages "need only deposit their check."  *Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *6.  The Court has described this as the "best approach."  *ECF No. 170 at 3, § 7* .

*Third*, in the unlikely event that class members fail to deposit their checks, there is no reversion to Chase.  *See Richter Decl., Ex. 1, ¶ 5.8*.  Instead, any unclaimed funds will be distributed to the National Consumer Law Center.  *Id.*  This further weighs in favor of approval.

-11-

*Cf. ECF No. 170 at 3, § 6* ("A settlement that allows for a reversion of settlement funds to the defendant(s) is a red flag, for it runs the risk of an illusory settlement ...").

*Fourth*, the SSA provides for meaningful injunctive relief, including (1) modification of Chase's flood insurance requirements to comport with federal requirements; (2) prohibition of commissions on force-placed flood insurance; and (3) account credits for certain borrowers. These injunctive provisions provide significant additional benefits to borrowers beyond the settlement fund itself.

*Fifth*, "the scope of the class settlement release of claims is reasonable and sufficiently limited." *See Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *6. Consistent with the release that previously was approved (*ECF No. 224-1, ¶ 15.1*), the release in the SSA is (1) limited to the claims asserted (i.e., claims under the TILA and CUBPA); (2) avoids releasing other claims that could have been brought; and (3) excludes from the release those class members whose settlement notices are returned as non-deliverable. *See Richter Decl., Ex. 1, ¶¶ 15.1-.2.*

*Sixth*, "counsel negotiated in good faith and there is no evidence whatsoever of collusion." *Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *6. The SSA is not contingent on any award of attorneys' fees or expenses, and explicitly provides that any motion for attorneys' fees and expenses shall be "considered separately by the Court." *Richter Decl., Ex. 1, ¶ 6.1.*[11]

*Seventh*, the fairness of the proposed settlement is supported by sworn testimony. As instructed by the Court, Plaintiffs have submitted a declaration from their expert, Arthur Olsen, which sets forth the "ratio between the class recovery under the settlement and the maximum possible class recovery." *See ECF No. 201, 232.* In addition, the motion for preliminary approval is also supported by declarations from Plaintiffs and their counsel. *See ECF No. 170 at 1, § 1.*

*Finally*, the proposed settlement notice is also reasonable, and consistent with the notice of settlement that the Court previously approved. For example, SSA calls for sending notice of

---

[11] Plaintiffs' counsel has no intention of seeking additional fees in connection with the SSA. *Richter Decl., ¶ 15.* Counsel intends to limit its request for fees and expenses to the amount previously requested, and will request that the Court allocate these fees and expenses between the two settlements in a manner that results in the same net recovery for all class members. *Id.*

-12-

the settlement to class members via first class mail.  *See Richter Decl., Ex. 1, ¶ 9.1; accord, Briggs*, 2010 WL 1759457, at *3 (finding that individualized notice sent by first-class mail to class members met the requirements of Rule 23(e)(1) for settlement notice).  The SSA also requires Analytics to take specific measures to locate up-to-date address information for class members.  *See Richter Decl., Ex. 1, ¶ 9.1; accord, Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 2221073, at *2 (N.D. Cal. Aug. 2, 2007) (approving revised notice plan that provided for similar measures for finding correct addresses for class members).  Further, the content of the supplemental settlement notice is consistent with the earlier settlement notice that was approved by the Court.  *See Richter Decl., Ex. 1 at Ex. A; Cf. ECF No. 224-1 at Ex. A.*  Finally, the proposed settlement notice gives class members a second opportunity to opt out.  *See Richter Decl., Ex. 1, ¶ 10.1. accord, ECF No. 224-1, ¶ 10.1.*  Although this is not a "cure all" for an otherwise flawed settlement (*ECF No. 170 at 4, § 11*), it does provide an added measure of protection for class members, and is a factor that further supports approval of the settlement.  *See* Fed. R. Civ. P. 23(e)(4) ("If a class action was previously certified under rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.").

## CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that this Court grant their Motion for Preliminary Approval of Supplemental Class Action Settlement and Notice of Settlement, and propose the following schedule (consistent with the timetable set forth in the SSA):

| | |
|---|---|
| Supplemental Settlement Notice mailed to Supplemental Class Members: | Within 8 days of preliminary approval |
| Official case website updated to reflect preliminary approval of SSA: | Within 8 days of preliminary approval |
| Deadline to Opt out/Object: | Within 45 days of mailing of supplemental settlement notices |
| Deadline for Final Approval Motion: | 76 days after preliminary approval |
| Fairness Hearing: | 90 days after preliminary approval |

-13-

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SUPPLEMENTAL CLASS ACTION SETTLEMENT AND NOTICE OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES**

1

2 Dated: October 6, 2011

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

NICHOLS KASTER, PLLP

By: s/ Kai Richter
   Kai Richter

Attorney for Plaintiffs and the Classes

-14-

**JOINT NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SUPPLEMENTAL CLASS ACTION SETTLEMENT AND NOTICE OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES**